UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

SHAILESH JAHAGIRDAR,

   Plaintiff,

v.

THE COMPUTER HAUS NC, INC. d/b/a
CITYMAC, a North Carolina Corporation,
and TROY CURRAN, an individual,

   Defendants.

Civil Action No. 1:20-cv-0033

**JURY TRIAL DEMANDED**

**COMPLAINT**

COMES NOW Plaintiff, Shailesh Jahagirdar ("Plaintiff"), by and through undersigned counsel, and files this complaint as follows:

Plaintiff brings this action to recover unpaid wages, commissions, compensatory damages, liquidated damages, and attorneys fees from Defendants, The Computer Haus NC, Inc. and Troy Curran (collectively, "Defendants"), for violations of the Fair Labor Standards Act (hereinafter "FLSA"), 29 U.S.C. § 201 *et seq.*, the North Carolina Wage and Hour Act (hereinafter "NCWHA"), N.C.G.S. § 95-2.1 *et seq.* and common law causes of action for malicious prosecution, abuse of process and intentional infliction of emotional distress.

## NATURE OF ACTION

1. Plaintiff alleges that he is entitled to recover (i) unpaid minimum wages, and (ii) statutory penalties, including liquidated damages, pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq.*, specifically 29 U.S.C. §§ 207, 216(b).

2. Defendants operate retail stores selling Apple and Verizon products and offering training on and service of various electronic products.

1

## THE PARTIES

3. Plaintiff Shailesh Jahagirdar is an adult individual who is a resident of Wilmington, North Carolina, and worked as an employee for Defendants from July 1, 2019, to August 10, 2019, and then from September 20, 2019, to November 25, 2019 at Defendants' retail store located at 1121-A Military Cutoff Road, Wilmington, North Carolina 28405.

4. Defendant, The Computer Haus NC, Inc., d/b/a CityMac ("CityMac") is a North Carolina corporation, which operates retail stores across the country including in North Carolina - Wilmington, Asheville, Biltmore Park, South Carolina - Myrtle Beach, Washington - Bellingham and Burlington, and Portland ,Oregon. CityMac's principal place of business is registered with the North Carolina Secretary of State at 4 S. Tunnel Road, Suite 210, Asheville, North Carolina 28805.

5. Defendant, Troy Curran ("Curran") is an officer of, and owns and operates, City Mac. Upon information and belief, Curran allocated compensation to employees, made wage payment decisions, set policy and practices regarding employee pay and made, and continues to make, hiring and firing decisions for CityMac.

6. At all relevant times, Plaintiff was an "employee" as that term is defined by the FLSA and the NCWHA.

7. At all relevant times, Defendants were "employers" as that term is defined by the FLSA and the NCWHA.

8. Plaintiff is informed and believes, and based upon such information and belief alleges, that the Defendants, and each of them, are now and/or at all times mentioned in this

Complaint were in some manner legally responsible for the events, happenings, and circumstances alleged in this Complaint.

9. Plaintiff is further informed and believes, and based upon such information and belief alleges, that at all times mentioned, all Defendants, and each of them, were and are the agents, servants, employees, joint venturers, alter egos, and/or partners of each of the other Defendants, and were, at all such times, acting within the course and scope of said employment and/or agency; furthermore, that each and every Defendant herein, while acting as a high corporate officer, director, and/or managing agent, principal, and/or employer, expressly directed, consented to, approved, affirmed, and ratified each and every action taken by the other co-Defendants, as herein alleged and was responsible in whole or in part for the matters referred to herein.

10. Plaintiff is further informed and believes, and based upon such information and belief alleges, that at all times herein mentioned, Defendants, and each of them, proximately caused Plaintiff to be subjected to the unlawful practices, wrongs, complaints, injuries and/or damages alleged in this Complaint.

11. Plaintiff is further informed and believes, and based upon such information and belief alleges, that Defendants, and each of them, are now and/or at all times mentioned in this Complaint were members of and/or engaged in a joint venture, partnership and common enterprise, and were acting within the course and scope of, and in pursuit of said joint venture, partnership and common enterprise and, as such were co-employers of Plaintiff.

12. Plaintiff is further informed and believes, and based upon such information and belief alleges, that Defendants, and each of them, at all times mentioned in this Complaint, concurred with, contributed to, approved of, aided and abetted, condoned and/or

3

otherwise ratified, the various acts and omissions of each and every one of the other Defendants in proximately causing the injuries and/or damages alleged in this Complaint.

13. Plaintiff is further informed and believes, and based upon such information and belief alleges, that Curran made all decisions on a daily basis regarding pay policies and exerted financial and operative control over CityMac, and is therefore individually liable under the FLSA and the NCWHA.

## JURISDICTION AND VENUE

14. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA. 29 U.S.C. § 201 *et. seq.*

15. Defendants principal place of business as registered with the North Carolina Secretary of State is listed as 4 S. Tunnel Road, Suite 210, Asheville, North Carolina 28805 and is situated in this District.

16. The claims for violations of the NCWHA are based on the statutory law of the State of North Carolina. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same nucleus of operative facts as the FLSA claim. Plaintiff's remaining claims are based on the common law of North Carolina.

17. All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

## COVERAGE ALLEGATIONS

18. At all times hereinafter mentioned, Defendants have been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

19. At all times hereinafter mentioned, Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA 29 U.S.C. § 203(r).

20. At all times hereinafter mentioned, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that the enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that the enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

21. At all times hereinafter mentioned, Plaintiff was an employee within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

22. At all times hereinafter mentioned, Plaintiff was an individual employee who was engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

23. At all times hereinafter mentioned, Defendants have been an employer within the meaning of Section 95-25.2(5) of the NCWHA, N.C. Gen. Stat. §§ 95-25.2(5).

24. At all times hereinafter mentioned, Plaintiff was an employee within the meaning of Section 95-25.2(4) of the NCWHA, N.C. Gen. Stat. §§ 95-25.2(4).

## STATEMENT OF FACTS

25. Plaintiff was an employee of Defendants from July 1, 2019, to August 10, 2019, and then from September 20, 2019, to November 25, 2019 at Defendants' retail store located at 1121-A Military Cutoff Road, Wilmington, North Carolina 28405.

26. Plaintiff was not terminated by Defendants; instead, he chose to resign effective November 25, 2019 as a result of how he was being treated by Defendants' management.

27. Defendants own several retail stores that sell Apple and Verizon products and offer training on and service of various electronic products.

28. Defendants employ sales personnel who are paid an hourly rate and are also paid a promised commission as part of their wages.

29. Defendants agreed to pay Plaintiff $12 per hour in addition to a commission on his sales.

30. Defendants failed to pay Plaintiff the promised $12 per hour for every hour worked during the time period of August 2019 - September 2019, approximately forty (40) hours and for the eighty (80) hours he worked during his final two weeks of employment with Defendants.

31. Defendants failed to pay Plaintiff the required statutory minimum wage for every hour worked during the time period of August 2019 - September 2019, approximately forty (40) hours and for the eighty (80) hours he worked during his final two weeks' of employment with Defendants.

32. Defendants claimed that Plaintiff's wages were deducted based on bad returns from Defendants' customers that Plaintiff accepted as part of his job duties. Plaintiff never agreed to any deductions from his wages, and Defendants never provided Plaintiff with any notice that his wages were going to be deducted.

33. Defendants' purported deduction violated the FLSA and the NCWHA because Plaintiff was not paid at least the minimum wage for the hours worked or paid as promised.

34. Defendants presented Plaintiff with its "Commission Structure," which provided for a commission based on a percentage of gross profit plus a flat amount per activation.

35. Defendants never paid Plaintiff for any commissions that were due under the Commission Structure. For example, from October 1, 2019 to November 25, 2019, Plaintiff earned at least $450 in commissions based on his sales. These commissions were wages due under the NCWHA, and failure to pay these commissions constitutes a violation of the NCWHA.

36. Defendants also obstructed Plaintiff's attempts to earn certain commissions by failing to provide him with the credentials needed to access certain systems to complete necessary training.

37. As a result of Defendants' actions, earned commissions were wrongfully withheld and diverted from Plaintiff.

38. Defendants' policies and practices with respect to the payment of commissions were misleading and fraudulent, were a breach of its promises to employees, violated the wage provisions of the FLSA and NCWHA, and deprived Plaintiff of the lawful wages to which he was entitled.

39. At all relevant times, Defendants knew that Plaintiff was not being paid minimum wage for every hour worked, thereby willfully violating the FLSA and NCWHA.

40. Defendants benefitted from their unlawful failure to pay Plaintiff minimum wages and commissions to which he was entitled, because Defendants reaped more profit from the deceptive scheme.

41. On December 4, 2019, Plaintiff contacted Defendants to demand payment of all wages owed informing that he was not paid any wages for the final eighty (80) hours he had worked for Defendants.

42. Defendants HR representative informed Plaintiff that his paycheck was withheld because: "There was an iPad air left unpaid, and two devices on early upgrade with extensive damage that were not approved by Verizon for trade-in. One of said devices needed a screen replacement, totaling approximately $169. The other device has a broken back glass panel, which always requires total device replacement. You were advised against the transaction as shown in our records but you proceeded, resulting in a loss of over $1000 for City Mac."

43. Defendants unlawfully withheld Plaintiffs' final wages purportedly due to trade-ins from Defendants' customers which were not accepted by Defendants' vendors.

44. On January 2, 2020, Plaintiffs' counsel sent the attached litigation hold notice to Defendants - see Exhibit A.

45. On January 3, 2020 Plaintiffs received an offer of employment from Brian Cox, Managing Director of Northwestern Mutual contingent upon a successful background check.

46. On February 3, 2020 Plaintiff received an email from Northwestern Mutual Human Resources department indicating that Plaintiff had an outstanding warrant for "embezzlement" that was taken out by Defendants on January 16, 2020, after Defendants received notice of Plaintiff's claims for unpaid wages and litigation hold notice.

47. On February 3, 2020, Brian Cox from Northwestern Mutual called Plaintiff and stated "they are rescinding their offer based on the allegations of embezzlement made by CityMac."

## COUNT I

**(Violation of Fair Labor Standards Act – Failure to Pay Minimum Wages)**

48. Plaintiff reasserts the allegations set forth in the above paragraphs.

49. Count I arises from Defendants' violation of the FLSA, for their failure to pay at least minimum wage for every hour worked by Plaintiff.

50. Defendants violated the FLSA by not paying Plaintiff for every hour that he worked.

51. Defendants also violated the FLSA by deducting an amount from his wages that resulted in his wages falling below the minimum wage.

52. Defendants' violation of the FLSA was willful.

## COUNT II

**(Violation of Fair Labor Standards Act – Retaliation)**

53. Plaintiff reasserts the allegations set forth in the above paragraphs.

54. In doing the acts alleged above, Defendants retaliated against Plaintiff in violation of the FLSA. After Plaintiff engaged in protected conduct by asserting his right to receive the wages he earned without unauthorized deductions, Defendants retaliated against him by filing a false police report against him, which resulted in a warrant being issued for his arrest.

55. As a direct and proximate results of the above-described violation of Plaintiff's rights under the FLSA, Plaintiff has suffered damages, including but not limited to, lost wages, benefits and other pecuniary loss.

56. Defendants' conduct was done with malice and was willful and wanton, entitling Plaintiff to an award of punitive damages. Defendant Curran participated in and/or condoned the retaliation, rendering Defendant CityMac liable for punitive damages.

## COUNT III

### (Violations of North Carolina Wage and Hour Act)

57. Plaintiff reasserts the allegations set forth in the above paragraphs.

58. Count III arises from Defendants' policy and practice of suffering or permitting Plaintiff to work without paying promised and earned wages for all hours worked in violation of N.C. Gen. Stat. §§ 95-25.6, 95-25.7 and 95-25.13.

59. Defendants violated these statutes by failing to pay Plaintiff all promised and earned wages on the employees' regular payday for all hours worked.

60. Defendants also violated Plaintiff's rights under the NCWHA by failing to pay and diverting from Plaintiff earned commissions on sales that he procured before his employment ended on November 25, 2019.

61. Further, Defendants violated the NCWHA by unlawfully withholding or deducting wages in violation of N.C. Gen. Stat. §95-25.8 because Plaintiff never provided a written authorization to deduct any amount from his wages. Defendants never provided advance notice of the deduction, and Defendants deduction resulted in Plaintiff's wages falling below the minimum wage amount.

62. Defendants willfully violated Plaintiff's rights under the NCWHA.

63. As a result of Defendants' willful action, Plaintiff is entitled to recover liquidated damages pursuant to N.C. Gen. Stat. § 95-25.22.

64. Plaintiff is entitled to recover his attorneys fees pursuant to N.C. Gen. Stat. § 95-25.22(d).

## COUNT IV

### (Malicious Prosecution)

65. Plaintiff reasserts the allegations set forth in the above paragraphs.

66. Defendants caused criminal proceedings to be initiated against Plaintiff with malice and without probable cause.

67. The criminal proceedings have been or will be terminated in Plaintiff's favor.

68. Defendants' actions were in violation of North Carolina common law and caused Plaintiff to suffer damages, including loss of a job offer from Northwestern Mutual, severe emotional distress and mental injury.

69. Defendants' conduct was done with malice and was willful and wanton, entitling Plaintiff to an award of punitive damages. Defendant Curran participated in and/or condoned the malicious prosecution, rendering Defendant CityMac liable for punitive damages.

## COUNT V

### (Abuse of Process)

70. Plaintiff reasserts the allegations set forth in the above paragraphs.

71. In doing the acts alleged above, Defendants had an ulterior motive to achieve a collateral purpose not within the normal scope of the process used. Defendants' ulterior motive was to retaliate against Plaintiff for asserting his legal rights and to intimidate Plaintiff from pursuing legal action to protect those rights, seeking to gain an advantage in any civil suit against them.

72. In doing the acts alleged above, Defendants committed an act that was a malicious misuse or misapplication of that process after issuance to accomplish some purpose not warranted or commanded.

73. Defendants' actions were in violation of North Carolina common law and caused Plaintiff to suffer damages, including loss of a job offer from Northwestern Mutual, severe emotional distress and mental injury.

74. Defendants' conduct was done with malice and was willful and wanton, entitling Plaintiff to an award of punitive damages. Defendant Curran participated in and/or condoned the abuse of process, rendering Defendant CityMac liable for punitive damages.

## COUNT VI

### (Intentional Infliction of Emotional Distress)

75. Plaintiff reasserts the allegations set forth in the above paragraphs.

76. In doing the acts alleged above, Defendants engaged in extreme and outrageous conduct. Defendants' conduct of initiating criminal charges against Plaintiff months after Plaintiff resigned and *only after* retained counsel and demanded Defendants pay him the wages owed to him goes beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

77. Defendants' punitive and retaliatory conduct of initiating baseless criminal charges to avoid paying wages was intended to, and did in fact, cause Plaintiff severe emotional distress.

78. As an actual, proximate, and foreseeable result of the above-mentioned actions, Plaintiff has suffered lost back and front pay, lost benefits, severe emotional distress, severe

physical distress, anxiety, depression, embarrassment, humiliation, physical pain and suffering, and his peace of mind has been disturbed.

79. Defendants' conduct was done with malice and was willful and wanton, entitling Plaintiff to an award of punitive damages. Defendant Curran participated in and/or condoned the extreme and outrageous conduct, rendering Defendant CityMac liable for punitive damages.

## COUNT VII

### (Tortious Interference with Prospective Economic Advantage)

80. Plaintiff reasserts the allegations set forth in the above paragraphs.

81. On January 3, 2020 Plaintiffs received an offer of employment from Brian Cox, Managing Director of Northwestern Mutual contingent upon a successful background check.

82. Plaintiff subsequently posted on his Facebook page that he was interviewing with Northwestern Mutual and believed he had an imminent job offer. At least one coworker is friends with Plaintiff on Facebook. On information and belief, Defendants thereby became aware of Plaintiff's job offer from Northwestern Mutual.

83. Defendants, without justification, purposefully filed a false police report accusing Plaintiff of embezzlement and stating he has violent tendencies, in order to induce Northwestern Mutual from entering into the employment agreement with Plaintiff.

84. On February 3, 2020, Brian Cox called Plaintiff and stated "they are rescinding their offer based on the allegations by CityMac." Cox emailed Plaintiff the results of the background check which showed the warrant out for his arrest based on embezzlement charges by CityMac.

85. Defendants' purposeful conduct, in fact, induced Northwestern Mutual to refrain from entering into an employment contract with Plaintiff, which would have been made absent Defendants' purposeful interference.

86. Defendants' conduct was not privileged or justified.

87. As an actual, proximate, and foreseeable result of the above-mentioned actions, Plaintiff has suffered lost back and front pay, lost benefits, severe emotional distress, severe physical distress, anxiety, depression, embarrassment, humiliation, physical pain and suffering, and his peace of mind has been disturbed.

88. Defendants' conduct was done with malice and was willful and wanton, entitling Plaintiff to an award of punitive damages. Defendant Curran participated in and/or condoned the tortious interference with prospective economic advantage, rendering Defendant CityMac liable for punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands and prays for:

a) An Order pursuant to Section 16(b) of the FLSA finding Defendants liable for unpaid back wages due to Plaintiff and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff;

b) An Order pursuant to the NCWHA finding Defendants liable for unpaid back wages, commissions, and liquidated damages equal in amount to the unpaid compensation due to Plaintiff;

c) An Order awarding compensatory damages in an amount to be proven at trial;

d) An Order awarding punitive damages under N.C. Gen. Stat. § 1D-115 in an amount to be proven at trial;

e) An Order awarding the costs of this action;

f) An Order awarding reasonable attorneys' fees;

g) A Declaration and finding by the Court that Defendants willfully violated provisions of the FLSA by failing to comply with the minimum wage requirements of the FLSA;

h) An Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law; and

i) An Order granting such other and further relief as may be necessary and appropriate.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury for all issues of fact.

Respectfully submitted,

*/s/ L. Michelle Gessner*
L. Michelle Gessner, NCSB#26590
GESSNERLAW, PLLC
602 East Morehead Street
Charlotte, North Carolina 28202
Tel: (704) 234-7442
Fax: (980) 206-0286
Email: michelle@mgessnerlaw.com