SHAILESH JAHAGIRDAR*, et. al.*

                    Plaintiffs,

  v.

THE COMPUTER HAUS NC, INC. d/b/a
CITYMAC, a North Carolina Corporation, and
TROY CURRAN, an individual, *et. al.*

                    Defendants.

**MEMORANDUM OF LAW IN
SUPPORT OF PLAINTIFFS'
MOTION TO CERTIFY RULE 23
CLASS ACTIONS AND APPOINT
CLASS COUNSEL**

## I.    INTRODUCTION

Plaintiffs Shailesh Jahagirdar, Allen Allen, Kamri Norris, Jordan Blais, Connor Johnson,

Rakia Green, and Andrew Free, on behalf of themselves and all others similarly situated, bring

this Motion for class certification under Federal Rules of Civil Procedure, Rule 23, on the

grounds that they and others similarly situated were subjected to unlawful pay practices of their

joint employers, The Computer Haus NN, Inc. d/b/a CityMac, Troy Curran and Ocean Tech, Inc.

d/b/a Citymac, Zephyr Investments, Inc., TS Leasing, L.L.C., Curran and Company, Green

Vault, Inc., Curran Ranch, Curran Family Properties, LLC[1], Curran Brothers, LLC, Northern

Passages, Inc., Salish Sea, LLC, and Curran Holdings, LLC  (collectively "Defendants" or

"CityMac") in violation of the wage and hour laws in North Carolina, South Carolina,

Washington, Colorado and Oregon. Specifically, Plaintiffs and the putative Class Members claim

Defendants are liable for violating North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen.

Stat. §§ 95-25.1 *et seq*., the South Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10,

---

[1] Mr. Curran is well aware and has been informed that Curran Family Properties, LLC was listed as a
scriveners' error and at all time Plaintiffs were referring to another one of his alter egos, Curran Brothers,
LLC.  Plaintiffs will be filing a Motion to amend/correct shortly.

*et seq*., the Washington Minimum Wage Requirements and Labor Standards Act ( "WMWA'") , R.C.W. §§ 49.46.005, *et seq*. and supporting Washington State Department of Labor and Industries Regulations, Colorado's Minimum Wage Law ("CMWL"), C.R.S. 8-6-101, et seq., the Colorado Wage Act ("CWA"), C.R.S. §§ 8-4-101, *et seq.* and Colorado Wage Order No. 22, 7 c.C.R. 1103, C.C.H. 6-41,801, *et seq.*, and the Oregon Conditions of Employment Laws, O.R.S. §§ 651.010 and Oregon Administrative Rules, O.A.S. §§ 839-020-0030,0800, *et seq.*

Plaintiffs and the putative Class Members are non-exempt hourly employees who were systematically not paid as promised, were not paid for all hours worked, worked off the clock, were not paid overtime wages for all hours over 40 hours in a workweek, and were not paid commissions and bonuses earned and were not paid overtime at a rate that factored in commissions and/or bonuses. In addition, Plaintiffs and the putative Class Members were subjected to unauthorized deductions from wages and unauthorized changes to timecards. Further, they were denied meal and rest breaks in those states where such breaks are required. CityMac also failed to keep adequate and accurate records.

The North Carolina, South Carolina, Washington, Colorado and Oregon Classes should be certified because Plaintiffs and others are class members of the Classes they have defined; Plaintiffs can satisfy the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), as well as the additional requirements of Rule 23(b)(3) and they are adequate representatives of the North Carolina, South Carolina, Washington, Colorado and Oregon Classes.

## II.    FACTS

Defendant, The Computer Haus NC, Inc., d/b/a CityMac ("CityMac") is a North Carolina corporation, operating retail stores selling Apple and Verizon products and offering service and support for those products [ECF No. 7 at ¶ 4.] CityMac has locations in: Wilmington, North

2

Carolina; Asheville, North Carolina; Biltmore Park, North Carolina; Myrtle Beach, South Carolina; Bellingham, Washington; Burlington, Washington; and Portland, Oregon. To operate its retail stores, CityMac employs non-exempt hourly employees as salespersons and customer service representatives, including certified Apple service technicians, with various titles. [ECF No. 7 at ¶¶ 23 and 24.] Defendant Troy Curran ("Curran") is the owner and operator of CityMac.

### North Carolina Class with Class Representative Plaintiff Jahagirdar

Plaintiff Sal Jahagirdar was employed by CityMac as a sales professional from July 1, 2019, to August 10, 2019, and then from September 20, 2019, to November 25, 2019 at Defendants' retail store located in Wilmington, North Carolina. [Exhibit A, Jahagirdar Deposition at 27:4-11; 29:7-8.] The Wilmington store opened at 9:45 - 10:00 am but Jahagirdar was required to arrive at 9:15 am and was told he could not clock in until closer to opening time. [Ex. A, 34:10-36:4] During this time before clocking in, Jahagirdar and other employees would check orders that came in, prep and clean stations, sweep floors and put computers up front on display. [Ex. A at 36:7-22; 58:8-21; and 67:4-7] Jahagirdar worked six days a week, but even during his day off, he would respond to texts and answer questions. [Ex. A at 37:13-19] When Jahagirdar was hired the second time, in September of 2019, he would arrive at 9:15-9:30 and would clock in between 9:45-9:46. [Ex. A at 38:18-39:3] There were time periods when Jahagirdar did not have access to the timekeeping system and had to submit his hours manually to HR. [Ex. A at 39:22-25 and 51:17-20] CityMac made it difficult or impossible to receive earned commissions. [Ex. A at 86:10-88:7] Jahagirdar worked overtime that was not compensated. [Ex. A at 89:18-25] CityMac failed to pay Jahagirdar commissions, overtime and his final paycheck at the time it was due to be paid. [Ex. A at 98:22-99:4; 160:7-164:21]

### South Carolina Class -- with Class Representatives Plaintiffs Norris, Green, Allen

Plaintiff Kamri Norris ("Norris") worked as a retail associate at CityMac in Myrtle Beach, South Carolina from October of 2018 to March of 2020. [Exhibit B, Kamri Norris Deposition at 20:11-22:11] The Myrtle Beach location closed at 6:00 pm or 7:00 pm in the off-season and as late as 9:00 pm during the on-season. [Ex. B at 24:8-17] Norris testified that she worked off the clock. [Ex. B at 38:4-10] On more than two occasions, Norris worked in excess of 40 hours per week without receiving overtime pay. [Ex. B at 48:22-49:18] There were times when Norris was unable to clock in or out because the system was down. [Ex. B at 53:2-8] Norris noticed inaccuracies between her hours worked and her pay. [Ex. B at 56:1-25] CityMac automatically deducted time for breaks that Norris did not take. [Ex. B at 67:11-72:25] Norris brought it to her manager's attention but the situation was not remedied. [Ex. B at 71:6-73:17] Norris was never able to take rest breaks during her employment. [Ex. B at 77:2-21] CityMac would add more requirements to the commission structure so employees were not eligible. [Ex. B at 89:10-25] Norris could have earned commissions that were not paid, but CityMac changed the structure so often it was difficult to tell what was owed. [Ex. B at 92:21-93: 11] CityMac also did not pay the SPIFFs it was supposed to. [Ex. B at 94:11-98:8].

Plaintiff Rakia Green worked as a quick-fix technician and a repair technician at CityMac in Myrtle Beach, South Carolina from December of 2017 to December of 2019. [Exhibit C, Rakia Green Deposition at 19:16-17 and 58:2-3]. He was also expected to help with the sales desk. [Ex. C at 33:6-1] Green worked five or six days per week. [Ex. C at 49:2-6] CityMac changed its workweek partway through Green's employment when employees began being paid on the 1st and 15th instead of biweekly. [Ex. C at 65:5-12] Green was not always able to clock in before beginning work because there would be customers needing attention. [Ex. C at 65:17-66:15] There were times when the timekeeping system was not working properly. [Ex. C at 67:16-20] There was a period of time in October of 2019 when CityMac automatically deducted

4

one hour from the timesheets of Green and his coworkers. [Ex. C at 77:24-78:5] During this time, CityMac was trying to implement one-hour lunches and simply deducted the time automatically whether the employee took the lunch break or not. [Ex. C at 79:1-8] Green and his coworkers sent emails to HR complaining about this practice. [Ex. C at 79:9-12] Green physically saw on his timesheets that CityMac was automatically deducting one hour. [Ex. C at 80:3-8] Green worked overtime that he was not paid for. Green worked off the clock both before and after his shifts. [Ex. C at 91:6-12] Even though he worked a regular schedule, Green's paychecks would fluctuate inexplicably. [Ex. C at 97:4-18] Green earned SPIFFs that he was not paid for. [Ex. C at 107:4-108:7] He was eligible for bonuses he did not receive. [Ex. C at 116:6-117:10] CityMac frequently changed the bonus structures and did not pay even if the employees attained the goals. [Ex. C at 121:1-10] Green asked why his paychecks would fluctuate but he was not given a straight answer. [Ex. C at 134:9-135:1]

Plaintiff Allen Allen worked for CityMac in Myrtle Beach, South Carolina as a sales associate and then assistant store manager. He worked for a few months in 2017 and then again in 2019 to March of 2020. Allen has still not been paid for 76 hours of work which includes overtime. [Exhibit D, Allen Allen Deposition at 127:16-130:10] As an assistant manager, Allen had no hiring or firing authority. [Ex. D at 26:8-11] He did not have the final say on scheduling. [Ex. D at 27:4-10] He had no authority to discipline employees. [Ex. D at 29:5-14] He did not alter other employees' time punches. [Ex. D at 32:2-6] Allen was merely a key holder and did not have many responsibilities. [Ex. D at 38:6-14] He was a glorified salesperson and did not have any responsibilities of running the store. [Ex. D at 8:17-25] He was not a supervisor; he had to report any incidents to the store manager. [Ex. D at 40:5-12] He was not part of the onboarding process. [Ex. D at 48:3-24] He did not have authority to address questions with other employees' time records. [Ex. D at 50:5-17] CityMac changed its pay period from biweekly to

5

the 1st and 15th and the workweeks were confusing after that. [Ex. D at 56:1-6] There were times when the timekeeping system was not working. [Ex. D at 62:15-21] There were times he was unable to clock out because the system was down. [Ex. D at 66:2-6] CityMac deducted an hour for Allen's lunch even when he was unable to take it due to the chronic short-staffing. [Ex. D at 76:7-15] They were unable to take lunch or breaks but there was no reasoning with HR about it. [Ex. D at 76:16-18] Allen was not paid for all hours worked, including overtime hours. [Ex. D at 76:16-77:2] The hour lunch break was automatically deducted immediately upon clocking in. [Ex. D at 78:12-24] It was never even possible to take a full hour lunch because of the understaffing issue. [Ex. D at 81:13-82:23] Allen complained to the store manager, who raised the issue with HR but HR said that is just how they are going to do it, so employees must figure out how to take an hour lunch. [Ex. D at 83:16-23] Allen earned commissions/bonuses that were not paid. [Ex. D at 117:7-9]

***Washington Class - with Class Representative Plaintiff Blais***

Plaintiff Jordan Blais worked as a sales advocate at CityMac in Burlington, Washington from June of 2019 to March of 2020. [Exhibit E, Jordan Blais Deposition at 30:19-24 and 113:13-15.] He first trained at the Bellingham location from 10:00 am to 2:00 pm for approximately two weeks. [Ex. E at 31:2-32:11] In addition to selling Apple computers, accessories and phones, he also engaged in troubleshooting Apple devices, running diagnostics on Apple devices, backing up and restoring information and other technical tasks. [Ex. E at 34:9-18] The website for clocking in and clocking out was not functioning at times. [Ex. E at 40:1-5] When Blais was in training, he did not have a login to punch in and out of the system. [Ex. E at 40:6-11] Blais was not clear when the workweek started because CityMac changed it at one point when it started using a different time clock system. [Ex. E at 45:18-22] He also was unclear when commissions were supposed to be paid out. [Ex. E at 45:21-22] Blais's paystubs

did not show overtime being paid to him. [Ex. E at 46:12-15] Blais could not verify whether his timecards are accurate because the documents CityMac produced were not complete. [Ex. E at 74:12-25] He is unable to say if the timecards are accurate because is unable to verify their accuracy. [Ex. E at 76:7-12] Blais worked more than 40 hours per week in at least one workweek but was not paid overtime. [Ex. E at 77:24-78:9] He worked in excess of 40 hours per week on numerous occasions but was not paid overtime. [Ex. E at 80:19-23] He was unable to verify this because CityMac did not produce all his timecards or schedules. [Ex. E at 81:8-11] Blais was unable to take his meal breaks due to lack of staffing and the store being too busy. [Ex. E at 84:19-25] CityMac deducted from Blais's paycheck the cost to cover a customer's phone that he broke. [Ex. E at 88:12-17] His paychecks also appear to be inaccurate with regard to commissions. [Ex. E at 88:23-89:3] His pay stubs are also inaccurate based on how many hours he worked and receiving no overtime compensation. [Ex. E at 89:12-14] CityMac's commission structure changed on a monthly basis. [Ex. E at 98:16-19] Blais is sure he earned commissions and SPIFFs but he cannot determine if he was actually paid for them based on CityMac's records. [Ex. E at 112:8-113:9] Blais was not paid for all his hours worked. [Ex. E at 116:23-117:7 and 120:21-121:7] Blais is unable to calculate the unpaid overtime hours because CityMac has failed to produce accurate and complete time and schedule records. [Ex. E at 129:12-19]

### Colorado Class - with Class Representative Plaintiff Johnson

Plaintiff Connor Johnson worked in sales, teaching and in the IT/service department at CityMac in Colorado Springs, Colorado from October of 2017 to March of 2019. Johnson was told he would be making $14.00 per hour before he was hired, but CityMac only paid him $13.00 per hour. Johnson was not paid correctly when he was at CityMac, was promised one amount and paid a different amount and CityMac constantly changed the commission structure. [Exhibit F, Connor Johnson Deposition at 26:1-6] He was not paid commissions earned because CityMac

would change the commission structure. [Ex. F at 28:6-14] CityMac failed to keep accurate time records for Johnson. [Ex. F at 34:13-35:5] CityMac altered the times Johnson clocked in and out on his time record. [Ex. F at 35:6-9] Johnson received more than one paycheck that did not seem correct based on the hours he worked. [Ex. F at 35:13-17] Johnson complained about the inaccurate paycheck but it was not fixed and he was not given a specific answer back; he always just got excuses from CityMac. [Ex. F at 35:23-36:5] He knows it happened more than once every year because he and other employees would rant about it with each other, complaining their paychecks were not right. [Ex. F at 36:13-20] Johnson was not compensated for all the hours he worked -- he worked off the clock and was not paid overtime for hours worked over 40 in a workweek. [Ex. F at 38:12-39:2] Johnson was not paid for hours worked during four days when he first started in November of 2017. [Ex. F at 39:19-41:3] CityMac changed Johnson's time punches and its records are not accurate. [Ex. F at 46:1-6] When Johnson and his co-workers would do their own math for his hours worked and commission earned, the paychecks were not accurate. [Ex. F at 47:13-16] Johnson was not paid the commissions earned. [Ex. F at 48:7-21] CityMac's timekeeping system often was not working properly. [Ex. F at 52:13-25] Johnson knows his time punches were changed because the clock in and clock out times were not consistent with when he would clock in and out. [Ex. F at 65:4-66:18] Johnson was not paid commissions he earned. [Ex. F at 78:16-80:11] Johnson did not get paid the SPIFFs that he was entitled to. [Ex. F at 82:5-8] Johnson's final paycheck was not accurate. [Ex. F at 86:15-87:15] Johnson clocked in 15 minutes before his shift every day, with CityMac's knowledge and permission, which should have been reflected on his pay stubs but it was not. Instead, his workweek was always rounded down to 40 hours. [Ex. F at 97:6-23]

*Oregon Class - with Class Representative Plaintiff Free*

Plaintiff Andrew Free worked for CityMac's predecessor, TD Curran, and then for CityMac, as a service technician and also helped out the sales team, from January of 2016 to November of 2018 in the Oregon store. [Exhibit G, Andrew Free Deposition at 21:1-22:16; 94:14-95:6] CityMac was consistently understaffed. [Ex. G at 27:5-28:8] Free thought his hours were being changed but he didn't have the legal understanding to ask the right questions at the time. [Ex. G at 37:3-12] CityMac deducted a one-hour lunch break when he did not actually take a lunch break. [Ex. G at 37:15-24] Free was told by CityMac that a lunch break would be deducted whether he used it or not. [Ex. G at 38:3-4] There was a disconnect between the hours Free worked and the hours that were input in the system. [Ex. G at 46:4-8] Free and other employees at the location received paychecks that did not seem to reflect the hours worked. [Ex. G at 63:6-11] Free worked overtime that he was not paid for. [Ex. G at 64:4-19] Free sometimes worked off the clock. [Ex. G at 68:16-23] Free was not paid for all the hours worked. [Ex. G at 73:15-25] Free would talk to his coworkers who also believed they were not being paid for all hours worked. [Ex. G at 74:25-75:6] Free was unable to take rest breaks due to short-staffing. [Ex. G at 82:20-24] CityMac would frequently change the bonus structure to avoid paying bonuses. [Ex. G at 95:16-97:6 and 118:10-20]

## III.  LEGAL DISCUSSION

A central purpose of class actions is to promote judicial economy and efficiency. *Gunnells v. Healthplan Servs., Inc.,* 348 F.3d 417, 424 (4th Cir. 2003). "[C]lass actions also 'afford aggrieved persons a remedy if it is not economically feasible to obtain relief through the traditional framework of multiple individual damage actions.'" *Id.* "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Mace v. Van*

9

*Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997). "Chief among the justifications for this device is its efficiency." *Thorn v. Jefferson—Pilot Life Ins. Co.*, 445 F.3d 311, 318 (4th Cir. 2006). "Thus, federal courts should give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case best serve the ends of justice for the affected parties and . . . promote judicial efficiency." *Gunnells, supra*, 348 F.3d at 424 (internal citations and quotation marks omitted).

To be certified as a class action under Rule 23, an action must meet four threshold requirements: (1) the class must be so numerous that joinder of all members is impractical ("numerosity requirement"); (2) there must be questions of law or fact common to the class ("commonality requirement"); (3) the representative parties' claims must be typical of the claims of the class ("typicality requirement"); and (4) the representative parties must be able to fairly and adequately protect the interests of the class ("adequacy-of-representation requirement") . Fed. R. Civ. P. 23(a).

The action must also satisfy one of the requirements set forth in Rule 23(b). See Fed. R. Civ. P. 23(b)(1), (2), (3). As such, the court makes two initial determinations before determining whether to certify a class action: that a precisely defined class exists, *Haywood v. Barnes*, 109 F.R.D. 568, 576 (E.D.N.C. 1986), and that the class representative is a member of the proposed class. *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977). In addition to the certification requirements of 23(a), Rule 23 requires that an order certifying a class action "define the class and the class claims, issues, or defenses." Fed. R. Civ. P. 23(c)(1)(B).

### A. Certification of a North Carolina Class

#### 1. Ascertainability - Jahagirdar is a member of and has precisely defined the North Carolina Class he seeks to represent.

The Fourth Circuit has explained this component of certification as a "threshold requirement that the members of a proposed class be 'readily identifiable'" in reference to

10

objective criteria. *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). "The plaintiffs need not be able to identify every class member at the time of certification. But "if class members are impossible to identify without extensive and individualized fact-finding or minitrials, then a class action is inappropriate." *Id.* (internal quotations and citation omitted).

Jahagirdar seeks class certification of his claims that Defendants violated NCWHA. The North Carolina Class is defined as: "all persons who worked for CityMac in the state of North Carolina at any time from three years prior to the filing of this Complaint to the entry of judgment in the case." Jahagirdar is a member of that class because he was employed by Defendants from September 20, 2019, to November 25, 2019 at Defendants' retail store located at 1121-A Military Cutoff Road, Wilmington, North Carolina 28405.

> **2.** **Jahagirdar can satisfy the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) for the North Carolina Class.**

>> **a.** **Numerosity - the North Carolina Class is sufficiently numerous and joinder is impracticable.**

The first requirement for class certification under Rule 23(a) is that the class be so numerous as to make joinder of all the class members impracticable. The numerosity requirement of Rule 23 requires that the proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Notably, "[i]mpracticable does not mean impossible." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). Rather than relying on numbers alone, courts should examine the specific facts of the case. *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 US 318, 330 (1980). Relevant factors include "the estimated size of the class, the geographic diversity of class members, the difficulty of identifying class members, and the negative impact of judicial economy if individual suits were required." *Christman v. Am. Cyanamid Co.*, 92 F.R.D. 441, 451 (N.D. W. Va. 1981); see also *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 237 (S.D. W. Va. 2005) (listing same factors). Deciding numerosity is

discretionary; there is no "mechanical test" or minimum class member requirement. *Holsey v. Armour & Co.,* 743 F.2d 199, 217 (4th Cir. 1984). Indeed, "[n]o specified number is needed to maintain a class action." *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984). Instead, "the determination rests on the court's practical judgment in light of the particular facts of the case." *Lott v. Westinghouse Savannah River Co.,* 200 F.R.D. 539, 550 (D.S.C. 2000).

There are 114 putative members of the North Carolina Class, which raises a presumption of sufficient numerosity and is sufficiently numerous to meet the requirements of Rule 23(a)(1). Because the number of class members are sufficient and the circumstances do not make joinder a practical alternative, the North Carolina Class meets the Rule 23(a)(1) standard for numerosity. In addition, Jahagirdar and members of the North Carolina Class are "economically disadvantaged, making individual suits difficult to pursue." See *Robidoux, supra*, 987 F.2d at 936.

### b. Commonality - there are common questions of law and fact as to the claims of Jahagirdar and the North Carolina Class.

The commonality element requires questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Plaintiff must demonstrate that the class members all suffered the same injury, not that they merely suffered a violation of the same provision of law. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Indeed, "what matters to class certification ... [is] the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" *EQT Prod. Co. v. Adair*, 764 F.3d 347, 360 (4th Cir. 2014) (quoting *Wal–Mart*, 131 S. Ct. at 2551) (emphasis in original). Even a single common question will suffice for commonality, if it is "of such a nature that its determination 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *EQT Prod. Co. v. Adair*, 764 F.3d 347, 360 (4th Cir. 2014) (quoting *Wal-Mart* at 2551).

12

The putative members of the North Carolina Class and Jahagirdar share similar questions of law and fact. Indeed, the class action proceeding here will "generate common answers apt to drive the resolution of the litigation. For instance, Jahagirdar and the other putative class members were all employees who worked for Defendants, and share the following common questions of law or fact:

- Whether Defendants unlawfully failed to pay minimum wage and/or overtime compensation in violation of and within the meaning of N.C. Gen. Stat. §§ 95-25.6, 95-25.7 and 95-25.13;

- Whether the Plaintiff Jahagirdar and the North Carolina Class are non-exempt employees entitled to minimum wage and overtime compensation for hours worked under the pay requirements of N.C. Gen. Stat. §§ 95-25.6, 95-25.7 and 95-25.13;

- Whether Defendants employed Plaintiff Jahagirdar and the North Carolina Class within the meaning of the NCWHA § 95-25.2(4);

- Whether Defendants failed to keep accurate time records for all hours worked by the Plaintiff Jahagirdar and the North Carolina Class as required by the NCWHA;

- Whether Defendants made unauthorized deductions from Plaintiff Jahagirdar and the North Carolina Class;

- Whether Defendants failed to pay Plaintiff Jahagirdar and the North Carolina Class commissions and wages as promised;

- Whether Defendants failed to pay the final paychecks of Plaintiff Jahagirdar and the North Carolina Class as required by law;

- Whether Defendants required or permitted Plaintiff Jahagirdar and the North Carolina Class to perform off-the-clock work;

13

- Whether Defendants included commission payment in the overtime rate calculation for Plaintiff Jahagirdar and the North Carolina Class;

- Whether Defendants changed the time punches on the timecards for Plaintiff Jahagirdar and the North Carolina Class;

- The proper measure of damages sustained by the North Carolina Class; and

- Whether Defendants should be enjoined from such violations in the future.

Therefore, the commonality requirement for the North Carolina Class is also satisfied.

### c.   Typicality - Jahagirdar's wage claims are typical of the North Carolina Class Members.

A plaintiff meets the typicality requirement where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement tends to merge with commonality, "insofar as both 'serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Soutter v. Equifax Info. Servs., LLC*, 498 F. App'x 260, 264 (4th Cir. 2012) (quoting *General Tele. Co. of Southwest v. Falcon*, 457 U.S. 147, 158 n. 13 (1982)). As the Fourth Circuit explained in *Soutter, supra*, "as goes the claim of the named plaintiff, so go the claims of the class." *Id.* (quoting Deiter v. Microsoft Corp., 436 F.3d 461, 466 (4th Cir. 2006)).

Notably, typicality does not require that the plaintiff's claim and those of the putative class "be perfectly identical or perfectly aligned." *Deiter v. Microsoft Corp*., 436 F.3d 461, 466-67 (4th Cir. 2006). Rather, the "plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim" *Id.*  Importantly, "[a]lthough there may be certain factual differences among the individual class members, the class members' claims arise from the same course of conduct …

14

raise common questions of law and fact … and are based on the same legal theory … as those of the named plaintiffs." *McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465, 476 (E.D.N.C. 2010); see also *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 344 (4th Cir. 1998) ("we…do not suggest that the commonality and typicality elements of Rule 23 require that members of the class have identical factual and legal claims in all respects.").

Toward that end, the district court "review[s] the elements of plaintiffs' prima facie case and the facts on which the plaintiff would necessarily rely to prove it" and then "determine[s] the extent to which those facts would also prove the claims of the absent class members." *Deiter, supra,* 436 F.3d at 466-67.

The facts alleged in Jahagirdar's FAC, which are corroborated and borne out by the discovery responses, meet the requirements of Rule 23(a)(3) with respect to the North Carolina Class. The claims of Jahagirdar and the claims of the members of the North Carolina Class arise from the same practices and course of conduct by Defendants and his proof will advance the claims of the absent class members. Jahagirdar and the members of the proposed North Carolina Class were not paid minimum wage for all hours worked, were required to work off the clock, were not paid overtime for all hours in a workweek over 40 hours, were not paid commissions/bonuses earned, and were not paid overtime that included the commissions/bonuses paid in the calculation. Jahagirdar and the members of the proposed North Carolina Class were also subjected to unauthorized deductions from their paychecks, unauthorized alterations to their timecards, and inaccurate/incomplete pay stubs and wage statements. Jahagirdar and members of the proposed North Carolina Class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures. As Jahagirdar proceeds to prove his own claims, so will he prove the claims of the North Carolina Class.

Therefore, Jahagirdar has established that the claims under NCWHA are "typical" of the claims of the North Carolina Class that he seeks to represent.

> **d.      Adequacy - Jahagirdar is an adequate representative of the North Carolina Class.**

To meet the adequacy requirement, the representative parties "fairly and adequately protect the interests of the case." Fed. R. Civ. P. 23(a)(4). First, the plaintiff must "possess the same interest and suffer the same injury as the class members." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (internal quotation and citation omitted). Second, the interests of the named plaintiff cannot be antagonistic to those of the putative class. *In re Se. Hotel Properties Ltd. P'ship Investor Litig*., 151 F.R.D. 597, 606 (W.D.N.C. 1993). This means plaintiff's counsel must be "qualified, experienced and generally able to conduct the proposed litigation." *Romero v. Mountaire Farms, Inc*., 796 F.Supp. 2d 700, 715 (E.D.N.C. 2011).

Jahagirdar meets these requirements with respect to the North Carolina Class. He has been consistently involved in this litigation, he has a common interest with class members in the litigation, he possesses a personal financial stake in the outcome, he consulted regularly with Class Counsel, submitted declarations to the Court, and participated in responding to discovery and will participate in trial and any settlement endeavors. Jahagirdar understands his obligation as class representative of the North Carolina Class in the event that the Court certified this as a class action with respect to the claims. Exhibit H, Declaration of Jahagirdar at ¶¶ 3-5.

> **3.      The North Carolina Class satisfies the requirements of Rule 23(b)(3).**

Rule 23(b)(3) authorizes class treatment where all requirements of Rule 23(a) are met and where: (1) questions of law or fact common to class members predominate over any questions affecting only individual members; and (2) proceeding as a class is superior to other available methods of fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). This requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by

representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The factors district courts should consider include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

"In determining whether the predominance standard is met, courts focus on the issue of liability." *Zapata v. IBP, Inc.*, 167 F.R.D. 147, 165 (D. Kan. 1996) (citing *Gold Strike Stamp Co. v. Christensen*, 436 F.2d 791, 796 (10th Cir. 1970); *United Telecommunications, Inc. Sec. Lit.,* 1992 U.S. Dist. LEXIS 16580, 1992 WL 309884, *3 (D. Kan. 1992)). "If the liability issue is common to the class, common questions are held to predominate over individual ones. Where, however, the issue of liability turns on something peculiar to the individual plaintiffs, such as the plaintiffs' responses or states of mind, then common questions have been held not to predominate." *Ruffin v. Entm't of the E. Panhandle*, No. 3:11-CV-19, 2012 WL 5472165, at *10 (N.D.W. Va. Nov. 9, 2012).

Based on the allegations in the TAC, deposition testimony and Defendants' own records, certification of the North Carolina Class is appropriate under Rule 23(b)(3) as well. As set forth above, common evidence exists as to the propriety of Defendants' wage practices and this common evidence will allow the Court to determine whether liability Defendants are liable for any violations of the NCWHA related to minimum wage, overtime pay, unauthorized deductions and/or inaccurate wage statements.

Class treatment of the legal issues identified in this case would also be superior to other procedures for the handling of the claims in question for a number of reasons. No member of the

17

North Carolina Class has any necessary interest in individually controlling the prosecution of the claims at issue in this litigation. In addition, no other litigation concerning this matter and filed by any of the parties involved in the present action is currently pending. This Court also has a substantial interest in the resolution of the issues raised in this litigation occurring in one forum. Because Jahagirdar and members of the North Carolina Class were all employed by Defendants that maintained payroll records and employee data for all of the 22 Class Members they directly employed, the management of a class action under Rule 23(b)(3) for the North Carolina Class in this matter should not present any difficulties.

**B.    Certification of a South Carolina Class**

**1.    Ascertainability -Allen, Norris and Green are members of and have precisely defined the South Carolina Class they seek to represent.**

Allen, Norris and Green seek class certification of their claims that Defendants violated South Carolina Wage Payment Act. The South Carolina Class is defined as: "all persons who worked for CityMac in the state of South Carolina at any time from three years prior to the filing of this Complaint to the entry of judgment in the case." Allen, Norris and Green are members of this class because they were employed by Defendants between 2017 and March of 2020.

**2.    Allen, Norris and Green can satisfy the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) for the South Carolina Class.**

**a.    Numerosity - the South Carolina Class is sufficiently numerous and joinder is impracticable.**

The first requirement for class certification under Rule 23(a) is that the class be so numerous as to make joinder of all the class members impracticable. There are 49 putative members of the South Carolina Class, which raises a presumption of sufficient numerosity and is sufficiently numerous to meet the requirements of Rule 23(a)(1). In addition, Plaintiffs Allen,

Norris and Green and members of the South Carolina Class are "economically disadvantaged, making individual suits difficult to pursue." See *Robidoux, supra,* 987 F.2d at 936.

Because the number of class members are sufficient and the circumstances do not make joinder a practical alternative, the South Carolina Class meets the Rule 23(a)(1) standard for numerosity.

> **b.  Commonality - There are common questions of law and fact as to the claims of Allen, Norris and Green and the South Carolina Class.**

The putative members of the South Carolina  Class and Plaintiffs Allen, Norris and Green share similar questions of law and fact. Plaintiffs Allen, Norris and Green  and the other putative class members were all employees who worked for Defendants, and share the following common questions of law or fact:

- Whether Defendants unlawfully failed to pay minimum wage and/or overtime compensation in violation of and within the meaning of the South Carolina Payment of Wages Law, S.C. Code of Laws §41-10-10 *et seq.*;

- Whether Plaintiffs Allen, Green and Norris and the South Carolina Class are non-exempt employees entitled to minimum wage and overtime compensation for hours worked under the pay requirements of the South Carolina Payment of Wages Law, S.C. Code of Laws §41-10-10 *et seq.*;

- Whether Defendants employed Plaintiffs Allen, Green and Norris and the South Carolina Class within the meaning of the South Carolina Payment of Wages Law, S.C. Code of Laws §41-10-10 *et seq.*;

- Whether Defendants failed to keep accurate time records for all hours worked by Plaintiffs Allen, Green and Norris and the South Carolina Class as required by the South Carolina Payment of Wages Law, S.C. Code of Laws §41-10-10 *et seq.*;

19

- Whether Defendants made unauthorized deductions from Plaintiffs Allen, Green and Norris and the South Carolina Class;

- Whether Employer Defendants failed to pay Plaintiffs Allen, Green and Norris and the South Carolina Class commissions and wages as promised;

- Whether Defendants failed to pay the final paychecks of Plaintiffs Allen, Green and Norris and the South Carolina Class as required by law;

- Whether Defendants required or permitted Plaintiffs Allen, Green and Norris and the South Carolina Class to perform off-the-clock work;

- Whether Employer Defendants included commission payment in the overtime rate calculation for Plaintiffs Allen, Green and Norris and the South Carolina Class;

- Whether Defendants changed the time punches on the timecards for Plaintiffs Allen, Green and Norris and the South Carolina Class;

- The proper measure of damages sustained by the South Carolina Class; and

- Whether Defendants should be enjoined from such violations in the future.

Therefore, the commonality requirement for the South Carolina Class is also satisfied.

### c.    Typicality -Allen, Norris and Green's wage claims are typical of the South Carolina Class Members.

The facts alleged in Allen, Norris and Green's TAC, which are corroborated and borne out by the discovery responses, meet the requirements of Rule 23(a)(3) with respect to the South Carolina Class. The claims of Allen, Norris and Green and the claims of the members of the South Carolina Class arise from the same practices and course of conduct by Defendants. Allen, Norris and Green and the members of the proposed South Carolina Class were not paid minimum wage for all hours worked, were required to work off the clock, were not paid overtime for all hours in a workweek over 40 hours, were not paid commissions/bonuses earned, and were not paid overtime that included the commissions/bonuses paid in the calculation. Allen,

Norris and Green and the members of the proposed South Carolina Class were also subjected to unauthorized deductions from their paychecks, unauthorized alterations to their timecards, and inaccurate/incomplete pay stubs and wage statements. Allen, Norris and Green and members of the proposed South Carolina Class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures. As Allen, Norris and Green proceed to prove their own claims, so will they prove the claims of the South Carolina Class.

Therefore, Allen, Norris and Green have established that the claims under the South Carolina Wage Payment Act are "typical" of the claims of the South Carolina Class that they seek to represent.

> ### d.  Adequacy - Allen, Norris and Green are adequate representatives of the South Carolina Class.

Allen, Norris and Green have met these requirements with respect to the South Carolina Class. They have been consistently involved in this litigation, they have a common interest with class members in the litigation, they possess a personal financial stake in the outcome, they consulted regularly with Class Counsel, submitted declarations to the Court, and participated in responding to discovery and will participate in trial and any settlement endeavors. Allen, Norris and Green understand their obligation as class representatives of the South Carolina Class in the event that the Court certified this as a class action with respect to the claims. Exhibit J, Declaration of Allen at ¶¶ 3-5; Exhibit K, Declaration of Norris at ¶¶ 3-5; Exhibit L, Declaration of Green at ¶¶ 3-5.

> ### 3.  The South Carolina Class satisfies the requirements of Rule 23(b)(3).

The proposed South Carolina Class satisfies the requirements of Rule 23(b)(3) for the reasons already stated above as to Rule 23(a). Based on the allegations in the TAC and Defendants' own records, certification of the South Carolina Class is appropriate under Rule 23(b)(3). As set forth above, common evidence exists as to the propriety of Defendants' wage

practices and this common evidence will allow the Court to determine whether liability Defendants are liable for any violations of South Carolina law related to minimum wage, overtime pay, unauthorized deductions and/or inaccurate wage statements.

Class treatment of the legal issues identified in this case would also be superior to other procedures for the handling of the claims in question for a number of reasons. No member of the South Carolina Class has any necessary interest in individually controlling the prosecution of the claims at issue in this litigation. In addition, no other litigation concerning this matter and filed by any of the parties involved in the present action is currently pending. This Court also has a substantial interest in the resolution of the issues raised in this litigation occurring in one forum. Because Plaintiffs Allen, Norris and Green and members of the South Carolina Class were all employed by Defendants that maintained payroll records and employee data for all of the 22 Class Members they directly employed, the management of a class action under Rule 23(b)(3) for the South Carolina Class in this matter should not present any difficulties.

### C. Certification of a Washington Class

#### 1. Ascertainability - Blais is a member of and has precisely defined the Washington Class he seeks to represent.

Blais seeks class certification of his claim that Defendants violated the Washington Minimum Wage Act. The Washington Class is defined as: "all persons who worked for CityMac in the state of Washington at any time from three years prior to the filing of this Complaint to the entry of judgment in the case." Blais is a member of this class because he was employed by Defendants in Washington from June 2019 to March 2020.

#### 2. Blais can satisfy the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) for the Washington Class.

##### a. Numerosity - the Washington Class is sufficiently numerous and joinder is impracticable.

The first requirement for class certification under Rule 23(a) is that the class be so numerous as to make joinder of all the class members impracticable. There are 90 putative members of the Washington Class, which raises a presumption of sufficient numerosity and is sufficiently numerous to meet requirements of Rule 23(a)(1). In addition, the named Plaintiff and members of the Washington Class are "economically disadvantaged, making individual suits difficult to pursue." See *Robidoux, supra,* 987 F.2d at 936.

Because the number of class members are sufficient and the circumstances do not make joinder a practical alternative, the Washington Class meets the Rule 23(a)(1) standard for numerosity.

> **b.** **Commonality - there are common questions of law and fact as to the claims of Blais and the Washington Class.**

The putative members of the Washington Class and the named Plaintiff share similar questions of law and fact. The named Plaintiff and the other putative class members were all employees who worked for Defendants, and share the following common questions of law or fact:

- Whether Defendants unlawfully failed to pay minimum wage and/or overtime compensation in violation of and within the meaning of the Washington Minimum Wage Act, R.C.W. 49.46.005 et seq.;

- Whether Plaintiff Blais and the Washington Class are non-exempt employees entitled to minimum wage and overtime compensation for hours worked under the pay requirements of the Washington Minimum Wage Act, R.C.W. 49.46.005 et seq., including R.C.W 49.46.130;

- Whether Defendants employed the Plaintiffs and the Washington Class within the meaning of the Washington Minimum Wage Act, R.C.W. 49.46.005 et seq., including R.C.W. 49.46.010;

23

- Whether Defendants failed to keep accurate time records for all hours worked by Plaintiff Blais and the Washington Class as required by the Washington Minimum Wage Act, R.C.W. 49.46.005 et seq., including R.C.W. 49.46.070;

- Whether Defendants made unauthorized deductions from Plaintiff Blais and the Washington Class;

- Whether Defendants failed to pay Plaintiff Blais and the Washington Class commissions and wages as promised;

- Whether Defendants failed to pay the final paychecks of Plaintiff Blais and the Washington Class as required by law;

- Whether Defendants provided meal breaks to Plaintiff Blais and the Washington Class as required by law;

- Whether Defendants provided rest breaks to Plaintiff Blais and the Washington Class as required by law;

- Whether Defendants required or permitted Plaintiff Blais and the Washington Class to perform off-the-clock work;

- Whether Defendants included commission payment in the overtime rate calculation for Plaintiff Blais and the Washington Class;

- Whether Defendants changed the time punches on the timecards for Plaintiff Blais and the Washington Class;

- The proper measure of damages sustained by the Washington Class; and

- Whether Defendants should be enjoined from such violations in the future.

Therefore, Blais has established that the claims under Washington Minimum Wage Payment Act are "typical" of the claims of the Washington Class that he seeks to represent.

24

### c.  Typicality - Blais's wage claims are typical of Washington Class Members.

The facts alleged in Blais's TAC, which are corroborated and borne out by the discovery responses, meet the requirements of Rule 23(a)(3) with respect to the Washington Class. The claims of Blais and the claims of the members of the Washington Class arise from the same practices and course of conduct by Defendants. Blais and the members of the proposed Washington Class were not paid minimum wage for all hours worked, were required to work off the clock, were not paid overtime for all hours in a workweek over 40 hours, were not paid commissions/bonuses earned, and were not paid overtime that included the commissions/bonuses paid in the calculation. Blais and the members of the proposed Washington Class were also subjected to unauthorized deductions from their paychecks, unauthorized alterations to their timecards, and inaccurate/incomplete pay stubs and wage statements. They also were not provided with meal and rest breaks as provided by law. Blais and members of the proposed Washington Class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures.

Therefore, the commonality requirement for the Washington Class is also satisfied.

### d.  Adequacy - Blais is an adequate representative of the Washington Class.

Blais has met these requirements with respect to the Washington Class. He has been consistently involved in this litigation, he has a common interest with class members in the litigation, he possesses a personal financial stake in the outcome, he consulted regularly with Class Counsel, submitted declarations to the Court, and participated in responding to discovery and will  participate in trial and any settlement endeavors. Exhibit M, Declaration of Blais at  ¶¶ 3-5.

As set forth above, Blais understands his obligation as class representative of the Washington Class in the event that the Court certified this as a class action with respect to the claims.

### 5. The Washington Class satisfies the requirements of Rule 23(b)(3).

The proposed Washington Class satisfies the requirements of Rule 23(b)(3) for the reasons already stated above as to Rule 23(a). Based on the allegations in the TAC and Defendants' own records, certification of the Washington Class is appropriate under Rule 23(b)(3). The legal and factual issues described above predominate over any individual issues of law and fact for any Washington Class Member. As set forth above, common evidence exists as to the propriety of Defendants' wage practices and this common evidence will allow the Court to determine whether liability Defendants are liable for any violations of Washington law related to minimum wage, overtime pay, unauthorized deductions and/or inaccurate wage statements.

Class treatment of the legal issues identified in this case would also be superior to other procedures for the handling of the claims in question for a number of reasons. No member of the Washington Class has any necessary interest in individually controlling the prosecution of the claims at issue in this litigation. In addition, no other litigation concerning this matter and filed by any of the parties involved in the present action is currently pending. This Court also has a substantial interest in the resolution of the issues raised in this litigation occurring in one forum. Because Plaintiff Blais and members of the Washington Class were all employed by Defendants that maintained payroll records and employee data for all of the 7 Class Members they directly employed, the management of a class action under Rule 23(b)(3) for the Washington Class in this matter should not present any difficulties.

### D. Certification of a Colorado Class

#### 1. Ascertainability - Johnson is a member of and has precisely defined the Colorado Class he seeks to represent.

Johnson seeks class certification of his claim that Defendants violated the Colorado Minimum Wage Act. As noted above, to be certified as a class action under Rule 23, an action must meet four threshold requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy-of-representation. Fed. R. Civ. P. 23(a). The wage violation claims must also involve questions of law or fact common to class members that predominate over any questions affecting only individual members and the class action must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). The court also determines whether a precisely-defined class exists and whether the class representative is a member of the proposed class. *Haywood, supra,* at 576 and *East Texas, supra,* at 403.

Here, the Colorado Class is defined as: "all persons who worked for Employer Defendants in the state of Colorado at any time from two years prior to the filing of this Complaint to the entry of judgment in the case."

#### 2. Johnson can satisfy the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) for the Colorado Class.

#### a. Numerosity - the Colorado Class is sufficiently numerous and joinder is impracticable.

The first requirement for class certification under Rule 23(a) is that the class be so numerous as to make joinder of all the class members impracticable. There are 31 putative members of the Colorado Class, which raises a presumption of sufficient numerosity and is sufficiently numerous to meet requirements of Rule 23(a)(1). In addition, Johnson and members of the Colorado Class are "economically disadvantaged, making individual suits difficult to pursue." See *Robidoux, supra,* 987 F.2d at 936.

Because the number of class members are sufficient and the circumstances do not make joinder a practical alternative, the Colorado Class meets the Rule 23(a)(1) standard for numerosity.

> **b. Commonality - there are common questions of law and fact as to the claims of Johnson and the Colorado Class.**

The putative members of the Colorado Class and Johnson share similar questions of law and fact. The named Plaintiff and the other putative class members were all employees who worked for Defendants, and share the following common questions of law or fact:

- Whether Defendants unlawfully failed to pay minimum wage and/or overtime compensation in violation of and within the meaning of the Colorado Minimum Wage Act, C.R.S. §§ 8-6-101 et seq.;

- Whether Plaintiff Johnson and the Colorado Class are non-exempt employees entitled to minimum wage and overtime compensation for hours worked under the pay requirements of the Colorado Minimum Wage Act, C.R.S. §§ 8-6-101 et seq.;

- Whether Defendants employed the Plaintiff Johnson and the Colorado Class within the meaning of the Colorado Minimum Wage Act, C.R.S. §§ 8-6-101 et seq.;

- Whether Defendants failed to keep accurate time records for all hours worked by Plaintiff Johnson and the Colorado Class as required by the Colorado Minimum Wage Act, C.R.S. §§ 8-6-101 et seq.;

- Whether Defendants made unauthorized deductions from Plaintiff Johnson and the Colorado Class;

- Whether Defendants failed to pay Plaintiff Johnson and the Colorado Class commissions and wages as promised;

- Whether Defendants failed to pay the final paychecks of Plaintiff Johnson and the Colorado Class as required by law;

28

- Whether Defendants provided meal breaks to Plaintiff Johnson and the Colorado Class as required by law;

- Whether Defendants provided rest breaks to Plaintiff Johnson and the Colorado Class as required by law;

- Whether Defendants required or permitted Plaintiff Johnson and the Colorado Class to perform off-the-clock work;

- Whether Defendants included commission payment in the overtime rate calculation for Plaintiff Johnson and the Colorado Class;

- Whether Defendants changed the time punches on the timecards for Plaintiff Johnson and the Colorado Class;

- The proper measure of damages sustained by the Colorado Class; and

- Whether Defendants should be enjoined from such violations in the future.

Therefore, the commonality requirement for the Colorado Class is also satisfied.

### c. Typicality - Johnson's wage claims are typical of the Colorado Class Members.

The facts alleged in Johnson's TAC, which are corroborated and borne out by the discovery responses, meet the requirements of Rule 23(a)(3) with respect to the Colorado Class. The claims of Johnson and the claims of the members of the Colorado Class arise from the same practices and course of conduct by Defendants. Johnson and the members of the proposed Colorado Class were not paid minimum wage for all hours worked, were required to work off the clock, were not paid overtime for all hours in a workweek over 40 hours, were not paid commissions/bonuses earned, and were not paid overtime that included the commissions/bonuses paid in the calculation. Johnson and the members of the proposed Colorado Class were also subjected to unauthorized deductions from their paychecks, unauthorized alterations to their timecards, and inaccurate/incomplete pay stubs and wage statements. They also were not

29

provided with meal and rest breaks as provided by law. Johnson and members of the proposed Colorado Class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures.

Therefore, Johnson has established that the claims under Colorado Minimum Wage Act are "typical" of the claims of the Colorado Class that she seeks to represent.

### d. Adequacy - Johnson is an adequate representative of the Colorado Class.

Johnson has met these requirements with respect to the Colorado Class. He has been consistently involved in this litigation, he has a common interest with class members in the litigation, he possesses a personal financial stake in the outcome, he consulted regularly with Class Counsel, submitted declarations to the Court, and participated in responding to discovery and will participate in trial and any settlement endeavors. Exhibit N, Declaration of Johnson at ¶¶ 3-5

As set forth above, Johnson understands his obligation as class representative of the Colorado Class in the event that the Court certified this as a class action with respect to the claims.

### 3. The Colorado Class satisfies the requirements of Rule 23(b)(3).

The proposed Colorado Class satisfies the requirements of Rule 23(b)(3) for the reasons already stated above as to Rule 23(a). Based on the allegations in the TAC and Defendants' own records, certification of the Colorado Class is appropriate under Rule 23(b)(3). As set forth above, common evidence exists as to the propriety of Defendants' wage practices and this common evidence will allow the Court to determine whether the Defendants are liable for any violations of the CMWA related to minimum wage, overtime pay, unauthorized deductions and/or inaccurate wage statements. The legal and factual issues described above predominate over any individual issues of law and fact for any Colorado Class Member.

Class treatment of the legal issues identified in this case would also be superior to other procedures for the handling of the claims in question for a number of reasons. No member of the Colorado Class has any necessary interest in individually controlling the prosecution of the claims at issue in this litigation. Furthermore, no other litigation concerning this matter and filed by any of the parties involved in the present action is currently pending.

This Court also has a substantial interest in the resolution of the issues raised in this litigation occurring in one forum. Because Plaintiff Johnson and members of the Colorado Class were all employed by Defendants that maintained payroll records and employee data for all of the Class Members they directly employed, the management of a class action under Rule 23(b)(3) for Colorado Class in this matter should not present any difficulties.

## E. Certification of an Oregon Class

### 1. Ascertainability - Free is a member of and has precisely defined the Oregon Class he seeks to represent.

Free seeks class certification of his claim that Defendants violated Oregon Conditions of Employment Law. As noted above, to be certified as a class action under Rule 23, an action must meet four threshold requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy-of-representation. Fed. R. Civ. P. 23(a). The wage violation claims must also involve questions of law or fact common to class members that predominate over any questions affecting only individual members and the class action must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). The court also determines whether a precisely-defined class exists and whether the class representative is a member of the proposed class. *Haywood, supra,* at 576 and *East Texas, supra,* at 403.

Here, the Oregon Class is defined as: "all persons who worked for CityMac in the state of Oregon at any time from three years prior to the filing of this Complaint to the entry of judgment in the case."

2. **Free can satisfy the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) for the Oregon Class.**

   a. **Numerosity - the Oregon Class is sufficiently numerous and joinder is impracticable.**

The first requirement for class certification under Rule 23(a) is that the class be so numerous as to make joinder of all the class members impracticable. There are 15 putative members of the Oregon Class, which raises a presumption of sufficient numerosity and is sufficiently numerous to meet requirements of Rule 23(a)(1). In addition, Free and members of the Oregon Class are "economically disadvantaged, making individual suits difficult to pursue." See *Robidoux, supra*, 987 F.2d at 936.

Because the number of class members are sufficient and the circumstances do not make joinder a practical alternative, the Oregon Class meets the Rule 23(a)(1) standard for numerosity.

   b. **Commonality - there are common questions of law and fact as to the claims of Free and the Oregon Class.**

The putative members of the Oregon Class and Free share similar questions of law and fact. The named Plaintiff and the other putative class members were all employees who worked for Defendants, and share the following common questions of law or fact:

- Whether Employer Defendants unlawfully failed to pay minimum wage and/or overtime compensation in violation of and within the meaning of Oregon Conditions of Employment Laws, O.R.S. 651.010 et seq., and Oregon Administrative Rules, O.A.S. 839-020-0030, 0080 et seq.;

- Whether Plaintiff Free and the Oregon Class are non-exempt employees entitled to minimum wage and overtime compensation for hours worked under the pay requirements of Oregon Conditions of Employment Laws, O.R.S. 651.010 et seq., and Oregon Administrative Rules, O.A.S. 839-020-0030, 0080 et seq., including O.R.S. 653.261 and O.A.S. 839-020-0030(1);

32

- Whether Employer Defendants employed Plaintiff Free and the Oregon Class within the meaning of Oregon Conditions of Employment Laws, O.R.S. 651.010 et seq., and Oregon Administrative Rules, O.A.S. 839-020-0030, 0080 et seq., including O.R.S. 652.210(2);

- Whether Employer Defendants failed to keep accurate time records for all hours worked by Plaintiff Free and the Oregon Class as required by Oregon Conditions of Employment Laws, O.R.S. 651.010 et seq., and Oregon Administrative Rules, O.A.S. 839-020-0030, 0080 et seq., including O.R.S. 653.045 and O.A.S. 839-020-0080;

- Whether Employer Defendants made unauthorized deductions from Plaintiff Free and the Oregon Class;

- Whether Employer Defendants failed to pay Plaintiff Free and the Oregon Class commissions and wages as promised;

- Whether Employer Defendants failed to pay the final paychecks of Plaintiff Free and the Oregon Class as required by law;

- Whether Employer Defendants provided meal breaks to Plaintiff Free and the Oregon Class as required by law;

- Whether Employer Defendants provided rest breaks to Plaintiff Free and the Oregon Class as required by law;

- Whether Employer Defendants required or permitted Plaintiff Free and the Oregon Class to perform off-the-clock work;

- Whether Employer Defendants included commission payment in the overtime rate calculation for Plaintiff Free and the Oregon Class;

- Whether Employer Defendants changed the time punches on the timecards for Plaintiff Free and the Oregon Class;

- The proper measure of damages sustained by the Oregon Class; and

- Whether Employer Defendants should be enjoined from such violations in the future.

Therefore, the commonality requirement for the Oregon Class is also satisfied.

### c. Typicality - Free's wage claims are typical of the Oregon Class Members.

The facts alleged in Free's TAC, which is corroborated and borne out by the discovery responses, meet the requirements of Rule 23(a)(3) with respect to the Oregon Class. The claims of Free and the claims of the members of the Oregon Class arise from the same practices and course of conduct by Defendants. Free and the members of the proposed Oregon Class were not paid minimum wage for all hours worked, were required to work off the clock, were not paid overtime for all hours in a workweek over 40 hours, were not paid commissions/bonuses earned, and were not paid overtime that included the commissions/bonuses paid in the calculation. Free and the members of the proposed Oregon Class were also subjected to unauthorized deductions from their paychecks, unauthorized alterations to their timecards, and inaccurate/incomplete pay stubs and wage statements. They also were not provided with meal and rest breaks as required by law. Free and members of the proposed Oregon Class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures.

Therefore, Free has established that the claims under Oregon Conditions of Employment Law are "typical" of the claims of the Oregon Class that he seeks to represent.

### d. Adequacy - Free is an adequate representative of the Oregon Class.

Free has met these requirements with respect to the Oregon Class. He has been consistently involved in this litigation, he has a common interest with class members in the litigation, he possesses a personal financial stake in the outcome, he consulted regularly with Class Counsel, submitted declarations to the Court, and participated in responding to discovery

and will participate in trial and any settlement endeavors. Exhibit O, Declaration of Free at ¶¶ 3-5.

As set forth above, Free understands his obligation as class representative of the Oregon Class in the event that the Court certified this as a class action with respect to the claims.

### 3. The Oregon Class satisfies the requirements of Rule 23(b)(3).

The proposed Oregon Class satisfies the requirements of Rule 23(b)(3) for the reasons already stated above as to Rule 23(a). Based on the allegations in the TAC and Defendants' own records, certification of the Oregon Class is appropriate under Rule 23(b)(3). As set forth above, common evidence exists as to the propriety of Defendants' wage practices and this common evidence will allow the Court to determine whether liability Defendants are liable for any violations of the Oregon Conditions of Employment Laws and Oregon Administrative Rules related to minimum wage, overtime pay, unauthorized deductions and/or inaccurate wage statements.  The legal and factual issues described above predominate over any individual issues of law and fact for any Oregon Class Member.

Class treatment of the legal issues identified in this case would also be superior to other procedures for the handling of the claims in question for a number of reasons. No member of the Oregon Class has any necessary interest in individually controlling the prosecution of the claims at issue in this litigation. In addition, no other litigation concerning this matter and filed by any of the parties involved in the present action is currently pending. This Court also has a substantial interest in the resolution of the issues raised in this litigation occurring in one forum. Because Plaintiff Free and members of the Oregon Class were all employed by Defendants that maintained payroll records and employee data for all of the Class Members they directly employed, the management of a class action under Rule 23(b)(3) for the Oregon Class in this matter should not present any difficulties.

### F.     Present Plaintiffs' Counsel Should Be Appointed Class Counsel

Should the Court grant class certification, class counsel must be appointed.  See Fed. R.

Civ. P. 23(g). To do so, the Court must consider four factors: "[1] the work counsel has done in

identifying or investigating potential claims in the action; [2] counsel's experience in handling

class actions, other complex litigation, and claims of the type asserted in the action; [3] counsel's

knowledge of the applicable law; and [4] the resources counsel will commit to representing the

class." *Id.* Class counsel must be "qualified, experienced and generally able to conduct the

proposed litigation." See *Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d at 715.

Plaintiffs' counsel has handled this matter from the outset, identifying and investigating

all claims in each location where Plaintiffs worked. Also, counsel has handled numerous

class/collective actions and has and will continue to commit the necessary resources to represent

the class. *See* Exhibit I,  Curriculum Vitae for Plaintiffs' Counsel. Plaintiffs' counsel should

therefore be appointed as class counsel.

## IV.  CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that their Motion for Rule

23 Class Action Certification of North Carolina, South Carolina, Washington, Colorado, and

Oregon Classes be granted and that GessnerLaw, PLLC be appointed as class counsel.

Respectfully submitted this the 12th day of April 2021.

> */s/ L. Michelle Gessner*
> L. Michelle Gessner, NCSB#26590
> GESSNERLAW, PLLC
> 602 East Morehead Street
> Charlotte, North Carolina 28202
> Tel: (704) 234-7442
> Fax: (980) 206-0286
> Email: michelle@mgessnerlaw.com
>
> *Attorney for Plaintiff and Putative Class Members*

36