# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 1:20-cv-33-MOC-WCM

| | |
|---|---|
| SHAILESH JAHAGIRDAR, *et. al.*, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| vs. | ) |
| | ) **ORDER** |
| THE COMPUTER HAUS NC, INC., *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

**THIS MATTER** comes before the Court on Defendants' The Computer Haus NC, Inc. d/b/a CityMac, Troy Curran, Ocean Tech, Inc. d/b/a CityMac, Zephyr Investments, Inc., TS Leasing, L.L.C., Curran and Company, Green Vault, Inc., Curran Ranch, Curran Family Properties, LLC, Northern Passage, Inc., Salish Sea, LLC, and Curran Holdings, LLC (collectively referred to herein as "Defendants") Partial Motion to Dismiss pursuant to Rule 12(b)(1), 12(b)(2), and 12(b)(5) of the Federal Rules of Civil Procedure and Local Rule 7.1 (Doc. No. 129).

## I. PROCEDURAL BACKGROUND

Plaintiff Shailesh Jahagirdar ("Jahagirdar" or "Plaintiff") commenced this action on February 5, 2020, by filing a Complaint (Doc. No. 1) against Defendants The Computer Haus NC, Inc. d/b/a CityMac, and Troy Curran. Plaintiff asserted claims against Defendants for alleged violations of the Fair Labor Standards Act ("FLSA") and the North Carolina Wage and

1

Hour Act ("NCWHA"), as well as additional common law claims. (Doc. No. 1). On March 6, 2020, Defendants filed their Answer. (Doc. No. 5). Shortly thereafter, Plaintiff filed a First Amended Class and Collective Action Complaint on behalf of himself and others similarly situated, (Doc. No. 7), in which he added claims for unpaid overtime pursuant to the FLSA and North Carolina state law. Defendants filed their Answer to Plaintiffs' First Amended Complaint on March 30, 2020. (Doc. No. 15). On April 15, 2020, the Court granted Plaintiff's Motion to Conditionally Certify a Collective Action and Facilitate Notice. (Doc. No. 38).

On August 5, 2020, Plaintiff filed a Motion for Leave to File a Second Amended Complaint, requesting, inter alia, the Court's permission for Plaintiff to add seven foreign entities as Defendants. (Doc. No. 69). Defendants filed a Response in Opposition to Plaintiff's Motion on August 19, 2020. (Doc. No. 74), and Plaintiff filed his Reply on August 25, 2020. (Doc. No. 75). On December 14, 2020, Magistrate Metcalf granted in part and denied in part Plaintiff's Amended Motion for Leave to File a Second Amended Complaint. (Doc. No. 91). Magistrate Metcalf denied Plaintiff's request to add six of the proposed defendants (Zephyr Investments Inc., TS Leasing, L.L.C., Curran and Company, Green Vault, Inc., Curran Ranch, and Curran Family Properties, LLC), but granted the remainder of Plaintiff's Motion, including in relation to allowing Plaintiff to add Ocean Tech, Inc. as a Defendant. (Doc. No. 91). On December 22, 2020, Plaintiffs Shailesh Jahagirdar, Allen Allen, Kamri Norris, Jordan Blais, Connor Johnson, Rakia Green, and Andrew Free, (collectively referred to herein as "Plaintiffs"), filed a Second Amended Class and Collective Action Complaint. (Doc. No. 94), adding Ocean Tech, Inc. as a Defendant. (Doc. No. 94).

2

Case 1:20-cv-00033-MOC-WCM   Document 137   Filed 04/20/21   Page 2 of 16

Subsequently, on December 28, 2020, Plaintiffs filed a Motion to Vacate and Set Aside the Magistrate's Order, including in relation to the Magistrate's ruling denying Plaintiff's request to add six of the seven new corporate Defendants. (Doc. No. 95). The Court granted Plaintiffs' motion on February 2, 2021, concluding that "the most efficient course in resolving this matter is to allow the Plaintiffs to file a Third Amended Complaint, and Defendants can file the appropriate motion to dismiss if they still believe the factual allegations are insufficient." (Doc. No. 112, at 4).

Plaintiffs then filed a Third Amended Class and Collective Action Complaint on February 12, 2021, which added Zephyr Investments, Inc., TS Leasing, L.L.C., Curran and Company, Green Vault, Inc., Curran Ranch, Curran Family Properties, LLC, Northern Passage, Inc., Salish Sea, LLC, and Curran Holdings, LLC, as Defendants. (Doc. No. 116). In their Third Amended Complaint, Plaintiffs allege, in summary, that Defendants failed to pay minimum wage and overtime pursuant to the FLSA, and that Defendants violated a myriad of different states' wage and hour laws relating to minimum wage, overtime, meal periods, rest periods, pay-related documentation, and commissions. Plaintiff Jahagirdar additionally asserts, solely on behalf of himself, a number of state law tort claims, including intentional infliction of emotional distress and malicious prosecution. In the instant motion, Defendants make three arguments: (1) the Court should decline to exercise supplemental jurisdiction over the alleged state law claims, (2) the Court should dismiss claims against Defendants Curran Family Properties, TS Leasing, L.L.C., and Curran and Company for lack of personal jurisdiction, and (3) the Court should dismiss claims against Curran and Company and Curran Family Properties for insufficient

3

service of process.

## II. DISCUSSION

### a. Supplemental Jurisdiction

Plaintiffs' Third Amended Complaint contains 26 claims. (Doc. No. 116). Of these 26 claims, only 2 of them (Count I-Violation of the Fair Labor Standards Act-and Count 22-Violation of the Fair Labor Standards Act-Retaliation) arise under federal law. (See Doc. No. 116, at ¶¶150-156, 304-315). Specifically, Count 1 asserts a collective claim under the FLSA in relation to purported minimum wage and overtime pay violations, and Count 22 asserts an FLSA retaliation claim solely on behalf of Plaintiff Jahagirdar with respect to the Defendants purportedly withholding final wages from Jahagirdar after he demanded payment of all wages owed. (Id.). The remaining 24 claims arise under the laws of North Carolina, South Carolina, Oregon, Colorado, and Washington. (Id. at ¶¶157-303, 316-341). The 24 state-law claims are primarily based upon the various state's differing wage and hour laws, but also include Plaintiff Jahagirdar's tort-based claims for intentional infliction of emotional distress, malicious prosecution, and tortious interference with prospective economic advantage. (See id.).

Plaintiffs seek to have this action certified as a collective action under 29 U.S.C. § 216(b) as to their collective claim under the FLSA, which will require individuals to opt in. (See, e.g., id. at ¶ 1). Plaintiffs also seek to have five separate class actions certified under Fed. R. Civ. P. 23 as to the class claims arising under the various state's wage and hour laws, which would require members of these five putative classes to opt out. (See, e.g., id., ¶¶ 2-6 (Plaintiffs describing their request for a North Carolina Class, a Washington Class, a Colorado Class, an

4

Oregon Class, and a South Carolina Class)).

Defendants do not dispute that this Court has original, federal question jurisdiction under 28 U.S.C. § 1331 as to Plaintiffs' two claims under the FLSA. Because this Court has original jurisdiction over these two federal claims, under 28 U.S.C. § 1367(a), the Court may also choose to exercise supplemental jurisdiction as to the 24 state-law claims, if the state-law claims form part of the same case or controversy as the federal law claims. 28 U.S.C. § 1367(a). The Court's exercise of supplemental jurisdiction is discretionary under 28 U.S.C. § 1367(c). Specifically, that section provides:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1) the claim raises a novel or complex issue of State law;
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;
>
> (3) the district court has dismissed all claims over which it has original jurisdiction; or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). It is well established that, where state claims "predominate, whether in terms of proof, of the scope of the issues raised, or the comprehensiveness of the remedy sought," they may be dismissed. See, e.g., United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). Typically, a district court will find substantial predomination where "a state claim constitutes the real body of a case, to which the federal claim is only an appendage," and where permitting litigation of all claims in the district court "can accurately be described as

5

allowing a federal tail to wag what is in substance a state dog." De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 309 (3d Cir. 2003), as amended (Nov. 14, 2003) (quoting Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 789 (3d Cir. 1995)).

Here, Defendants contend that that the state-law wage and hour claims predominate over the federal FLSA claims and therefore the Court should find that this is an exceptional circumstance where supplemental jurisdiction should be declined. In advancing this argument, Defendants point to cases where the Court declined to exercise jurisdiction over state law claims while retaining jurisdiction over federal FLSA claims.

In Glewwe v. Eastman Kodak Co., the district court declined to exercise supplemental jurisdiction because the sheer number of the state laws involved (35 jurisdictions' wage laws and 50 jurisdictions' breach of contract laws), made clear that "the state law claims would present complex issues of state law that would substantially predominate over the FLSA claim." No. 05-cv-6462T, 2006 WL 1455476 at *4 (W.D.N.Y. May 25, 2006). The court reasoned that "such a diverse undertaking deserves the individualized analysis and attention that each state court would provide." Id.

Correspondingly, in De Luna-Guerrero v. North Carolina Grower's Ass'n, the district court declined to exercise supplemental jurisdiction over state law claims because of the sheer complexity of doing so in that particular case. 338 F. Supp. 649, 653 (E.D.N.C. 2004). The plaintiffs in that case were Mexican agricultural laborers that the defendant brought to the United States as employees but failed to reimburse them for the cost of their visas, transportation, and subsistence fees. Id. at 652. The district court stated that "the existence of

6

three different classes proposed here, of varied types and sizes, will cause too much confusion in this particular case." Id. at 653. The court further explained:

> This case necessitates that notification be sent to *thousands of foreign nationals* who have worked for the defendant NCGA under the H2A program. These potential plaintiffs, many of whom *do not speak English* and are *unfamiliar with the legal system of this country*, will be even more confused by multiple notifications regarding two separate classes and separate claims. This problem is confounded by the fact that the collective action under the FLSA is an ''opt-in'' class, while the proposed class action under Rule 23 is an ''opt-out'' class. In addition, the state law claims seek to certify a class of defendants as well. This certification will require another set of notices to be sent to a different class of persons. While none of these concerns standing alone may merit "exceptional circumstances" to decline to exercise jurisdiction, *all of these concerns combined* lead this court to believe that the court should decline to exercise its jurisdiction over the state law claims.

Id. (emphasis added). In short, the court declined to exercise supplemental jurisdiction and found that an exceptional circumstance existed because multiple factors combined to render supplemental jurisdiction confusing.

Similarly, in Acquilino v. Home Depot U.S.A., Inc., the district court found that "the mere fact that plaintiffs request 25 separate subclasses in as many states to handle state law questions is compelling evidence that there is no commonality of facts, and that state law is predominant." No. CIVA 04-CV-4100 PGS, 2006 WL 2023539, at *3 (D.N.J. July 17, 2006).

In contrast to these three cases cited by Defendants, in the instant case there are only five subclasses of Plaintiffs from five different states. Potential plaintiffs are not foreign nationals who are unfamiliar with the legal system here and/or do not speak English. Therefore, even though the vast majority of the claims in this case are state law claims, the Court does not find that there are exceptional circumstances at play that counsel against exercising

7

supplemental jurisdiction. As such, Defendants' motion that the Court decline supplemental jurisdiction over the state law claims is denied.

### b. Personal Jurisdiction and Insufficiency of Service of Process

Defendants seek dismissal of Plaintiffs' claims against Curran Family Properties, LLC, TS Leasing, LLC, and Curran and Company for lack of personal jurisdiction and also seek dismissal of claims against Curran Family Properties LLC and Curran and Company based on insufficient service of process.

As an initial matter, the Court notes that Plaintiffs concede that Curran Family Properties LLC. is not a proper Defendant in this case. Therefore, all claims against Curran Family Properties LLC are dismissed.

However, Plaintiffs also seek to "replace" Curran Family Properties with a new Defendant – Curran Brothers, LLC and allege that they have obtained summons for Curran Brothers, which is not and has never been a party to this lawsuit. In support of their request to replace Curran Family Properties with Curran Brothers, Plaintiffs vaguely allege that they inadvertently named Curran Family Properties instead of Curran Brothers due to an unspecified "clerical error." (Doc. No. 132, at 2, n. 2).

Plaintiffs' alleged mistake in naming Curran Family Properties, LLC instead of Curran Brothers cannot plausibly be explained by a clerical error. In this regard, the procedural history preceding the addition of Curran Family Properties, LLC and the other Alter Ego Defendants is illuminating.

Plaintiff Shailesh Jahagirdar filed this action against Defendants The Computer Haus

8

NC, Inc. d/b/a CityMac, and Troy Curran on February 5, 2020. (Doc. No. 1). On August 5, 2020, Plaintiff filed a Motion for Leave to File a Second Amended Complaint, requesting, *inter alia*, the Court's permission for Plaintiff to add seven additional entities as Defendants: Ocean Tech, Inc., Zephyr Investments Inc., TS Leasing, L.L.C., Curran and Company, Green Vault, Inc., Curran Ranch, and Curran Family Properties, LLC. (Doc. No. 69). Plaintiffs filed a proposed Second Amended Complaint naming those seven Defendants, and both sides submitted briefing on the issue, specifically addressing those seven Defendants. (Doc. Nos. 74, 75). Plaintiffs' Motion was denied as to six of the seven Defendants, including Curran Family Properties, LLC. (Doc. No. 91). Plaintiffs next filed a Motion to Vacate the Court's Order and seeking to add the six additional Defendants, which was again extensively briefed. (Doc. Nos. 95, 96, 101, 105).

Plaintiffs' Motion was granted. (Doc. No. 112). Plaintiffs then filed a Third Amended Complaint, naming Curran Family Properties, LLC as a Defendant, and including allegations specific to Curran Family Properties, LLC. (Doc. No. 116, at ¶ 27). In addition to these pleadings, Plaintiffs' counsel has filed numerous other documents in this case since August 5, 2020, and has appeared before the Court in at least two hearings. At no point during any of these pleadings, nor over the last seven months, did Plaintiffs request to name Curran Brothers LLC as a party in this lawsuit. In fact, Plaintiffs included an offhand reference to Curran Brothers in their brief in support of the Motion to Vacate (Doc. No. 96), to which Defendants responded "Plaintiffs' arguments with respect to Northern Passage, Inc. and Curran Brothers, LLC provide no basis for reconsideration, given that the Revised Motion to Amend did not seek

9

to add these entities." (Doc. No. 101 at 13). Plaintiffs did not respond to the assertion and did not name Curran Brothers LLC as a Defendant in the Third Amended Complaint.

Given the extensive briefing related to the Alter Ego Defendants over the past seven months, not to mention Defendants' explicit statement that Curran Brothers LLC was not a party to the lawsuit and Plaintiffs' failure to recognize the alleged "mistake" then, it seems improbable that Plaintiffs have only now realized that there was a "clerical error" leading to the omission of a critical party. Even if Plaintiffs did make a mistake in omitting Curran Brothers LLC, it was by their own negligence and they cannot "fix it" by merely substituting it for another party. This is not a typo or a misspelling; Curran Family Properties, LLC and Curran Brothers, LLC are entirely separate entities. This Court has never considered a motion to add Curran Brothers, LLC as a Defendant. Further, Curran Brothers have not had any opportunity to defend themselves in this lawsuit and allowing it to be simply substituted into this lawsuit would be prejudicial. Plaintiff's attempt to backdoor a new Defendant into this case is improper and denied by the Court.

The Court turns now to the argument that Plaintiff's claims against TS Leasing and Curran and Company should be dismissed for lack of personal jurisdiction. In the Third Amended Complaint, Plaintiffs assert claims against a number of Defendant entities, including TS Leasing, L.L.C., and Curran and Company, under the theory that these entities are "alter egos" of Defendant Troy Curran. Plaintiffs acknowledge that these entities are registered to do business under the laws of Washington. Plaintiffs do not allege that any of these entities do business in the state of North Carolina; nor do they allege that any of these entities employed

10

Case 1:20-cv-00033-MOC-WCM   Document 137   Filed 04/20/21   Page 10 of 16

any member of the putative collective or class actions. Plaintiffs instead seek to "reverse pierce" the corporate veil and establish personal jurisdiction over these foreign entities by virtue of the argument that these entities are "alter egos" of Defendant Troy Curran. (See Doc. No. 116, at 3, ¶¶ 23, 24, 27, 31).

A plaintiff may base personal jurisdiction upon an "alter ego" theory if certain requirements are met. Under the alter ego theory, if the Court has personal jurisdiction over a particular defendant, it also has personal jurisdiction over that defendant's alter egos. See e.g., Avanti Hearth Prod., LLC v. Janifast, Inc., No. 3:10–cv–00019–FDW, 2010 WL 3081371, at *4–5 (W.D.N.C. Aug. 6, 2010). "[F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court." Avanti, 2010 WL 3081371, at *4-5 (quoting Patin v. Thoroughbred Power Boats, Inc., 294 F.3d 640, 653 (5th Cir. 2002)). While this mechanism for establishing personal jurisdiction is permitted, its requirements are "in no way minimal." Anderson v. Dobson, No. 1:06-CV-00002, 2006 WL 1431667, at *6 (W.D.N.C. May 22, 2006); Avanti, 2010 WL 3081371, at *4–5 (W.D.N.C. Aug. 6, 2010) ("[T]he plaintiff carries a heaving burden when attempting to pierce the corporate veil to establish personal jurisdiction . . .").

Under North Carolina law, a defendant qualifies as an alter ego of another defendant if the plaintiff establishes the following three elements:

1. Control, not mere majority or complete stock control, but complete

11

domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

2. Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and

3. The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

Anderson, 2006 WL 1431667, at *6; E. Mkt. St. Square, Inc. v. Tycorp Pizza IV, Inc., 175 N.C. App. 628, 636 (2006). When determining whether the first requirement, "control," has been satisfied, North Carolina courts consider factors such as: inadequate or "thin" capitalization, non-compliance with corporate formalities, complete domination and control of the corporation so that it has no independent identity, and excessive fragmentation of a single enterprise. East Mkt. St. Square, 175 N.C. App. at 636 (quoting Glenn v. Wagner, 313 N.C. 450, 455 (1985)).

The alter ego analysis is similar under Washington law. For a court to pierce the corporate veil under Washington law, "two separate, essential factors must be established." Dickens v. Alliance Analytical Labs., LLC, 127 Wash. App. 433, 440 (2005). "'First, the corporate form must be intentionally used to violate or evade a duty.'" Dickens, 127 Wash. App. at 440–41 (quoting Meisel v. M & N Modern Hydraulic Press Co., 645 P.2d 689 (1982)). "Second, the fact finder must establish that disregarding the corporate veil is necessary and required to prevent an unjustified loss to the injured party." Dickens, 127 Wash. App. at 441. Further, a court may pierce the corporate veil under an alter ego theory "when 'the corporate entity has been disregarded by the principals themselves so that there is such a unity of

12

ownership and interest that the separateness of the corporation has ceased to exist.'" Columbia Asset Recovery Grp., LLC v. Kelly, 177 Wash. App. 475, 486 (2013) (internal citations omitted).

Plaintiffs allege that Defendants Curran and Company and T.S. Leasing LLC are foreign entities that are subject to personal jurisdiction in this matter because they are purportedly the alter egos of Defendant Troy Curran. (See, e.g., Doc. No. 116 at ¶¶ 22, 23, 24, 27). The alter ego allegations that Plaintiffs raise in the Complaint regarding Curran and Company are largely conclusory and fail to establish that this particular corporate entity meets the standard of being subject to personal jurisdiction in this case because it is the alter ego of Defendant Curran.

As an initial matter, there is little basis for Plaintiffs' claim that Curran and Company is in any way connected to Mr. Curran. Curran and Company is Defendant Troy Curran's brother's business. Mr. Curran has never had any financial interest in this company. (Doc. No. 129-1, Declaration of Troy Curran ("Curran Decl.") at ¶¶ 2-3). He does not conduct business under this company's name, share any assets with this company, or have any involvement in the company's operations. (Id. at ¶ 4; see also Avanti, 2010 WL 3081371, at *3-5 (finding uncontroverted allegations of the two defendants at issue sharing employees and assets, doing business under the same combined trade name, and sharing common officers and directors sufficient for purposes of establishing an alter ego relationship between the two entities). Thus, Plaintiffs have failed to allege, much less establish, any connection between Mr. Curran and Curran and Company, and they have certainly failed to meet the bar of establishing that Mr. Curran had "complete domination" over this entity such that it had no separate existence of its

13

own and was thus Mr. Curran's alter ego.[1]

In contrast to the conclusory claims made against Curran and Company, Plaintiffs have put forward sufficient allegations against Defendant TS Leasing, L.L.C. that they will be able to proceed with jurisdictional discovery against this Defendant. A "plaintiff's right to conduct jurisdictional discovery should be sustained when factual allegations suggest the possible existence of requisite contacts between the defendant and the forum state with reasonable particularity." Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp., 395 F. 3d 1315, 1323 (Fed. Cir. 2005) (internal quotations omitted); see also Jordache Enters., Inc. v. Brobeck, Phleger & Harrison, No. 92-CIV-9002, 1994 WL 74860, at *2 (S.D.N.Y. Mar. 7, 1994) (recognizing that the question of personal jurisdiction involved an alter ego claim which required discovery).

T.S. Leasing, L.L.C. is a Washington company that was jointly founded and is jointly run by both Mr. Curran and an acquaintance, Shaun Thompson. (Curran Decl. at ¶ 10). The company's operations relate to the leasing of heavy equipment. (Curran Decl. at ¶ 11). Mr. Curran essentially admitted in his divorce deposition that TS Leasing was undercapitalized because neither he nor Mr. Thompson made any capital investments into it. (See Doc. No. 132-1, Troy Curran's Divorce Deposition, at 67:25-68:4). Mr. Curran financed all the equipment for

---

[1] This is true regardless of whether the law of North Carolina or Washington is applied. See, e.g., Order (Doc. No. 91), at 12 n.5 (the magistrate explaining that the outcome of the alter ego analysis would be the same regardless of which state's law was applied); see also Columbia Asset Recovery Grp., LLC v. Kelly, 177 Wash. App. 475, 486 (2013) (requiring a showing that the corporate entity has been disregarded and that there is such a unity of ownership and interest that the separateness of the corporation has ceased to exist).

14

the business himself, using personal credit. (Id. at 69:6-9; 70:11-14). TS Leasing has no written agreement, and Mr. Curran seems to have admitted that no corporate formalities are kept. (Id. at 69:13-21). Moreover, the credibility of Mr. Curran's declaration regarding TS Leasing is seriously called into question because he testified in his divorce deposition and the deposition in this case that TS Leasing has been "shut down" and is defunct and not operating, and these claims do not appear to be entirely true. (Id. at 68:6-10).

As such, Plaintiffs' claims against Defendant Curran and Company are dismissed for lack of personal jurisdiction, and Plaintiff's claims against Defendant TS Leasing will be permitted to proceed to jurisdictional discovery.

Because the claims against Defendants Curran and Company and Curran Family Properties have been resolved on personal jurisdiction grounds, the Court does not proceed to an analysis of whether those Defendants should be dismissed for insufficiency of service of process under Federal Rule of Civil Procedure 12(b)(5).

### III. CONCLUSION

In sum, Defendants' Partial Motions to Dismiss (Doc. No. 128) is **GRANTED** in part and **DENIED** in part, and Plaintiffs' claims against Defendants Curran Family Properties LLC and Curran and Company LLC are **dismissed** with **PREJUDICE**.

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Partial Motion to Dismiss state law claims, (Doc. No. 128), is **DENIED**.
2. Defendants' Partial Motion to Dismiss claims against Curran and Company and Curran Family Properties for Lack of Personal Jurisdiction under Federal Rules of

15

Civil Procedure 12(b)(2) is **GRANTED** and

3. Defendant's Partial Motion to Dismiss claims against TS Leasing for lack of personal jurisdiction under Federal Rules of Civil Procedure 12(b)(2) is **DENIED** and Plaintiffs are permitted to proceed with jurisdictional discovery against this Defendant.

Signed: April 20, 2021

Max O. Cogburn Jr.
United States District Judge

16