**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**Civil Action No. 1:20-cv-0033-MOC**

| | | |
|---|---|---|
| **SHAILESH JAHAGIRDAR,** *et. al*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | **DEFENDANTS' RESPONSE TO** |
| | ) | **PLAINTIFFS' MOTION FOR** |
| **v.** | ) | **RULE 23 CLASS CERTIFICATION** |
| | ) | |
| **THE COMPUTER HAUS NC, INC.,** *et al*. | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

      **COMES NOW**, Defendants The Computer Haus, NC, Troy Curran, Ocean Tech, Inc., Zephyr Investments, Inc., TS Leasing, LLC, Green Vault, Inc., Curran Ranch, Northern Passage, Inc., Salish Sea, LLC, and Curran Holdings, LLC (hereinafter "Defendants"), by and through their undersigned attorneys, and responds in opposition to the Named Plaintiffs' Motion for Class Certification and supporting Memorandum (Dkt. 134, 135) ("Motion").

## I.    INTRODUCTION

      The Named Plaintiffs, Shailesh Jahagirdar, Andrew Free, Rakia Green, Jordan Blais, Allen Allen, and Connor Johnson (collectively "Plaintiffs") are former employees of Computer Haus, NC, Inc. Computer Haus operated a chain of computer sales and repair stores under the name CityMac, where Plaintiffs held various positions prior to the chain's liquidation in 2020. Plaintiff Jahagirdar brought this action seeking to recover overtime compensation under the Fair Labor Standards Act and this Court conditionally certified a Fair Labor Standards Act ("FLSA") collective action in April of 2020. (ECF 7, 38). Plaintiffs now seek to represent five additional Rule 23 classes under the laws of five states, seeking to recover for a myriad of alleged wage

7383681v.7

violations under the various states' laws and regulations and across employees in all job positions. There are several reasons that this court should deny the Plaintiffs' Motion for Class Certification:

- Plaintiffs have offered a class definition that is drastically overbroad, applies incorrect statutes of limitations, and includes individuals who could not have possibly suffered the injuries alleged;

- Plaintiffs cannot meet the minimum numerosity threshold in three of the five states proposed;

- By attempting to lump the putative class into five state law subclasses, Plaintiffs ignore the parameters of the many state laws at issue, some of which do not apply even to the Named Plaintiffs and would result in exponential subdivision;

- Plaintiffs have failed to meet their burden to show that the class claims arise out of a common practice or policy. To the contrary, the evidence shows that there were no common policies to violate applicable laws and any employee claims turn on individual issues of fact;

- Plaintiffs have failed to show that the designated class representatives' claims are typical of the classes they seek to represent. In fact, several of the Named Plaintiffs denied that they suffered the injuries alleged in this lawsuit;

- Plaintiffs have failed to meet their burden to show that common issues predominate and have failed to account for the many variances in state laws, which render the controversy utterly unmanageable;

- Plaintiffs have failed to meet the burden to provide any proposed trial plan or suggested how this action, which alleges violations of dozens of separate state laws, could be managed before a jury.

First, Plaintiffs have proposed a woefully inadequate class definition that seeks to certify a class of "all employees" without regard whether such employees were eligible to receive overtime, commissions, or other pay alleged, without regard to whether the individuals actually suffered any injury, and without regard to the appropriate statutes of limitations. Plaintiffs' class definition is overbroad and results in grossly inflated class numbers. When the true parameters are applied, Plaintiffs' proposed state classes do not meet the numerosity threshold of Rule 23(a)(1). Second, Plaintiffs have also failed to satisfy Fed. R. Civ. P. 23(a)'s requirements for commonality and typicality as to any of the five classes they seek to have certified. Indeed, several of Plaintiffs' proposed classes have representatives who affirmatively deny having suffered from all of the violations that Plaintiffs have asserted. These Plaintiffs lack standing. In addition, even if Plaintiffs could prove that they in fact suffered from the alleged wage-and-hour violations (which Defendants emphatically deny), Plaintiffs have put forth no evidence to establish that any alleged violations occurred by virtue of a common policy or practice that affected the other members of the proposed classes. To the contrary, numerous putative class members have submitted sworn statements confirming that they never suffered from the wage-and-hour violations that Plaintiffs have asserted.

Third, Plaintiffs have not met their burden under Rule 23(b)(3). Rule 23 treatment is not appropriate where the predicate state law claims are so dissimilar that they defeat any commonality in the overall class. In contrast with Plaintiffs' two claims under the FLSA, there are a large number of state laws involved, each of which must be applied pursuant to the state's own standards. Such

3

a multitude of varying and conflicting state laws would inevitably swallow any common issues in this lawsuit. The variation in state laws also demonstrates that a Rule 23 class action is not a superior platform for the Plaintiffs' claims due to the near impossible task of managing dozens of varying laws and standards at trial. Plaintiffs have failed meet their burden to provide any analysis of the state laws involved, and have failed to provide any plan to manage such an unwieldy action.

In sum, Plaintiffs seek to proceed on behalf of "all workers," without regard to whether those workers actually suffered the injuries alleged, and whose claims are governed by different states' laws, which present neither predominant common issues for determination nor a superior method for resolving this controversy. Plaintiffs have further failed to put forth evidence to show the key elements of commonality and typicality, and have only shown individualized claims while speculating as to putative class members. This controversy is not appropriate for class treatment.

## II.     BACKGROUND FACTS

### 1.     CityMac's Operations

Mr. Curran was the owner of Computer Haus, NC, Inc., which operated retail stores specializing in the sale and repair of computer and wireless products under the d/b/a name "CityMac." Decl. of Troy Curran ("Curran Decl."), attached as **Exhibit 1**. CityMac's original location was in Asheville, North Carolina. *Id.* at ¶ 4. Computer Haus later opened several other CityMac stores in South Carolina, Washington, and Oregon, as well as two additional locations in North Carolina. *Id.* at ¶ 4-5. The day-to-day operations of each CityMac location were handled by store management and were primarily staffed by employees in two distinct roles: sales and repair services. *Id.* at ¶ 9-10. Sales employees were engaged to sell products and wireless services to customers, while service employees were focused on repairing and refurbishing devices. *Id.* at ¶ 10. Both positions were paid hourly wages. *Id.* Employees in sales positions could also qualify to

4

receive commissions and other remuneration in relation to their sales of eligible products and services, if they met certain eligibility criteria. *Id.* at ¶ 12. The employees working in the service side were not eligible to receive these commissions. *Id.* In addition to the sales employees and the service employees, CityMac also had employees working in other roles, such as managers, vice presidents, and administrative employees. *See generally id.*

Due to the COVID-19 pandemic, CityMac closed all of its stores in March of 2020. *Id.* at ¶ 6. As a result of the ongoing economic conditions for retail operations, Computer Haus was ultimately placed into a receivership in Whatcom County, Washington, in July of 2020. *See* Washington Court Receivership Order, attached as **Exhibit 2**. Pursuant to the Whatcom County's court's order, the receiver liquidated Computer Haus's assets, which were sold to Ocean Tech, Inc.[1] *Id.* The Washington state court explicitly ordered that Ocean Tech, Inc. is not a successor to Computer Haus. *Id.*

### 2. The Class Action Complaints

Plaintiff Jahagirdar filed the initial Complaint in this action on February 5, 2020, alleging statutory claims under the Fair Labor Standards Act ("FLSA") and under the North Carolina Wage and Hour Act ("NCWHA"), as well as multiple common law tort claims. (ECF No. 1). On March 14, 2020, Plaintiff amended the complaint and sought to represent a collective action under the FLSA and a North Carolina wage and hour class. (ECF No. 7). On December 22, 2020, Plaintiff filed a second Amended Complaint, adding Named Plaintiffs Allen, Norris, Blais, Johnson, Green, and Free, and expanding the action to include four additional state classes in Colorado,

---

[1] Ocean Tech, Inc. currently operates a single store under the CityMac name in Bellingham, Washington.

7383681v.7

Washington, Oregon, and South Carolina. (ECF No. 94). Plaintiffs filed a Third Amended Complaint ("TAC") on February 12, 2021, adding several additional defendants. (ECF No. 116).

While Plaintiffs have enumerated only twenty-one counts, the TAC alleges a broad array of distinct state law claims[2], including claims for the following under each state's statutes and common laws: (1) failure to pay minimum wages, (2) failure to pay overtime wages, (3) failure to keep accurate records, (4) making unauthorized deductions from wages, (5) failure to pay "commissions and wages promised," (6) failure to pay for hours worked or "off-the-clock" time, and (7) failure to pay final paychecks. For the Washington, Oregon, and Colorado classes, Plaintiffs also allege claims for failure to provide rest breaks and meal breaks.[3]

---

[2] The TAC characterizes many of Plaintiffs' claims vaguely as "issues of fact or law." However, a great many of these "issues" are, in fact, separate claims and theories that will require proof of independent legal elements.

[3] A state-by-state summary of the purported claims is as follows:
- **FLSA, TAC ¶ 99**: (1) failure to pay minimum wages under FLSA, (2) failure to pay overtime wages pursuant to 29 U.S.C. § 216(b);
- **North Carolina – TAC, Counts II-III and ¶ 107(a)-(l)**: (1) failure to pay minimum wages under North Carolina Wage and Hour Act ("NCWHA"), (2) failure to pay overtime wages under NCWHA, (3) failure to keep accurate records under NCWHA, (4) making unauthorized deductions from wages, (5) failure to pay "commissions and wages promised," (6) failure to pay for hours worked or "off-the-clock" time, (7) failure to pay final paychecks under NCWHA;
- **Washington, TAC Counts IV-VIII and ¶ 116(a)-(n)**: (1) failure to pay minimum wages under Washington Minimum Wage Act ("WMWA"), (2) failure to pay overtime wages under WMWA, (3) failure to keep accurate records under WMWA, (4) making unauthorized deductions from wages, (5) failure to pay "commissions and wages promised," (6) failure to pay final paychecks under WMWA, (7) failure to provide meal breaks, (8) failure to provide rest breaks, and (9) failure to pay for hours worked or "off-the-clock" time;
- **Oregon, TAC Counts IX-XIV and ¶ 125(a)-(n)**: (1) failure to pay minimum wages under Oregon Conditions of Employment Laws ("OCEL") and Administrative Rules, (2) failure to pay overtime wages under OCEL and Administrative Rules, (3) failure to keep accurate records under OCEL and Administrative Rules, (4) making unauthorized deductions from wages, (5) failure to pay "commissions and wages promised," (6) failure to pay final paychecks

6

7383681v.7

## III.    LEGAL STANDARD

The district court may only certify a class action where it determines that all Rule 23 requirements have been met. *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004). Under Rule 23(a), the party moving for class certification must first meet the following four prerequisites: (1) the class is so numerous that joinder is impossible; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representative are typical of the claims or defenses of the class; and (4) the named representative will adequately protect the class interests. Fed .R. Civ. P. 23(a). To the extent that Plaintiffs seek to proceed under subclasses, each subclass must independently meet all the requirements for certification under Rule 23. *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 441 (4th Cir. 2003).

Indeed, to ensure that all requirements of Rule 23 have been met, courts must conduct a "rigorous analysis" of the Rule 23 requirements. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011); *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014). The court cannot merely accept the plaintiffs' allegations and must make "whatever factual and legal inquiries are

---

under NCWHA, (7) failure to provide meal breaks, (8) failure to provide rest breaks, and (9) failure to pay for hours worked or "off-the-clock" time;

- **Colorado TAC Counts XV-XX and ¶ 134(a)-(n)**: (1) failure to pay minimum wages under Colorado Minimum Wage Act ("CMWA"), (2) failure to pay overtime wages under CMWA, (3) failure to keep accurate records under CMWA, (4) making unauthorized deductions from wages, (5) failure to pay "commissions and wages promised," (6) failure to pay final paychecks under CMWA, (7) failure to provide meal breaks, (8) failure to provide rest breaks, and (9) failure to pay for hours worked or "off-the-clock" time;
- **South Carolina TAC, Count XXL and ¶ 143(a)-(l)**: (1) failure to pay minimum wages under South Carolina Payment of Wages Act ("SCWA"), (2) failure to pay overtime wages under SCWA, (3) failure to keep accurate records under SCWA, (4) making unauthorized deductions from wages, (5) failure to pay "commissions and wages promised," (6) failure to pay for hours worked or "off-the-clock" time, (7) failure to pay final paychecks under SCWA.

7383681v.7

necessary," including on the merits. *Gariety*, 368 F.3d at 366-67 (quoting *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675-76 (7th Cir. 2001)). As the *Gariety* court set forth:

> If it were appropriate for a court simply to accept the allegations of a complaint at face value in making class action findings, every complaint asserting the requirements of Rule 23(a) and (b) would automatically lead to a certification order, frustrating the district court's responsibilities . . . for conducting a "rigorous analysis" of such matters [] and for making findings that the requirements of Rule 23 have been satisfied.

*Gariety*, 368 F. 3d at 365 (internal citations and quotations omitted). Thus, Plaintiffs must submit affirmative evidence in support of certification and the Court must examine it to determine if class representation is appropriate.

## IV.    ARGUMENT

### A.    Plaintiffs Proposed Class Definition is Overly Broad and Ignores the Statute of Limitations

In addition to the analysis described above, the Court should consider whether a "precisely defined" class exists and whether the class representatives are, in fact, members of the purported class. *Moore v. Slagle*, 2020 WL 1640081, at *3 (W.D.N.C. Apr. 2, 2020)*; see also Roman v. ESB, Inc.*, 550 F.2d 1343, 1348 (4th Cir. 1976) ("[T]he definition of the class is an essential prerequisite to maintaining a class action."); *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (in order to maintain a class action, the class sought to be represented must be adequately defined); *E. Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403, (1977). If the court finds that the proposed class definition is overly broad, certification may be denied. *Hawkins v. Cohen*, 327 F.R.D. 64, 80 (E.D.N.C. 2018); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F. Supp. 3d 14, 92 (D.D.C. 2017) ("A court therefore should deny class certification where the class definitions are overly broad, amorphous, and vague.")

7383681v.7

This is exactly the case here, where Plaintiffs offer overly broad class definitions in their Motion: "**All persons who worked for CityMac in the state of North Carolina at any time from three years prior to the filing of this Complaint to the entry of judgment in the case.**" Plaintiffs' class definition is identical for each state, except that the proposed statute of limitations period is two years in Colorado rather than three. Plaintiffs' class definition is far too broad because it fails to account for the correct statutes of limitations and because it fails to identify those individuals who may have actually suffered injuries.

### 1. Plaintiffs Have Incorrectly Applied the Statutes of Limitations

Plaintiffs' class definition is far too broad. To begin, Plaintiffs have offered no support for the purported statutory periods, which are critical to a class definition. *Clausnitzer v. Fed. Exp. Corp.*, 248 F.R.D. 647, 655 (S.D. Fla. 2008). At least some of Plaintiffs' proposed limitations periods are incorrect: the statute of limitations for overtime claims under both the North Carolina Wage and Hour Act and Oregon's Wage Payment Act is two years, not three. N.C.G.S. § 95-25.22(f); Or. Rev. Stat. Ann. § 12.110 ("An action for overtime or premium pay or for penalties or liquidated damages for failure to pay overtime or premium pay shall be commenced within two years."). Further, Plaintiffs appear to have calculated the limitations period for each state from the filing of the original Complaint on February 5, 2020, which alleged only single-plaintiff claims on behalf of Plaintiff Jahagirdar. (ECF No. 1). However, no class claims were added under North Carolina law until the filing of the First Amended Complaint March 14, 2020, and no claims were added under Washington, Oregon, Colorado, or South Carolina, until the filing of the Second Amended Complaint on December 22, 2020. (ECF No. 7, 94). Plaintiffs have indicated no circumstances that would toll the limitations period as to the putative class members in the interim.

7383681v.7

Contrary to Plaintiff's apparent belief, the filing of a class action lawsuit does not toll the statute of limitations for subsequent class actions, nor does it toll the limitations period for individuals who are not members of the putative class. *See Angles v. Dollar Tree Stores, Inc.*, 494 F. App'x 326, 331 (4th Cir. 2012) (class action tolls statute of limitations only for subsequent individual actions, not for subsequent class action); *Andrews v. Orr*, 851 F.2d 146, 149 (6th Cir. 1988) (class action tolls statute of limitations only for subsequent individual actions, not for subsequent class action); *Love v. Wal-Mart Stores, Inc.*, 865 F.3d 1322, 1323 (11th Cir. 2017) (same); *Am. Pipe & Const. Co. v. Utah,* 414 U.S. 538, 554 (1974) (commencement of a class action suspends the statute of limitations for putative class members); *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983) (confirming that tolling applies only to individuals who are members of the putative class). Moreover, a class action cannot toll any limitations periods for claims that are not brought within the action.[4] *Angles v. Dollar Tree Stores, Inc.*, 494 F. App'x 326, 14 (4th Cir.

---

[4] To the extent that Plaintiff argues that this Court should apply the complicated principles of cross-jurisdictional tolling to salvage time-barred state law claims, it is highly doubtful whether the cross-jurisdictional tolling doctrine would apply to claims that were not stated in the initial Complaint. Even if the doctrine were applicable, however, the Court would be required to look to the state of the underlying claim. *See Wade v. Danek Medical, Inc.,* 182 F.3d 281, 289 (4th Cir. 1999). To that end, the majority of states do not follow the doctrine, and federal courts are not permitted to predict expansion of state law. *Wade*, 182 F.3d at 287 ("Although a number of states have allowed equitable tolling for class actions in their own courts, only a very few have even addressed the question of 'cross-jurisdictional' equitable tolling, much less allowed such tolling."); *Martin Marietta Corporation v. Gould, Inc.*, 70 F.3d 768, 771 (4th Cir. 1995) ("And it is not our place to suggest expansions of state law.") As applicable here, Washington, Colorado, and Oregon have not adopted the doctrine of cross-jurisdictional tolling. *Embree v. Ocwen Loan Servicing, LLC*, 2017 WL 5632666, at *6 (E.D. Wash. Nov. 22, 2017) (refusing to apply cross-jurisdictional tolling to Washington state law claim); *Alexander v. Pella Corp.*, 2015 WL 1798859 at *10 (D.S.C. April 21, 2015) (same); *In re Dynamic Random Access Memory (Dram) Antitrust Litigation*, 516 F. Supp.2d 1072, 1103 (N.D. Cal. June 1, 2007) (Oregon does not recognize cross-jurisdictional tolling doctrine); *Champion v. Homa,* 2008 WL 900967 (M.D. Ala. March 31, 2008) (declining to recognize cross-jurisdictional tolling for Colorado claims); *In re Dairy Farmers of America, Inc. Cheese Antitrust Litigation,* 2015 WL 3988488, at *30 (N.D. Ill. June 29, 2015) (refusing to apply cross-jurisdictional tolling for North Carolina claims).

10

2012) (denying to toll limitations for class claims that were not actually alleged). Indeed, the filing of a collective action under the FLSA does not even toll the statute of limitations for its own putative members until they affirmatively opt into the action.

Here, the putative class members in Colorado, Oregon, South Carolina, and Washington were not putative class members of the North Carolina class action (nor were the vast majority of them members of the FLSA class as they did not opt in) and no claims under those states' laws were stated until the Second Amended Complaint was filed. Plaintiffs cannot argue that the filing of Plaintiff Jahagirdar's single-plaintiff action in February 2020, nor of his FLSA collective and North Carolina class in March, tolled the statute of limitations as to class claims for these Plaintiffs.

Nor do the Amended Complaints relate back to the filing of the initial Complaint with regard to the state law claims alleged. Courts are clear that amended complaints relate back to the date of the initial complaint only where they do not introduce a new cause of action. *Atl. Seaboard Corp. v. Fed. Power Comm'n*, 201 F.2d 568, 572 (4th Cir. 1953) ("The rule is well settled that, where an amendment to a complaint [] does not introduce a new cause of action, the [amendment relates back]"); *Hooper v. Sachs*, 618 F. Supp. 963, 977 (D. Md. 1985), *aff'd*, 823 F.2d 547 (4th Cir. 1987) ("An amended complaint will not relate back ... if it states an entirely new cause of action based on facts different from the facts alleged in the original complaint."); *Painter v. Mohawk Rubber Co.*, 636 F. Supp. 453, 456 (W.D. Va. 1986) (where an amended complaint is based on new claims, theories, and facts, it does not relate back to a prior filing); *United States v. N. Paiute Nation*, 393 F.2d 786, 790 (Ct. Cl. 1968) (the rule of relation back does not extend to amendments that add new parties or causes of action). Here, the state class claims do not relate back because they are distinct from the allegations set forth in Plaintiff Jahagirdar's initial Complaint. Indeed, the actions described in Plaintiff's initial Complaint were specific to his own

11

circumstances and to North Carolina law. (*See* ECF No. 1). To illustrate, Plaintiff Jahagirdar did not mention meal breaks or rest breaks in his initial action, nor in his North Carolina class action, nor in his FLSA collective allegations and only raised those allegations in his Second Amended Complaint. Defendants would thus have no way of anticipating any such claims by the original Complaint. Thus, the correct statutory period for the claims under Oregon, Washington, and Colorado law must run back from December 22, 2020, and the claims from North Carolina must run back from March 14, 2020.

Significantly, when the accurate limitations periods are applied, the North Carolina class is reduced by more than half, and Andrew Free, the only Named Plaintiff from Oregon, is excluded because his employment ended more than two years prior to the Second Amended Complaint. *See* Declaration of Tim Taft, attached as **Exhibit 3**. Similarly, and as discussed in Section IV.B.2 below, several of the Named Plaintiffs seeking to represent the various classes are not even valid members of those classes. For example, Plaintiffs Johnson and Blais cannot represent a class of individuals seeking to recover for missed meal periods because they have testified that they were never denied any meal period.

### 2. The Class Definition of "All Employees" is Overbroad and Improper

Courts are also clear that, as a threshold requirement to certification, members of a proposed class must be identifiable without individualized fact finding. *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). Here, the broad definition of "all employees" defeats any efforts to identify those employees who may have actually suffered the injuries alleged in this action. To wit, the proposed class of "all employees" includes individuals who are not eligible to join a wage-and-hour class, such as non-exempt employees and employees who were not eligible to receive sales commissions or bonuses because they were not in a commissions-eligible position. It includes

12

individuals who worked at CityMac locations for which there is no evidence to suggest a wage and hour violation occurred, and includes part-time employees and other employees, regardless of whether those employees ever worked overtime or lost breaks and for whom there is no proof that any injury was suffered. Classes including members who could not have suffered the injuries alleged are improper. *Zimmerman v. Bell*, 800 F.2d 386, 389 (4th Cir. 1986) (denying certification where "there may be significant numbers of [individuals] in [the] purported class who simply were not injured by the misdeeds she recites.").

As shown above, Plaintiffs have presented no evidence that any putative class member has suffered the injuries that Plaintiffs have alleged, and no evidence of CityMac having any policy requiring its employees to, for example, work off-the-clock or forgo required meal and rest breaks; to the contrary, the evidence confirms that CityMac's policies prohibit employees from working off-the-clock, and putative class members have confirmed that they have always been paid for all time worked and have received all of their required meal and rest breaks. *See* **Exhibits 5, 6, 8, 10.**

Thus, Plaintiffs' proposed class definition is overly broad, fails to identify a class of injured individuals, and should not be certified.

**B. Plaintiffs Cannot Satisfy Rule 23(a)'s Prerequisites for Class Certification**

**1. Plaintiffs' Proposed Classes In Colorado, Oregon, And South Carolina Do Not Meet Rule 23(a)'s Numerosity Threshold**

Class actions are appropriate only where a class is so numerous that joinder is impractical. While there is no magic number that invokes class treatment, courts have routinely held that 40 members is the general threshold. *See e.g.*, *Peoples v. Wendover Funding, Inc.,* 179 F.R.D. 492, 497 (D. Md. 1998); *see also* 1 Newberg on Class Actions § 3:11 (5th Ed. 2013). On the other hand, classes with less than 25 members are generally not appropriate. *Kennedy v. Virginia Polytechnic*

*Inst. & State Univ.*, 2010 WL 3743642, at *3 (W.D. Va. Sept. 23, 2010) (collecting cases). The Fourth Circuit has affirmed that a twenty-five person class does not meet the numerosity requirement. *Kelley v. Norfolk & W. Ry.*, 584 F.2d 34, 35–36 (4th Cir. 1978).

As with the Motion's many unsupported and conclusory assertions, Plaintiffs entirely fail to state how they calculate their class numbers – indeed, the numbers could have been pulled from thin air. Nonetheless, even by their own calculations, Plaintiffs' proposed classes for Oregon (15 members) and Colorado (31 members) do not come close to forty putative members and cannot meet the threshold for numerosity. Indeed, when the correct statutes of limitations are applied (two years from December 22, 2020 in Colorado and Oregon), there are only 13 putative class members in Colorado[5] and 14 in Oregon. *See* **Exhibit 3.** There are only 30 in South Carolina. *Id***.** These numbers are not sufficient to satisfy Rule 23's most basic requirement, and certification of the subclasses should be denied on that basis alone.

### 2.  Plaintiffs Cannot Satisfy Rule 23(a)'s Commonality and Typicality Requirements

Even setting aside the fatal issues with the class definitions and numerosity detailed above, Plaintiffs have failed to demonstrate that Rule 23(a)'s commonality and typicality requirements have been met as to any one of the five classes for which they seek certification. As an initial matter, some of the Named Plaintiffs deny having suffered the injuries alleged in the TAC and therefore lack standing; it is axiomatic that an employee who "suffered no injury as a result of the alleged [] practices [are] simply not eligible to represent a class of persons who did allegedly suffer injury." *East Texas Motor Freight v. Rodriguez*, 431 U.S. 395, 403 (1977).  For those employees who do claim to have suffered injuries under the relevant claims, they have presented no evidence

---

[5] Employee Amber Curran appears as a member of the Washington class at Ex. 3, but also worked in Colorado.

of CityMac having common policies or practices affecting all members of the proposed classes; nor have they established that the claims of their Named Plaintiffs are typical of the claims of the members of the proposed classes.

   a. **Rule 23's Commonality and Typicality Requirements Require Affirmative Proof that the Class Representative's Claims are Shared with the Absent Class Members**

The requirements for typicality and commonality under Fed. R. Civ. P. 23(a) often merge. *See Kidwell v. Transp. Commc'ns Int'l Union*, 946 F.2d 283, 305 (4th Cir. 1991). Both requirements "ensure that only those plaintiffs or defendants who can advance the same factual and legal arguments may be grouped together as a class." *Broussard v. Meineke Disc. Muffler Shops, Inc*., 155 F.3d 331, 340 (4th Cir. 1998) (quoting *Mace v. Van Ru Credit Corp*., 109 F.3d 338, 341 (7th Cir. 1997)).

Under the "commonality" requirement of Fed. R. Civ. P. 23(a)(2), at least one common question of law or fact must exist among class members. *See EQT Prod. Co. v. Adair*, 764 F.3d 347, 360 (4th Cir. 2014); *Brown v. Nucor Corp.*, 576 F.3d 149, 153 (4th Cir. 2009). What matters to class certification, however, "is not the raising of common 'questions'—even in droves—but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes,* 564 U.S. at 350 (quotation and emphasis omitted).

To satisfy typicality, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982). A class representative's claims are typical of the class if they generally share the same legal and factual basis. *Newsome v. Up-To-Date Laundry, Inc*., 219 F.R.D. 356, 362 (D. Md. 2004). The test for "typicality" is "whether other members have the same or similar injury, whether

15

the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). "[T]he appropriate analysis of typicality must involve a comparison of the plaintiffs' claims or defenses with those of the absent class members." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir. 2006).

Where there are "significant variations in [plaintiffs'] factual and legal arguments" courts have held that the typicality and commonality requirements are not met. *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998). Further, courts have reiterated the need for affirmative proof showing commonality and typicality; the Supreme Court has held that "there is a wide gap" between 1) a plaintiff's individual claim of wrongdoing against his employer and conclusory allegations of an unlawful policy, and 2) "the existence of a class of persons who have suffered the same injury [],such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims." *Falcon*, 457 U.S. at 157. As such, a court must examine whether differences between class members impede the discovery of common answers.

### b. North Carolina

Plaintiff Jahagirdar is the named representative of Plaintiffs' proposed North Carolina class. Jahagirdar worked for CityMac at its Wilmington, North Carolina, location as a sales professional from July 1, 2019 through August 10, 2019, and then from September 20, 2019 through November 25, 2019. *See* Motion, at 3.

Among other allegations, Plaintiff Jahagirdar alleges claims for unpaid overtime and minimum wages and unpaid commissions under North Carolina law. TAC, ¶¶ 157-174. The only evidence that Plaintiff Jahagirdar has offered in support of the Motion to certify the North Carolina

7383681v.7

class is his own deposition testimony. Motion, at 3-4, 11-18. However, even Jahagirdar's own testimony is not sufficient to support his claims, much less the claims of an absent class. *See* Jahagirdar Depo., attached as **Exhibit 4**. For example, Jahagirdar contends that he was required to come in early and work off the clock and that he believes that he was not paid an unspecified amount of overtime, wages, and/or commission during certain pay periods. Jahagirdar testified that he was not aware of any period in which he didn't receive minimum wage pay and was unable to identify any transactions for which he did not receive commissions, nor could he identify any instances for which he did not receive overtime pay:

- when asked if he recalled a time when he did not receive minimum wage pay of $7.25 per hour: "Not that I'm aware of[.]" *Id.* at 105:20-25;

- he admitted that he made his own time punches through an application on his mobile phone and that any time he reported outside the app was accurate. *Id.* at 50:23-52:13;

- he could not identify any errors in his pay stubs because "whatever they paid me is what I received. I can't accurately tell you if that was all the entitled payment that I was to receive. No, I can't say." *Id.* at 91:20-92:3;

- when asked if he was aware of any work week where he did not receive overtime pay due: "yeah, there were times. I can't pinpoint exactly how many [] times it occurred, but there were – it was more than once" *Id.* at 89:15-25;

- when asked how much overtime pay he believed he was owed: "I mean, I believe I was owed more than what I got, yes." *Id.* at 91:24-92:3;

- when asked why he believed he had not received his commissions: "because my paychecks were relatively small to what – you know, the sales that I was making." *Id.* at 160:5-8;

17

- when asked if there were other employees who had not received commissions or overtime: "Apart from what I've experienced, I can't speak for anybody else." *Id.* at 98:20-99:19.

In short, Jahagirdar's testimony amounts to his own vague assertions that he personally believed he had not received all of the pay to which he was entitled, but that he could not prove it,[6] and that he did not know what anyone else did or did not get. However, Rule 23 does not operate on pleading standards, and a personal "belief" as to his own pay are not sufficient to support Plaintiffs' class allegations. *Breeden v. Benchmark Lending Group, Inc.*, 229 F.R.D. 623, 627 (N.D. Cal. 2005) (denying to consider class certification wage and hour claims where sole support were allegations based "on information and belief"). Additionally, Jahagirdar has already accepted payment for his claimed losses. Without admitting liability, Computer Haus issued Mr. Jahagirdar two checks to compensate him for his alleged unpaid wages, including the alleged unauthorized deductions and final pay, and two checks representing liquidated damages. Ex. 1, ¶ 15; Answer to TAC, Dkt. 130 at ¶ 72-73. Jahagirdar cashed all four checks on March 15, 2020. Ex. 1 at ¶ 16. Given that minimum wage and overtime claims under the NCWHA are preempted by federal law pursuant to NC Gen Stat 95-25.14, Jahagirdar cannot recover additional damages in this action and therefore lacks standing to represent a class.

Even if Jahagirdar could show that he suffered from the violations of North Carolina law asserted in the TAC (and that he therefore has standing to represent a class), Plaintiffs have put forth no evidence to demonstrate that any of the purported violations of North Carolina law

---

[6] Jahagirdar's repeated contention that he could not identify any errors in his pay because records had not been disclosed to him are without credence. *See* Ex. 4, Jahagirdar Depo., at 257:18-24, 258:1-7. Defendants have produced thousands of pages of records in this litigation, including Jahagirdar's payroll records and raw time punch data.

occurred by virtue of a common policy or practice that would satisfy the commonality requirement for class certification. The United States Supreme Court has explained that one plaintiff's experience (even if proven to be true) does not establish that the defendant had a common policy or practice that affected the other members of the proposed class. *See Falcon*, 457 U.S. 147, 148 (1982) (finding that the commonality requirement had not been met, explaining that "the class claims-respondent must prove much more than the validity of his own claim."). Indeed, the Supreme Court in *Dukes* found that commonality was not met even when the party seeking class certification supported their motion for class certification with 120 affidavits from potential class members, as 120 individuals represented only a small percentage of the putative class as a whole. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 358 (2011). Similarly, our sister court in the Eastern District of North Carolina has held that, even where a plaintiff could support his own claims, class certification is not appropriate without an affirmative showing that a common policy existed and actually impacted other employees. *Price v. Cannon Mills*, 113 F.R.D. 66, 68-69 (1986). In the *Price* case, the court stated that "in addition to presenting evidence of their own claims, the named plaintiffs herein must link their claims to those of the putative class" and must "demonstrate that there are other members of the class who have the same or similar grievances as the plaintiff." *Id.* The *Price* court rejected class certification because the plaintiffs failed to produce evidence showing that other employees were subjected to the same alleged discriminatory conduct and instead relied only on "cursory assertions of discrimination to show the existence of a class." *Id.*, at 69.

Just as in *Price*, the Plaintiffs in this case have not provided testimony from any member of the putative North Carolina class who contends that they experienced the same violations that Jahagirdar has alleged. Likewise, Plaintiffs have offered no evidence whatsoever to show that the

alleged practices in the Wilmington location (where Jahagirdar worked) had any bearing on the other stores in North Carolina. *See Gonzales v. Hair Club for Men, Ltd., Inc.*, 2007 WL 1079291, at *3 (M.D. Fla. Apr. 9, 2007) (denying certification of wage and hour collective where neither plaintiff could "claim knowledge of any alleged FLSA violations at any Hair Club locations other than the Maitland office). Despite vague references to unidentified "discovery," *see* Motion, at 15, Plaintiffs have not pointed to anything showing a common practice violating North Carolina's wage and hour laws among all the stores in the state.

Rather, Plaintiff relies on his own "cursory assertions" and beliefs to conclude, without any actual evidence, that all of the employees in North Carolina were subjected to widespread wage and hour violations. This is insufficient and fails to make the necessary "affirmative showing beyond individual claims and general class allegations that [injury] has been suffered by the proposed class." *Price,* 113 F.R.D. at 69. Plaintiffs' assertions epitomize the "wide gap" between conclusory allegations made by one individual and proving the existence of an injured employee class, *Falcon,* 457 U.S. at 157, and Plaintiffs have failed to meet their burden of establishing that any of the North Carolina claims alleged occurred by virtue of a common practice, or that Jahagirdar's claims would by typical of the claims of other members of the class.

Conversely, another employee from CityMac's Wilmington, North Carolina location confirmed that he did not in fact experience any of the violations that Jahagirdar contends that he suffered. North Carolina Declaration, attached as **Exhibit 5**. This employee confirmed that, while working at CityMac's Wilmington, North Carolina location, he always received at least the minimum wage, never worked overtime for which he was not compensated, received payment for the commissions that he earned, and did not have any unlawful deductions taken out of his pay. *Id.*

This potential class member's account is bolstered by CityMac's handbook policies, which prohibit working off-the-clock, and require employees to review their timecard entries each week to ensure that they are accurate. CityMac Handbook Excerpt, attached as **Exhibit 6**, at 10, 29-30. This evidence further eviscerates any argument that Plaintiffs may raise as to commonality or typicality. *See e.g.*, *Garcia et al. v. Schlumberger Lift Solutions*, 2021 WL 1259737, at *26 (E.D. Cal. Apr. 6, 2021) ("Given the dissimilarities and conflicting testimony of putative class members related to whether off-the-clock work was required by Defendants, the Court is unable to find a contention that is 'capable of class wide resolution.' . . . . Consequently, Plaintiffs failed to demonstrate the commonality requirement is satisfied."); *Coleman v. Jenny Craig, Inc.*, 2013 WL 6500457 (S.D. Cal. Nov. 2, 2013) (finding the plaintiff failed to establish that the commonality requirement was satisfied where there was "insufficient evidence that any alleged off the clock work was due to a uniform policy or practice"). Further, and as noted above, Plaintiff Jahagirdar does not, and cannot, provide evidence as to what occurred 300 miles away in the Asheville stores.

### c. South Carolina

Plaintiffs identify Kamri Norris, Rakia Green, and Allen Allen as the representatives of the South Carolina class. *See* Motion, at 3-4. Norris worked for CityMac at its Myrtle Beach, South Carolina location from October of 2018 through March of 2020. *See* Motion, at 4. Green worked for CityMac at its Myrtle Beach location as a quick-fix technician and a repair technician from December of 2017 through December of 2019. *See* Motion, at 4. Allen worked for CityMac at its Myrtle Beach location as a sales associate and an assistant store manager for a few months in 2017 and then in 2019 through March of 2020. Motion, at 5.

In their TAC, Plaintiffs allege multiple violations of South Carolina's wage-and-hour laws, including failure to pay employees for all hours worked, failure to pay overtime, wrongful

21

withholdings of pay and commissions, failure to provide notice as to changes of wages, and record-keeping violations. TAC, ¶¶ 292-303. As with all of the proposed state classes, Plaintiffs have offered only the deposition testimony of the named South Carolina representatives in support of their Motion, and more "cursory assertions" that the named plaintiffs' own beliefs were shared across every employee in the state. As such, Plaintiffs have failed to satisfy their burden of demonstrating that the commonality and typicality requirements of Fed. R. Civ. P. 23(a) have been met.

Moreover, and as explained in Section IV.C.2 below, several of Plaintiffs' South Carolina claims do not appear to be cognizable under state law, meaning that, even if the Named Plaintiffs' allegations were true, South Carolina law would not support any recovery. Thus, there are not common legal and factual issues that would resolve the controversy, and class certification must be denied.

### d. Washington

Plaintiff Blais is named as the sole representative of the Washington state class. Blais worked as a sales advocate at CityMac's Burlington, Washington location from June of 2019 through March of 2020. Motion, at 6.

The Washington-based claims include alleged unpaid minimum wage, unpaid overtime, commissions and final pay that were purportedly withheld, and alleged failure to provide meal periods and rest periods. TAC, ¶¶ 175-210. The only evidence that Plaintiffs have offered in support of their Motion is Blais' deposition testimony, with the by now familiar conclusions as to the injuries of the class. *See* Motion, at 6-7, 22-26.

Blais' testimony, however, confirms that he did not, in fact, experience the majority of the violations of Washington law that Plaintiffs allege. *See* Blais Depo., attached as **Exhibit 7**. Specifically, Blais testified that:

- He never worked off-the-clock and understood that off the clock work was against CityMac policy. Blais Depo. (Ex. 7), at 38:18-39:12, 46:16-19, 65:11-19, 73:14-25;

- He cannot identify any pay periods for which he was paid less than the minimum wage and does not know if anyone else was paid less than minimum wage. Blais Depo. (Ex. 7), at 92:22-93:3, 131:7-132:11 (Blais stating that he assumes he was never paid less than minimum wage, but he "cannot speak for anybody else that is on part [sic] with this class action suit.");

- In the rare instance that he noted an inaccuracy in his time record, it was quickly corrected by Human Resources. Blais Depo. (Ex. 7), at 39:14-40:17; 47:21-48:21;

- He either took a duty-free meal period for which he clocked out, or instead stayed on the clock during a meal period and was thus compensated for that time. *See* Blais Depo. (Ex. 7), at 83:13-85:16;

- He cannot identify a single unlawful deduction that was ever taken out of his pay. Blais Depo. (Ex. 7), at 85:17-21; 89:4-92:21, 93:4-10, 94:13-96:22; 134:9-12.

- He cannot identify any instance where he earned a commission but was not paid for it, Blais Depo. (Ex. 7), at 105:2-16, 111:1-7 ("I don't know if I have earned a commission that I have not been paid.), 112:2-113:9.

7383681v.7

Thus, even the class representative has disclaimed ever having suffered from the majority of the violations that Plaintiffs claim in their TAC.[7]  Blais' claims are not, therefore, typical of the class he seeks to represent and class certification *must be denied. See e.g., Troche v. Bimbo Foods Bakeries Distribution, Inc.,* 2015 WL 5098380, at *5 (W.D.N.C. Aug. 31, 2015) (concluding that typicality was not met due to the named Plaintiff testifying "in several instances to facts that contradict his claims presented on behalf of the proposed class."). Moreover, Blais cannot establish that he even has standing to bring represent the class.  "To have Article III standing, the plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class." *Mayor of Baltimore v. Actelion Pharms. Ltd.*, 2021 WL 1376980, at *8 (4th Cir. Apr. 13, 2021 (citing *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).

Blais' testimony further confirms that CityMac could not possibly have had any common policy or practice of violating Washington's wage-and-hour laws in a manner that affected all of CityMac's Washington employees; Blais himself worked at one of CityMac's Washington stores and did not suffer from the claimed violations. As with Jahagirdar's North Carolina claims, there is also no evidence to suggest that Blais' experience in the Burlington, Washington store has any relation to employees who worked in the other Washington location. *See generally* Blais Depo., (Ex. 7), at 73:16-20 (Blais referring to the fact that CityMac had two Washington locations); Ex. 8, at 11 (another employee referring to both of CityMac's Washington locations).

In addition, nearly a dozen members of the proposed Washington class have submitted sworn statements confirming that they never experienced any of the violations of Washington law that have been alleged in Plaintiffs' TAC. These individuals explained that, while working for

---

[7] It should be noted that the TAC was filed well *after* Blais' deposition.

24

CityMac at its Washington locations, they were always paid at least the required minimum wage, were paid for any overtime that they worked, received their meal periods and rest periods, and received any commissions that they had earned. Washington Declarations, attached as **Exhibit 8.** Thus, Plaintiffs have presented no evidence to support a finding of commonality or a finding that Blais' claims are typical of the claims of the claims of the proposed Washington class. To the contrary, the evidence in fact demonstrates that CityMac did not have any policies or practices of engaging in the violations of Washington law that have been alleged.

### e. Colorado

Plaintiff Johnson is the named representative for the Colorado class. Johnson worked in sales, teaching, and in the IT/service Department at CityMac's Colorado Springs location from October of 2017 through March of 2019. Motion at 7.

Plaintiffs' Colorado-based claims include alleged meal and rest break violations, failure to pay minimum wage and overtime, and purported unlawful deductions from employees' pay. Motion, at 27-31; TAC, ¶¶ 249-291 (Plaintiffs' Colorado-based claims). Again, the only evidence provided in support of certification of a Colorado class is Johnson's deposition testimony, coupled with unsupported allegations on behalf of the putative class. However, as is true of Washington representative Blais[8], Johnson confirmed that he never suffered from the vast majority of the violations alleged in the TAC, and he therefore lacks standing to represent the Colorado class. *Mayor of Baltimore,* 2021 WL 1376980, at *8.

---

[8] As with Blais, Plaintiffs' TAC was filed after Plaintiff' Johnson's deposition.

Specifically, Johnson testified that he took meal periods as required by law every day of his employment. *Compare* Johnson Depo., attached as **Exhibit 9** at 50:13-17, 56:10-17 *with* TAC ¶¶ 281-284 (alleging a violation of Colorado's meal period law). He also testified that he was given every rest break that he requested, which is sufficient to comply with Colorado's statute requiring only that employers "authorize and permit" rest breaks, 7 CCR 1103-1, §5.2. *Compare* Johnson Depo. (Ex. 9), at 58:3-11, 60:4-14 *with* TAC, ¶¶ 285-287 (alleging a failure to provide rest breaks as required by Colorado law). Thus, Plaintiffs have put forth no evidence to demonstrate that Johnson, or any other member of the potential class, suffered from a violation of Colorado's meal and rest break laws; much less that CityMac had any common policy or practice of denying Colorado employees meal and rest breaks.

The same is true of Plaintiffs' contention that CityMac failed to pay its Colorado employees the required minimum wage. Johnson confirmed that he was always paid at least Colorado's minimum wage and could not identify any pay periods where he did not receive minimum wage pay. Johnson Depo. (Ex. 9), at 62:18-63:7. Similarly, while Plaintiffs have alleged that CityMac had a policy of unlawfully taking deductions from employees' pay for unspecified "certain costs," (TAC, ¶¶ 288-291), the only evidence they have provided in support of that contention is Johnson's deposition testimony, which confirms that CityMac never deducted costs from his pay. *Compare* Johnson Depo. (Ex. 9), at 70:19-73:12 (Johnson failing to identify any costs that he contends were deducted from his pay and confirming that "bad returns" or "charge-backs" were never taken out of his pay) *with* TAC ¶¶ 288-291; *see also Deiter v. Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir. 2006) (concluding that typicality was not satisfied where the Plaintiff's "argument was made at an unacceptably general level," and examination of the facts reveals "meaningful differences" between Plaintiff's claims and those of the putative class members.").

26

Further undercutting any argument that commonality and typicality are met is the fact that a member of the potential class for Colorado, Amber Curran, has provided a sworn statement confirming that she did not experience any of the Colorado wage-and-hour violations that Plaintiffs have asserted in this case. Colorado Declaration, attached as **Exhibit 10**. In sum, Plaintiffs have utterly failed to meet their burden of satisfying Fed. R. Civ. P. 23(a)'s commonality and typicality requirements as to their proposed Colorado class. Indeed, even the Named Plaintiff has disclaimed the majority of the claims alleged in the TAC, and an additional member of the proposed Colorado class confirmed that she did not experience any of the wage-and-hour violations that Plaintiffs assert. *E.g., Troche v. Bimbo Foods Bakeries Distribution, Inc.*, 2015 WL 5098380, at *5 (W.D.N.C. Aug. 31, 2015) ("Plaintiff's conclusory explanation of the typicality of his claims, combined with the evidence offered by Defendant establishing inconsistencies between Plaintiff's claims and those of the class members, indicate that the typicality requirement is not satisfied in this case.").

### f. Oregon

Plaintiffs allege violations of Oregon law, including for CityMac's alleged failure to pay overtime and minimum wages, failure to pay wages upon termination, unlawful deductions, and violations of Oregon's meal and rest break requirements. TAC, ¶¶ 211-248. The proposed representative, Plaintiff Free, worked for CityMac at its Oregon location as a service technician from January of 2016 through November of 2018. Motion at 9. Plaintiffs have offered only Free's deposition testimony in support of their arguments for certifying an Oregon class. Motion, at 9, 31-35. However, just like Plaintiffs Blais and Johnson, Free's testimony contradicts the alleged class claims. *See* Free Depo., attached as **Exhibit 11.** Free testified as follows:

- He knew that it was against company policy to perform any work off-the-clock, and if he ever did so, it was only in rare instances for the span of roughly five minutes. When this occurred, he never told anyone at CityMac about it or asked to have his hours adjusted. Free Depo. (Ex. 11), at 32:18-34:6, 44:20-22, 45:7-46:16, 67:13-71:25;

- He regularly reviewed his time records to ensure that they were accurate. Free Depo. (Ex. 11), at 49:20-50:16;

- He never had a "bad return" deducted from his pay;[9] nor is he aware of any other unlawful deductions ever being taken out of his pay. Free Depo. (Ex. 11), at 79:4-80:23;

- He cannot identify any instances when he worked over 40 hours in a week but did not receive overtime pay. Free Depo. (Ex. 11), at 64:4-66:9.

As was true of Plaintiffs' claims under the other states' laws, Plaintiffs have not met their burden of establishing that commonality and typicality are met for the Oregon class. Free's testimony (the only evidence that Plaintiffs have put forth), establishes that he did not experience most of the violations that Plaintiffs included in their TAC and that the ones he did purportedly experience were de minimus. Free's claim therefore cannot said to be typical of the potential class members' claims for violations of these laws. *See e.g., Troche,* 2015 WL 5098380, at *5 (finding that typicality was not met due to the named Plaintiff testifying "in several instances to facts that contradict his claims presented on behalf of the proposed class.").

---

[9] In the TAC, Plaintiffs allege that "Defendants made unlawful deductions from Plaintiffs' wages allegedly based on 'bad returns' from Employer Defendants' customers that Plaintiffs accepted as part of their job duties." TAC, ¶ 75.

### g. Summary

In summary, Plaintiffs cannot satisfy the burden of showing commonality or typicality in any of the state classes. Even where the Named Plaintiffs' testimony actually matches the allegations in the TAC, there is no evidence to show a common policy, nor that the legal claims and injuries alleged are shared by any member of the putative class. In other words, not only are the Named Plaintiffs improper representatives of the proposed state classes, there is no evidence that a class exists at all. Accordingly, Plaintiffs' Motion should be denied.

7383681v.7

### C. Plaintiffs Are Similarly Unable to Satisfy Their Burden Under Fed. R. Civ. P. 23(b)

To certify a class under Rule 23(b)(3), as Plaintiffs have proposed, the court must also find (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

#### 1. Class certification is not appropriate because common issues of law do not predominate

The predominance inquiry tests whether the interests of a proposed class action are sufficiently cohesive to warrant class treatment and is far more demanding than the commonality requirement of Rule 23(a). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). In order to determine whether common questions predominate, courts consider dissimilarities between class members' claims. *Wal-Mart Stores v. Dukes,* 546 U.S. 338, 359 (2011). Where a proposed class action involves multiple states' laws, including where subclasses are proposed, the court's rigorous analysis must account for the impact that varying state laws could have on the action as a whole. *See Castano v. American Tobacco Company*, 84 F.3d 734, 741 (5th Cir. 1996). A critical question is whether "variations in state law [] swamp any common issues and defeat predominance," *Id.*; *see also Todd v. XOOM Energy Maryland, LLC,* 2020 WL 4784767, at *12 (D. Md. Aug. 18, 2020); *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 97 (2d Cir. 2018). Indeed, the need to apply the law of multiple states to class members' claims weighs against certification:

> As a matter of general principle, the predominance requirement of Rule 23(b)(3) will not be satisfied if the trial court determines that the class claims must be decided on the basis of the laws of multiple states. . . . The application of multiple state laws to the action works to defeat predominance because the legal issues no longer pose a common question. . . . [T]he district court is required to determine

30

which law will apply before making a predominance determination and plaintiff
has the burden to show that variations in state law do not defeat predominance.

*Parker v. Asbestos Processing, LLC,* 2015 WL 127930, at \*12 (D.S.C. Jan. 8, 2015) (D.S.C. Jan.

8, 2015) (quoting Wright & Miller § 1780.1).

To satisfy the predominance requirement in multi-state actions, Plaintiffs carry the burden
to provide a comprehensive analysis of the relevant state laws to prove that common issues of law
predominate across claims. *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 370 (4th Cir. 2004).
*See also Walsh v. Ford Motor Co.,* 807 F.2d 1000, 1017 (D.C. Cir. 1986) ("Plaintiffs bear the
burden of providing an "extensive analysis" of the laws of the interested jurisdictions showing that
variations among the applicable state laws do not pose "insuperable obstacles" to class
certification."); *Martin v. Mountain State Univ., Inc.,* 2014 WL 1333251, at \*4 (S.D.W. Va. Mar.
31, 2014) ("The likelihood that multiple states' laws would apply to this class action in conjunction
with the fact that plaintiff has provided no analysis of these states' laws signifies that plaintiff has
not shown predominance and superiority."). The burden to analyze and compare the relevant laws
is not light; courts have held that a summary of laws is not sufficient, and that Rule 23 calls for an
"extensive analysis" by plaintiffs to show that certification of multiple state classes is feasible.
*Barrus v. Dick's Sporting Goods, Inc.,* 732 F. Supp. 2d 243, 254 (S.D.N.Y. 2010).

This burden applies even where only a few states' laws are implicated and even where
plaintiffs propose subclasses. For example, in *Gariety*, the Fourth Circuit held that plaintiffs could
not show common issues of law predominated where plaintiffs would be proceeding under six
states' laws. *Gariety*, 368 F.3d at 370; *see also Castano,* 84 F.3d 734, 747 (5th Cir. 1996) (rejecting
eight subclasses). It is also applies where the differences among state laws appear to be small.
Bedrock choice of law principles require that a court must give effect to state law variations,

regardless of how minor they may be. *Erie R.R. v. Tompkins,* 304 U.S. 64, 78 (1938); *See also Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 409 (4th Cir. 2015) ("Where a federal court addresses state law claims under its pendent jurisdiction, the court must apply state law to those issues."). As the Sixth Circuit has explained, the laws "[may] differ among the states only in nuance, . . . [b]ut nuance can be important, and its significance is suggested by a comparison of differing state pattern instructions on negligence and differing judicial formulations." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996).

### 2. The Differences in State Laws are Extensive

Plaintiffs have abjectly failed to meet their burden of showing there are no variations in state law that would render class treatment appropriate. In fact, despite proceeding under a bevy of state claims via the "shotgun approach," Plaintiffs have offered no explanation of the laws whatsoever. Rather, Plaintiffs have only made unadorned citations to statutes and repeated their conclusory allegations from the TAC. However, Rule 23 "does not set forth a mere pleading standard," and such allegations cannot satisfy the rigorous analysis required by this Court. *Comcast Corp. v. Behrend,* 569 U.S. 27, 33 (2013); *Dukes,* 564 U.S. at 351.

If Plaintiffs had provided a cohesive analysis of the many state laws implicated, it would be clear that class treatment is not proper because there are significant differences between the laws. For example[10], a central question as to some of the state law claims is whether Defendants violated meal and rest break requirements. Not only does this issue bear no relation to the common questions of law under the FLSA, the states' treatment of these issues are far from uniform. For

---

[10] These examples are provided as illustrative and are in no way an exhaustive list of the many substantive variations in the laws alleged. Indeed, the burden to analyze those differences lies with the Plaintiffs, who have not even attempted to satisfy it.

example, Washington employees must be permitted to take a meal break for shifts over five hours, but can waive their right to a meal break, although they cannot waive a rest break. *Pellino v. Brink's Incorporated*, 164 Wash. App. 668, 697 (Wash. Ct. App. 2011). Employees in Oregon receive a meal break for every six hour shift and cannot waive meal breaks, but employers with only a few number of employees at a location can state an affirmative defense to the mandate. *Maza v. Waterford Operations, LLC*, 455 P.3d 569, 574 (Or. App. Ct. 2019); Or. Admin. R. 839-020-0050. Colorado permits employees to waive rest breaks, but has not squarely addressed the waiver issue as to meal breaks, so it remains an open question. Thus, not only would this inquiry mandate an individual analysis of whether each class member waived meal or rest breaks, a jury would need to vary the analyses state by state.

Additionally, Plaintiff's claims for "commissions promised" will inherently rely on common law contract principles, meaning that state laws of contract formation and interpretation must be applied individually to determine what, if any, commissions are owed. *See Willis v. Champlain Cable Corp.*, 109 Wn. 2d 747, 751 (Wash. 1988) ("The right to commissions is dependent upon the terms of the contract."); *Rice v. Multimedia, Inc.*, 318 S.C. 95, 100 (S.C. 1995) (holding employee commissions payments are set forth by agreement). This is true even if Plaintiffs seek to recover commissions as earned wages under state statutes: each plaintiff must still prove that he or she was promised payments under a binding agreement, that all conditions precedent were met, and so on. *See e.g., Baker v. Response Team 1 Holdings, LLC,* 2018 WL 4252938, at *4 (D.S.C. Sept. 6, 2018) (interpreting compensation agreements to determine whether wages were earned under South Carolina Wage Act); *Kirkland v. Robert W. Baird & Co.,* 2020 WL 1452165, at *8 (D. Colo. Mar. 25, 2020) ("In order to establish a violation of the CWCA, Mr. Kirkland must show he was owed commissions that were earned, vested, and determinable under

33

the terms of the Offer and the parties' course of conduct at the time of his August 2, 2018 termination."). Multi-state contract claims do not lend themselves to class action treatment. *See Parks Automotive Group, Inc. v. General Motors Corp.*, 237 F.R.D. 567, 572 (D.S.C. 2006) ("[plaintiff] may bring suit to interpret its own []Agreement, but it cannot sue on behalf of a class [] whose contracts may well involve the law of several different states." ); *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998) ("plaintiffs simply cannot advance a single collective breach of contract action on the basis of multiple different contracts.") In this case, the Court would be required to wade into Defendants' policies and compensation plans and/or agreements under the each state's contract law and then determine whether each class member was entitled to payment that was not received.

Accordingly, Plaintiffs cannot simply apply one standard or even one set of standards to the panoply of statutory and common law claims. Moreover, threshold issues preclude class treatment as to several of Plaintiff's alleged claims, which do not appear to be cognizant at all. *See Barrus v. Dick's Sporting Goods, Inc.*, 732 F. Supp.2d 243, 250 (S.D.N.Y. 2010) (denying certification where claims were legally flawed). For example, Plaintiffs have alleged that they are entitled to overtime and minimum wage payments under North and South Carolina laws. However, the South Carolina does not mandate minimum wage or overtime pay[11] and North Carolina law

---

[11] It would appear that Plaintiffs have neglected to do even basic research into several of the claims they purport to allege. For instance, Plaintiff's portrayal of South Carolina's Wage Payment Act is grossly mistaken. The Act does not mandate a minimum wage or overtime, nor does it entitle an employee to wages, and generally requires only that employees are informed of their pay, are paid whatever wages are owed, and receive payment in legal tender. S.C. Code Ann. § 41-10-10, *et. seq. See also In re Lowe's Companies, Inc. Fair Lab. Standards Act & Wage & Hour Litig.,* No., 2021 WL 374976, at *20 (W.D.N.C. Feb. 3, 2021) (holding that South Carolina does not have substantive wage or overtime laws). Similarly, employers subject to the FLSA are exempt from North Carolina's wage and hour laws under N.C. Gen. Stat. 95-25.14. Accordingly, Plaintiffs cannot possibly prove liability for overtime wages in North or South Carolina.

34

exempts employers subject to the FLSA[12]. Similarly, the NCWHA's recordkeeping requirements do not apply and neither state appears to provide a remedy for an employee receiving inaccurate wage statements. *See* N.C. Gen. Stat. 95-22.22, S.C. Code Ann. § 41-10-10, *et. seq.*

Where, as here, there are potentially dozens of statutory schemes and common law issues at play and plaintiffs have failed to meet their burden to show that common issues predominate over the action, the Court must conclude that class treatment is improper.

### 3. The Class Action will not provide a superior method of resolution

Plaintiffs must also demonstrate that class action resolution is "superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3). As part of the superiority inquiry, courts consider the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(D). The manageability consideration "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974). The court "must also consider how a trial on the merits would be conducted if the class were certified." *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 724 (5th Cir. 2007) (quoting *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 740 (5th Cir.1996)). *See also Robinson v. Texas Automobile Dealers Ass'n*, 387 F. 3d 416, 425 (5th Cir. 2004) ("The district court abused its discretion by finding that this class action is the superior method for adjudicating this controversy and by not conducting any kind of analysis or discussion regarding how it would administer the trial.").

---

[12] Nor does North Carolina's "payday" law provide a backdoor for overtime pay relief. *See Torres-Tinajero v. Alpha Constr. of the Triad, Inc.,* No. 1:18CV160, 2019 WL 3317351, at *3 (M.D.N.C. July 24, 2019) (citing *Lima v. MH & WH, LLC,* No. 5:14-CV-896-FL, 2019 WL 2602142, at *13 (E.D.N.C. Mar. 8, 2019) ("[A]llowing plaintiff to recover overtime wages under the NCWHA, through the avenue of a 'payday' claim under § 95-25.6, would render meaningless the exemption for overtime claims in § 95-25.14(a).").

The differences in state law and the varying standards that apply across Plaintiffs' proposed claims, not to mention the conflicts with the Named Plaintiffs' testimony and the claims alleged, will make the class impossible to manage and defeat efficiency and fairness. *See In re Stucco Litigation*, 175 F.R.D. 210, 217 (E.D.N.C. 1997). Courts have found that where plaintiffs seek to pursue a "panoply of state law claims" in a Rule 23 class, the necessary "application of [the] varying standards in a single case, and the need to resolve disputes as to the correct state law interpretation of many of these standards, would inject intractable case management problems into the case and guarantee that no common issue would predominate." *Barrus,* 732 F. Supp.2d at 250.

As noted above, courts must follow the law of the state and cannot merge or combine various state laws for a jury. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996); *Matter of Rhone Poulenc Rourer,* 51 F.3d 1293, 1300 (7th Cir. 1995). Jury instructions must "adequately inform the jury of the controlling legal principles without misleading or confusing[.]" *Spell v. McDaniel*, 824 F.2d 1380, 1395 (4th Cir. 1987). Thus, where extensive instructions on differing laws would create "an impossible task" for the court and "baffle a jury," class treatment is not a superior platform for claims. *In re Am. Med.,* 75 F.3d at 1085; *In re Stucco Litigation,* 175 F.R.D. 210, 216 (E.D.N.C. 1997). This is exactly the case in the instant action, where a jury would need be instructed not only on federal laws applicable to the FLSA class, but also on the separate statutory schemes, and likely common law elements, of potentially dozens of issues and claims across five states, including affirmative defenses to specific claims (such as the Colorado waiver defense described above and statutes of limitations issues), and varying damages standards. The sheer breadth and number of such instructions epitomize the "impossible task" described in *In re American Med.* and render the proposed class action unmanageable.

36

Nor does a suggested use of subclasses resolve the insurmountable management problem. Rather, courts have explicitly recognized that "[t]he creation of a number of subclasses in a Rule 23(b)(3) suit may defeat the superiority requirement." *Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs.,* Inc., 601 F.3d 1159, 1184 (11th Cir. 2010) (internal citations and quotations omitted). *See also In re Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir.) (rejecting subclasses where plaintiffs failed to meet burden of showing a "manageable trial plan" to deal with state law variances); *Sacred Heart, Inc.*, 601 F.3d 1159, 1176 (11th Cir. 2010) (rejecting six proposed subclasses on grounds that the necessity of subclasses "indicate[s] that common questions do not predominate"); *Harding v. Tambrands Inc.,* 165 F.R.D. 623, 630 (D.Kan.1996) ("The potential for numerous different subclasses weighs against a finding of predominance of common issues."); *Aqua Dots Prod. Liab. Litig.,* 270 F.R.D. 377, 386 (N.D. Ill. 2010) (rejecting subclasses where state laws were varied); *Barrus*, 732 F. Supp. 2d at 254 (W.D.N.Y. 2010) (rejecting subclasses where plaintiffs failed to meet burden of showing that they were feasible under varied laws); *Aquilino v. Home Depot U.S.A.*, Inc., 2006 WL 2023539, at *3 (D.N.J. July 17, 2006) (the necessity of subclasses "is compelling evidence that there is no commonality of facts, and that state law is predominant"). Moreover, in the instant case, Plaintiffs cannot simply proceed with a separate class for each state, as differing claims and limitations periods apply to employees within the class. For example and as shown above, not all of the putative class members were eligible to receive commission payments, so it is not possible to simply lump putative class members by state as Plaintiffs have proposed. This further complicates the action and makes class treatment inappropriate, as a lack of uniformity within classes and need for multiple subdivisions renders "little value left in a class action[.]" *Sacred Heart,* 601 F.3d at

37

1184 (11th Cir. 2010). Accordingly, the proposed class action is not manageable and Rule 23 does not provide a superior method of resolving the disputes.

## V. CONCLUSION

The Supreme Court has unequivocally held that a party seeking class certification must "affirmatively demonstrate" compliance with each requirement of Rule 23 and that certification is proper only where the court determines after conducting a "rigorous analysis" that all requirements have been met. Plaintiffs have abjectly failed to "affirmatively demonstrate" the prerequisites for class certification and cannot even establish that their class definitions are justified, nor that there will be sufficient individuals in the classes. Further, what little evidence they have submitted is self-serving and provides no basis to show that even the Named Plaintiffs suffered the injuries alleged, much less any putative class member. Indeed, several putative class members have submitted sworn declarations showing that they were not, in fact, subject to the alleged wage and hour violations. Plaintiffs have also failed to make the procedural offerings required under Rule 23 and have not provided any plan to manage the far-ranging claims at trial.

Accordingly, Plaintiffs have fallen far short of meeting their affirmative burden under Rule 23 and the Motion for Class Certification should be denied.

This the 6th day of May, 2021.

/s/ Jonathan W. Yarbrough
Jonathan W. Yarbrough
N.C. State Bar No. 21316
CONSTANGY, BROOKS,
SMITH & PROPHETE, LLP
84 Peachtree Road, Suite 230
Asheville, NC 28803
Telephone: (828) 277-5137
Facsimile: (828) 277-5138
jyarbrough@constangy.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date a copy of the foregoing **DEFENDANTS'**

**RESPONSE TO PLAINTIFFS' MOTION FOR RULE 23 CLASS CERTIFICATION** with

the Clerk of the Court using the CM/ECF system which will send notification of such filing to the

following:

L. Michelle Gessner, NCSB
michelle@mgessnerlaw.com

Nicole Katherine Haynes
nicole@mgessnerlaw.com

John Grover Hutchens, III
johnny@mgessnerlaw.com

This the 6th day of May, 2021.

/s/ Jonathan W. Yarbrough
Jonathan W. Yarbrough
N.C. State Bar No. 21316
CONSTANGY, BROOKS,
SMITH & PROPHETE, LLP
84 Peachtree Road, Suite 230
Asheville, NC 28803
Telephone: (828) 277-5137
Facsimile: (828) 277-5138
jyarbrough@constangy.com

39