SHAILESH JAHAGIRDAR, ALLEN ALLEN, KAMRI NORRIS, JORDAN BLAIS, CONNOR JOHNSON, RAKIA GREEN, and ANDREW FREE, on behalf of themselves and all others similarly situated,

                    Plaintiffs,

v.

THE COMPUTER HAUS NC, INC. d/b/a CITYMAC, a North Carolina Corporation, and TROY CURRAN, an individual, OCEAN TECH, INC. d/b/a CITYMAC, a Delaware corporation, ZEPHYR INVESTMENTS, INC. a Washington corporation, TS LEASING, L.L.C., a Washington limited liability company, GREEN VAULT, INC., A Washington corporation, CURRAN RANCH,, NORTHERN PASSAGE, INC.,  SALISH SEA, LLC, and CURRAN HOLDINGS, LLC  a Delaware Corporation, CURRAN BROTHERS, LLC, a Michigan Corporation, OCEAN DANCE, a Cayman Islands foreign registered entity, BRANDY CURRAN, an individual, AMBER CURRAN, an individual, and MARK CURRAN, an individual.

                    Defendants.

**JURY TRIAL DEMANDED**

**PROPOSED**

**FOURTH AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**

COMES NOW Plaintiffs, Shailesh Jahagirdar, Allen Allen,  Kamri Norris, Jordan Blais, Connor Johnson, Rakia Green, and Andrew Free, on behalf of themselves and all others similarly situated, by and through undersigned counsel, and file this Amended Complaint as follows:

Plaintiffs bring this action, on behalf of themselves and other similarly situated, to recover unpaid wages, commissions, compensatory damages, liquidated damages, and attorneys'

fees from Defendants, The Computer Haus NC, Inc. dba CityMac and Troy Curran (collectively, "Employer Defendants") for violations of the Fair Labor Standards Act (hereinafter "FLSA"), 29 U.S.C. § 201 *et seq.*

Plaintiff Jahagirdar, on behalf of himself and others similarly situated, who worked for Employer Defendants in North Carolina, brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, for violations of the North Carolina Wage and Hour Act ("NCWHA"), N.C.G.S. §§ 95-2.1 *et seq.* Plaintiff Jahagirdar, on behalf of himself only, brings individual claims against Employer Defendants for retaliation in violation of FLSA, malicious prosecution, abuse of process, and tortious interference with prospective economic advantage and intentional infliction of emotional distress.

Plaintiffs Blais on behalf of himself and others similarly situated, who worked for Employer Defendants in Washington, brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, to remedy violations of the Washington Minimum Wage Requirements and Labor Standards Act ( "WMWA'"), R.C.W. §§ 49.46.005, *et seq.* and supporting Washington State Department of Labor and Industries Regulations.

Plaintiff Johnson, on behalf of himself and others similarly situated, who worked for Employer Defendants in Colorado, brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, to remedy violations of Colorado's Minimum Wage Law ("CMWL"), C.R.S. 8-6-101, et seq., the Colorado Wage Act ("CWA"), C.R.S. §§ 8-4-101, *et seq.* and Colorado Wage Order No. 22, 7 c.C.R. 1103, C.C.H. 6-41,801, *et seq.*

Plaintiffs Allen, Green, and Norris, on behalf of themselves and others similarly situated, who worked for Employer Defendants in South Carolina, bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure to remedy violations of the South Carolina Payment of

Wages Act, S.C. Code Ann. §§ 41-10-10, *et seq*.

Plaintiff Free on behalf of himself and others similarly situated who worked for Employer Defendants in Oregon, bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, to remedy violations of Oregon Conditions of Employment Laws, O.R.S. §§ 651.010 and Oregon Administrative Rules, O.A.S. §§ 839-020-0030,0800, *et seq*.

Plaintiffs, on behalf of themselves and others similarly situated, bring this action against Defendant Ocean Tech dba CityMac as a successor in interest to Defendant Computer Haus, as an alter ego of Curran and, as an employer of any members of the Rule 23 Washington Class who worked directly for Ocean Tech dba CityMac.

Plaintiffs, on behalf of themselves and others similarly situated, also bring this action against Defendants Zephyr Investments, Inc., TS Leasing, LLC, Curran and Company, LLC Green Vault, Inc., Curran Ranch, Curran Family Properties, LLC, Northern Passage, LLC, Curran Holdings, LLC and Salish Sea, LLC (collectively with Defendant Ocean Tech dba CityMac) "Alter Ego Defendants") as alter egos of Curran and seek to reverse-pierce the web of corporate veils Curran has constructed to avoid personal liability.

## NATURE OF ACTION

1. Plaintiffs allege on behalf of themselves and all others similarly situated and former non-exempt hourly employees of Employer Defendants, who elect to opt-in to this action pursuant to the collective action provision of 29 U.S.C. § 216(b) (the "Collective Action Members") that Employer Defendants violated the FLSA by failing to pay minimum wage, promised commissions, and overtime compensation in violation of pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq.*, specifically 29 U.S.C. §§ 207, 216(b).

2. Plaintiff Jahagirdar further complains, pursuant to Federal Rule of Civil

Procedure 23, on behalf of themselves, individually, and all similarly situated current and former non-exempt hourly employees of Employer Defendants, regardless of title, who work or worked in the state of North Carolina (the "North Carolina Class") that Employer Defendants violated the NCWHA by failing to timely pay Plaintiffs and the North Carolina Class all promised and earned wages for all hours worked.

3.     Plaintiff Blais further complains, pursuant to Federal Rule of Civil Procedure 23, on behalf of themselves, individually, and all similarly situated current and former non-exempt hourly employees of Employer Defendants, regardless of title, who work or worked in the state of Washington (the "Washington Class") that Employer Defendants violated the WMWA by failing to timely pay Plaintiffs and the Washington Class all promised and earned wages for all hours worked.

4.     Plaintiff Johnson further complains, pursuant to Federal Rule of Civil Procedure 23, on behalf of himself individually, and all similarly situated current and former non-exempt hourly employees of the Employer Defendants, regardless of title, who work or worked in the state of Colorado (the "Colorado Class") that Employer Defendants violated the CWA by failing to timely pay Plaintiffs and the Colorado Class all promised and earned wages for all hours worked.

5.     Plaintiffs Allen, Green and Norris, further complain, pursuant to Federal Rule of Civil Procedure 23, on behalf of themselves, individually, and all similarly situated current and former non-exempt hourly employees of Employer Defendants, regardless of title, who work or worked in the state of South Carolina (the "South Carolina Class") that Employer Defendants violated the Payment of Wages Act by failing to timely pay Plaintiffs and the South Carolina Class all promised and earned wages for all hours worked.

6.     Plaintiff Free further complains, pursuant to Federal Rule of Civil Procedure 23, on behalf of themselves, individually, and all similarly situated current and former non-exempt hourly employees of Employer Defendants, regardless of title, who work or worked in the state of Oregon (the "Oregon Class") that Employer Defendants violated Oregon Rev. Stat. §§ 653.010, *et seq.* by failing to timely pay Plaintiffs and the Oregon Class all promised and earned wages for all hours worked.

## THE PARTIES

7.     Plaintiff Shailesh Jahagirdar is an adult individual who is a resident of Wilmington, North Carolina, and worked as a non-exempt hourly employee for Employer Defendants from July 1, 2019, to August 10, 2019, and then from September 20, 2019 to November 25, 2019, at Employer Defendants' retail store located in Wilmington, NC. A written consent form for Jahagirdar was previously filed with the court at ECF No. 8, pursuant to 29 U.S.C. § 216(b).

8.     Plaintiff Allen Allen is an adult individual who is a resident of Myrtle Beach, South Carolina and worked as a non-exempt hourly employee for Employer Defendants from May 6, 2019 to March of 2020 at Employer Defendants' retail store located in Myrtle Beach, SC. A written consent form for Allen was previously filed with the court at ECF No. 18, pursuant to 29 U.S.C. § 216(b).

9.     Plaintiff Kamri Norris is an adult individual who is a resident of Myrtle Beach, South Carolina and worked as a non-exempt hourly employee for Employer Defendants from October 1, 2018 to March of 2020 at Employer Defendants' retail store located in Myrtle Beach, SC. A written consent form for Norris was previously filed with the court at ECF No. 19, pursuant to 29 U.S.C. § 216(b).

10.    Plaintiff Jordan Blais is an adult individual who is a resident of Sedro Wooley, Washington and worked as a non-exempt hourly employee for Employer Defendants from June 10, 2019 until March of 2020 at Employer Defendants' retail store located in Bellingham, WA. A written consent form for Blais was previously filed with the court at ECF No. 27, pursuant to 29 U.S.C. § 216(b).

11.    Plaintiff Connor Johnson is an adult individual who worked as a non-exempt hourly employee for Employer Defendants from November 10, 2017 to March 12, 2020 at Employer Defendants' retail store located in Colorado Springs, CO. A written consent form for Johnson was previously filed with the court at ECF No. 45, pursuant to 29 U.S.C. § 216(b).

12.    Plaintiff Rakia Green is an adult individual who is a resident of Myrtle Beach, South Carolina and worked as a non-exempt hourly employee for Employer Defendants from December 4, 2017 to Employer December 24, 2019, at Defendants' retail store located in Myrtle Beach, SC.  A written consent form for Green was previously filed with the court at ECF No. 64, pursuant to 29 U.S.C. § 216(b).

13.    Plaintiff Andrew Free is an adult individual who is a resident of Damascus, Oregon and worked as a non-exempt hourly employee for Employer Defendants from January 1, 2016 to November 9, 2018 at Employer Defendants' retail store located in Portland, OR.  A written consent form for Free was previously filed with the court at ECF No. 66, pursuant to 29 U.S.C. § 216(b).

14.    Defendant, The Computer Haus NC, Inc., dba CityMac ("CityMac") is a North Carolina corporation, which operates retail stores across the country including in North Carolina - Wilmington, Asheville, Biltmore Park, South Carolina - Myrtle Beach, Washington - Bellingham and Burlington, and Portland, Oregon, and Colorado Springs, Colorado.  CityMac's

principal place of business is registered with the North Carolina Secretary of State at 4 S. Tunnel Road, Suite 210, Asheville, North Carolina 28805.

15. Defendant, Troy Curran ("Curran"), is an officer of, and owns and operates, CityMac. Upon information and belief, Curran allocated compensation to employees, made wage payment decisions, set policy and practices regarding employee pay and made, and continues to make, hiring and firing decisions for CityMac.

16. Plaintiffs are informed and believe, and based upon such information and belief allege, that Employer Defendants, and each of them, are now and/or at all times mentioned in this Complaint were in some manner legally responsible for the events, happenings, and circumstances alleged in this Complaint.

17. Plaintiffs are further informed and believe, and based upon such information and belief allege, that at all times mentioned, Employer Defendants, and each of them, were and are the agents, servants, employees, joint venturers, alter egos, and/or partners of each of the other Employer Defendants, and were, at all such times, acting within the course and scope of said employment and/or agency; furthermore, that Defendant Curran, while acting as a high corporate officer, director, and/or managing agent, principal, and/or employer, expressly directed, consented to, approved, affirmed, and ratified each and every action taken by Defendant CityMac, as herein alleged and was responsible in whole or in part for the matters referred to herein.

18. Plaintiffs are further informed and believe, and based upon such information and belief allege, that at all times herein mentioned, Employer Defendants, and each of them, proximately caused Plaintiffs, the Collective Action Members, the North Carolina Class, the Colorado Class, the Washington Class, the South Carolina Class, and the Oregon Class to be

7

subjected to the unlawful practices, wrongs, complaints, injuries and/or damages alleged in this Complaint.

19.     Plaintiffs are further informed and believe, and based upon such information and belief allege, that Employer Defendants, and each of them, are now and/or at all times mentioned in this Complaint were members of and/or engaged in a joint venture, partnership and common enterprise, and were acting within the course and scope of, and in pursuit of said joint venture, partnership and common enterprise and, as such were co-employers of Plaintiffs, the Collective Action Members, the North Carolina Class members the Colorado Class, the Washington Class, the South Carolina Class and the Oregon Class.

20.     Plaintiffs are further informed and believe, and based upon such information and belief allege, that Employer Defendants, and each of them, at all times mentioned in this Complaint, concurred with, contributed to, approved of, aided and abetted, condoned and/or otherwise ratified, the various acts and omissions of each and every one of the other Employer Defendants in proximately causing the injuries and/or damages alleged in this Complaint.

21.     Defendant Ocean Tech dba CityMac Inc. ("Ocean Tech dba City Mac") is a Washington corporation operated by Defendant Curran whose nature of business, according to the Washington State Secretary of State, is "any lawful business" and which does business as CityMac. Ocean Tech's principal and registered address is 230 East Champion Street, Bellingham, WA 98225. Ocean Tech dba CityMac is an alter ego of Curran and a successor in interest to CityMac.

22.     Defendant Zephyr Investments, Inc. ("Zephyr") is a Washington corporation in the real estate investment business, operated by Defendant Curran. Zephyr's principal address is 3635 Haxton Way, Bellingham, WA 98226.  Zephyr's registered address is 230 East Champion

Street, Bellingham, WA 98225. Zephyr is an alter ego of Curran.

23.     Defendant TS Leasing, L.L.C. ("TS Leasing") is a Washington corporation in the equipment rental business, operated by Defendant Curran.  TS Leasing's principal address is 3635 Haxton Way, Bellingham, WA 98226.  TS Leasing's registered address is 230 East Champion Street, Bellingham, WA 98225.  TS Leasing is an alter ego of Curran.

24.     Defendant Green Vault, Inc. ("Green Vault") is a Washington corporation that was administratively dissolved on or about February 7, 2019.  Green Vault's principal and registered address is 3635 Haxton Way, Bellingham, WA  98226.  Upon information and belief, Defendant Curran was an agent/officer of this company. Green Vault is an alter ego of Curran.

25.     Defendant Curran Ranch, LLC ("Curran Ranch") is a private horseback riding facility operated at 3635 Haxton Way, Bellingham, WA 98226 and upon information and belief, is operated by Defendant Curran. Curran Ranch is an alter ego of Curran.

26.     On information and belief, Defendant Northern Passage, Inc. ("Northern Passage") is either Delaware corporation.  Northern Passage is an alter ego of Curran.

27.     Defendant Curran Holdings, LLC ("Curran Holdings") is  Delaware corporation created on December 11, 2019. Defendant Curran Holdings is an alter ego of Curran.

28.     Defendant Salish Sea, LLC("Salish Sea") is a Delaware corporation doing business in Washington. Defendant Salish Sea is an alter ego of Curran.

29.     Defendant Curran Brothers, LLC ("Curran Brothers) is a Michigan Corporation that owns rental properties created on September 11, 1997. Curran Brothers is an alter ego of Curran.

30.     Defendant Ocean Dance is a marine vessel holding company registered in the Cayman Islands on February 21, 2021. Ocean Dance is an alter ego of Curran.

31.     Defendant Brandy Curran, is an officer of, owns and operates, Defendant Zephyr. She is the daughter of Troy Curran, who fraudulently transferred 25,000 shares of Zephyr to her after this action was filed.

32.     Defendant Amber Curran, is an officer of, owns and operates, Defendant Zephyr. She is the daughter of Troy Curran, who fraudulently transferred 25,000 shares of Zephyr to her after this action was filed.

33.     Defendant Mark Curran, is a 50% owner of Defendant Curran Brothers. He is the brother of Troy Curran, who used Curran Brothers to fund the purchase of CityMac. On information and belief, Mark Curran has referred to himself as a "partner" in CityMac to employees of CityMac. On information and belief, Curran's income from Curran Brothers is funding this litigation and will be used to pay any eventual judgment.

## ALTER EGO LIABILITY

34.     Defendants Ocean Tech dba CityMac, TS Leasing, Curran and Company, Curran Ranch, Curran Brothers, LLC, Northern Passage, Salish Sea, Curran Holdings and Ocean Dance are collectively referred to herein as the "Alter Ego Defendants."

35.     On information and belief, the Alter Ego Defendants are all the alter egos or instrumentalities of Defendant Curran. The following facts support a reverse piercing of the corporate veil to pierce through Curran to reach the Alter Ego Defendants:

    a.   Curran maintains no assets in his own name, including his primary residence;

    b.   Curran uses holding companies to maintain title to his personal assets, including his primary residence;

    c.   Curran's personal vehicles are owned by Defendant Ocean Tech;

d.   Curran has admitted that Defendant Northern Passage, LLC is a holding company whose sole purpose is to hold title to his sailboat as a means of avoiding personal liability;

e.   Curran owns several companies that do not have an ongoing business purpose and/or are purportedly no longer in operation, such as Defendant Curran Brothers and Curran Ranch;

f.   Curran has constructed a complex layering of entities whose assets and expenses are intermingled;

g.   Curran runs all or substantially all his personal expenses through his business entities;

h.   Curran owns companies that collect rental income from, and pay expenses of, his other companies;

i.   Curran shows little or no personal income on his tax returns despite living a lavish lifestyle;

j.   Curran's  IRS tax returns do not accurately reflect his deposition testimony and other documentary evidence;

k.   Curran's bank statements show deposits and withdrawals between and among personal accounts and accounts of other entities;

l.   Despite the cash flow, Curran gave discovery responses and deposition testimony indicating he has little or no cash;

m.  Curran has tried to avoid judgments through manipulating ownership of his assets;

n.   Currant has failed to observe corporate formalities as to each Alter Ego Defendant;

o.   After this lawsuit was filed, Curran caused one of his holding companies, Zephyr, Inc., to transfer its interest in Curran's personal residence to Curran Ranch, LLC and transfer its interest in the Roeder property where CityMac in Bellingham, WA is located (the land is owned by the Port) to Curran Holdings, LLC;

p.   To wit, on March 11, 2020, less than one week after Defendants filed an Answer to the Complaint, Curran caused the issuance of a Quitclaim Deed from Defendant Zephyr to Defendant Curran Holdings LLC, transferring four parcels of real property in Whatcom County, WA. Curran signed the deed on behalf of both Zephyr and Curran Holdings.

q.   On that same date, again less than one week after Defendants filed an Answer to the Complaint Curran caused the issuance of a Quitclaim Deed from Defendant Zephyr to Defendant Curran Ranch, transferring one parcel of real property in Whatcom County, WA. Curran signed the deed on behalf of both Zephyr and Curran Ranch.

r.   Curran then falsely testified under oath at his deposition on December 2, 2020 that Defendant Zephyr held title to these properties.

s.   Curran has thus engaged in obstructionist tactics regarding discovery of his assets;

t.  Curran is unable to readily answer specific questions about how personal and business expenses were paid despite being the controlling shareholder or member of each entity;

u.  Curran provided inconsistent and contradictory testimony about his various companies and their assets;

v.  Curran has regularly exercised domination and control over his various entities and engaged in acts of avoiding contracts and depleting assets;

w.  Curran has admitted that his assets are held by various LLC's to protect him from personal liability;

x.  Curran has admitted that he has, in the past, sought to move assets overseas to avoid liability;

y.  Curran failed to disclose during discovery that he also owned Defendant Salish Sea, LLC;

z.  Curran's bank statements reveal a constant flow of large sums of money, in round numbers, being transferred between and among Curran's various entities and his personal accounts;

aa. Curran's bank statements contradict Curran's deposition testimony that he had no money to pay his employees when COVID supposedly down CityMac - "The Computer Haus, dba CityMac or Green Vault" received a PPP Loan in the amount of $502,270 from JPMorgan Chase Bank after this action was filed;

bb. Curran's bank statements show he used the PPP loan for the Computer Haus to pay vendors and to pay his personal expenses;

13

cc. Curran has admitted that he transferred the assets of his prior company, TD Curran, to CityMac for the purposes of avoiding liability related to the criminal acts of a co-owner of TD Curran;

dd. Curran created a new entity, Ocean Dance, which is registered in the Cayman Islands;

ee. On information and belief, Curran has or will transfer the yacht from Northern Passage to Ocean Dance;

ff. On information and belief, Curran has registered his yacht in the Cayman Islands and has or will move the yacht there.

gg. Curran borrowed money from Curran Brothers to finance the purchase of CityMac and testified at his deposition that he receives no income from Curran Brothers because it all goes to pay off the loan for CityMac purchase.

hh. On information and belief, Curran is no longer paying on the loan since CityMac was sold to OceanTech free and clear of all liabilities

ii. On information and belief, Curran receives substantial income from Curran Brothers;

jj. On information and belief, Curran Brothers and CityMac/Ocean Tech are financially intertwined in other ways as well;

kk. On information and belief, Curran receives income from Curran Brothers but claims he does not because Curran Brothers purportedly loaned him the money to purchase Defendant CityMac;

ll. On information and belief, Mark Curran has referred to himself as a partner in CityMac to employees of CityMac;

mm.   After this action was filed, Curran transferred and moved his assets between and among his alter egos and his daughters. All documents transferring assets were signed on March 10, 2020.

nn. On information and belief, Curran applied for and received a PPP loan on behalf of "The Computer Haus NC, Inc. dba City Mac *or Greenvault*."

oo. In his divorce settlement agreement, Curran admitted to owning vehicles that he failed to disclose during discovery in this case;

pp. In his divorce settlement agreement, Curran essentially admitted to having an IRA bank account which he failed to disclose during discovery in this case;

qq. In his divorce settlement agreement, Curran lists his residence and his yacht as his separate property, even though he testified and otherwise averred in this action that he has no assets;

rr.  Curran is currently advertising for a "badass mermaid" to join him on his yacht this summer to sail around the world for a year. Certainly, he will need funds for this trip and, on information and belief, he is in the process of relocating assets into his various LLCs and/or moving them offshore for easy access.

36.    On or about April 21, 2020, after this action was filed and after this Court granted Plaintiffs' motion for conditional certification of an FLSA collective, Curran suddenly created Ocean Tech, LLC and attempted to transfer Computer Haus's Apple contract, a significant asset, to Ocean Tech.

37.    On information and belief, when Defendant Curran realized or was advised that this tactic would not rid him and ComputerHaus of liability for a judgment in this action, on or

15

about July 16, 2020 Curran caused Defendant Computer Haus to be put into receivership in Whatcom County, Washington.

38.     Curran used a private company called Resource Transition Consultants ("RTC") to act as a receiver. The Receiver was the founder of RTC, Kevin Hanchett.

39.     RTC's Receivership website advertises: "CREATIVITY Think outside of the box creative solutions for complex problems."

40.     On information and belief, RTC and Hanchett helped Curran get far too creative and ventured well outside the box of what is legal, just and fair.

41.     Plaintiff Jahagirdar is the only creditor identified in the Receivership action and only he has been served with any pleadings related to the Receivership. The Declaration of Mailing of the Motion to Sell Assets Free and Clear shows that Hanchett served the documents only on Plaintiff Shailesh Jahagirdar and not on any of the over fifty (50) Plaintiffs who had already opted into this case and the three-hundred (300) plus plaintiffs who are members of the class/proposed class.  Curran only identified Plaintiff Jahagirdar as having a wage claim against him, even though the Amended Complaint alleging class and collective claims had been filed and Curran was fully aware there were many Opt-in Plaintiffs who had already filed Consents to Become Party Plaintiffs.

42.     Hanchett's motion to sell Computer Haus's assets free and clear, as well as his declaration supporting that motion, do not disclose that Curran owns the company that will be purchasing the assets of Computer Haus and falsely states under oath that the sale was negotiated at arm's length and in good faith.

43.     Hanchett also avers that the sale of assets from Computer Haus dba CityMac to Ocean Tech dba CityMac will be "in the best interests" of Computer Haus' creditors but the

16

motion does not disclose that the "creditors" include more than those individuals identified in the list of creditors filed with the Petition for Appointment of Receiver, because Curran failed to disclose the 50-plus Opt-in Plaintiffs and 300 potential class members. On this point as well, the court was not "fully advised" when it approved the sale.

44. In his final accounting, Hanchett failed to list Plaintiffs as unsecured creditors, despite actual knowledge of this action and his lack of service on them. Hanchett does identify numerous other creditors that did not file proofs of claim.

45. The Whatcom County Order allowing the sale of assets is not conclusive evidence that the transfer of assets from Computer Haus dba CityMac to Ocean Tech dba CityMac was not wrongful and serves to demonstrate that Curran will go to any lengths to accomplish the wrongful transfer of assets, including fraud on the court.

46. Curran, with the blessing and assistance of the Receiver he purchased, committed fraud on the Whatcom County court by filing a motion to sell the assets of Defendant Computer Haus NC dba CityMac without fully disclosing critical information to the court. Even after the claims of fraud on the court, Curran did nothing to disclose to the Whatcom County court the critical information withheld.

47. Curran cannot avoid liability on a judgment against him in this action with an out-of-state order that was issued as a result of the fraud, an order which expressly states that the court was "fully advised" when it ruled.

48. Defendant Ocean Tech dba CityMac is a sham entity with no other purpose than to be a vehicle for fraud or similar injustice. Just as Curran moved the assets from his prior company, TD Curran, into Computer Haus to avoid liability (which he fully admits), he has

engaged in the same wrongful conduct again, *solely to avoid paying a judgment* to Plaintiffs herein.

49.     On information and belief, Curran has no other business reason or financial justification for suddenly starting a new company, putting Computer Haus dba CityMac in receivership and then selling its assets to the new company. The entire receivership was done to commit fraud on Plaintiffs and make it look legal and sanctioned by the state court in Whatcom County, Washington.

50.     Curran and the Alter Ego Defendants are a single economic entity, dominated and controlled by Curran.

51.     Under the circumstances described herein, which demonstrate fraud or similar injustice, it would be inequitable to uphold any legal distinction between Curran and the Alter Ego Defendants.

### SUCCESSOR LIABILITY

52.     Defendant Ocean Tech dba CityMac is also liable as the successor in interest to Defendant Computer Haus.

53.     Defendant Computer Haus dba CityMac transferred its assets to Defendant Ocean Tech dba CityMac in October of 2020, well after this lawsuit was filed, leaving Defendant Computer Haus dba CityMac without sufficient assets to operate.

54.     On information and belief, Defendant Ocean Tech dba CityMac is operating at the same physical location, utilizing the same telephone numbers, utilizing the same website addresses, operating the same equipment, and utilizing the same advertising as Defendant Computer Haus dba CityMac.

55.     On information and belief, Defendant OceanTech dba CityMac has assumed the

ordinary business obligations of Defendant Computer Haus dba CityMac.

56. On information and belief, Defendant Computer Haus dba CityMac's records and documents that are required to be maintained for three years have been stored with Defendant Ocean Tech dba CityMac.

57. On information and belief, Defendant Ocean Tech dba CityMac is operating with most of the same management, supervisor and officers as Defendant Computer Haus dba CityMac, who are doing the same jobs, with the same titles, in the same manner as with Defendant Computer Haus dba CityMac.

58. On information and belief, Defendant Ocean Tech dba CityMac and Defendant Computer Haus dba CityMac have shared some of the same shareholders, directors, and officers as a result of the asset transfer.

59. On information and belief, Defendant Ocean Tech dba CityMac acquired the assets of Defendant Computer Haus dba CityMac through a transaction that provided inadequate consideration for the assets of Defendant Computer Haus.

60. On information and belief, Ocean Tech dba CityMac maintained the same employees, supervisory personnel, facility, continuity of assets, continuity of business operations as Computer Haus dba CityMac.

61. Ocean Tech dba CityMac holds itself out as a continuation of Computer Haus dba CityMac.

62. The website for CityMac, which was Computer Haus's dba, is still current and operational, giving no indication Ocean Tech dba CityMac purchased Computer Haus dba CityMac's assets. CityMac appears to be running exactly as it did under Computer Haus.

63. There is evidence of fraud on the court in the Whatcom County receivership

action through which Defendant Computer Haus dba CityMac transferred its assets to Defendant Ocean Tech dba CityMac.

64.     Defendant Ocean Tech dba CityMac purchased Computer Haus dba CityMac for an assignment of debts and one of those debts was the liability to Plaintiffs herein.

65.     The transfer of assets from Computer Haus dba CityMac to Ocean Tech dba CityMac was done for the purpose of defrauding at least some of Computer Haus dba CityMac's creditors - Plaintiffs herein.

<u>**JURISDICTION AND VENUE**</u>

66.     This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA. 29 U.S.C. § 201 *et. seq.*

67.     Computer Haus dba CityMac's principal place of business as registered with the North Carolina Secretary of State is listed as 4 S. Tunnel Road, Suite 210, Asheville, North Carolina 28805, and is situated in this District.

68.     This Court has jurisdiction over the Alter Ego Defendants because the personal jurisdiction over Curran is imputed to his alter egos.

69.     This Court has jurisdiction over Ocean Tech dba CityMac as a successor in interest to Computer Haus dba CityMac.

70.     The claims for violations of the state wage and hour laws of North Carolina, South Carolina, Washington, Oregon and Colorado are based on the statutory law of the referenced states.  Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same nucleus of operative facts as the FLSA claim. Plaintiff Jahagirdar's remaining claims are based on the common law of North Carolina.

71.     All of the alleged causes of action can be determined in this judicial proceeding

and will provide judicial economy, fairness, and convenience for the parties.

**STATEMENT OF FACTS**

72.     Employer Defendants operate retail stores selling Apple and Verizon products and offered training on, and service of, various electronic products.

73.     Employer Defendants employ sales personnel and customer service personnel, including Apple-certified technicians, who are paid an hourly rate and are also paid a promised commission as part of their wages.

74.     Plaintiffs and other similarly situated employees performed similar job duties and were compensated pursuant to centralized pay policies, and were subjected to similar pay practices while employed as non-exempt hourly employees for Employer Defendants.

75.     Throughout the duration of their employment with Employer Defendants, Plaintiffs and other similarly situated employees received bi-weekly paychecks from Employer Defendants that did not properly record or compensate them for all the hours that they worked.

76.     Employer Defendants failed to pay Plaintiffs and other similarly situated employees for every hour worked and failed to pay Plaintiffs and other similarly situated employees the required statutory minimum wage.

77.     In at least one pay period, but typically more than one pay period, Plaintiffs and other similarly situated employees worked more than 8 hours in a single day and more than 40 hours in a single week. Employer Defendants failed to pay Plaintiffs and other similarly situated employees an overtime premium for hours worked in excess of 40 hours per week and, where applicable, 8 hours per day.

78.     Employer Defendants made unlawful deductions from Plaintiffs' wages allegedly based on "bad returns" from Employer Defendants' customers that Plaintiffs accepted as part of

their job duties. Plaintiffs never agreed to any deductions from their wages, and Employer Defendants never provided Plaintiffs with any notice that their wages were going to be deducted.

79.     Employer Defendants "charged back" against Plaintiffs' sales, and against the sales of others similarly situated, sums attributable to cancellations and returns of wireless products, services and accessories. As such, Employer Defendants' deductions caused Plaintiffs and similarly situated employees to be paid less than minimum wage for the hours worked and/or caused them to not be paid as promised.

80.     Employer Defendants presented Plaintiffs with its "Commission Structure," which provided for a commission based on a percentage of gross profit plus a flat amount per activation.

81.     Employer Defendants failed to pay Plaintiffs for any commissions that were due under the Commission Structure. Contrary to their promises, Employer Defendants did not pay Plaintiffs and others similarly situated commissions as promised, without providing documentation or explanation to Plaintiffs and others similarly situated.

82.     Employer Defendants' "chargebacks" on some of Plaintiffs' sales, and on the sales of others similarly situated, exceeded the gross profit attributable to the sale, resulting in a reduction of gross profit on other sales.

83.     Employer Defendants also obstructed Plaintiffs' attempts to earn certain commissions by failing to provide them with the credentials needed to access certain systems to complete necessary training. As a result of Employer Defendants' actions, earned commissions were wrongfully withheld and diverted from Plaintiffs.

84.     Employer Defendants failed to add the commissions earned to the rate of pay for purposes of calculating overtime.

85.     Employer Defendants permitted or required off-the-clock work both before and after scheduled shifts.

86.     Employer Defendants failed to provide rest breaks as required by the laws in Washington, Oregon and Colorado.

87.     Employer Defendants failed to provide meal breaks as required by the laws in Washington, Oregon and Colorado.

88.     Employer Defendants altered Plaintiffs timecards after they clocked in and out for their regular shifts.

89.     Employer Defendants regularly scheduled Plaintiffs for 8-hour shifts or longer, six days per week.

90.     Employer Defendants failed to pay Plaintiffs' final paychecks under the applicable laws.

91.     As a result of Employer Defendants' policies and practices with respect to the calculation of gross profit, sales omissions, arbitrary refunds and chargebacks, earned commissions were wrongfully withheld and diverted from Plaintiffs and others similarly situated.

92.     Employer Defendants' policies and practices with respect to the payment of commissions were misleading and fraudulent, were a breach of its promises to employees, violated the wage provisions of North Carolina, South Carolina, Washington, Oregon and/or Colorado and deprived Plaintiffs and others similarly situated of the lawful wages to which they were entitled.

93.     At all relevant times, Employer Defendants knew that Plaintiffs were not being paid minimum wage for every hour worked, thereby willfully violating the FLSA and applicable state laws.

94.     Employer Defendants benefitted from their unlawful failure to pay Plaintiffs minimum wage and commissions to which they were entitled because Employer Defendants reaped more profit from the deceptive scheme.

95.     On information and belief, in or about March of 2020, Defendants discontinued paying its employees in all locations. Employer Defendants failed to provide Plaintiffs with their final paychecks.

## COLLECTIVE ACTION ALLEGATIONS

96.     This action is maintainable as an "opt-in" collective action pursuant to the FLSA, 29 U.S.C. § 216(b), as to claims for unpaid overtime compensation, liquidated damages, and attorneys' fees and costs.

97.     At all times hereinafter mentioned, Employer Defendants have been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

98.     At all times hereinafter mentioned, Employer Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA 29 U.S.C. § 203(r).

99.     At all times hereinafter mentioned, Employer Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that the enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that the enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which is separately stated).

100.    At all times hereinafter mentioned, Plaintiffs were employees within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

101.    At all times hereinafter mentioned, Plaintiffs were individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

102.    Pursuant to 29 U.S.C. § 216(b), Plaintiffs bring the First Count on behalf of themselves, individually, and all other similarly situated employees who work or have worked for Employer Defendants as non-exempt hourly employees, who were not paid minimum wage, earned commissions, and/or overtime premium for all hours worked exceeding 40 per week during the period of February 5, 2017 to the filing of this Complaint in this action, who elect to opt-in to this action ("Opt-in Plaintiffs).

103.    The FLSA § 216(b) collective action class is properly defined as: All current and former employees of Defendants, nationwide, who work or have worked for the Employer Defendants as a non-exempt hourly employee, who were not paid minimum wage and/or overtime premium for all hours worked exceeding 40 per week during the period of February 5, 2017 to the filing of this Complaint in this action.

104.    Consistent with Employer Defendants' policy and pattern or practice, Plaintiffs have not been paid overtime wages earned for all hours worked and Plaintiffs and Opt-in Plaintiffs have not been paid premium overtime compensation for all hours worked beyond forty (40) per workweek.

105.    All of the work that Plaintiffs and Opt-in Plaintiffs have performed has been assigned by Employer Defendants, and/or Defendants have been aware of all of the work that Plaintiffs and Opt-in Plaintiffs have performed.

106. As part of its regular business practice, Employer Defendants have intentionally, willfully and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and Opt-in Plaintiffs.

107. Defendants' unlawful conduct has been widespread, repeated, and consistent.

## CLASS ACTION ALLEGATIONS

**North Carolina Class**

108. Plaintiff Jahagirdar brings Counts II - III on his own behalf and as a class action pursuant to Rule 23 (a) and (b) of the Federal Rules of Civil Procedure. The North Carolina Class is defined as "all persons who worked for CityMac in the state of North Carolina at any time from three years prior to the filing of this Complaint to the entry of judgment in the case" (the "North Carolina Class" and "North Carolina Class Period," respectively).

109. The persons in the North Carolina Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, upon information and belief, Employer Defendants have employed at least 50 persons who satisfy the definition of the North Carolina Class.

110. There are questions of law and fact common to this North Carolina Class that predominate over any questions solely affecting individual members of the North Carolina Class, including but not limited to:

    a. Whether Employer Defendants unlawfully failed to pay minimum wage and/or overtime compensation in violation of and within the meaning of the N.C. Gen. Stat. §§ 95-25.6, 95-25.7 and 95-25.13;

    b. Whether the Plaintiff Jahagirdar and the North Carolina Class are non-exempt employees entitled to minimum wage and overtime compensation for hours

worked under the pay requirements of the N.C. Gen. Stat. §§ 95-25.6, 95-25.7 and 95-25.13;

c. Whether Employer Defendants employed Plaintiff Jahagirdar and the North Carolina Class within the meaning of the of the NCWHA § 95-25.2(4);

d. Whether Employer Defendants failed to keep accurate time records for all hours worked by the Plaintiff Jahagirdar and the North Carolina Class as required by the NCWHA;

e. Whether Employer Defendants made unauthorized deductions from Plaintiff Jahagirdar and the North Carolina Class;

f. Whether Employer Defendants failed to pay Plaintiff Jahagirdar and the North Carolina Class commissions and wages as promised;

g. Whether Employer Defendants failed to pay the final paychecks of Plaintiff Jahagirdar and the North Carolina Class as required by law;

h. Whether Employer Defendants required or permitted Plaintiff Jahagirdar and the North Carolina Class to perform off-the-clock work;

i. Whether Employer Defendants included commission payment in the overtime rate calculation for Plaintiff Jahagirdar and the North Carolina Class;

j. Whether Employer Defendants changed the time punches on the timecards for Plaintiff Jahagirdar and the North Carolina Class;

k. The proper measure of damages sustained by the North Carolina Class; and

l. Whether Employer Defendants should be enjoined from such violations in the future.

111. The claims of Plaintiff Jahagirdar are typical of those of the North Carolina Class.

Plaintiff Jahagirdar, like other members of the North Carolina Class, were subjected to Employer Defendants' policy and practice of refusing to pay proper minimum wage and overtime compensation in violation of North Carolina law. The job duties of Plaintiff Jahagirdar were typical of those other North Carolina Class members.

112.    Plaintiff Jahagirdar will fairly and adequately protect the interests of the North Carolina Class, and has retained counsel experienced in complex wage and hour class and collective action litigation.

113.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy stated in Counts II - III, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute separate lawsuits in federal court against a large corporate defendant.

114.    Class certification of Counts II - III is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Employer Defendants have acted or refused to act on grounds generally applicable to the North Carolina Class, thereby making appropriate declaratory and injunctive relief. The North Carolina Class is also entitled to injunctive relief to end Employer Defendants' common and uniform practice of failing to compensate its employees for all work performed for the benefit of Employer Defendants.

115.    Class certification of Counts II - III is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the North Carolina Class predominate over any questions affecting only individual members of the North Carolina Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Employer Defendants' common and uniform policies and practices denied the North Carolina Class the minimum wage and overtime pay to which they are entitled. The damages

suffered by the individual North Carolina Class members are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Employer Defendants' practices.

116.     Plaintiff Jahagirdar intends to send notice to all members of the North Carolina Class to the extent required by Rule 23.

**Washington Class**

117.     Plaintiff Blais bring Counts IV - VIII on their own behalf and as a class action pursuant to Rule 23 (a) and (b) of the Federal Rules of Civil Procedure. The Washington Class is defined as "all persons who worked for CityMac in the state of Washington at any time from three years prior to the filing of this Complaint to the entry of judgment in the case" (the "Washington Class" and "Washington Class Period," respectively).

118.     The persons in the Washington Class identified above are so numerous that joinder of all members are impracticable. Although the precise number of such persons is unknown, upon information and belief, Employer Defendants[1] have employed at least 50 persons who satisfy the definition of the Washington Class.

119.     There are questions of law and fact common to this Washington Class that predominate over any questions solely affecting individual members of the Washington Class, including but not limited to:

> a.  Whether Employer Defendants unlawfully failed to pay minimum wage and/or overtime compensation in violation of and within the meaning of the Washington Minimum Wage Act, R.C.W. 49.46.005 et seq.;

---

[1] For the purposes of the Washington Class, "Employer Defendant" includes Ocean Tech dba CityMac for state law violations occurring after October 23, 2020.

b.  Whether the Plaintiff Blais and the Washington Class are non-exempt employees entitled to minimum wage and overtime compensation for hours worked under the pay requirements of the Washington Minimum Wage Act, R.C.W. 49.46.005 et seq., including R.C.W 49.46.130;

c.  Whether Employer Defendants employed the Plaintiffs and the Washington Class within the meaning of the Washington Minimum Wage Act, R.C.W. 49.46.005 et seq., including R.C.W. 49.46.010;

d.  Whether Employer Defendants failed to keep accurate time records for all hours worked by the Plaintiff Blais and the Washington Class as required by the Washington Minimum Wage Act, R.C.W. 49.46.005 et seq., including R.C.W. 49.46.070;

e.  Whether Employer Defendants made unauthorized deductions from Plaintiff Blais and the Washington Class;

f.  Whether Employer Defendants failed to pay Plaintiff Blais and the Washington Class commissions and wages as promised;

g.  Whether Employer Defendants failed to pay the final paychecks of Plaintiff Blais and the Washington Class as required by law;

h.  Whether Employer Defendants provided meal breaks to Plaintiff Blais and the Washington Class as required by law;

i.  Whether Employer Defendants provided rest breaks to Plaintiff Blais and the Washington Class as required by law;

j.  Whether Employer Defendants required or permitted Plaintiff Blais and the Washington Class to perform off-the-clock work;

k.  Whether Employer Defendants included commission payment in the overtime rate calculation for Plaintiff Blais and the Washington Class;

l.  Whether Employer Defendants changed the time punches on the timecards for Plaintiff Blais and the Washington Class;

m.  The proper measure of damages sustained by the Washington Class; and

n.  Whether Employer Defendants should be enjoined from such violations in the future.

120.  The claims of Plaintiff Blais are typical of those of the Washington Class. Plaintiff Blais, like other members of the Washington Class, were subjected to Employer Defendants' policy and practice of refusing to pay proper minimum wage and overtime compensation in violation of Washington law. The job duties of Plaintiff Blais was typical of those other Washington Class members.

121.  Plaintiff Blais will fairly and adequately protect the interests of the Washington Class, and have retained counsel experienced in complex wage and hour class and collective action litigation.

122.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy stated in Counts IV - VIII, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute separate lawsuits in federal court against a large corporate defendant.

123.  Class certification of Counts IV - VIII is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Employer Defendants have acted or refused to act on grounds generally applicable to the Washington Class, thereby making appropriate declaratory and injunctive relief. The Washington Class is also entitled to injunctive relief to end Employer Defendants' common

and uniform practice of failing to compensate its employees for all work performed for the benefit of Defendants.

124.    Class certification of Counts IV - VIII is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Washington Class predominate over any questions affecting only individual members of the Washington Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Employer Defendants' common and uniform policies and practices denied the Washington Class the minimum wage and overtime pay to which they are entitled. The damages suffered by the individual Washington Class members are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Employer Defendants' practices.

125.    Plaintiff Blais intend to send notice to all members of the Washington Class to the extent required by Rule 23.

**Oregon Class**

126.    Plaintiff Free bring Counts IX - XIV on their own behalf and as a class action pursuant to Rule 23 (a) and (b) of the Federal Rules of Civil Procedure. The Oregon Class is defined as "all persons who worked for CityMac in the state of Oregon at any time from three years prior to the filing of this Complaint to the entry of judgment in the case" (the "Oregon Class" and "Oregon Class Period," respectively).

127.    The persons in the Oregon Class identified above are so numerous that joinder of

all members is impracticable. Although the precise number of such persons is unknown, upon information and belief, Employer Defendants have employed at least 30 persons who satisfy the definition of the Oregon Class.

128.    There are questions of law and fact common to this Oregon Class that predominate over any questions solely affecting individual members of the Oregon Class, including but not limited to:

a.    Whether Employer Defendants unlawfully failed to pay minimum wage and/or overtime compensation in violation of and within the meaning of Oregon Conditions of Employment Laws, O.R.S. 651.010 et seq., and Oregon Administrative Rules, O.A.S. 839-020-0030, 0080 et seq.;

b.    Whether Plaintiff Free and the Oregon Class are non-exempt employees entitled to minimum wage and overtime compensation for hours worked under the pay requirements of Oregon Conditions of Employment Laws, O.R.S. 651.010 et seq., and Oregon Administrative Rules, O.A.S. 839-020-0030, 0080 et seq., including O.R.S. 653.261 and O.A.S. 839-020-0030(1);

c.    Whether Employer Defendants employed Plaintiff Free and the Oregon Class within the meaning of Oregon Conditions of Employment Laws, O.R.S. 651.010 et seq., and Oregon Administrative Rules, O.A.S. 839-020-0030, 0080 et seq., including O.R.S. 652.210(2);

d.    Whether Employer Defendants failed to keep accurate time records for all hours worked by Plaintiff Free and the Oregon Class as required by Oregon Conditions of Employment Laws, O.R.S. 651.010 et seq., and Oregon

Administrative Rules, O.A.S. 839-020-0030, 0080 et seq., including O.R.S. 653.045 and O.A.S. 839-020-0080;

e.  Whether Employer Defendants made unauthorized deductions from Plaintiff Free and the Oregon Class ;

f.  Whether Employer Defendants failed to pay Plaintiff Free and the Oregon Class commissions and wages as promised;

g.  Whether Employer Defendants failed to pay the final paychecks of Plaintiff Free and the Oregon Class as required by law;

h.  Whether Employer Defendants provided meal breaks to Plaintiff Free and the Oregon Class as required by law;

i.  Whether Employer Defendants provided rest breaks to Plaintiff Free and the Oregon Class as required by law;

j.  Whether Employer Defendants required or permitted Plaintiff Free and the Oregon Class to perform off-the-clock work;

k.  Whether Employer Defendants included commission payment in the overtime rate calculation for Plaintiff Free and the Oregon Class;

l.  Whether Employer Defendants changed the time punches on the timecards for Plaintiff Free and the Oregon Class;

m.  The proper measure of damages sustained by the Oregon Class; and

n.  Whether Employer Defendants should be enjoined from such violations in the future.

129.  The claims of Plaintiff Free are typical of those of the Oregon Class.

Plaintiff Free, like other members of the Oregon Class, were subjected to Employer Defendants' policy and practice of refusing to pay proper minimum wage and overtime compensation in violation of Oregon law. The job duties of Plaintiff Free were typical of those other Oregon Class members.

130.    Plaintiff Free will fairly and adequately protect the interests of the Oregon Class, and has retained counsel experienced in complex wage and hour class and collective action litigation.

131.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy stated in Counts IX - XIV  particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute separate lawsuits in federal court against a large corporate defendant.

132.    Class certification of Counts IX - XIV  is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Employer Defendants have acted or refused to act on grounds generally applicable to the Oregon Class, thereby making appropriate declaratory and injunctive relief. The Oregon Class is also entitled to injunctive relief to end Employer Defendants' common and uniform practice of failing to compensate its employees for all work performed for the benefit of Employer Defendants.

133.    Class certification of Counts IX - XIV is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Oregon Class predominate over any questions affecting only individual members of the Oregon Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Employer Defendants' common and uniform policies and practices denied the Oregon Class the minimum wage and overtime pay to which they are entitled. The damages suffered by the

individual Oregon Class members are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Employer Defendants' practices.

134.    Plaintiff Free intend to send notice to all members of the Oregon Class to the extent required by Rule 23.

**Colorado Class**

135.    Named Johnson brings Counts XV - XX on his own behalf and as a class action pursuant to Rule 23 (a) and (b) of the Federal Rules of Civil Procedure. The Colorado Class is defined as "all persons who worked for Employer Defendants in the state of Colorado at any time from two years prior to the filing of this Complaint to the entry of judgment in the case" (the "Colorado Class" and "Colorado Class Period," respectively).

136.    The persons in the Colorado Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, upon information and belief, Employer Defendants have employed at least 30 persons who satisfy the definition of the Colorado Class.

137.    There are questions of law and fact common to this Colorado Class that predominate over any questions solely affecting individual members of the Colorado Class, including but not limited to:

  a.  Whether Employer Defendants unlawfully failed to pay minimum wage and/or overtime compensation in violation of and within the meaning of the Colorado Minimum Wage Act, C.R.S. §§ 8-6-101 et seq.;

b. Whether Plaintiff Johnson and the Colorado Class are non-exempt employees entitled to minimum wage and overtime compensation for hours worked under the pay requirements of the Colorado Minimum Wage Act, C.R.S. §§ 8-6-101 et seq.;

c. Whether Employer Defendants employed the Plaintiff Johnson and the Colorado Class within the meaning of the Colorado Minimum Wage Act, C.R.S. §§ 8-6-101 et seq.;

d. Whether Employer Defendants failed to keep accurate time records for all hours worked by Plaintiff Johnson and the Colorado Class as required by the Colorado Minimum Wage Act, C.R.S. §§ 8-6-101 et seq.;

e. Whether Employer Defendants made unauthorized deductions from Plaintiff Johnson and the Colorado Class;

f. Whether Employer Defendants failed to pay Plaintiff Johnson and the Colorado Class commissions and wages as promised;

g. Whether Employer Defendants failed to pay the final paychecks of Plaintiff Johnson and the Colorado Class as required by law;

h. Whether Employer Defendants provided meal breaks to Plaintiff Johnson and the Colorado Class as required by law;

i. Whether Employer Defendants provided rest breaks to Plaintiff Johnson and the Colorado Class as required by law;

j. Whether Employer Defendants required or permitted Plaintiff Johnson and the Colorado Class to perform off-the-clock work;

k.  Whether Employer Defendants included commission payment in the overtime rate calculation for Plaintiff Johnson and the Colorado Class;

l.  Whether Employer Defendants changed the time punches on the timecards for Plaintiff Johnson and the Colorado Class;

m.  The proper measure of damages sustained by the Colorado Class; and

n.  Whether Employer Defendants should be enjoined from such violations in the future.

138.    Plaintiff Johnson's claims are typical of those of the Colorado Class. The Colorado Named Plaintiff, like other members of the Colorado Class, was subjected to Employer Defendant's policy and practice of refusing to pay proper minimum wage and overtime compensation in violation of Colorado law. Plaintiff Johnson's job duties were typical of those other Colorado Class members.

139.    Plaintiff Johnson will fairly and adequately protect the interests of the Colorado Class, and has retained counsel experienced in complex wage and hour class and collective action litigation.

140.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy stated in Counts XV - XX, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute separate lawsuits in federal court against a large corporate defendant.

141.    Class certification of Counts XV - XX is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Employer Defendants have acted or refused to act on grounds generally applicable to the Colorado Class, thereby making appropriate declaratory and injunctive relief. The Colorado Class is also entitled to injunctive relief to end Employer Defendants' common

and uniform practice of failing to compensate its employees for all work performed for the benefit of Employer Defendants.

142.     Class certification of Counts XV - XX also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Colorado Class predominate over any questions affecting only individual members of the Colorado Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Employer Defendants' common and uniform policies and practices denied the Colorado Class the minimum wage and overtime pay to which they are entitled. The damages suffered by the individual Colorado Class members are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Employer Defendants' practices.

143.     Plaintiff Johnson intends to send notice to all members of the Colorado Class to the extent required by Rule 23.

**South Carolina Class**

144.     Plaintiffs Allen, Green and Norris bring Count XXI on their own behalf and as a class action pursuant to Rule 23 (a) and (b) of the Federal Rules of Civil Procedure. The South Carolina Class is defined as "all persons who worked for CityMac in the state of South Carolina at any time from three years prior to the filing of this Complaint to the entry of judgment in the case" (the "South Carolina Class" and "South Carolina Class Period," respectively).

145.     The persons in the South Carolina Class identified above are so numerous that

joinder of all members is impracticable. Although the precise number of such persons is unknown, upon information and belief, Employer Defendants have employed at least 50 persons who satisfy the definition of the South Carolina Class.

146.    There are questions of law and fact common to this South Carolina Class that predominate over any questions solely affecting individual members of the South Carolina Class, including but not limited to:

a.   Whether Employer  Defendants unlawfully failed to pay minimum wage and/or overtime compensation in violation of and within the meaning of South Carolina Payment of Wages Law, S.C. Code of Laws §41-10-10 *et seq.*;

b.   Whether Plaintiffs Allen, Green and Norris and the South Carolina Class are non-exempt employees entitled to minimum wage and overtime compensation for hours worked under the pay requirements of  South Carolina Payment of Wages Law, S.C. Code of Laws §41-10-10 *et seq.*;

c.   Whether Employer Defendants employed Plaintiffs  Allen, Green and Norris and the South Carolina Class within the meaning of  South Carolina Payment of Wages Law, S.C. Code of Laws §41-10-10 *et seq.*;

d.   Whether Employer Defendants failed to keep accurate time records for all hours worked by Plaintiffs  Allen, Green and Norris and the South Carolina Class as required by  South Carolina Payment of Wages Law, S.C. Code of Laws §41-10-10 *et seq.* ;

e.   Whether Employer Defendants made unauthorized deductions from  Plaintiffs Allen, Green and Norris and the South Carolina Class;

f.  Whether Employer Defendants failed to pay Plaintiffs Allen, Green and Norris and the South Carolina Class commissions and wages as promised;

g.  Whether Employer Defendants failed to pay the final paychecks of Plaintiffs Allen, Green and Norris and the South Carolina Class as required by law;

h.  Whether Employer Defendants required or permitted Plaintiffs Allen, Green and Norris and the South Carolina Class to perform off-the-clock work;

i.  Whether Employer Defendants included commission payment in the overtime rate calculation for Plaintiffs Allen, Green and Norris and the South Carolina Class'

j.  Whether Employer Defendants changed the time punches on the timecards for Plaintiffs Allen, Green and Norris and the South Carolina Class;

k.  The proper measure of damages sustained by the South Carolina Class; and

l.  Whether Employer Defendants should be enjoined from such violations in the future.

147.    The claims of Plaintiffs Allen, Green and Norris are typical of those of the South Carolina Class. Plaintiffs Allen, Green and Norris, like other members of the South Carolina, were subjected to Employer Defendants' policy and practice of refusing to pay proper minimum wage and overtime compensation in violation of South Carolina law. The job duties of Plaintiffs Allen, Green and Norris were typical of those other South Carolina Class members.

148.    Plaintiffs Allen, Green and Norris will fairly and adequately protect the interests of the South Carolina Class, and have retained counsel experienced in complex wage and hour class and collective action litigation.

149.    A class action is superior to other available methods for the fair and efficient

adjudication of the controversy stated in Count XXI, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute separate lawsuits in federal court against a large corporate defendant.

150.    Class certification of Count XXI is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Employer Defendants have acted or refused to act on grounds generally applicable to the South Carolina Class, thereby making appropriate declaratory and injunctive relief. The South Carolina Class is also entitled to injunctive relief to end the Employer Defendants' common and uniform practice of failing to compensate its employees for all work performed for the benefit of Defendants.

151.    Class certification of Counts XXI is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the South Carolina Class predominate over any questions affecting only individual members of the South Carolina Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Employer Defendants' common and uniform policies and practices denied the South Carolina Class the minimum wage and overtime pay to which they are entitled. The damages suffered by the individual South Carolina Class members are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Employer Defendants' practices.

152.    Plaintiffs Allen, Green and Norris intend to send notice to all members of the South  Carolina Class to the extent required by Rule 23.

## COUNT I
### Violation of Fair Labor Standards Act
### Failure to Pay Minimum Wage and Overtime
(On Behalf of the Nationwide FLSA Collective)
(Against Employer Defendants)

153.    Plaintiffs reassert the allegations set forth in the above paragraphs, as applicable.

154.    Count I arises from Defendants' violation of the FLSA, for their failure to pay at least minimum wage for every hour worked by Plaintiffs and all similarly situated employees and former employees and failure to pay an overtime premium for all hours worked exceeding 40 per week.

155.    Employer Defendants violated the FLSA by not paying Plaintiffs and all similarly situated employees and former employees for every hour that he worked.

156.    Employer Defendants also violated the FLSA by deducting an amount from the wages of Plaintiffs and all similarly situated employees and former employees that resulted in their wages falling below the minimum wage.

157.    Employer Defendants acted willfully and with reckless disregard for Plaintiffs' rights under the FLSA.

158.    As a result of Employer Defendants' willful and reckless actions, Plaintiffs and all others similarly situated are entitled to recover liquidated damages pursuant to 29 U.S.C. § 216(b).

159.    Plaintiffs and all others similarly situated are entitled to recover attorney's fees pursuant to 29 U.S.C. § 216(b).

**COUNT II**
**Violations of North Carolina Wage and Hour Act**
**Failure to Pay Overtime**
(On Behalf of Plaintiff Jahagirdar and North Carolina Class)
(Against Defendants)

160.     Plaintiff Jahagirdar reasserts the allegations set forth in the above paragraphs, as applicable.

161.      At all times hereinafter mentioned, Employer Defendants have been an employer within the meaning of Section 95-25.2(5) of the NCWHA, N.C. Gen. Stat.

162.     At all times hereinafter mentioned, Plaintiff Jahagirdar and the North Carolina Class were employees within the meaning of Section 95-25.2(4) of the NCWHA.

163.     Employer Defendants maintained a policy and practice of suffering or permitting Plaintiff Jahagirdar and the North Carolina Class to work in excess of forty hours per week without paying promised and earned wages for all hours worked in violation of N.C. Gen. Stat. §§ 95-25.6, 95-25.7 and 95-25.13.

164.     Employer Defendants violated NCWHA by failing to pay Plaintiff Jahagirdar and the North Carolina Class overtime compensation for hours worked in excess of forty hours each week they worked.

165.     Plaintiff Jahagirdar and the North Carolina Class were entitled to all the rights and protections of the NCWHA and Employer Defendants' failure to pay Plaintiff Jahagirdar and the North Carolina Class overtime was in violation of the NCWHA.

166.     Employer Defendants willfully and with reckless disregard violated the rights of Plaintiff Jahagirdar and the North Carolina Class under the NCWHA.

167.     As a result of Employer Defendants' willful action, Plaintiff Jahagirdar and the

North Carolina Class are entitled to recover liquidated damages pursuant to N.C. Gen. Stat. § 95-25.22.

168.    Plaintiff Jahagirdar and the North Carolina Class are entitled to recover attorneys' fees pursuant to N.C. Gen. Stat. § 95-25.22(d).

<u>**COUNT III**</u>
**Violations of North Carolina Wage and Hour Act**
**Failure to Pay Commissions and Wages as Promised**
(On Behalf of Plaintiff Jahagirdar and North Carolina Class)
(Against Employer Defendants)

169.    Plaintiff Jahagirdar the allegations set forth in the above paragraphs, as applicable.

170.    Employer Defendants violated the rights of Plaintiff Jahagirdar and the North Carolina Class by failing to pay and diverting from her earned commissions on store sales that he procured before his employment ended.

171.    Plaintiff Jahagirdar and the North Carolina Class were entitled to all rights and protections of the NCWHA and Employer Defendants violated the NCWHA by failing to pay and diverting from Plaintiff Jahagirdar and the North Carolina Class wages as well as earned commissions on store sales that were procured during employment.

172.    Plaintiff Jahagirdar and the North Carolina Class are entitled to recovery of unpaid wages and earned but unpaid commissions for all store sales that were procured during employment.

173.    Employer Defendants violated these statutes by failing to pay Plaintiff Jahagirdar and the North Carolina Class all promised and earned wages on the employees' regular payday for all hours worked.

174.    Employer Defendants violated the NCWHA by unlawfully withholding or

deducting wages in violation of N.C. Gen. Stat. §95-25.8 because Plaintiff Jahagirdar and the North Carolina Class were never provided written authorizations to deduct any amount from their wages. Employer Defendants never provided advance notice of the deduction, and Employer Defendants deduction resulted in the wage of Plaintiff Jahagirdar and the North Carolina Class falling below the minimum wage amount.

175.    Employer Defendants willfully and with reckless disregard violated the rights of Plaintiff Jahagirdar and the North Carolina Class under the NCWHA.

176.    As a result of Employer Defendants' willful action, Plaintiff Jahagirdar and the North Carolina Class are entitled to recover liquidated damages pursuant to N.C. Gen. Stat. § 95-25.22.

177.    Plaintiff Jahagirdar and the North Carolina Class are entitled to recover attorneys' fees pursuant to N.C. Gen. Stat. § 95-25.22(d).

## COUNT IV
**Violation of Industrial Welfare Act and Washington Administrative Code**
**Failure to Pay Hourly and Separate Wages for Rest Periods and Meal Periods**
(On Behalf of Plaintiff Blais and Washington Class)
(Against Employer Defendants[2])

178.    Plaintiff Blais and the Washington Class reasserts the allegations set forth in the above paragraphs, as applicable.

179.    Under the Supreme Court of Washington's decision in *Wingert v. Yellow Freight Systems, Inc.*, 146 Wash.2d 841 (2002), the statutory provisions set forth in RCW 49.12 entitle aggrieved employees to an implied cause of action for all unpaid wages against an employer, including wages owed to employees pursuant to properly promulgated regulations. *Id.* at 847-51.

34.

---

[2] For the purposes of the Washington Class, "Employer Defendant" includes Ocean Tech dba CityMac for state law violations occurring after October 23, 2020.

180.     WAC 296-126-092(4) provides that: (4) Employees shall be allowed a rest period of not less than 10 minutes, on the employer's time, for each 4 hours of working time. Rest periods shall be scheduled as near as possible to the midpoint of the work period. No employee shall be required to work more than three hours without a rest period. [...] (emphasis added)

181.     The words "on the employer's time" mean that the employer must compensate employees separately and hourly for their times spent taking rest periods authorized under these regulations. *Wingert*, 146 Wash.2d at 848; *Pellino v. Brink's Inc*., 164 Wash.App. 668, 690 (2011).

182.     WAC  296-126-092 provides that: (1) Employees shall be allowed a meal period of at least thirty minutes which commences no less than two hours nor more than five hours from the beginning of the shift. Meal periods shall be on the employer's time when the employee is required by the employer to remain on duty on the premises or at a prescribed work site in the interest of the employer; (2) No employee shall be required to work more than five consecutive hours without a meal period; and (3) Employees working three or more hours longer than a normal work day shall be allowed at least one thirty-minute meal period prior to or during the overtime period.

183.     Employer Defendants failed to provide Plaintiffs and the Washington Class Members with meal breaks as required by the above statute.  Plaintiffs and Washington Class Members who worked in Washington state were

not compensated separately and hourly for their rest breaks and meal breaks.

184.     As a direct and proximate result of Employer Defendants' violations and their

willful intent to deprive Plaintiff and Class Members of wages owed, Employer Defendants

deprived Plaintiff and Class Members of compensation in the amounts to be determined at trial,

but equal to all unpaid rest break time, meal break time, liquidated damages and interest.

**COUNT V**
**Violations of the Washington Minimum Wage Act**
**Failure to Pay Overtime Wages**
(On Behalf of Plaintiff Blais and Washington Class)
(Against Employer Defendants[3])

185.    Plaintiff Blais and the Washington Class reasserts the allegations

set forth in the above paragraphs, as applicable.

186.    Under Washington law, non-exempt employees are entitled to pay for all hours

worked. RCW 49.46.020, 090.

187.    The WMWA at RCW 49.46.090 prescribes a cause of action for employees to

bring against an employer for the full amounts of unpaid wages he or she is owed under the

WMWA, and for reasonable attorney's fees and costs.

188.    The WMWA at RCW 49.46.130 states, in pertinent part, "that no employer shall

employ any of his or her employers for a workweek longer than forty hours unless such

employee receives compensation for his or her employment in excess of the hours above

specified at a rate of not less than one and one-half times the regular rate at which he or she is

employed."

189.    The WMWA entitles employees to "compensation for regular hours worked and

for any overtime hours worked." *Stevens v. Brink's Home Security, Inc*., 162 Wash.2d 42, 47

(2007). "Hours worked" is defined as "all hours during which the employee is authorized or

---

[3] For the purposes of the Washington Class, "Employer Defendant" includes Ocean Tech dba CityMac for state law violations occurring after October 23, 2020.

required by the employer to be on duty on the employer's premises or at a prescribed workplace." *Id.* (citing WAC 296-126-002(8)).

190.     At all times hereto, Plaintiff Blais and the Washington Class were non-exempt.

191.     In weeks during which Plaintiff Blais and the Washington Class worked in excess of forty hours, Employer Defendants violated the WMWA by failing to pay Plaintiff Blais and the Washington Class at the overtime rate of 1.5 times their regular rate of pay for their hours worked in excess of forty in any workweek.

192.     Furthermore, Employer Defendants did not record all time worked by Plaintiff Blais and the Washington Class on their pay stubs.

193.     As a result of Employer Defendants failure to keep a true and accurate record of the hours worked by Plaintiff Blais and the Washington Class Members, Defendants have violated, and continue to violate, the Washington Wage Laws.

194.     As a direct and proximate result of Defendants' violations and its willful intent to deprive Plaintiff Blais and the Washington Class of wages owed, Employer Defendants deprived them of compensation in the amounts to be determined at trial, but equal to all unpaid overtime wages, liquidated damages and interest.

### COUNT VI
**Violations of the Washington Minimum Wage Act**
**Failure to Pay Minimum Wage for All Hours Worked**
(On Behalf of Plaintiff Blais and Washington Class)
(Against Employer Defendants[4])

195.     Plaintiff Blais and the Washington Class reasserts the allegations set forth in the above paragraphs, as applicable.

---

[4] For the purposes of the Washington Class, "Employer Defendant" includes Ocean Tech dba CityMac for state law violations occurring after October 23, 2020.

196.     RCW 49.46.020 establishes the minimum wage in Washington. Under the

Washington Minimum Wage Act (RCW 49.46), employers shall pay employees no less than the

applicable minimum wage.

197.     At all times hereto, Plaintiff Blais and Washington Class Members

were non-exempt.

198.     Under RCW 49.46.090, employers must pay employees all wages to which

employees are entitled. RCW 49.46.090 requires the employer to pay employees the full amount

of the statutory minimum wage rate less any amount actually paid to employees.

199.     As set forth herein, Plaintiff Blais and Washington Class Members

were not compensated for all work performed. They were frequently required to work off the

clock both before and after their shifts. Furthermore, Employer Defendants did not record all

time worked by Plaintiff Blais and Washington Class Members on their pay stubs.

200.     As a direct and proximate result of Employer Defendants' violations and its

willful intent to deprive Plaintiff Blais and Washington Class Members, Employer Defendants

deprived Plaintiff and Class Members of compensation in the amounts to be determined at trial.

<u>**COUNT VII**</u>
**Violations of the Washington Wage Rebate Act**
**Failure to Satisfy Wage Obligations Assumed Through Contract**
(On Behalf of Plaintiff Blais and Washington Class)
(Against Employer Defendants[5])

201.     Plaintiff Blais and the Washington Class reasserts the allegations

set forth in the above paragraphs, as applicable..

202.     Under the Washington Wage Rebate Act, an employer is required to satisfy wage

---

[5] For the purposes of the Washington Class, "Employer Defendant" includes Ocean Tech dba CityMac for state law violations occurring after October 23, 2020.

obligations that were agreed to by contract with employees. RCW 49.52.050; *Helde v. Knight,* 2016 WL 1687961, at *2 (W.D. Wash. Apr. 26, 2016).

203.    Under RCW 49.52.050(2), 070, it is unlawful for an employer to willfully withhold wages from an employee that were agreed to through a contract.

204.    In *Helde*, the Court recognized that the Wage Rebate Act (RCW 49.52.050(2)), protects Washington employees from employers who contract for certain wage obligations, but who then attempt to satisfy other wage obligations by demanding employees accept less than their negotiated compensation in order to allocate earned-compensation elsewhere. *Helde v. Knight*, 2016 WL 1687961, at *2 ("An offer of employment to perform certain activities in exchange for specified compensation cannot simply be ignored or changed at the employer's whim without risking significant penalties under RCW 49.52.070….").

205.    As set forth supra, Employer Defendants compensated Plaintiffs Blais and McKenna and the Washington Class on a commission scheme, but did not separately compensate Plaintiff Blais and the Washington Class for all work performed and failed to pay promised commissions. Thus, Employer Defendants willfully withheld wages from Plaintiff Blais and the Washington Class.

206.    RCW 49.48.010 provides that, when any employee shall cease to work for an employer, whether by discharge or by voluntary withdrawal, the wages due him or her on account of his or her employment shall be paid to him or her at the end of the established pay period. This section further provides that it is unlawful for any employer to withhold or divert any portion of an employee's wages except as provided therein or specifically agreed upon orally or in writing by the employee and employer.

207.    The Employer Defendants violated RCW 49.48.010 by failing to pay the final

wages of Plaintiff Blais and the Washington Class as required and they took unauthorized deductions from their wages.

208.    As a direct and proximate result of Employer Defendants' violations and its willful intent to deprive Plaintiff and Class Members of wages owed, Defendants deprived Plaintiff Blais and the Washington Class of compensation in the amounts to be determined at trial.

**COUNT VIII**
**Violations of the Washington Wage Rebate Act**
**Double Damages for Willful and Intentional Withholding of Wages**
(On Behalf of Plaintiff Blais and Washington Class)
(Against Employer Defendants[6])

209.    Plaintiff Blais and the Washington Class reasserts the allegations Set forth in the above paragraphs, as applicable.

210.    In *Wingert,* the Supreme Court also explicitly stated that employees are entitled to a claim under RCW 49.52.050, 070 for double damages where the employer willfully, and with intent to deprive, withheld wages owed pursuant to regulations. *Wingert v. Yellow Freight Systems, Inc*., 146 Wash.2d 841, 847-51 (2002).

211.    In failing to pay Plaintiff and the Class for rest period time and for failing to pay for all hours worked, for failing to satisfy wage obligations, and for making unauthorized deductions, Employer Defendants acted willfully and with the intent of depriving its employees of the wages to which they were entitled under Washington wage and hour laws.

212.    Additionally, in failing to pay overtime wages to Plaintiff Blais

---

[6] For the purposes of the Washington Class, "Employer Defendant" includes Ocean Tech dba CityMac for state law violations occurring after October 23, 2020.

and the Washington Class for hours worked in excess of forty in a workweek, Employer Defendants acted willfully and with the intent of depriving its employees of the wages to which they were entitled under the WMWA.

213.    As a direct and proximate result of Employer Defendants' violations and its willful intent to deprive Plaintiff Blais and the Washington Class of wages owed, Plaintiff Blais and the Washington Class are entitled to judgment for twice the amount of wages owed.

**COUNT IX**
**Violations of Oregon Conditions of Employment Laws**
**Failure to Pay Overtime**
(On Behalf of Plaintiff Free and Oregon Class)
(Against Employer Defendants)

214.    Plaintiff Free and the Oregon Class reasserts the allegations set forth in the above paragraphs, as applicable.

215.    Employer Defendants, as an employer in Oregon, is required to follow and comply with Oregon's wage and hour laws and regulations.

216.    Employer Defendants were required to pay Plaintiff Free and the Oregon Class for all hours worked on Plaintiff's next regularly scheduled payday under ORS 652.120 and ORS 653.010.

217.    Pursuant to ORS 653.025, Employer Defendants were required to pay Plaintiff Free and the Oregon Class at the then minimum wage rate for all hours worked when those wages were due.

218.    As a result of Employer Defendants' failure to keep a true and accurate record of the hours worked by Plaintiff Free and the Oregon Class Members, Employer Defendants have violated, and continue to violate, the Oregon Wage Laws.

219.    Plaintiff Free and the Oregon Class are entitled to collect all wages

remaining due, in an amount to be proven at trial, together with attorney fees, costs, and disbursements, as well as pre- and post-judgment interest, and the 30 days of statutory penalty wages provided by ORS 652.150.

**COUNT X**
**Violations of Oregon Conditions of Employment Laws**
**Failure to Pay Wages Upon Termination**
(On Behalf of Plaintiff Free and Oregon Class)
(Against Employer Defendants)

220.    Plaintiff Free and the Oregon Class reasserts the allegations set forth in the above paragraphs, as applicable.

221.    Employer Defendants were required to pay Plaintiff Free and the Oregon Class all wages on payday, as required by ORS 652.120, and timely at the end of employment, as required by ORS 652.140.

222.    Employer Defendants failed to pay Plaintiff Free and the Oregon Class all wages due at the end of employment and thereby violated Oregon Law.

223.    Plaintiff Free and the Oregon Class are entitled to the greater of $200 or actual damages in an amount to be proven at trial, together with attorney fees, costs and disbursements, as well as pre- and post-judgment interest.

**COUNT XI**
**Violations of Oregon Conditions of Employment Laws**
**Wrongful Deductions**
**ORS 652.120**
(On Behalf of Plaintiff Free and Oregon Class)
(Against Employer Defendants)

224.    Plaintiff Free and the Oregon Class reasserts the allegations set forth in the above paragraphs, as applicable.

225.    Pursuant to ORS 652.610, Employer Defendants were prohibited from

deducting certain amounts from the paychecks of Plaintiff Free and the Oregon Class but willfully did so.

226.     Plaintiff Free and the Oregon Class are entitled to the greater of $200 or actual damages in an amount to be proven at trial, pursuant to ORS 652.615, together with attorney fees, costs and disbursements, as well as pre- and post-judgment interest.

**COUNT XII**
**Violations of Oregon Conditions of Employment Laws**
**Failure to Pay Minimum Wage**
**ORS 653.025**
(On Behalf of Plaintiff Free and Oregon Class)
(Against Employer Defendants)

227.     Plaintiff Free and the Oregon Class reassert the allegations set forth in the above paragraphs, as applicable.

228.     Pursuant to ORS 653.025, Employer Defendants were required to pay Plaintiff Free and the Oregon Class at least the amount of the applicable Oregon minimum wage, when those wages were due, but willfully failed to do so.

229.     Employer Defendants failed to pay Plaintiff Free and the Oregon Class for off-the-clock work and wait-time, resulting in a failure to pay minimum wage for all hours worked.

230.     Plaintiff Free and the Oregon Class are entitled to collect the difference between their wages received when due and the Oregon minimum wages due in an amount to be proven at trial, together with attorney fees, costs, and disbursements, as well as prejudgment interest and the 30 days of statutory penalty wages provided by ORS 653.055 and 652.150.

## COUNT XIII
### Meal Break Violations
### OAR 839-020-0050
(On Behalf of Plaintiff Free and Oregon Class)
(Against Employer Defendants)

231.     Plaintiff Free and the Oregon Class reasserts the allegations set forth

in the above paragraphs, as applicable.

232.     Pursuant to OAR 839-020-0050, employees who have worked at least six hours

are entitled to a meal period of not less than 30 continuous minutes during which the employee is

relieved of all duties. See OAR 839-020-0050(2)(a). Except as otherwise provided in the rule, if

an employee is not relieved of all duties for 30 continuous minutes during the meal period, the

employer must pay the employee for the entire 30-minute meal period. See OAR 839-020-

0050(2)(b).

233.     Employer Defendants implemented a policy that automatically deducted

30-minutes from Plaintiff Free and the Oregon Class members' time for each shift worked, even

though Plaintiff Free and the Oregon Class Members were still on-duty, subject to interruption,

and often were interrupted during their meal breaks.

234.     Because Plaintiff Free and the Oregon Class Members' meal breaks

were subject to interruption, were on duty, were not continuous, and were not relieved of all

duties during the break, Employer Defendants' automatic time deduction for meal periods was

and is in violation of OAR 839- 020-0050, and Plaintiff Free and the Oregon Class Members

should be reimbursed for back wages for the entire 30 minutes from each work day.

235.     Plaintiff is entitled to declaratory relief that Employer Defendants' past and

ongoing automatic time deduction policy violated and is in violation of the Oregon meal break

requirements.

236.     Plaintiff Free and the Oregon Class Members are entitled to recover unpaid wages at their regular hourly rate for the 30 minutes that were automatically deducted by Employer Defendants for each work period where that deduction took place. Pursuant to ORS 12.080, a six-year statute of limitations is applied for liability of unpaid regular wages.

237.     Employer Defendants' violation of the Oregon meal break rules was willful, as that term is used in ORS 652.150. Defendant's violation was willful because the automatic time deduction policy was implemented purposefully and was not the product of inadvertence. Employer Defendants had, or reasonably should have had, a level of awareness of their obligation to pay Plaintiff Free and the Oregon Class Members such that Employer Defendants' failure to pay was "willful."

238.     Because of Employer Defendants' failure to pay Plaintiff Free and the Oregon Class Members' wages within 48 hours after they were due, Plaintiff is entitled to recover costs, disbursements, and reasonable attorney fees pursuant to ORS 652.200.

239.     Because of Employer Defendants' wrongful withholding from Oregon Class members' wages, Oregon Class members are entitled to recover costs, disbursements and a reasonable sum for attorney fees, pursuant to ORS 652.615, plus pre- and post-judgment interest in the amount of 9% per annum incurred herein under ORS 82.010.

240.     Pursuant to OAR 839-020-0050, every employer is required to provide each employee, for each segment of four hours or major pay thereof worked in a work period, a rest period of not less than ten continuous minutes during which the employee is relieved of all duties, without deduction from the employee's pay. OAR 839-020-0050(6)(a).

241.     Plaintiff Free generally worked shifts lasting over 8 hours per shift.

Oregon Class members worked similar shifts, each at least over 8 minute per complete shift.

Accordingly, Plaintiff Free and Oregon Class members were entitled to three separate rest

periods lasting 10 minutes each during which Plaintiff Free and Oregon Class members should

have been relieved of all duties. As discussed above, Plaintiff and Oregon Class members are

subject to interruption and are consistently denied requisite rest periods.

242.     Plaintiff Free and Oregon Class members are entitled to declaratory

relief finding that Defendant is in violation of the rest break requirements provided by Oregon

law.

<h3 style="text-align:center">COUNT XIV</h3>

**Meal Break Violations**
**OAR 839-020-0050**
(On Behalf of Plaintiff Free and Oregon Class)
(Against Employer Defendants)

243.     Plaintiff incorporates all allegations contained in the foregoing paragraphs.

244.     ORS 652.140 requires that, "[w]hen an employer discharges an employee or when

employment is terminated by mutual agreement, all wages earned and unpaid at the time of the

discharge or termination become due and payable not later than the end of the first business day

after the discharge or termination." See ORS 652.140(1). 101. ORS 652.140 further requires that

individuals who provide at least 48 hours' notice of an intent to quit must immediately be paid

all wages earned and unpaid at the time their resignation becomes effective. If the employee

quits within less than 48 hours' notice, the employer must pay all wages earned and unpaid

within five days.

245.     ORS 652.150 states that, "if an employer willfully fails to pay any wages or

compensation of any employee whose employment ceases, as provided in ORS 652.140 . . . ,

then, as a penalty for the nonpayment, the wages or compensation of the employee shall continue

58

from the due date thereof at the same hourly rate for eight hours per day until paid or until action

therefor is commenced. See ORS 652.150(1). Penalty wages are not to continue for more than 30

days from the due date. See ORS 652.150(1)(a).

246.    Pursuant to ORS 12.080, a six-year statute of limitations is applied for liability of

unpaid regular wages. See, e.g., Makaneole v. Solarworld Indus. Am., Inc., No. 3:14-CV-1528-

PK, 2016 WL 7856433, at *13 (D. Or. Sept. 2, 2016), report and recommendation adopted, No.

3:14-CV-01528-PK, 2017 WL 253983 (D. Or. Jan. 17, 2017) ("As to [plaintiff's claims] for

unpaid regular wages, that claim is subject to a six-year statute of limitations[.]") (citing ORS

12.080(1)).

247.    As described above, Employer Defendants enacted a policy that deprived Plaintiff

Free and Oregon Class members compensation for all hours worked, including automatic time

deductions and work duties performed "off-the-clock." As a result, Defendant failed to pay

Plaintiff Free  and Oregon Class members all wages due and owing after separation from

employment in violation of ORS 652.140.

248.    In failing to pay all wages due upon separation of employment, Employer

Defendants acted as a free agent, determined its own actions, was not responsible to, nor coerced

by any other person, entity or authority. Employer Defendants knew that Plaintiff Free and

Oregon Class members had ended and possessed information regarding the hours worked and

amount of wages due Plaintiff and Oregon Class members at the date of termination. Employer

Defendants were capable of paying all wages earned and due at termination.

249.    Employer Defendants' failure to make payment of Plaintiff Free and Oregon

Class members' final wages when due was willful and continued for not less than 30 days.

250.     Because of Employer Defendants' failure to make payment of final wages when

due, Plaintiff Free are due statutory penalty wages pursuant to ORS 652.150, for the continuation of the unpaid final wages for not less than 30 days. Likewise, Oregon Class members who ended their employment but were not fully compensated their total wages due and owing are likewise due statutory penalty wages pursuant to ORS 652.150. 109. Because of Employer Defendants' failure to pay Plaintiff Free and Oregon Class members' wages within the time required by law, Plaintiff Free and Oregon Class members are entitled to recover costs, disbursements, and reasonable attorney fees pursuant to ORS 652.200.

251.    Plaintiff Free and Oregon Class members seek statutory wages pursuant to ORS 652.150; plus costs, disbursements and attorney fees pursuant to ORS 652.200; plus pre- and post judgment interest in the amount of 9% per annum incurred herein under ORS 82.010.

**COUNT XV**
**Violation of Colorado Wage Act**
**Failure to Pay Earned Wages**
(On Behalf of Plaintiff Johnson and Colorado Class)
(Against Employer Defendants)

252.    Plaintiff Johnson and the Colorado Class reasserts the allegations set forth in the above paragraphs, as applicable.

253.    At all times relevant hereto, Plaintiff Johnson and the Colorado Class were "employees" of the Corporation as defined by the Colorado Wage Claim Act, C.R.S. § 8-4-101 et seq. and Colorado Minimum Wage Order Number 33, 7 C.C.R. § 1103-1 (collectively "Colorado Wage and Hour Law"). C.R.S. § 8-4-101(5); 7 C.C.R. § 1103-1:2.

254.    At all times relevant hereto, Defendants were "employers" as defined by Colorado Wage and Hour Law. C.R.S. § 8-4-101(6); 7 C.C.R. § 1103-1:2.

255.    The Employer  Defendants refused to pay Plaintiff Johnson and the Colorado

Class the wages they earned, in violation of Colorado Wage and Hour Law. C.R.S. §§ 8-4-103 and 8-4-109.

256.    Under CRS § 8-4-109(1)(a), when an employee is terminated from employment, "the wages or compensation for labor or services… unpaid at the time of such discharge is due and payable immediately."

257.    According to CRS § 8-4-109(3)(b) "If an employee's earned… wages or compensation are not mailed… and postmarked within 14 days after the receipt of such demand, the employer shall be liable to the employee for the wages or compensation, and a penalty of (1)125% of… such wages… up to and including $ 7500 and (H) 50% of that amount of such wages or compensation that exceed $ 7500...."

258.    Plaintiff Johnson and the Colorado Class completed all conditions precedent to bring a claim under the Colorado Wage Act for unpaid wages, penalties for nonpayment, penalties for willful nonpayment, attorney fees, costs of litigation, pre-judgment interest, post-judgment interest, and other remedies which may apply.

259.    Plaintiff Johnson and the Colorado Class are entitled to penalties from Defendants as provided for under the statute (CRS § 8-4-109(3) through § 8-4-110), together with attorney fees, expenses, and interest thereon as provided by law.

260.    Since Plaintiff Johnson's and the Colorado Class's earned unpaid wages were not mailed to the place of receipt specified in the demand for payment, and postmarked within 14 days after the receipt of such demand, the Employer  Defendants are liable for a penalty. The penalty shall be the greater of either (1) 125% of the first $ 7500 of wages and 150% of any wages or compensation in excess of $ 7500, or (2) an amount equivalent to the employee's wages for up to 10 days.

261. Plaintiff Johnson and the Colorado Class have been harmed and have suffered damages, as a result in an amount to be determined at trial.

262. Per CRS § 8-4-110(3)(c) "If the employee can show that the employer's failure to pay is willful, the penalty required under paragraph (b) of this subsection (3) shall increase by 50%."

263. As a result of the Employer Defendants' failure to keep a true and accurate record of the hours worked by the Plaintiff Johnson and the Colorado Class Members, Defendants have violated, and continue to violate, the Colorado Wage Laws.

264. In addition to civil penalties for which an employer is liable for the non-payment of wages to an employee upon statutory demand as described above, if the employer's failure to pay is found to be willful, the penalty is increased by an additional 50%.

265. Since Defendants' failure to pay is willful, the penalty provided for above is increased by an additional 50%. CRS § 8-4-109(3).

266. Under CRS § 8-4-110(1) "If, in any such action in which the employee seeks to recover any amount of wages or compensation, the employee recovers a sum greater than the amount tendered by the employer [in this case $ 0], the court may award the employee reasonable costs and attorney fees incurred in such action. If an employer fails or refuses to make a tender within 14 days after the demand, then such failure or refusal shall be treated as a tender of no money for any purposes under this article."

267. If an employee brings an action and recovers wages under the Colorado Wage Act, the employee may be awarded their reasonable costs and attorney fees by the court, if the employee recovers a sum greater than the amount tendered. See, e.g., CRS § 13-6-403(1).

268. In addition to his unpaid wages, Plaintiff Johnson and the Colorado Class are

entitled to recover costs and attorney fees.

**COUNT XVI**
**Violation of Colorado Minimum Wage Act**
**Failure to Pay Minimum Wage**
(On Behalf of Plaintiff Johnson and Colorado Class)
(Against Employer Defendants)

269.    Plaintiff Johnson and the Colorado Class reasserts the allegations set forth in the above paragraphs, as applicable.

270.    At all relevant times, Employer Defendants have been an "employers" within the meaning of the Colorado Minimum Wage Act.

271.    At all relevant times,  Employer Defendants have employed "employees," including Plaintiff Johnson and the Colorado Class, within the meaning of the Minimum Wage Act.

272.    Employer Defendants failed to pay Plaintiff Johnson and the Colorado Class minimum wage for all hours worked.

273.    As a result of the conduct alleged herein, Employer Defendants have violated the Minimum Wage Act. These violations were committed knowingly, willfully, and with reckless disregard of applicable law.

274.    In further violation of the Colorado Minimum Wage Orders, specifically section 7 CCR 1103-1:12, Employer Defendants have failed to maintain accurate employee records, including the number of hours worked per work week by Plaintiff Johnson and the Colorado Class.

275.    Employer Defendants failed to maintain any records of the number of hours worked per work week by Plaintiff Johnson and the Colorado Class.

276.    As a result, Plaintiffs have been damaged in an amount to be determined at trial.

**Violation of Colorado Minimum Wage Act**
**Failure to Pay Overtime**
(On Behalf of Plaintiff Johnson and Colorado Class)
(Against Employer Defendants)

277.    Plaintiff Johnson and the Colorado Class reasserts the allegations set forth in the above paragraphs, as applicable.

278.    Plaintiff Johnson and the Colorado Class' claims arise under the COLORADO MINIMUM WAGE ACT C.R.S.A. § 8-6-101 et seq., the COLORADO WAGE CLAIM ACT C.R.S.A. § 8- 4-101 et seq., and the applicable Minimum Wage Order/s including: 7 CCR 1103-1:4 which provides that "[e]mployees shall be paid time and one-half of the regular rate of pay for any work in excess of forty (40) hours per workweek, twelve (12) hours per work day or twelve (12) consecutive hours without regard to the starting and ending time of the work day."

279.     Plaintiff Johnson and the Colorado Class Members regularly worked more than forty (40) hours in a work week

280.    Plaintiff Johnson and the Colorado Class  did not receive overtime compensation for all overtime hours as required by Colorado law. Consequently, by failing to pay Plaintiff Johnson and the Colorado Class overtime compensation for work performed after the first forty (40) hours, Employer Defendants violated the applicable Colorado Minimum Wage Order/s including 7 CCR 1103- 1:4, the COLORADO MINIMUM WAGE ACT, the COLORADO WAGE CLAIM ACT, and all other applicable statutes and regulations.

281.    Employer Defendants' violations as described herein constitute willful violations.

282.    Plaintiff Johnson and the Colorado Class  are entitled to recover liquidated damages.

283.    Due to Defendants' willful violations, Plaintiff Johnson and the Colorado Class

are entitled to recover from Employer Defendants their unpaid wages, overtime compensation, liquidated damages, pre-judgment interest, reasonable attorneys' fees and costs and disbursements of the action.

**COUNT XVIII**
**Failure to Provide Meal Periods**
**Violation of 7 CCR 1103-1:7**
(On Behalf of Plaintiff Johnson and Colorado Class)
(Against Employer Defendants)

284.    Plaintiff Johnson and the Colorado Class reasserts the allegations set forth in the above paragraphs, as applicable.

285.    In violation of 7 CCR 1103-1:7, Employer Defendants did not allow Plaintiff Johnson and Colorado Class an "uninterrupted and duty free meal period of at least a thirty minute duration when the scheduled work shift" exceeded five consecutive hours.

286.    Plaintiff Johnson and Colorado Class were not completely relieved of all duties and were not permitted to pursue personal activities that would qualify as a nonwork period of time.

287.    As a result of this conduct, Plaintiff Johnson and Colorado Class have sustained damages in the form of unpaid compensation for their work time

**COUNT XIX**
**Failure to Provide Rest Periods**
**Violation of 7 CCR 1103-1:8**
(On Behalf of Plaintiff Johnson and Colorado Class)
(Against Employer Defendants)

288.    Plaintiff Johnson and the Colorado Class reasserts the allegations set forth in the above paragraphs, as applicable.

289.    In violation of 7 CCR 1103-1:8, Employer Defendants failed to provide Plaintiff

Johnson and Colorado Class members "a compensated ten (10) minute rest period for each four (4) hours" of work time.

290.    As a result of this conduct, Plaintiff Johnson and Colorado Class members have sustained damages in the form of unpaid compensation for their work time.

**COUNT XX**
Unlawful Deductions
Violation of Colorado Wage Claim Act
(On Behalf of Plaintiff Johnson and Colorado Class)
(Against Employer Defendants)

291.    Plaintiff Johnson and the Colorado Class reasserts the allegations set forth in the above paragraphs, as applicable

292.    Pursuant to C.R.S.A. § 8-4-105, "no employer shall make any deduction from the wages or compensation of an employee except" those that are outlined in the statute.

293.    In violation of C.R.S.A. § 8-4-105, Employer Defendants unlawfully deducted certain costs from Plaintiff Johnson and Colorado Class earned wages.

294.    The costs that were deducted from Plaintiff Johnson and Colorado Class earned wages are not authorized deductions pursuant to C.R.S.A. § 8-4-105. 95. As a proximate result of the aforementioned violation, Plaintiff Johnson and Colorado Class have been damaged in an amount according to proof at the time of trial.

**COUNT XXI**
**Violations of South Carolina Wage Laws**
**Failure to Pay Minimum Wage, Overtime, Unlawful Deductions and Inadequate Record Keeping**
(On Behalf of Plaintiffs Allen, Green and Norris and South Carolina Class)
(Against the Employer Defendants)

295.    Plaintiffs  Allen, Green and Norris reasserts the allegations set forth in the above paragraphs, as applicable.

296.     The foregoing conduct, as alleged, violates the South Carolina Payment of Wages Law, S.C. Code of Laws §41-10-10 et seq. (the "South Carolina Wage Laws").

297.     At all relevant times, Defendants have been, and continues to be, an "employer" within the meaning of the South Carolina Wage Laws.

298.     The South Carolina Wage Laws require that an employer pay compensation for all hours worked to all nonexempt employees, such as the South Carolina Class Representative and the South Carolina Class members. S.C. Code of Laws §41-10-40(A).

299.     At all relevant times, Employer Defendants had a policy and practice of failing and refusing to pay the Plaintiffs Allen, Green and Norris and the South Carolina Class members for all hours worked, by requiring, suffering, or permitting them to work off the clock.

300.     As a result of Employer Defendants' failure to pay wages earned and due, and its decision to withhold wages earned and due, to Plaintiffs Allen, Green and Norris and the South Carolina Class members at their agreed-upon hourly rate and, for work performed in excess of forty hours in a workweek, at a rate not less than one and one-half times the regular rate of pay, the Employer Defendants have violated, and continue to willfully violate the South Carolina Wage Laws.

301.     Plaintiffs Allen, Green and Norris, on behalf of themselves and the South Carolina Class members, seek damages in the amount of the respective unpaid wages earned and due at a rate of their agreed-upon hourly rate for non-overtime hours and at a rate of one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, as provided by the South Carolina Wage Laws; liquidated damages; and such other legal and equitable relief as the Court deems just and proper. S.C. Code of Laws §41-10-80(C).

302.     As a result of Employer Defendants' failure to record, report, credit, and

furnish to Plaintiffs Allen, Green, and Norris and South Carolina Class members their respective wage and hour records showing all wages earned and due for all work performed, Defendants have failed to make, keep, preserve, and furnish such records in violation of the South Carolina Wage Laws.

303. Employer Defendants have unlawfully withheld portions of Plaintiffs Allen, Green, and Norris and South Carolina Class's wages, as that term is defined by S.C. Code Ann. § 41-10-10(2), including commissions, in violation of S.C. Code Ann. § 41-10-30(A) and of S.C. Code Ann. § 41-10-40(C).

304. Further, Employer Defendants failed to notify the Plaintiffs Allen, Green, and Norris and South Carolina Class of any changes to the terms of wages at least seven (7) calendar days before the change becomes effective, as required by S.C. Code Ann. § 41-10-30(A).

305. Employer Defendants have willfully, intentionally, and wrongfully failed to pay Plaintiffs Allen, Green, and Norris and South Carolina Class all wages due, as required by the South Carolina Payment of Wages Act and according to the employment Agreement of Plaintiffs Allen, Green, and Norris and South Carolina Class.

306. Plaintiffs Allen, Green and Norris, on behalf of themselves and the South Carolina Class members seek recovery of attorneys' fees, costs, and expenses of this action to be paid by Defendants, as provided by South Carolina Wage Laws, including S.C. Code of Laws §41-10-80(C).

<u>**COUNT XXII**</u>
**Violation for Fair Labor Standards Act - Retaliation**
(On Behalf of Plaintiff Jahagirdar)
( Against Employer Defendants)

307. Plaintiff Jahagirdar reasserts the allegations set forth in the above paragraphs, as applicable.

308. On December 4, 2019, Plaintiff Jahagirdar contacted Employer Defendants to demand payment of all wages owed informing that he was not paid any wages for the final eighty (80) hours he had worked for Defendants.

309. Employer Defendants' HR representative informed Plaintiff Jahagirdar that his paycheck was withheld because: "There was an iPad air left unpaid, and two devices on early upgrade with extensive damage that were not approved by Verizon for trade-in. One of said devices needed a screen replacement, totaling approximately $169. The other device has a broken back glass panel, which always requires total device replacement. You were advised against the transaction as shown in our records but you proceeded, resulting in a loss of over $1000 for City Mac."

310. Employer Defendants unlawfully withheld Plaintiff Jahagirdar's final wages purportedly due to trade-ins from the Employer Defendants' customers which were not accepted by the Employer Defendants' vendors.

311. On January 2, 2020, Plaintiff Jahagirdar's counsel sent a litigation hold notice to Defendants previously filed with the court at ECF No. 1-1.

312. On January 3, 2020 Plaintiff Jahagirdar received an offer of employment from Brian Cox, Managing Director of Northwestern Mutual contingent upon a successful background check.

313. On February 3, 2020 Plaintiff Jahagirdar received an email from Northwestern Mutual Human Resources department indicating that Plaintiff Jahagirdar had an outstanding warrant for "embezzlement" that was taken out by Employer Defendants on January 16, 2020, after Defendants received notice of Plaintiff Jahagirdar's claims for unpaid wages and litigation hold notice.

314.    On February 3, 2020, Brian Cox from Northwestern Mutual called Plaintiff Jahagirdar and stated, "they are rescinding their offer based on the allegations of embezzlement made by CityMac."

315.    In doing the acts alleged above, Employer Defendants retaliated against Plaintiff and all similarly situated employees and former employees in violation of the FLSA. After Plaintiff and similarly situated employees and former employees engaged in protected conduct by asserting their right to receive the wages they earned without unauthorized deductions, Employer Defendants retaliated against them by withholding their pay and making unauthorized deductions.

316.    Employer Defendants retaliated additionally against Plaintiff by filing a false police report against him, which resulted in a warrant being issued for his arrest.

317.    As a direct and proximate results of the above-described violation of the rights of Plaintiff and all similarly situated employees and former employees under the FLSA, Plaintiff and all similarly situated employees and former employees suffered damages, including but not limited to, lost wages, benefits and other pecuniary loss.

318.    Employer Defendants' conduct was done with malice and was willful and wanton, entitling Plaintiff and all similarly situated employees and former employees to an award of punitive damages. Defendant Curran participated in and/or condoned the retaliation, rendering Defendant CityMac liable for punitive damages.

## COUNT XXIII
**(Malicious Prosecution)**
(On Behalf of Plaintiff Jahagirdar)
(Against Employer Defendants)

319.    Plaintiff Jahagirdar reasserts the allegations set forth in the above paragraphs, as

applicable.

320. Employer Defendants caused criminal proceedings to be initiated against Plaintiff with malice and without probable cause.

321. The criminal proceedings have been or will be terminated in Plaintiff's favor.

322. Employer Defendants' actions were in violation of North Carolina common law and caused Plaintiff to suffer damages, including loss of a job offer from Northwestern Mutual, severe emotional distress and mental injury.

323. Employer Defendants' conduct was done with malice and was willful and wanton, entitling Plaintiff to an award of punitive damages. Defendant Curran participated in and/or condoned the malicious prosecution, rendering Defendant CityMac liable for punitive damages.

### COUNT XXIV
**(Abuse of Process)**
(On Behalf of Plaintiff Jahagirdar)
(Against Employer Defendants)

324. Plaintiff Jahagirdar reasserts the allegations set forth in the above paragraphs, as applicable.

325. Employer Defendants caused criminal proceedings to be initiated against Plaintiff Jahagirdar malice and without probable cause.

326. Employer Defendants had an ulterior motive to achieve a collateral purpose not within the normal scope of the process used. Employer Defendants' ulterior motive was to retaliate against Plaintiff Jahagirdar for asserting his legal rights and to intimidate Plaintiff Jahagirdar from pursuing legal action to protect those rights, seeking to gain an advantage in any civil suit against them.

327.     In doing the acts alleged above, Employer Defendants committed an act that was a malicious misuse or misapplication of that process after issuance to accomplish some purpose not warranted or commanded.

328.     Employer Defendants' actions were in violation of North Carolina common law and caused Plaintiff Jahagirdar to suffer damages, including loss of a job offer from Northwestern Mutual, severe emotional distress, and mental injury.

329.     Employer Defendants' conduct was done with malice and was willful and wanton, entitling Plaintiff Jahagirdar to an award of punitive damages. Defendant Curran participated in and/or condoned the abuse of process, rendering Defendant CityMac liable for punitive damages.

### COUNT XXV
**(Intentional Infliction of Emotional Distress)**
(On Behalf of Plaintiff Jahagirdar)
(Against Employer Defendants)

330.     Plaintiff Jahagirdar reasserts the allegations set forth in the above paragraphs, as applicable.

331.     Employer Defendants caused criminal proceedings to be initiated against Plaintiff Jahagirdar with malice and without probable cause.

332.     Employer Defendants engaged in extreme and outrageous conduct. Defendants' conduct of initiating criminal charges against Plaintiff months after Plaintiff Jahagirdar resigned and *only after* retained counsel and demanded Defendants pay him the wages owed to him goes beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

333.     Employer Defendants' punitive and retaliatory conduct of initiating baseless

criminal charges to avoid paying wages was intended to, and did in fact, cause Plaintiff Jahagirdar severe emotional distress.

334.     As an actual, proximate, and foreseeable result of the above-mentioned actions, Plaintiff Jahagirdar has suffered lost back and front pay, lost benefits, severe emotional distress, severe physical distress, anxiety, depression, embarrassment, humiliation, physical pain and suffering, and his peace of mind has been disturbed.

335.     Employer Defendants' conduct was done with malice and was willful and wanton, entitling Plaintiff Jahagirdar to an award of punitive damages. Employer Defendants participated in and/or condoned the extreme and outrageous conduct, rendering Defendant CityMac liable for punitive damages.

## COUNT XXVI
### (Tortious Interference with Prospective Economic Advantage)
(On Behalf of Plaintiff Jahagirdar)
(Against Employer Defendants)

336.     Plaintiff Jahagirdar reasserts the allegations set forth in the above paragraphs, as applicable.

337.     On January 3, 2020 Plaintiff Jahagirdar received an offer of employment from Brian Cox, Managing Director of Northwestern Mutual contingent upon a successful background check.

338.     Plaintiff Jahagirdar  subsequently posted on his Facebook page that he was interviewing with Northwestern Mutual and believed he had an imminent job offer. At least one coworker is friends with Plaintiff Jahagirdar on Facebook. On information and belief, Employers thereby became aware of Plaintiff's job offer from Northwestern Mutual.

339.     Employer Defendants, without justification, purposefully filed a false police

report accusing Plaintiff Jahagirdar of embezzlement and stating he has violent tendencies, in order to induce Northwestern Mutual from entering into the employment agreement with Plaintiff Jahagirdar.

340. On February 3, 2020, Brian Cox called Plaintiff and stated "they are rescinding their offer based on the allegations by CityMac." Cox emailed Plaintiff Jahagirdar the results of the background check which showed the warrant out for his arrest based on embezzlement charges by CityMac.

341. Employer Defendants' purposeful conduct, in fact, induced Northwestern Mutual to refrain from entering into an employment contract with Plaintiff Jahagirdar, which would have been made, absent Defendants' purposeful interference.

342. Employer Defendants' conduct was not privileged or justified.

343. As an actual, proximate, and foreseeable result of the above-mentioned actions, Plaintiff Jahagirdar has suffered lost back and front pay, lost benefits, severe emotional distress, severe physical distress, anxiety, depression, embarrassment, humiliation, physical pain and suffering, and his peace of mind has been disturbed.

344. Employer Defendants' conduct was done with malice and was willful and wanton, entitling Plaintiff Jahagirdar to an award of punitive damages. Defendants participated in and/or condoned the tortious interference with prospective economic advantage, rendering Defendant CityMac liable for punitive damages.

## COUNT XXVII
### (Fraudulent Transfer)
(On Behalf of All Plaintiffs)
(Against Alter Ego Defendants, Troy Curran, Brandy Curran, Amber Curran and Mark Curran)

345. Plaintiffs reassert the allegations set forth in the above paragraphs, as applicable.

346. Plaintiffs are informed and believe, and on that basis allege, that the Curran and Curran's alter egos have engaged in improper conveyances within the meaning of RCW 19.40.041 and 19.40.051 in that, commencing shortly after this action was filed, Curran transferred assets between and among the Alter Ego Defendants and his daughters, without receiving a reasonably equivalent value in exchange, despite the fact that the Curran was engaged in a business for which the remaining assets were unreasonably small in relation his business obligations.

347. Alternatively, on information and belief, the transfers took place at a time when Curran reasonably should have believed that he would incur debts beyond his ability to pay as they became due.

348. Alternatively, on information and belief, the transfers were made without receiving a reasonably equivalent value in exchange for the transfer, and Curran was insolvent at the time or became insolvent as a result of the transfer or obligation.

349. Plaintiffs allege that some of the transfers were made to an "insider" of Curran, that Curran was insolvent at that time, and the insider had reasonable cause to believe that Curran was insolvent.

350. As a result of the improper conveyances, Plaintiffs are entitled to all of the remedies set forth in RCW 19.40.071 and 19.40.081, including but not limited to: a. Judgment for the amount of and/or avoidance of the transfer or obligation to the extent necessary to satisfy Plaintiffs' claims; and b. An injunction against further disposition by Curran and his transferees of the assets transferred or of other property.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and all similarly situated employees and former employees demand and pray for:

1. A Declaration and finding by the Court that Employer Defendants willfully violated provisions of the FLSA by failing to comply with the minimum wage requirements of the FLSA;

2. An Order pursuant to Section 16(b) of the FLSA finding Employer Defendants liable for unpaid back wages due to Plaintiff and all similarly situated employees and former employees and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff;

3. An Order pursuant to the laws of North Carolina, Washington, Oregon, Colorado and South Carolina finding Employer Defendants liable for unpaid back wages, commissions, and liquidated damages equal in amount to the unpaid compensation due to Plaintiff;

4. An Order finding Defendants Zephyr Investments, Inc., TS Leasing, LLC, Curran and Company, LLC Green Vault, Inc., Curran Ranch, Curran Family Properties, LLC, Northern Passage, LLC, Curran Holdings, LLC and Salish Sea, LLC to be alter ego of Curran;

5. An Order finding Defendant Ocean Tech dba CityMac to be the successor in interest to Defendant Computer Haus dba CityMac;

6. An Order awarding compensatory damages as applicable in an amount to be proven at trial;

7. An Order awarding punitive damages, as applicable in an amount to be proven at trial;

8. An injunction against further disposition by Defendants, and each of them, of any assets belonging to Troy Curran or any of the Alter Ego Defendants.

9.      An Order awarding the costs of this action;

10.     An Order awarding reasonable attorneys' fees;

11.     An Order awarding prejudgment and postjudgment interest at the highest rates allowed by law; and

12.     An Order granting such other and further relief as may be necessary and appropriate.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury.

*/s/ L. Michelle Gessner*
L. Michelle Gessner, NCSB#26590
Nicole K. Haynes, NCSB#47793
John G. Hutchens III, NCSB#52214
GESSNERLAW, PLLC
602 East Morehead Street
Charlotte, North Carolina 28202
Tel: (704) 234-7442; Fax: (980) 206-0286
Email: michelle@mgessnerlaw.com
*Attorney for Plaintiffs and Putative Class/Collective*