**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**Civil Action No. 1:20-cv-0033**

| | | |
|---|---|---|
| **SHAILESH JAHAGIRDAR,** *et. al* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **MEMORANDUM OF LAW IN** |
| **vs.** | ) | **SUPPORT OF MOTION TO** |
| | ) | **DECERTIFY COLLECTIVE** |
| **THE COMPUTER HAUS NC, INC.** | ) | **ACTION UNDER 29 U.S.C. § 216(b)** |
| **d/b/a CITYMAC,** *et. al,* | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

COME NOW Defendants, The Computer Haus NC, Inc. d/b/a CityMac ("CityMac") and Troy Curran ("Mr. Curran") (CityMac and Mr. Curran collectively referred to as "Defendants"), by and through their undersigned counsel, and submit this Memorandum of Law in Support of Motion to Decertify Collective Action Under 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA").

## I.      INTRODUCTION

In this Fair Labor Standards Act ("FLSA") collective action, Plaintiffs[1] assert that they were not paid minimum wage and overtime pay. Following the two-step procedure utilized by courts in the Fourth Circuit, this Court conditionally certified a collective of current and former hourly employees. (ECF No. 38.) After discovery, Defendants now move to decertify the collective pursuant to the more rigorous standard that is applicable at this stage of the case.

---

[1]As used herein, Plaintiffs and Opt-In Plaintiffs are collectively referred to as "Plaintiffs." "Named Plaintiffs" refers to Plaintiffs Jahagirdar, Johnson, Blais, Green, Free, Norris, and Allen. Individual plaintiffs are referenced by their names.

1

Plaintiffs cannot proceed as a collective class because they are not "similarly situated" under the FLSA. Plaintiffs are only similarly situated if they can demonstrate they were together the victims of a single decision, policy, or plan to deprive them of minimum wage or overtime pay. It is not enough for Plaintiffs to show that they were merely employed by Defendants and that one or two of them believes they did not receive all of the wages to which they were entitled – there must be proof of a practice that actually violates the law and impacted the entire collective class. Here, there is no evidence of any policy that denied employees minimum wage or overtime pay for time worked.

Certification is also inappropriate because any alleged wages that were not received, including through alleged deductions and/or off the clock work, were driven by individualized employee decisions and practices rather than company-wide policies. Discovery has also revealed that the circumstances of Plaintiffs' individual claims are not similar to one another. For example, some of the Named Plaintiffs testified that they did not work more than forty hours in any workweek, did not work off the clock, and/or that CityMac did not take deductions from their pay. These Plaintiffs cannot possibly be similarly situated to those individuals who do claim losses and the testimony of others cannot be extrapolated to them. Moreover, these Plaintiffs lack cannot serve as representatives because their testimony establishes that they do not have viable claims against the Defendants.

Finally, the Plaintiffs' claims are barred because they had notice of the receivership action in Whatcom County, Washington, and failed to take action to preserve their claims.

For these reasons, and the reasons set forth more fully below, Defendants respectfully request the Court decertify the collective class.

## II.     FACTS AND PROCEDURAL HISTORY

### A.     Background Facts

Troy Curran was the owner of Computer Haus, NC, Inc., which operated retail stores specializing in the sale and repair of computer and wireless products under the d/b/a name "CityMac." (Decl. of Troy Curran ("Curran Decl."), attached as **Exhibit 1**). Computer Haus operated CityMac stores in North Carolina, South Carolina, Washington, and Oregon. *Id.* at ¶ 4-5. The day-to-day operations of each CityMac location were handled by store management and were primarily staffed by employees in two distinct roles: sales and repair services. *Id.* at ¶ 9-10. Sales employees were engaged to sell products and wireless services to customers, while service employees were focused on repairing and refurbishing devices. *Id.* at ¶ 10. Both positions were paid hourly wages. *Id.* Employees in sales positions could also qualify to receive commissions and other remuneration in relation to their sales of eligible products and services, if they met certain eligibility criteria. *Id.* at ¶ 12. Plaintiffs allege that these employees were subject to deductions from "bad returns" and "charge backs," which were deducted from their pay when services and products that they had sold were returned. FAC ¶¶ 78, 79. The employees working in the service side were not eligible to receive these commissions. *Id.* at ¶ 12.

CityMac used electronic timekeeping systems for employees to record time worked. (*See e.g..,* Norris Dep., 36:21-25; Blais Dep., 46:20-47:16; Jahagirdar Dep., 50:23-51:7). Each employee was responsible for clocking in and recording their own time out accurately. (*See* Blais Dep., 39:19-23; Allen Dep., 49:9-13). If an employee forgot to clock in or out, or there was an error with regard to the hours recorded, he or she could reach out to a manager or HR and have the time corrected. (*See* Allen Dep., 62:22-63:12; Blais Dep., 39:14-40:17, 47:21-48:21). CityMac

policy prohibited employees from working off the clock. (*See* Excerpt of CityMac Handbook, attached as **Exhibit 2**, p. 10).

Due to the COVID-19 pandemic, Computer Haus closed all of the CityMac stores in early 2020. As a result of ongoing economic conditions for retail operations, Computer Haus was ultimately placed into a receivership in Whatcom County, Washington, in July 2020. (*See* Washington Court Receivership Orders, ECF No. 70-1). Lead Plaintiff Shailesh Jahagirdar ("Jahagirdar") was listed as a creditor in the receivership and the Plaintiffs' counsel had knowledge of the receivership proceedings on or before July 30, 2020. (*Id.* at p. 11; Correspondence to M. Gessner, **Exhibit 3**). Neither Jahagirdar nor any other Plaintiff filed any creditor's claim or objection in the receivership proceedings. As shown by a September 11, 2020, order of the Washington court, the receiver liquidated Computer Haus' assets, which were sold to Ocean Teach, Inc.[2] (Order Approving Sale, attached as **Exhibit 4**). The Washington state court explicitly ordered that Ocean Tech, Inc. is not liable as a successor to Computer Haus. *Id.* Computer Haus is no longer operational and has no assets.

### B.    Procedural History

Jahagirdar filed this action on February 5, 2020, alleging statutory violations of the Fair Labor Standards Act ("FLSA") and various other claims under North Carolina law. (Compl., ECF No. 1, ¶¶ 1, 58, 66, 71, 76, 83.) Jahagirdar's FLSA claims alleged that Defendants Troy Curran and The Computer Haus NC, Inc. d/b/a CityMac ("CityMac") failed to pay Plaintiff the FLSA's statutory minimum wage and that Defendants retaliated against Plaintiff. (*Id.* ¶¶ 49, 54.) On March 9, 2020, CityMac, by and through its counsel and without any admission of wrongdoing, submitted

---

[2] Ocean Tech, Inc. currently operates a single store under the CityMac name in Bellingham, Washington.

4

four (4) checks to Plaintiff's counsel for certain unpaid wages, including wages Jahagirdar claimed were unlawfully deducted from his pay, and for amounts equal to liquidated damages. (Curran Decl., ¶ 15-16.)

After CityMac's submission of these checks, on March 14, 2020, Jahagirdar filed his First Amended Complaint, adding claims for unpaid overtime pursuant to the FLSA and on behalf of a class of similarly situated individuals. (First Am. Compl., ECF No. 7, ¶¶ 76, 84). Contemporaneously with his First Amended Complaint, Plaintiff filed a Motion to Conditionally Certify Collective Action and Facilitate Notice Pursuant to 29 U.S.C. § 216(b) (ECF No. 9). In support of the Conditional Certification Motion, Plaintiff submitted a declaration in which he alleged that CityMac had centralized policies and/or practices to (i) make unauthorized deductions from employee's wages which reduced their pay below minimum wage; and (ii) refused to pay overtime for hours worked in excess of 40 "in at least one workweek." (Declaration of Shailesh Jahagirdar, ECF No. 10-1, ¶¶ 4, 5).  In the Conditional Certification Motion, Plaintiff sought to conditionally certify a collective action consisting of "all current and former non-exempt hourly employees who were employed by The Computer Haus NC, Inc. d/b/a CityMac and Troy Curran . . . at any of its United States locations beginning February 5, 2017 to the present." (ECF No. 9, ¶ 3). On April 15, 2020, the Court granted the Plaintiff's Conditional Certification Motion and permitted Plaintiff to send the Court-approved notice by first class mail and e-mail to potential members of the collective action (the "Notice"). To date, forty-nine Plaintiffs, including the Named Plaintiffs, have filed documents consenting to join to the FLSA collective action. (*See generally* Docket).

Plaintiff filed a Second Amended Complaint on December 22, 2020, and a Third Amended Complaint on February 12, 2021. (ECF No. 94, 116). Plaintiffs' Amended Complaints added

multiple Defendants whom Plaintiffs allege are liable as Alter Egos of Computer Haus. (*Id.*) Plaintiffs also added Ocean Tech, LLC, which purchased the assets of Computer Haus from a court-appointed receiver and which Plaintiff claims is liable under a successor liability theory. (*Id.* at ¶¶ 49-62). Plaintiffs filed a Fourth Amended Complaint, adding additional business entities, as well as Mr. Curran's brother and children as defendants on July 13, 2021 ("FAC"). (ECF No. 166).

Pursuant to the FAC, Plaintiffs' operative FLSA allegations are as follows: Defendants failed to pay plaintiffs for every hour worked and minimum wages (FAC ¶¶ 76, 154); Plaintiffs worked more than forty hours in a workweek and were not paid overtime (FAC ¶¶ 76, 154); Defendants deducted "bad returns" and "charge backs" from employee pay, which resulted in them receiving less than minimum wage (FAC ¶¶ 78, 79, 156); Defendants permitted or required "off-the-clock" work before and after shifts (FAC ¶¶ 88). With respect to the collective action, the FAC reiterates that the collective action should be certified as: "All current and former employees of Defendants, nationwide, who work or have worked for [CityMac] as non-exempt hourly employee [sic], who were not paid minimum wage and/or overtime premium for all hours worked exceeding 40 per week during the period of February 5, 2017 to the filing of this Complaint in this action." (FAC, ¶ 103.)

Defendants deposed eight individuals, all of whom are members of the proposed collective action, and seven of whom are the Named Plaintiffs in this action: Shailesh Jahagirdar, Andrew Free, Jordan Blais, Connor Johnson, Kamri Norris, Allen Allen, Rakia Green, and Deborah Crouson. Defendants, based on the written discovery responses and deposition testimony of the Named Plaintiffs, now seek to decertify the collective action in accordance with the FLSA.

## III.   ARGUMENTS AND AUTHORITIES

### A.   Standards of Law

Courts in the Fourth Circuit follow a two-step process when deciding whether potential plaintiffs are "similarly situated" so as to certify a collective action. *See, e.g., Rawls v. Augustine Home Health Care, Inc.,* 244 F.R.D. 298, 300 (D. Md. 2007). First, the court uses a "lenient" standard that requires "nothing more than substantial allegations" to conditionally certify a collective class at the notice stage, allowing potential class members to opt in. *Romero v. Mountaire Farms, Inc.,* 796 F. Supp. 2d 700, 705 (E.D.N.C. 2011). Second, after the discovery stage, the defendant may move to decertify the class, mandating the court to analyze the evidence and apply "more rigorous" scrutiny to determine whether the opt-in plaintiffs are, in fact, similarly situated. *Id.* If the court determines that the opt-in plaintiffs are similarly situated at this stage, then the collective action may proceed to trial; otherwise, the class is decertified, and only the original plaintiffs proceed on their individual claims. *Id.; Long v. CPI Sec. Sys.*, 292 F.R.D. 296, 299 (W.D.N.C. 2013).

Plaintiffs carry the burden of proving that they are similarly situated to the opt-in plaintiffs. *Weckesser v. Knight Enters.*, 391 F. Supp. 3d 529, 532 (D.S.C. 2019). This showing is necessary to justify a ruling that would apply equally to all class members; when the collective class members' individual circumstances and experiences differ, it is not appropriate to allow the experience of one to speak for the entire class. *See e.g., Zivali v. AT & T Mobility, LLC*, 784 F. Supp. 2d 456, 468 (S.D.N.Y. 2011) (because claims varied among class members, plaintiffs' testimony was not found to be representative of the overall class and could not be extrapolated to others); *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D 278, 282-283 (N.D. Tex. 2008) (decertifying collective action where "evidence shows a large factual variety among the individual Plaintiffs' claims" including varied testimony on whether they suffered from the violations alleged).

7

## B. Plaintiffs are not Similarly Situated

To determine if plaintiffs are similarly situated, courts in this circuit primarily look at three factors: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Rawls*, 244 F.R.D. 298, 300 (D. Md. 2007).

In this case, the Plaintiffs cannot show that they are similarly situated to one another because (1) there was no common policy or practice that applied to all plaintiffs and was in violation of the FLSA, (2) the proof of off the clock work and payroll deductions vary among stores and individuals, with several of the Plaintiffs testifying that they did not work off the clock or have deductions taken from pay, (3) individual defenses apply to, including that Defendants were not aware of any off-the-clock work, that it was *de minimus*, and that deductions for damaged merchandise were authorized, and (4) plaintiffs' claims would be unmanageable because they would necessitate "mini-trials" to prove both liability and damages for each. Accordingly, the factors above all weigh in favor of decertification.

### 1. The Record Evidence Shows that There was no Common Policy

In assessing the first of the three factors, courts look first to whether plaintiffs have provided evidence of a company-wide policy or plan that violates the FLSA. *Rawls*, 244 F.R.D. at 300. A failure to show that the defendant engaged in a common unlawful policy is evidence that the plaintiffs are not similarly situated. *See Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 570 n.10 (D. Md. 2012) (stating that the "crux" of the similarly situated analysis is whether plaintiffs have demonstrated by "affidavits or other means" that a common policy, plan, or scheme to violate the FLSA exists."); *see also Powers v. Centennial Commc'ns Corp.*, 679 F. Supp. 2d 918, 928 (N.D. Ind. 2009) (denying certification where practice in question was "expressly

permitted" by the regulations and a "collective action cannot go forward if the law clearly allowed [the defendant's] actions."). It is not enough for Plaintiffs to make vague allegations that there was an "overarching policy to deny [them] overtime pay," they must point to a "uniform, systematically applied practice" or policy that gives rise to their claims. *Johnson v. TGF Precision Haircutters, Inc.*, 2005 WL 1994286, at *3 (S.D. Tex. Aug. 17, 2005).

As an initial matter, there is no allegation (and certainly no proof) that CityMac's regular hourly pay was less than the federal minimum or that it did not pay overtime as a matter of course. While some of the Plaintiffs testified that they "believed" they should have received more overtime, none of them has alleged a uniform policy by which CityMac did not pay overtime. (*See* Jahagirdar Dep., 91:24-92:3). Further, CityMac had a clear policy to compensate employees for overtime work in accordance with federal law. (Handbook, Ex. 2, p. 30). Similarly, the Named Plaintiffs testified to a regular wage well above the federal $7.25/hour minimum and were not able to point to any instances in which they did not receive minimum wage pay. (Allen Dep. 89:21-22, Jahagirdar Dep., 105:20-25, Green Dep., 94:10-21, Johnson Dep. 62:18-63:7, Blais Dep. at 92:22-93:3, 131:7-132:11, Free Dep., 77:6-14). Rather, Plaintiffs' FLSA claims hinge on allegations that they did not receive pay for "off-the-clock" work and that they were subject to pay deductions for customer returns and charge backs[3], which effectively reduced their hourly rate to less than minimum wage. However, there is no evidence of an *unlawful* policy that was applied uniformly to all CityMac employees during the dates of the Plaintiffs' employment.

---

[3] To date, the meaning of Plaintiffs' terms "bad return" and "chargeback" are less than clear, even to Plaintiffs themselves. (Norris Dep., 82:8-23; Green Dep., 102:1-6; Johnson Dep., 71:23-72:7; Free Dep., 79:4-80:23; Jahagirdar, 158:20-22). For purposes of this Motion, Defendants presume that the terms refer to pay deductions taken to recoup losses for damaged merchandise and/or to recoup commissions paid for subsequently cancelled services. (FAC ¶¶ 78, 79).

9

With regard to the deductions alleged, FLSA does not prohibit employers from making deductions from employee commissions where the merchandise on which pay would be predicated is returned, assuming that the deductions do not reduce an employee's wages below the federal minimum. *Avery v. Chariots for Hire,* 748 F. Supp. 2d 492, 502 (D. Md. 2010). In this case, there is no evidence of any *common* policy that reduced employees' wages below the minimum and Plaintiffs have not provided proof of time worked for which Plaintiffs did not receive at least minimum wages, whether as a result of deductions or otherwise.[4] Thus, Plaintiffs allegations with regard to deductions cannot be construed as evidence of a common policy that deprived Plaintiffs of minimum wages in violation of the FLSA.

There is also no evidence that there was a common policy requiring employees to work off the clock, nor that there was any unwritten practice that applied to all of the opt-ins similarly. CityMac's Handbook, which all of the Named Plaintiffs acknowledged, makes clear that off the clock work was prohibited and several Named Plaintiffs testified that they were aware of this prohibition. (Handbook, Ex. 2, p. 10; *see also* Norris Dep., 35:24-36:2; Johnson Dep., 22:22-23:2; Blais Dep., 39:8-12). The *only* Plaintiff who testified that he regularly performed off the clock work is Jahagirdar, who testified that he regularly came in early and worked before his shift without clocking in.[5] Even if true, it is not a reflection of any uniform, company-wide policy.

---

[4] Plaintiff Jahagirdar has alleged that his final paycheck was withheld to account for merchandise that turned up missing or damaged and was attributable to him. These allegations are unique to Jahagirdar, and, moreover, he has subsequently received payment. (Curran Decl., ECF No. 16-1 ¶ 15-16.)

[5] Jahagirdar testified that, during his initial period of employment he was instructed to come in at 9:00 AM but was not permitted to clock in until shortly before the store opened to the public at 10 AM. (Jahagirdar Dep., 34:13-21). As factual support for his allegations, Jahagirdar offered exactly two ridesharing records, which reflected that he took an Uber to the CityMac address at 9:07 AM on October 16, 2019 and that he took an Uber somewhere beginning at 9:00 AM on November 6, 2019 (this record does not reflect where Jahagirdar went). (Jahagirdar Dep., 59:15-16, 60:8-12, 67:8-14; JAHAGIRDAR000126, 00130 attached as **Exhibit 5).**

Rather, Jahagirdar testified that this instruction came from his own manager, who set hours for the Wilmington, North Carolina, location only. (Jahagirdar Dep., 35:3-10). A single manager's instructions, isolated to one location, are hardly proof of a "company-wide" policy. The testimony of the other Named Plaintiffs, who were managed by other individuals and were not expected to work off the clock (*see* Allen Dep., 46:1-2, 47:21-48:2; Norris Dep., 38:4-8), proves that CityMac did not have a policy requiring its employees to perform off-the-clock work at other locations. *See MacGregor v. Farmers Ins. Exch.*, 2011 WL 2981466, at *3 (D.S.C. 2011) (where "[a]lleged FLSA violations stem[ ] from the enforcement decisions of individual supervisors," without a company-wide policy or plan directing those enforcement decisions, collective treatment is not appropriate.); *Salinas v. O'Reilly Auto., Inc.*, 2005 WL 3783598, at *6 (N.D. Tex. 2005) (no common policy where plaintiff "merely shows that a handful of [ ] managers have committed possible FLSA violations");

Additionally, several putative class members provided declarations stating that they either did not work overtime or were compensated for any overtime that they did work and that they did not have unlawful deductions taken from their pay or work off the clock. (Declarations, ECF No. 146-5, 146-8, 146-10). Although these employees are not opt-ins, their statements are further evidence that there was no common policy that applied to CityMac employees across the board. Accordingly, there is no policy that would render the Plaintiffs similarly situated.

## 2. Plaintiffs' Individual Experiences Varied Widely.

Similarly, the significant differences among the factual circumstances of the Plaintiffs' claims weighs in favor of decertification. *See Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 537-38 (3d Cir. 2012) (affirming decertification where "[t]he similarities among the proposed plaintiffs are too few, and the differences among the proposed plaintiffs are too many"). In *Zivali v. AT&T Mobility LLC*, the court held that where the employer's timekeeping and policies were lawful, and

11

plaintiffs could not show that they were consistently violated across the plaintiffs, decertification was necessary. 784 F. Supp. 2d at 459. The court stated that the "extremely wide variety of factual and employment settings among the individual plaintiffs, managers, and retail stores" which would necessitate "mini-trials," in frustration of the purpose of the FLSA's collective action mechanism. *Id.*

The evidence in this case shows that the Plaintiffs' experiences varied widely.

### a. Plaintiffs' testimony differs on whether they are owed overtime.

An employee carries the burden to prove that "he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946). As with the minimum wage claims, Plaintiffs have never offered evidence to prove that they did not receive overtime pay to which they were entitled. When asked in their depositions, the Named Plaintiffs' testimony varied on whether they worked overtime, and if they did, whether they were compensated. In fact, it is not clear which of them ever worked overtime at all. Johnson testified that he never worked overtime at CityMac and was not allowed to do so, while Jahagirdar does not know how much overtime he worked, only that it "was more than once." (Johnson Dep., 34:1-12; Jahagirdar Dep., 89:15-25). Norris worked over forty hours in a week "a couple times," and Free believes he worked overtime "here and there" but cannot recall. (Norris Dep., 49:2-13; Free Dep., 64:15-65:2). Moreover, even if they did work overtime, none of the Plaintiffs can pinpoint specific times that they did not receive overtime pay, nor how much they were entitled to receive, and several of the Plaintiffs testified that they simply did not know.[6] (*See* Jahagirdar Dep., 88:18-

---

[6] Other than testifying that they believed they should have received more pay or did not trust CityMac's payroll documents, Plaintiffs have still not shown, whether by testimony, expert analysis, or records, proof of compensation that was earned by Plaintiffs and not received. Instead, Plaintiffs repeatedly suggested in their depositions, despite having no support, that documents were either altered or were unfairly withheld by counsel. (*See* Johnson Dep., 46:1-47:25; Green

12

21, 91:24-92:3; Free Dep., 64:4-66:9; Green Dep., 89:16-90:2; Allen Dep., 76:1-5). Allen's overtime claims appear to stem from hours he worked to pack the store following the COVID shutdown, for which he did not receive his final paycheck; he did not point to any other overtime that he believes he was owed. (*See* Allen Dep., 76:1-77:2). Additionally, at least one of the Named Plaintiffs was surprised to learn that this case involved overtime pay at all; when asked about his claim that CityMac had failed to pay him overtime wages, Plaintiff Johnson responded "When did I say that?" before stating that he had never worked overtime. (Johnson Dep. 33:15-34:12). The variations in circumstances of the Plaintiffs' experiences with regard to overtime shows that they are not similarly situated and that they cannot carry the burden to show that they were entitled to overtime compensation that was not received.

  **b.**  **Plaintiffs' testimony differs on whether they worked off the clock.**

  The record testimony is just as stark on off the clock claims, with six of the seven Named Plaintiffs giving testimony that conflicts the allegations in the FAC: Johnson and Blais never worked off the clock. (Johnson Dep., 31:23-25; Blais Dep., 76:12-20). Allen testified that there was no expectation of off the clock work at his store and that he never instructed any employee to

---

Dep., 92:11-22; Jahagirdar Dep., 88:18-24).  In several instances, Plaintiffs testified that they did not have accurate or complete records or could not answer questions after being coached by the speaking objections of counsel during their depositions. (*See* Johnson Dep., 79:2-23, Green Dep., 74:23-77:12, 85:25-86:14, 92:11-22; Blais Dep., 128:20-129:19). However, Plaintiffs could not point to specific pay inaccuracies. (*See* Jahagirdar Dep., 91:20-92:3; Green Dep., 57:20-58:4; Johnson Dep., 35:6-23; Free 72:23-73:9).

In reality, Defendants have produced approximately 35,000 pages of documents in this litigation, including pay records and time punch records for each of the Named Plaintiffs. Nonetheless, Plaintiffs have not provided proof that a single record was modified or is otherwise inaccurate and Plaintiffs have still provided no substantive analysis to support their claims. Plaintiffs' preference that documents kept in the course of business would have been easier for them to read or that Defendants would have performed the analysis for them is not proof that documents were withheld or produced fraudulently and any testimony or argument to the contrary should be disregarded.

13

work off the clock when he was manager. (Allen Dep., 46:1-2, 47:21-48:2). Norris, who was employed in the South Carolina location with Allen, testified that she was not expected to work off the clock and that she clocked in before she started working. (Norris Dep., 38:4-8, 50:9-10). Green may have performed off the clock work if he was greeted by a customer before clocking in, but could not remember and did not tell management if he did. (Green Dep., 91:2-15, 92:8-10). Free testified that *if* he ever worked off the clock, it was "rare" and would have only been for approximately five minutes, and was never reported to anyone. (Free Dep., 32:18-34:6, 44:20-22, 45:7-46:16, 67:13-71:25).

As discussed above, the only Plaintiff who testified to performing work off the clock is Jahagirdar, who stated that he came in early and worked off the clock two-three days per week at the instruction of his manager during July and August of 2019; he also testified that he often arrived at CityMac between 9:15 and 9:30 and walked to a coffee shop before clocking in at 9:45. (Jahagirdar Dep., 35:11-14, 38:18-39:3). Even if true, Jahagirdar's testimony cannot be applied to create off the clock claims for the other Plaintiffs, particularly those Plaintiffs who worked at other stores, for different managers, and during other time periods. As Jahagirdar himself has said, "apart from what I've experienced, I can't speak for anybody else." (Jahagirdar Dep., 98:20-99:19). Indeed, six of the Named Plaintiffs have spoken for themselves and have denied working off the clock.

The *Proctor* case is instructive of decertification in off-the-clock cases where plaintiffs cannot establish any uniformity to their claims. In explaining its decision to decertify such a proposed class, the court held:

> [T]he evidence indicates that [the employer's] official policy was to prohibit working off the clock. The testimony of the opt-in Plaintiffs confirms that there is no official policy [] of having or allowing employees to work off the clock. Many

of the opt-in Plaintiffs testified that they knew about [the] policy prohibiting employees from working off the clock.

\* \* \*

In addition to lacking evidence of any policy that employees may work off the clock, the Plaintiffs also present claims that are factually disparate. Some Plaintiffs say that they never worked off the clock. . . . Other Plaintiffs allege that while they remained clocked in the entire time they were working, their paychecks were not correct.

\* \* \*

The quantity of time and the pattern of incidents Plaintiffs allege they have spent working off the clock also vary. Some Plaintiffs allege that they spent a large portion of their work time off the clock... [others] allege a minimal amount of time worked off the clock.

\* \* \*

The Plaintiffs' claims vary from store to store and manager to manager. [One plaintiff] testified that he worked at a store in Texas where he was asked to bag ice or unload trucks off the clock. However, when he worked at a different Texas store under a different manager, he was never allowed to do work off the clock.

250 F.R.D. at 282-84 (emphasis added). Just as in *Proctor*, Plaintiffs acknowledge that off-the clock work was forbidden. Further, the testimony shows that the Plaintiffs' experiences differed, if not across individuals, then certainly across store locations: some testified that they never worked off the clock, while others testified that they may have worked off the clock for a few minutes but did not report it to anyone, and only one Plaintiff testified that he had worked off the clock on more than a few occasions and was instructed to do so by his manager. Thus, Plaintiffs are not similarly situated with regard to their off the clock claims.

### c. Plaintiffs' testimony differs on pay deductions.

Each Named Plaintiff also differs on whether deductions were taken from his pay and the purpose of those deductions. From damaged merchandise to meal break deductions to incorrect pay rates, there is no consistency across the Plaintiffs' claims.

15

For example, the deductions from Jahagirdar's pay were taken from his final paycheck and were to account for the cost of damaged merchandise that had been accepted in trade, which were unique to him; Jahagirdar testified that no other unauthorized deductions were taken from his pay. (Jahagirdar Supplemental Response to Interrogatories, attached as **Exhibit 6** at Resp. No. 1; Jahagirdar Dep., 145:5-146:22, 158:7-16, Ex. SJ-9). Blais also testified as to particular items - other than a possible deduction for a customer device he personally damaged and agreed to pay to replace, he is not aware of any other deductions from his pay. (Blais Dep., 93:4-10).

Johnson testified that his unauthorized deductions allegations were based on his belief that he should have received $14 rather than $13, that he was not paid for reviewing the handbook, was not paid different rates when filling in for other positions, and that the commission structure changed. (Johnson Dep., 60:21-61:22).

Allen testified that CityMac deducted one hour of pay for a lunch break on each shift worked regardless of whether he took a full lunch break, but that the deductions only lasted for around a month. (Allen Dep., 75:7-17, 77:13-78:4). Green also testified that there was a period around September to November of 2019 when CityMac deducted one hour for lunch breaks. (Green Dep., 79:1-20). Norris recalled one occasion where CM deducted for an hour meal break that she did not take, and believed there may have been other times. (Norris Dep., 67:14-19, 68:16-22, 70:16-71:5, 71:10-18). Norris raised the issue with HR and was not sure if it was corrected or not. (Norris Dep., 71: 72:22). Free stated that he assumed CityMac was going to deduct lunch breaks, but he could not verify because he never bothered to check his pay and never saw any records indicating that such deductions were taken. (Free Dep., 47:23-48:5). The other Named Plaintiffs (including Jahagirdar, who was employed in the Wilmington store in the November-

September timeframe) denied any "meal break" deductions. (Jahagirdar Dep., 90:4-91:14; Blais Dep., 58:1-21, 83:13-17; Johnson Dep., 57:25-58:10).

As to "bad returns" and "charge backs," the majority of the Named Plaintiffs denied any such deductions were taken at all. Allen testified that CityMac never deducted "bad returns" from his pay and that any deductions on commissions for returned merchandise was "normal practice" in the industry; he was not aware of any deductions for "charge backs. (Allen Dep., 96:20-97:12). Norris, Green, Johnson, and Free were not familiar with the term "bad returns" and were not aware of any such deductions. (Norris Dep., 82:8-23; Green Dep., 102:1-6; Johnson Dep., 71:23-72:7; Free Dep., 79:4-80:23). Johnson testified that charge backs were not deducted from his pay. (Johnson Dep., 72:8-73:4). Blais denied that the allegations of bad returns applied to him and was not aware of charge backs or any other unauthorized deductions. (Blais Dep., 94:18-95:15, 96:19-22, 134:11-12).

The seven Named Plaintiffs represent approximately fifteen percent of the class and each allege unique circumstances to support their claims (if they allege any at all). Unique claims cannot possibly be representative of a "similarly situated" collective class.

### 3. Individualized Defenses Apply to Each Plaintiff.

The second factor looks to whether there are defenses individual to each Plaintiff, which weigh against class certification. When the employer's defenses are highly individual to each opt-in plaintiff, "this factor weighs heavily against proceeding . . . as [an FLSA] collective action." *Zivali,* 784 F. Supp. 2d at 467; s*ee also Prise v. Alderwoods Grp., Inc.*, 817 F. Supp. 2d 651, 671 (W.D. Pa. 2011) ("Individualized defenses prevent efficient representative proceedings and courts have not hesitated to grant decertification on that basis.").

As shown above, the circumstances of the Plaintiffs are far from homogenous. Some claim to have worked overtime, others deny it completely. Some Plaintiffs allege that meal breaks were automatically deducted from their pay, others state that this did not happen to them. One Plaintiff alleges that he worked off the clock at his manager's instruction, others swear that they did not, or if they did, it was only for a few minutes and they didn't tell anyone. In light of the factual differences between the Plaintiffs' claims and the lack of commonality of the opt-ins, there are multiple defenses that would need be decided on the basis of individual evidence. To name just a few examples, Defendants would argue:

- That the individual did not come in early or work late;

- That the individual was not instructed to work off the clock and that any off the clock work was performed by the individual's own voluntary violation of known policy;

- That any management instructions to work off the clock were outside the scope of authority and were in violation of company policy;

- That employees who worked off the clock failed to take steps to seek compensation, either through contacting payroll or HR to correct the records;

- That Defendants had no knowledge that the individual had performed off the clock work;

- That instances where Plaintiffs worked off the clock for only a few minutes at a time were *de minimus* and therefore not compensable;

- That the individual authorized deductions for damaged merchandise in the specific amounts taken;

- That any deductions resulting from "charge backs" or returned merchandise were lawful;

- That the individual was not employed at a store or during a timeframe in which meal breaks were deducted;

- That the individual did take the meal break on which a given deduction was predicated;

- That no deduction ever resulted in the plaintiff being paid less than minimum wage for any hour.

- Whether lost time was reported, resulting in the plaintiff's being paid.

18

As shown by the testimony described above, several of these defenses would be valid as to at least some of the Plaintiffs and would require individual proof. Such individualized defenses make class treatment inappropriate under the three-factor test. *Proctor*, 250 F.R.D. at 283; *Zivali,* 784 F. Supp. 2d at 467.

### 4. Fairness and Procedural Concerns Weigh in Favor of Decertification.

Finally, the fairness and procedural concerns factor weighs against proceeding as a collective action. To evaluate fairness and procedural considerations, courts typically consider (1) whether a collective action will lower costs to the plaintiffs through the pooling of resources; (2) whether a collective action will limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity; and (3) whether the court can coherently manage the class in a manner that will not prejudice any party. *Rawls,* 244 F.R.D. at 302.

As shown above, the Plaintiffs' claims are factually dissimilar and cannot be efficiently resolved in a single trial. Rather, any resolution would necessitate the showing of practices at the individual store locations and presentation of individual proof as to the specific violations alleged by each Plaintiff. The claims are also subject to individualized defenses to determine Defendants liability, and given the widely varying testimony and defenses available, Defendants would be prejudiced were they forced to accept the proof of one Plaintiff as applicable to others. *Zivali,* 784 F. Supp. 2d at 468 (because claims varied among class members, plaintiffs' testimony was not found to be representative of the overall class and could not be extrapolated to others).

Additionally, given the Plaintiffs uncertainty of their own alleged losses and whether they suffered any losses at all, Plaintiffs would be required to each prove their claims. *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 686-87 (1946) (holding employees must prove that they

performed work for which they were not compensated). For example, with regard to the allegations that Plaintiffs did not receive overtime pay, each Plaintiff must show individualized evidence to prove that he or she actually worked more than forty hours in a given workweek, not just that he might have worked overtime at some point. (*See* Jahagirdar Dep., 89:15-25, 91:24-92:3; Free Dep., 64:15-65:2; Norris Dep., 49:2-13). The Court cannot merely assume or "guess" the Plaintiffs' damages based upon general, conclusory statements and must provide credible evidence to support an award. *Barksdale v. E & M Transp., Inc.,* 2010 WL 4451790, at *3 (E.D. Va. Nov. 1, 2010). Plaintiffs cannot carry this burden.

Courts have further held that certification is not appropriate where it would have to conduct an individual assessment of each plaintiff's claim to determine if overtime was worked and in what amount. *Pelczynski v. Orange Lake Country Club, Inc.*, 284 F.R.D. 364, 369 (D.S.C. 2012). In that case, the court pointed to the lack of any calculations by the plaintiffs' to prove what they were owed. *Id* at 369 and n. 7. That is exactly the case here where Plaintiffs have repeatedly stated that they do not know what they believe they are owed and where no calculations or analysis have ever been provided as to the collective class. (*See infra* at n. 6; Jahagirdar Dep., 89:15-25, 91:24-92:3; Free Dep. 65:7-17),

These concerns, which apply to most if not all of the opt-ins, combined with the individualized defenses discussed above, would result in a number of "mini-trials" that would overwhelm the litigation and cancel out any benefit of the collective form. *Zivali,* 784 F. Supp. 2d at 468. As the *Zivali* court stated, this is the "antithesis of collective action treatment." *Id. See also Johnson,* 2005 WL 1994286, at *7 ("These highly individualized defenses as to the great majority of all opt-ins, with the layers of fact findings required by § 7(i) as to each of those Plaintiffs, present a case where the individualized claims and individualized defenses, all of which are highly fact

intensive, would not only dominate but would swallow and consume the entire case."); *Zavala,* 691 F.3d at 538 (decertifying collective where "numerous differences among members of the proposed class" and where "alleged common scheme [provided] minimal utility in streamlining resolution of the claims").

In sum, the record evidence shows that Plaintiffs are not similarly situated, their FLSA claims have far more differences than commonalities, and the Court should decertify the collective action.

### C. Plaintiffs' Claims Are Barred as a Matter of Law.

Finally, the Court must note that the Plaintiffs lack standing to proceed as representatives of the collective action because each failed to object to the receivership proceedings in Washington state court. As discussed above, Computer Haus, the sole entity which ever employed the Named Plaintiffs was placed into a receivership and its assets were liquidated in 2020. (*See* Washington Court Receivership Orders, ECF No. 70-1). The sale to Ocean Tech was approved by a Washington state court, which explicitly held that Ocean Tech, as purchaser of the assets was not liable as a successor. (Order Approving Sale, **Ex. 4**).

Much like a federal bankruptcy action, Washington's receivership statute provides that the appointment of a receiver automatically stays any "action or proceeding against the [entity] over whose property the receiver is appointed that was or could have been commenced before the [appointment]." Wash. Rev. Code Ann. § 7.60.110; *see also* Wash. Rev. Code Ann. § 7.60.005(8) (defining "person" under statute to include business entities). A superior court may authorize a sale "free and clear" unless an interested creditor objects. RCW 7.60.260(2)(ii); *Mufg Union Bank, N.A. v. Campadore*, No. 47755-6-II, at *11 n.5 (Wash. Ct. App. Mar. 7, 2017). Section 760.190 further provides that:

orders of the court with respect to the treatment of claims and disposition of estate property, including but not limited to orders providing for sales of property free and clear of liens, are effective as to **any person having a claim against or interest in the receivership estate and who has actual knowledge of the receivership, whether or not the person receives written notice from the receiver and whether or not the person appears or participates in the receivership.**

Wash. Rev. Code Ann. § 7.60.190(4). This section additionally provides that creditors who do receive written notice of the receivership and of any hearings are bound by court orders concerning the disposition of the property through receivership. *Id.* at § 7.60.190(1), (7).

There is no question that each of the Plaintiffs, including all seven of the Named Plaintiffs, had actual knowledge, through their appointed representative counsel, of the receivership proceedings.[7] (Ex. 3). Moreover, as noted above and in Defendants' Motion for Summary Judgment, Jahagirdar was *explicitly* listed as a creditor in the Washington State receivership proceedings (ECF No. 70-1, p. 11) and failed to make any claim or objections with the court; he cannot possibly deny that he had an opportunity to state a claim or objection. Additionally, each of the Plaintiffs designated attorney Gessner as his or her representative "for all purposes of this action" and designated Jahagirdar as his or her agent "to make decisions on my behalf . . . for all [] matters pertaining to this lawsuit." (*See e.g.,* ECF No. 17-29, 30-33, 40-69).

Under the doctrine of *res judicata*, this Court should give preclusive effect to the Washington state court order, which liquidated all of Computer Haus's assets and declared that Ocean Tech was not a successor in interest. *See Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 81 (1984) (stating that "[i]t is now settled that a federal court must give to a state-

---

[7] In addition to the notice via counsel, several of the Named Plaintiffs testified that they personally were aware of the receivership and did not file any claim or objection. (Jahagirdar 123:24-124:3; Green Dep., 153:14-154:17; Allen Dep., 132:24-133:3; Free Dep., 122:3-124:1). Counsel instructed one Plaintiff not to testify as to his knowledge of the receivership due to privilege. (Blais Dep., 127:15-128:18).

court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered"); *see also Sopkin v. Mendelson*, 746 Fed.Appx. 157, 159-60 (4th Cir. 2018) (holding that Virginia state court receivership order barred plaintiff from asserting any claims). Thus, the Washington state court order liquidated all of Computer Haus' assets, free and clear of all liens, and declared that Ocean Tech was not a successor in interest, applies to defeat the claims of the Plaintiffs here.[8]

Alternatively, and in the event that this Court determines that the receivership order does not foreclose the claims of all Plaintiffs or as to all Defendants and applies only to lead Plaintiff Jahagirdar and/or others, the bar only further highlights the individualized defenses applicable to the Plaintiffs and the manageability concerns that consume this action and make collective treatment inappropriate.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter an Order decertifying Plaintiffs' collective action.


This the 4th day of August, 2021.

<div style="margin-left: 50%;">

/s/ Jonathan W. Yarbrough
Jonathan W. Yarbrough
N.C. State Bar No. 21316
CONSTANGY, BROOKS,
SMITH & PROPHETE, LLP
84 Peachtree Road, Suite 230
Asheville, NC 28803

</div>

---

[8] Plaintiffs' allegations that the Washington state court order is invalid because the buyer company was controlled by Curran are irrelevant. Plaintiffs have provided no authority to suggest that such transactions are not permitted under Washington's receiver laws. Moreover, receivers in Washington are deemed officers of the court and both the receiver and the court was well aware of Ocean Tech's ownership, as it is explicitly noted on Ocean Tech's public corporate registration. (ECF No. 70-2).

23

Telephone: (828) 277-5137
Facsimile: (828) 277-5138
jyarbrough@constangy.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date a copy of the foregoing **DEFENDANTS'**

**BRIEF IN SUPPORT OF MOTION TO DECERTIFY COLLECTIVE ACTION** with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to the

following:

L. Michelle Gessner, NCSB
michelle@mgessnerlaw.com

Nicole Katherine Haynes
nicole@mgessnerlaw.com

John Grover Hutchens, III
johnny@mgessnerlaw.com

This the 4th day of August, 2021.

/s/ Jonathan W. Yarbrough
Jonathan W. Yarbrough
N.C. State Bar No. 21316
CONSTANGY, BROOKS,
SMITH & PROPHETE, LLP
84 Peachtree Road, Suite 230
Asheville, NC 28803
Telephone: (828) 277-5137
Facsimile: (828) 277-5138
jyarbrough@constangy.com