UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Civil Action No. 1:20-cv-0033-MOC

| | |
|---|---|
| SHAILESH JAHAGIRDAR, ALLEN ALLEN, KAMRI NORRIS, JORDAN BLAIS, CONNOR JOHNSON, RAKIA GREEN, and ANDREW FREE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE COMPUTER HAUS NC, INC. d/b/a CITYMAC, a North Carolina Corporation, and TROY CURRAN, an individual, OCEAN TECH, INC. d/b/a CITYMAC, a Delaware corporation, ZEPHYR INVESTMENTS, INC. a Washington corporation, TS LEASING, L.L.C., a Washington limited liability company, GREEN VAULT, INC., A Washington corporation, CURRAN RANCH, NORTHERN PASSAGE, INC., SALISH SEA, LLC, and CURRAN HOLDINGS, LLC a Delaware Corporation, CURRAN BROTHERS, LLC, a Michigan Corporation, OCEAN DANCE, a Cayman Islands foreign-registered entity, BRANDY CURRAN, an individual, AMBER CURRAN, an individual, and MARK CURRAN, an individual.<br><br>Defendants. | PLAINTIFFS' RESPONSE IN OPPOSITION OF DEFENDANTS' UNTIMELY MOTION TO DECERTIFY COLLECTIVE ACTION UNDER 29 U.S.C. §216(b) |

## I.     INTRODUCTION

Defendants Troy Curran ("Curran"), The Computer Haus, Inc. dba CityMac and Ocean Tech, Inc., dba CityMac (hereinafter collectively "CityMac" or "Defendants) own and operate retail stores across the United States including in North Carolina - Wilmington, Asheville, Biltmore Park, South Carolina - Myrtle Beach, Washington - Bellingham and Burlington, and

1

Portland, Oregon. Plaintiffs and Opt-in Plaintiffs (collectively "Plaintiffs") worked as hourly non-exempt employees at these CityMac locations. For the most part, Plaintiffs were employed as hourly sales representatives, technicians, or both. Regardless of their position, all Plaintiffs were subjected to the same unlawful wage and hour practices.

Plaintiff Sal Jahagirdar originally filed this action in his individual capacity but amended the Complaint on March 14, 2020, to add class and collective claims on behalf of others similarly situated. [ECF No. 7]. As soon as Defendant Troy Curran realized he was being sued for wage and hour violations committed in all his store locations, Curran began transferring his assets to family members and new or existing entities, trying to make himself judgment proof. In fact, after Plaintiff filed his Reply to Defendants' Opposition to the Motion to Conditionally Certify an FLSA Collective on April 6, 2020 [ECF No. 34] Curran wasted no time in forming Ocean Tech the very next day, on April 7, 2020. [ECF No. 70-3] Then, after this Court certified an FLSA Collective on April 15, 2020 [ECF No. 38] Curran wasted no time in contacting Apple personally and directly on May 4, 2020 to inform Apple that he wanted to transfer his west coast stores "to a separate corporation Ocean Tech Inc., EIN 85-1658022. It will be DBA CityMac." [ECF No. 75-1] Curran secretly sought to transfer all CityMac's assets to his newly-created entity - Ocean Tech - but was unable to get Apple to agree to transfer the Apple contract, which was CityMac's biggest asset. So Curran put CityMac in receivership under Washington State law and failed to notify the state court that he was being sued in a class and collective action; he identified only Plaintiff Jahagirdar as having a claim against him. Through the receivership, Curran sought to cut off Plaintiffs' ability to recover the judgment Curran was apparently certain would result from this litigation.

On April 15, 2020, this Court conditionally certified this litigation as a collective action

pursuant to §216(b) of the FLSA. [ECF No. 38] The parties and the Court defined the putative class as follows:

> **All current and former employees of Defendants, nationwide, who work or have worked for Defendants as a non-exempt hourly employee, who were not paid minimum wage and/or overtime premium for all hours worked exceeding 40 per week during the period of February 5, 2017, to the filing of this Complaint in this action.**

As a result, 49 current and former employees have filed consent forms to become parties to this litigation. Within a week after this Court certified this action as a collective, on April 21, 2020, Defendant Curran created a new entity, Ocean Tech, LLC, and attempted to transfer Computer Haus's Apple contract, a significant asset, to Ocean Tech. When he realized this tactic would not work, Curran proceeded to put Defendant ComputerHaus, dba CityMac into receivership in Whatcom County, Washington on July 16, 2020. Although this case had been certified as a collective when Curran began receivership proceedings, he only listed Plaintiff Jahagirdar as an individual creditor in the Receivership action and he did not serve any Opt-in Plaintiffs with any pleadings related to the Receivership.

After the close of the opt-in period, the parties engaged in extensive discovery, which has included depositions of the named plaintiffs, as well as certain corporate and fact witness depositions. Throughout the litigation, Curran continued to hide and transfer assets and Plaintiffs have been forced to amend the Complaint several times to add newly discovered entities and individuals who now hold Curran's and CityMac's assets.

Against this backdrop, Defendants now ask this Court to decertify this collective action in which 49 workers seek damages in the form of unpaid minimum wages and overtime as a result of Defendants' common compensation practices. As such, the only issue before this Court is whether the opt-in plaintiffs are similarly situated under the

relevant decertification test. The Court is not called upon, in the context of decertification, to determine the merits of the case. As discovery has proven, and as will be shown below, the employment and factual settings are the same for all of the non-exempt, hourly employees at CityMac. All Plaintiffs were paid based on a common policy, plan, and practice. All Plaintiffs were paid by the hour and were compensated the same. Here, CityMac tries to make it appear as though Plaintiffs are not similarly situated by cherry-picking selective deposition testimony, taking testimony out of context, and/or blatantly ignoring testimony showing Plaintiffs are similarly situated.

Moreover, there are no meaningful individual defenses that Defendants will be forced to assert and prove here. All of the defenses asserted by CityMac in the recently filed dispositive motion can be determined in a concise and efficient manner through representative testimony on a class-wide basis, thus achieving a uniform result and conserving the resources of both the judicial system and the parties. In fact, CityMac recently moved for summary judgment against the entire collective without contending any individualized defenses are needed to achieve judgment as a matter of law on Plaintiffs' FLSA claims.

Lastly, fairness and procedural considerations weigh against decertification under the circumstances of this case. Any potential for judicial inefficiency that could stem from collective treatment of this case pales in comparison to the benefits that collective treatment affords the individual plaintiffs. This is particularly true in light of Curran's relentless efforts to transfer and hide his assets and his erroneous insistence that CityMac's assets were transferred to OceanTech free and clear of Plaintiff's claims.

For all of these reasons, Defendants' motion for decertification should be denied.

4
Case 1:20-cv-00033-MOC-WCM   Document 180   Filed 08/18/21   Page 4 of 19

Alternatively, if the Court believes there is some disparity between any of the categories of Plaintiffs, the appropriate remedy is to create sub-classes rather than making each Plaintiff assert their own individual wage claim.

## II. LEGAL ARGUMENT

### A. CityMac's motion should be denied as untimely.

As an initial matter, CityMac's Motion for Decertification is untimely. The most recent Scheduling Order sets a Motions deadline on June 14, 2021. [ECF No. No. 131] On June 11, 2021, CityMac filed a Motion to Amend Scheduling Order and Extend Deadlines requesting an extension of the Dispositive Motion deadline until at least ninety (90) days following the resolution of both the Plaintiffs' Motions for Class Certification and for Leave to File a Fourth Amended Complaint. [ECF No. No. 155] The Court denied the Motion to Amend as moot because CityMac had already filed a Motion for Summary Judgment. CityMac did not raise the issue of any extension to file a Motion for Decertification.[1] Yet, almost two months after the Motions deadline, CityMac filed the instant Motion on August 4, 2021. [ECF No. No. 171]

CityMac was clearly aware of the Motions deadline and that the Court had not ruled on their June 11, 2021 Motion to Amend Scheduling Order by the time the June 14, 2021 deadline arose, because it filed a timely Motion for Summary Judgment on June 14, 2021. CityMac did not similarly file the Motion for Decertification prior to the required deadline.

As such, Defendants' Motion for Decertification should be denied as untimely.

### B. Overview of law governing conditional certification.

The FLSA governs standard hourly wage practices and generally requires employers to compensate employees at least minimum wage for every hour worked and at a rate of at least 1.5

---

[1] Plaintiffs also timely filed a Motion for Rule 23 Class Certification on April 12, 2021 (ECF. Nos. 134-35) and briefing was concluded on June 8, 2021 (ECF No. 152). The motion was heard by this Court on August 5, 2021.

times their regular rate when working in excess of forty hours per week. *See* 29 U.S.C. §§ 206 and 207. Section §216(b) provides that "[a]n action to recover the liability prescribed [by the FLSA] may be maintained against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. §216(b). This section allows one or more employees to pursue an action in a representative capacity for "other employees similarly situated."

"The evident purpose of the [FLSA] is to provide one lawsuit in which the claims of different employees, different in amount *but all arising out of the same character of employment*, can be presented and adjudicated, regardless of the fact that they are separate and independent of each other." *Tumminello v. United States*, 14 Cl. Ct. 693, 696 n. 4 (1988) (emphasis added). Further, courts allow the use of representative testimony in cases involving allegations of unpaid overtime or minimum wage in collective actions. *See* e.g. *Anderson v. Mt. Clemens Pottery, Co.*, 328 U.S. 680, 687-88 (1946); *Schultz v. Capital Intern Sec, Inc.,* 466 F.3d 298, 310 (4th Cir. 2006); *Grochowski v. Phoenix Construction*, 318 F.3d 80, 88 (2d. Cir. 2003) ("Not all employees need to testify in order to prove FLSA violations or recoup back wages.").

Importantly, the Plaintiffs' claims must be similar but need not be identical. In *Crain v. Helmerich & Payne International Drilling Company*, 1992 U.S. Dist. Lexis 5367; 30 Wage and Hour Cases 1452 (E.D. La. 1992), the district court explained:

> Similarly situated does not mean identically situated. Rather, an FLSA class determination is appropriate where there is a demonstrated similarity among the individual situations. [and] . . . some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]. Thus a court can foreclose a plaintiff's right to proceed collectively *only if* the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice.

1992 U.S. Dist. Lexis 5367; 30 Wage and Hour Cases 1452 (E.D. La. 1992) (emphasis added, internal citations omitted; *see also Frank v. Gold'N Plump Poultr*y, 2007 WL 2780504, at *4

(D.Minn. Sept. 24, 2007); *Riojas v. Seal Produce, Inc.*, 82 F.R.D. 613, 616 (S.D. Tex. 1979); *Tucker v. Labor Leasing*, 872 F.Supp. 941, 947 (M.D. Fla. Sept. 21, 1994).

Indeed, "[a] collective action does not necessitate that there be no differences among class members, nor does it prohibit individualized inquiry in connection with fashioning the specific relief or damages to be awarded to each class member." *Houston v. URS Corp*., 591 F.Supp.2d 827, 832 (E.D.Va. 2008). The court should determine whether "there is a meaningful nexus that binds Plaintiffs' claims together and that the similarities in their claims outweigh their differences." *Falcon v. Starbucks Corp.*, 580 F.Supp.2d 528, 540 (S.D. Tex. 2008). The existence of a common policy "may assuage concerns about plaintiffs' otherwise varied circumstances." *Crawford v. Lexington-Fayette Urban Cnty. Gov't,* 2008 U.S. Dist. LEXIS 56089, 2008 WL 2885230, at *5 (E.D.Ky. July 22, 2008) (quoting *Wilks v. Pep Boys*, 2006 U.S. Dist. LEXIS 69537, 2006 WL 2821700, at *3 (M.D.Tenn. Sept. 26, 2006)); *see also England v. New Century Fin. Corp*., 370 F.Supp.2d 504, 507 (M.D.La. 2005) ("If there is sufficient evidence of an employer's pattern of subjecting employees to the same improper practice, that would be sufficient to warrant a finding of similarity justifying collective adjudication.").

### C. Overview of law governing decertification of collective.

After discovery is complete, a defendant may move to decertify a FLSA collective action. *See e.g. Mooney v. Aramco Services Co*., 54 F.3d 1207, 1214 (5th Cir. 1995); *Marroquin v. Canales*, 236 F.R.D. 257, 260 (D.Md. 2006). At this second phase of a collective action, the court conducts a more detailed review of the facts produced in discovery to determine if the putative class members are similarly situated as envisaged by §216(b) of the FLSA. *See Scott v. Aetna Services*, Inc., 210 F.R.D. 261, 264 (D.Conn. 2002). If the court concludes that plaintiffs are similarly situated, the motion to decertify is denied. *See id.* If the court concludes that

plaintiffs are not similarly situated, the matter is either decertified or broken into subclasses for trial. *Wilks v. Pep Boys*, 2006 WL 2821700 *6 (M.D. Tenn. 2006) (factually disparate plaintiffs are often divided into subclasses for purposes of judicial efficiency at trial); *Rawls v. Augustine Home Health Care, In*c., 244 F.R.D. 298 (D.Md. 2007) (subclasses, not decertification, were appropriate where the plaintiffs worked in different facilities).

In ruling on a decertification motion, courts consider the following factors: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. *Rawls,* 244 F.R.D. at 300. Applying this standard to the facts of this case demonstrates that CityMac's motion should be denied.

      **C.**     **The discovery to date shows that CityMac is not entitled to decertification.**

            **1. The employment settings and facts are not disparate.**

In assessing the employment settings of the individual plaintiffs, the court . . . assesses the opt-in plaintiffs' job duties, geographic location, supervision and compensation. *Moss v. Crawford & Company*, 201 F.R.D. 398, 409 (W.D.Pa. 2000); *see also Johnson v. TGF Precision Haircutters*, 2005 WL 1994286, *2 (S.D.Tex. Aug. 17, 2005). A material factor in a court's analysis of the plaintiffs' factual and employment setting is whether they were all affected by a single decision, policy or plan." *Crawford,* 2008 WL 2885230 at *19-20; *Wilks,* 2006 WL 2821700 at *3; see also *Frank v. Gold'n Plump Poultry, Inc.*, 2007 U.S. Dist. LEXIS 71179 (D.Minn. September 24, 2007) at *9. Again, it is important to note that the factual and employment settings *need not be identical* for plaintiffs to be similarly situated as to their employment settings. As the court wrote in *Wilks, supra*: ". . . on balance, the differences among the plaintiffs do not outweigh the similarities in the practices to which they claim to have been

8
Case 1:20-cv-00033-MOC-WCM   Document 180   Filed 08/18/21   Page 8 of 19

subjected. *Wilks*, 2006 WL 2821700 at *6; *see also Hill v. Muscogee County Sch. Dist.*, 2005 WL 3526669 at *2-4 (M.D.Ga Dec. 20, 2005); *Moss*, 201 F.R.D. at 410.

In this case, the employment and factual settings are the same because Plaintiffs all: (1) are paid in the same or similar manner; (2) performed the same or similar job duties; and (3) are subjected to the same corporate policies, practices and procedures. Although CityMac's motion purports to analyze these three factors, it actually does not. Instead of taking a "top-down" look at the evidence acquired and disclosed in discovery and disproving that Plaintiffs were not paid in the same or similar manner, did not perform same or similar job duties and were not subjected to the same corporate policies, practices and procedures, CityMac takes a "bottom-up" look, cherry-picking and misconstruing testimony from the depositions of Named Plaintiffs to try to show they are not all making the same claims. Although there are some minor differences, the spreadsheet attached hereto at Exhibit D identifies the deposition testimony of each Named Plaintiff showing that all Named Plaintiffs have claims for overtime, off-the-clock work and failure to pay final wages. The off-the-clock testimony includes claims regarding work performed before clocking in and after clocking out, as well as claims of hours being deducted from timesheets. Both types of wrongful conduct result in working off-the-clock or not getting paid for hours worked. In addition to Plaintiffs' testimony, Curran admitted to miscalculating overtime premiums, requiring Plaintiffs to perform onboarding tasks off-the-clock, and failing to pay final wages.

### a. Plaintiffs are paid in the same or similar manner.

CityMac's Employee Handbook proves that Plaintiffs were all paid in the same or similar manner. [ECF No. 173-2] In his Response to Request for Admissions, Curran admitted that he personally set the pay policies at CityMac. Ex. A, Curran Response to Request for Admissions.

In his deposition, Curran admitted he made the ultimate decisions on pay practices. Ex. B, Deposition of Troy Curran at 69:18-70:4. Curran set the pay policies, deciding what rate to pay based on the geographical location. Ex. B at 111:7-114:5. Curran further admitted that he personally approved all payroll before it was processed. Ex. B. at 142:6-14. Curran admitted that CityMac's overtime premiums were all calculated at the corporate level, not the store level. Ex. B at 148:10-152:12.

Curran also testified at length about certain centralized pay policies related to commissions and bonuses that were set by him and his Vice Presidents, who conducted weekly meetings to go over the policies. Ex. B at 114:6-124:9. Furthermore, Curran admitted that the bonus structures for the service technicians *were required to be centralized* because Apple set the metrics. Ex. B at 124:12-125:19. He testified that the Vice President of Service informs employees of their bonuses, not the individual store managers. Ex. B at 126:4-8.

In addition, Curran's deposition testimony corroborates that all employees were paid in the same manner according to the Employee Handbook. Ex. B at 169:18-22. He testified that CityMac's overtime policy is universal and that CityMac uses a clock-in and clock-out method to keep track of overtime. Ex. B at 171:19-173:23.

Curran has also filed several declarations corroborating that Plaintiffs were paid in the same or similar manner. For instance, Curran's declaration in support of Defendants' now-moot Motion for Summary Judgment admits that the policies, practices, and procedures related to spiffs, commissions, and bonuses were centralized. [ECF No. 146-1, Ex. 1]. His declaration also admits that the same overtime policy is used at each location and is found in the Employee Handbook. [ECF No. 146-1, Ex. 3] He further admits that CityMac used the same payroll company for all locations. [ECF No. 146-3]

10

Accordingly, there is ample evidence to show that Plaintiffs were paid in the same or similar manner.

### b. Plaintiffs were subjected to the same corporate policies, practices and procedures.

CityMac incorrectly argues that Plaintiffs were not subjected to the same corporate policies, practices, and procedures because the store managers autonomously operated each individual store. [ECF No. 172 at p. 3 - "The day-to-day operations of each CityMac location were handled by store management" and ECF No. 173-1 at ¶ 7 - "The manager of the CityMac location manages and oversees the day-to-day operations of the location, including any employees assigned to that location."] Not surprisingly, CityMac cites no case law supporting the proposition that employing store managers somehow irrefutably negates the possibility that employees are subjected to the same corporate practices, policies and/or procedures. Rather, CityMac relies on two district court cases in which there was evidence that the violations stemmed from independent supervisor decisions. In *Salinas v. O'Reilly Auto., Inc.*, 2005 U.S. Dist. LEXIS 45736, *8-9 (N.D. Texas, 2005), the plaintiff worked at five different locations and in one location the store manager refused to compensate her for running backup tapes after the store closed. In *Macgregor v. Farmers Ins. Exchange*, 2011 U.S. Dist. LEXIS 80361, *8-9. (D.S.C. July 22, 2011), plaintiffs alleged that certain supervisors refused to approve requested overtime. Here, Plaintiffs do not allege, and the evidence does not show, that the FLSA violations were caused by certain supervisors' independent decisions.

Rather, the evidence shows that all Plaintiffs were subjected to the same corporate policies, practices, and procedures. For instance, in his deposition, Curran explained the corporate structure at CityMac and did not indicate or suggest that store managers operated autonomously. He testified that he was in charge of the company and was assisted by several

individuals at the corporate level, such as Vice Presidents Bill Molnar and Evan Ellis. Ex. B at 67:23-68:16. He explained that under these two Vice Presidents, he had a service manager in each of the stores most of the time, but sometimes, they were missing managers at a store or were between managers. Ex. B at 103:23-104:7. Obviously, a non-existent store manager cannot independently operate a store or set policies and practices. Curran also confirmed that *he* is the person most knowledgeable about the day-to-day job duties and responsibilities of employees, as well as any and all company policies and guidelines applied to the carrying out of employees' job duties and responsibilities. Ex. B at 80:6-18.

Furthermore, not only did Curran testify as to centralized pay practices, he testified to centralized practices that violate the FLSA. For instance, Curran admitted during his deposition that CityMac's handbook expressly states that bonuses were not included in the overtime premium and that purportedly the overtime premium was somehow included in the bonus already. Ex. B at 176:5-11. He also admitted that CityMac did not pay employees for onboarding tasks. Ex. B at 168:12-213:13. These admissions constitute FLSA violations and both resulted from CityMac's centralized policies, practices, and procedures.

Curran testified that *he* set the schedules for the stores based on store hours: "I always tried to schedule the stores for a nine-hour shift, so we take an hour lunch, go from 9:00 to 6:00, and then it kind of works out to be a 40-hour workweek. Sometimes they go over." Ex. B at 217:19-24. This testimony, when coupled with the testimony and declaration of nearly every Plaintiff that CityMac was chronically understaffed and lunch breaks were not possible, is sufficient to defeat Defendants' motion for decertification. Curran's testimony is proof of a centralized policy that violates the FLSA overtime laws. Curran admits that he scheduled employees for a nine-hour shift and then automatically deducted an hour for lunch. To the extent

12
Case 1:20-cv-00033-MOC-WCM   Document 180   Filed 08/18/21   Page 12 of 19

those employees did not take a lunch break, they automatically worked more than 40 hours that week. Curran himself admitted that CityMac was chronically short-staffed - "we always needed more people." Ex. B at 219:1.

Deborah Cruson, who ran the accounting and human resources departments at CityMac, testified that Curran instructed her to deduct overtime from the commission due whenever an employee earned both overtime and commissions in the same pay period. Exhibit C, Deposition of Deborah Cruson at 99:1-16; 106:2-109:23 and Ex. DC-22. Cruson testified that several employees informed her that they did not receive the correct overtime pay and when this occurred, she took the complaints to Curran. Ex. C at 99:17-100:23.

Cruson also testified that CityMac had a policy and practice of not paying final wages to employees who were no longer employed by CityMac. Ex. C at 144:20-147:23. Curran further confirmed that employees were not paid their final wages. Ex. B at 241:7-243:3.

### c. Plaintiffs performed the same or similar job duties.

All Plaintiffs were hourly and all subject to the same Employee Handbook, which does not distinguish between them. CityMac's motion essentially concedes that Plaintiffs are either service technicians or sales representatives and that the only real difference between sales representatives and technicians is that technicians are paid bonuses instead of commissions.

Furthermore, to the extent their specific job duties are not similar, there is nothing about those differences that would cause the common policies, practices and procedures to be applied differently to sales representatives versus technicians. To the extent the Court finds that there are material differences between the sales representatives and technicians, creating subclasses for each group would be more appropriate than decertifying the entire collective.

### 2. CityMac failed to establish individual defenses will be required.

The second factor considered in determining the propriety of a collective action is whether the potential defenses at issue relate to the class as a whole or will be raised with respect to each individual plaintiff because individualized defenses could prevent an efficient proceeding with a representative class. *Lugo v. Farmer's Pride Inc*., 737 F.Supp.2d 291, 300 (E.D. Pa. 2010). Courts have discretion to determine whether the potential defenses would make the class unmanageable. *Id.*

CityMac's argument on this second factor is incomplete. CityMac merely lists its expected defenses and argues the defenses would be valid as to at least some of the Plaintiffs and would require individual proof, making class treatment inappropriate. This is not the proper approach to the second father. CityMac fails to analyze whether any of those defenses could relate to the class as a whole, would prevent efficient proceeding with a representative class or would make the class unmanageable.

The cases CityMac relies on only serve to highlight the shortcomings in its analysis. For instance, *Prise v. Alderwoods Grp., Inc*., 817 F.Supp.2d 651 (W.D. Pa. 2011) involved 721 opt-in Plaintiffs working in nine different categories of positions in 37 different states. *Proctor v. Allsups Convenience Stores, Inc*., 250 F.R.D 278, 282-283 (N.D. Tex. 2008) involved 1,072 opt-in plaintiffs working in 301 different stores. *Zivali v. AT&T Mobility, LLC*, 784 F.Supp.2d 456, 467-468 (S.D.N.Y May 11, 2011) involved 4,100 opt-in plaintiffs working in over 2,000 retail stores across the country. When these three courts considered these large numbers of plaintiffs and multiple locations with many different supervisors, decertification was deemed to be more efficient and more manageable than maintaining a collective action.

Here, by contrast, there are 49 Plaintiffs and nine store locations with one store manager

at each location (except for instances when no store manager was employed and corporate oversaw the location). It is unlikely that the defenses Defendants listed would not apply to the class as a whole, would prevent the efficiency of proceeding with a representative class, or would make the class unmanageable. Given the small size of the collective and the relatively few locations, the minimal burden of a few individual defenses does not necessitate decertifying the entire class.

Furthermore, many of CityMac's claimed "defenses" relate only to the amount of damages recoverable by each Plaintiff, as opposed to the overall liability of CityMac. Decertifying the class because the individuals within the class did not suffer the exact same amount of damages would erroneously result in the decertification of almost all FLSA class actions. *Senegal v. Fairfield Indus.*, 2018 U.S. Dist. LEXIS 198209, at * 27 (S.D. Tex. Nov. 21, 2018). This is particularly true because the extent to which each plaintiff may have been paid for overtime hours can be resolved through bifurcation of the trial into a liability stage and a damages stage. *See Thiebes v Wal-Mart Store, Inc.*, No. Civ. 98-802-KI, 2004 U.S. Dist. LEXIS 15263, at *1 (D. Or. July 26, 2004) (noting that the court had bifurcated collective action involving allegations of unpaid overtime and off-the-clock work into separate liability and damages trials).

Lastly, Defendants' Answers to each of Plaintiffs' Amended Complaints assert only generalized and uniform defenses for all of the claims asserted by Plaintiffs without any attempt to limit these defenses to any particular sector of the putative class or any particular individual's FLSA claim. Similarly, none of CityMac's discovery efforts were directed at proving these purported individualized defenses. It appears that CityMac raises this issue belatedly solely for the purposes of decertification.

### 3. Fairness and procedural considerations weigh against decertification.

In analyzing the relevant fairness and procedural considerations, the court looks at the primary objectives of a collective action which are: (1) to lower the costs to plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity. *Johnson*, 2005 WL 1994286 at *7; *see also Moss*, 201 F.R.D. at 410 and *Ayers v. SGS Control Servs.*, 2007 WL 646326 at *6 (S.D.N.Y. Feb. 26, 2007). In general terms, the courts have said they must "balance the benefits of a reduction in the cost to individual plaintiffs and any increased judicial utility that may result from the resolution of many claims in one proceeding with the cost of any potential detriment to the defendant and the potential for judicial inefficiency that could stem from collective treatment." *Wilks*, 2006 WL 2821700 at *8; *see also Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Glass v. IDS Financial Services, Inc*., 778 F.Supp. 1029 (D.Minn. 1991) (denying decertification).

Granting a Motion to Decertify often runs afoul of the fairness and procedural considerations. As the court wrote in *Hill, supra*:

> However, the effect of decertification would be to dismiss the opt in plaintiffs without prejudice, placing each opt in plaintiff back in square one without the benefit of pooled resources and presenting the court with fourteen separate lawsuits to resolve substantially the same question . . . Such a result is inimical to the policy behind collective actions under §216(b) of the FLSA: allowing plaintiffs to vindicate their rights with lower individual cost by pooling of resources and benefiting the judicial system by efficient resolution in one proceeding of common issues of law and fact arising from the same improper practice.

2005 WL 3526669 at *4.

It cannot legitimately be disputed that a collective action with representative testimony will lower the costs to the parties. Similarly, this collective action will resolve the legal issues as to all Plaintiffs and Opt-in Plaintiffs. If this Court grants Defendants' decertification motion, all

Opt-in plaintiffs may be required to file separate lawsuits and/or consolidated multi-party lawsuits requiring individualized discovery, many depositions, and enormous cost. The overarching common issue of the applicability of the legality of Defendants' compensation scheme will remain unresolved but will be common to all Plaintiffs in their respective lawsuits. Thus, given this overarching common issue, which will only be resolved through the use of common evidence, transfer and coordination pursuant to 28 U.S.C. §1407 would almost necessarily be invoked. Decertification will only create an added burden to the judicial system by requiring multiple additional filings.

Furthermore, a review of the list of Opt-in Plaintiffs reflects that there are many who worked for a short period of time for CityMac. The claims of these individuals are relatively small and it is not likely they would file their own lawsuit over such claims in the event of decertification. Indeed, one of the purposes of the collective action mechanism is to allow small claims to proceed collectively. As the court wrote recently in *Lynch v. United Services Automobile Association*:

> The collective action procedure allows for efficient adjudication of similar claims so similarly situated employees whose claims are often small and not likely to be brought on an individual basis, may join together and pool their resources to prosecute their claims.

2007 WL 1288582 at *10 (S.D. NY 2007); *see also Posner v. Showroom, Inc.*, 762 F.2d 1010 (6th Cir. 1985); Hill, 2005 WL 3526669 at *4; *Bradford v. Bed Bath & Beyond*, 184 F.Supp.2d 1342, 1351 (N.D.Ga Jan. 25, 2002); *Wilks*, 2006 WL 2821700 at *8. Similarly, the court in *Wilks, supra*, made this point in denying a motion to decertify:

> Although the defendant contends that decertification is necessary to protect its due process rights . . . these rights must be balanced with the rights of plaintiffs, many of whom likely would be unable to bear the costs of an individual trial, to have their day in court.

*Id.*

17
Case 1:20-cv-00033-MOC-WCM   Document 180   Filed 08/18/21   Page 17 of 19

Lastly, Curran's ongoing efforts to hide and transfer his assets and claim that all Plaintiffs' claims are wiped out by his bogus receivership proceeding demonstrates without question that the equities in this case weigh heavily against decertification. Each individual Plaintiff will be forced to file suit against a defunct company and sue a new company that claims it has no liability to Plaintiffs. Further, if they hope to actually collect on any judgment, Plaintiffs will be forced to sue multiple defendants and entities who are fraudulently holding Curran's assets, while giving Curran additional time without court oversight to engage in further fraudulent transfers. Many, if not most, Plaintiffs, operating alone, will be unable to pursue Curran and his shifting assets as doggedly as they have been able to do as a collective. Granting decertification would work a grave injustice on Plaintiffs given these egregious circumstances, which were not present in any of the cases Defendants rely on to support decertification.

As such, the third factor -- fairness and procedural considerations -- weighs in favor of allowing this action to proceed collectively.

### D. Plaintiffs' claims are not barred as a matter of law and decertification motions do not consider "merits" arguments in any event.

CityMac adds a wholly inappropriate "merits" argument to the end of its motion by arguing that Plaintiffs' claims are barred because they failed to object to CityMac's receivership proceedings in Washington state court. This argument cannot succeed for two reasons.

First, the merits of Plaintiffs' claims are not considered at the decertification stage. *See*, e.g. *Sandoval,* 2016 U.S. Dist. LEXIS 156810 at *23 (addressing exemption defense).

Second, CityMac has already essentially conceded that the Washington receivership, at most, affects the claims of Plaintiff Jahagirdar and that only Jahagirdar had notice (purportedly through counsel) of the Washington proceeding. [ECF No. 159 at pp. 16-17] CityMac did not even attempt to argue on summary judgment that the claims of any other Plaintiff are barred by

the Washington proceeding.

As CityMac belatedly concedes at the end of its "merits" argument, the effect of the Washington proceeding is merely a defense to Plaintiffs' claims, it is not a basis for decertification.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court deny Defendants' untimely Motion for Decertification.

Respectfully submitted this the 18th day of August 2021.

                                                         */s/ L. Michelle Gessner*
                                                        L. Michelle Gessner, NCSB#26590
                                                        Nicole K. Haynes, NCSB#47793
                                                        John G. Hutchens III, NCSB#52214
                                                        GESSNERLAW, PLLC
                                                        602 East Morehead Street
                                                        Charlotte, North Carolina 28202
                                                        Tel: (704) 234-7442; Fax: (980) 206-0286
                                                        Email: michelle@mgessnerlaw.com
                                                        *Attorney for Plaintiffs and Putative Class/Collective*