UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
1:20-cv-33-MOC-WCM

| | |
|---|---|
| SHAILESH JAHAGIRDAR, et al. ) | |
| ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| ) | |
| vs. ) | |
| ) | |
| ) **ORDER** | |
| ) | |
| THE COMPUTER HAUS NC. INC., ) | |
| d/b/a/ CITYMAC, et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** comes before the Court on a Motion to Certify Class and Appoint Class Counsel by Plaintiffs, (Doc. No. 134), and a Motion to Decertify Collective Action by Defendants, (Doc. No. 171).

Upon careful consideration of the briefs submitted by the parties, Plaintiffs' Motion to Certify Class and Appoint Class Counsel is **GRANTED**, and Defendants' Motion to Decertify Collective Action is **DENIED**.

**I.    BACKGROUND**

This case is a putative class action concerning wage and hour claims raised by employees of CityMac alleging violations of the Fair Labor Standards Act and related state laws. Plaintiffs assert a number of potential violations including failure to pay overtime and earned commissions, off-the-clock work, pay deductions for meal breaks not actually taken, and failure to timely pay final paychecks. Defendants broadly deny Plaintiffs' allegations. Plaintiffs seek to

1

certify five distinct classes for different states where CityMac had operations: North Carolina, South Carolina, Colorado, Oregon, and Washington. Defendants oppose certification of the classes.

Plaintiff Shailesh Jahagirdar began this action by filing a Complaint on February 5, 2020, seeking unpaid wages and statutory penalties under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. (Doc. No. 1). Defendants The Computer Haus, Inc. and Troy Curran broadly denied Mr. Jahagirdar's allegations, with the exception of a small amount of unpaid wages for 5.5 hours of work, in their Answer filed on March 6, 2020. (Doc. No. 5). Plaintiff Jahagirdar later amended his complaint to initiate a putative class action complaint alleging FLSA violations on behalf of himself and other similarly situated employees across five states and moved to conditionally certify and collective action, both filed on May 14, 2020. (Doc. Nos. 7, 9). In subsequent notices, additional parties consented to be added to the action. The Court granted Plaintiff's Motion to Certify a Collective Action by Order dated April 15, 2020. (Doc. No. 38). The parties then proceeded to discovery.

After obtaining the Court's permission, (Doc. 91), Plaintiffs filed a Second Amended Complaint on December 22, 2020, adding additional claims under the relevant laws of the five states in which Plaintiffs seek to certify classes and arising out of the same alleged conduct by Defendants giving rise to Plaintiffs' FLSA claims. (Doc. No. 94).

Plaintiffs filed a Third Amended Complaint including newly discovered additional parties on February 12, 2021, (Doc. No. 116), after obtaining the Court's permission to do so by Order dated February 2, 2021, (Doc. No. 112). Defendants moved to dismiss the Third Amended Complaint on March 10, 2021. (Doc. No. 128). The Court denied Defendant's motion as to the state law claims and claims against T.S. Leasing, LLC, but granted Defendant's motion to

dismiss claims against Curran and Company and Curran Family Properties for lack of personal jurisdiction. (Doc. No. 137).

Plaintiffs filed a Fourth Amended Complaint on July 13, 2021, (Doc. No. 166), after receiving permission from the Court to do so, (Doc. No. 165). Defendants again broadly deny Plaintiffs' allegations in their Answer filed July 27, 2021, (Doc. No. 170).

Plaintiffs moved to certify class and appoint class counsel on April 12, 2021. (Doc. No. 134). Defendants moved to decertify collective action on August 4, 2021, (Doc. No. 171). These motions are fully briefed and are ripe for ruling.

## II.  STANDARD OF REVIEW

Plaintiffs seek to certify a class under Rule 23. (Doc. No. 134). Rule 23(a) imposes four requirements on plaintiffs wishing to proceed as a class: "1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact common to the class; 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and 4) the representative parties will fairly and adequately protect the interest of the class." FED. R. CIV. P. 23. In addition, plaintiffs must meet the requirements of at least one of the three types of class action enumerated in Rule 23(b). Id.

In this case, the most applicable 23(b) type of class action appears to be (3), where the Court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Id. In making this determination, the Rule directs the Court to consider: "a) the class members' interests in individually controlling the prosecution or defense of separate actions; b) the extent and nature of any litigation concerning the controversy already begun by or against class members; c) the

3

desirability or undesirability of concentrating the litigation of the claims in the particular forum; d) the likely difficulties in managing a class action." Id.

### III. DISCUSSION

As discussed above, in order to certify a class action Plaintiffs must satisfy Rule 23(a)'s four requirements and the requirements of one of Rule 23(b)'s types of class action. For the following reasons, the Court finds that Plaintiffs have done so.

**A. The Court will Reserve Judgment on Statute of Limitations and Related Issues until it can Rule on Plaintiffs' Motion for Equitable Tolling**

As a threshold matter, Defendants argue that "Plaintiffs have incorrectly applied the statute of limitations." (Doc. No. 146 at 9–12). Defendants cite numerous cases addressing the tolling that ordinarily occurs in the litigation of a class action lawsuit. (Id.) Specifically, Defendants argue that "the filing of a class action does not toll the statute of limitations for subsequent class actions, nor does it toll the limitations period for individuals who are not members of the putative class," that "the filing of a collective action under FLSA does not even toll the statute of limitations for its own putative members until they affirmatively opt into the action," and that "amended complaints relate back to the date of the initial complaint only where they do not introduce a new cause of action." (Id.) The Court finds that Defendants have persuasively raised a number of issues about tolling and relation back.

However, the Court is mindful that Plaintiff Jaghirdar initiated this action in February 2020 on the eve of the COVID-19 pandemic. Plaintiffs raise strong arguments about equitable tolling in their Reply. (Doc. No. 149 at 4–5). Plaintiffs have now filed a Motion for Equitable Tolling, which is pending on the Court's docket. (Doc. No. 186).

Defendants do not appear to have had a chance to respond to Plaintiffs' arguments for

4

equitable tolling in their Reply. Therefore, the Court reserves judgment on the statute of limitations, relation back, and tolling issues until these can be fully briefed by the parties and the Court can fully consider and rule on the issue of whether equitable tolling is appropriate in this case.

### B. The Proposed Classes are Not "Overbroad"

Plaintiffs propose to certify five classes, one for each state in which Defendants have operations and each consisting of all of Defendants' employees in three years prior to entry of judgment in this case (or two in the case of the Colorado class). (Doc. No. 135 at 11, 18, 22, 27, 31). Defendants argue that these classes are "overbroad and improper." (Doc. No. 146 at 12–13). They argue that "the broad definition of 'all employees' defeats any effort to identify those employees who may have actually suffered the injuries alleged in the action." (Id.) This argument is unavailing for two reasons.

First, in calling for a class definition based on those "who may have actually suffered injuries," Defendants appear to be proposing a fail-safe class—i.e., a class in which membership is defined so that the class includes only members whose claims would be successful on the merits. Courts broadly reject such class definitions as unfair to defendants and contrary to the judicial economy rationale for class actions, because class members cannot be bound by an adverse judgment: potential class members are either in the class because they are successful on the merits or, because they are not successful on the merits, they are not in the class. See EQT Prod. Co. v. Adair, 764 F.3d 347, 360 (4th Cir. 2014); Young v. Nationwide Mut. Ins. Co., 693 F.3d 532, 538 (6th Cir. 2012).

Second, as explained in Section D, Plaintiffs are alleging a broader set of employment practices and policies common to all of Defendants' employees which plausibly would have

5

harmed them as a class. Therefore, the proposed classes are not "overbroad." It remains to be determined whether Defendants actually had common practices and policies which were unlawful and which actually harmed the proposed classes—but that determination is for the merits stage of litigation.

### C. Plaintiffs Have Satisfied the Numerosity Requirement

Rule 23 requires that "the class is so numerous that joinder of all members is impracticable" in order for a class to be certified. FED. R. CIV. P. 23(a). The parties focus on the number of class members, with Defendants arguing that classes under 40 and 25 should generally not be certified. The Court agrees with Defendants that classes with fewer than 25 members are seldom certified. (Doc. No. 146 at 13–14); see also Kennedy v. Virginia Polytechnic Inst. & State Univ., 2010 WL 3743642 at *3 (W.D. Va. Sept. 23, 2010) ("It is exceedingly rare to certify classes with less than 25 members" but "courts seem much more willing to certify a class if it has more than 40 members."). But the Court also agrees with Defendants that "there is no magic number that invokes class treatment." (Doc. No. 146 at 13). Indeed, Plaintiffs cite many cases where courts validly certified smaller classes. (Doc. No. 149 at 8).

While the parties focus on the number of class members, the Court notes that Rule 23(a) suggests a somewhat different inquiry: the practicability of joinder. FED. R. CIV. P. 23(a). Under the plain text of Rule 23(a), the numerosity requirement is satisfied where it would be impracticable to join all members of the proposed class to the action as individuals. Id. Rule 23's focus is on the practicability of joining all class members to the suit as individuals, not on the number of class members itself. These analyses will often be related, especially in class actions where plaintiffs are only attempting to certify a single class, but they are distinct.

Plaintiffs assert that the North Carolina, South Carolina, Washington, Colorado, and Oregon proposed classes would have 114, 49, 90, 31, and 15 members respectively. (Doc. No. 135 at 12, 18, 23, 27, 32). While Defendants assert that these classes are overbroad, the Court disagrees for the reasons explained above.

The Court finds that joining all 299 putative class members to this case would be prohibitively expensive, inconvenient, and wasteful of judicial resources. In addition, as Plaintiffs contend and Defendants do not appear to dispute, this would be especially burdensome for "economically disadvantaged" members of the proposed classes. (Doc. No. 135 at 12, 18, 23, 27, 32). See Robidoux v. Celani, 987 F.2d 931 (2d Cir. 1993). Due to these exigencies, this case appears to be one where the Court is choosing between allowing Plaintiffs to proceed as a class or joining them individually, but rather is choosing between allowing Plaintiffs to proceed as a class or not at all. The Court finds as a factual matter that it would be impracticable to join all 299 members of the five proposed classes to the lawsuit. Therefore, under the plain text of Rule 23, the numerosity factor is satisfied.

### D. Plaintiffs Have Satisfied the Commonality Requirement

Rule 23(a) requires that "there are questions of law or fact common to the class" in order for the class to be certified. FED. R. CIV. P. 23(a). In order to satisfy commonality, putative class members must have claim to have "suffered the same injury" and their claims must depend upon a "common contention" capable of "classwide resolutions." Scott v. Family Dollar Stores, Inc., 733 F.3d 105 (4th Cir. 2013) (quoting Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551 (2011)). Moreover, the Court is mindful that "Rule 23 does not set forth a mere pleading standard" and that Plaintiffs must show "that there are in fact … common questions of law or fact," capable of generating common answers, in order to certify a class. Dukes, 131 S.Ct. at

7

2551 (emphasis in original). This requires a "rigorous analysis" which may "overlap with the merits of [Plaintiffs'] underlying claim." Id. However, the Court is also mindful that "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 133 S.Ct. 1184, 1194–95 (2013); see also Brown v. Nucor Corp., 785 F.3d 895, 903 (4th Cir. 2015).

For each of the five classes, Plaintiffs allege minimum wage and overtime violations, inaccurate timekeeping, unauthorized deductions, issues with commissions and bonuses, and failure to timely pay final paychecks—all in violation of federal and state law. In support of these allegations, Plaintiffs submit testimony from multiple former employees of Defendants. (Doc. No. 135 at 3–9). These employees worked at a wide variety of Defendants' locations, at different times in the past few years, and at different levels of seniority. Yet they report similar issues, including off-the-clock work, deducting an hour of wages for lunch breaks taking less than an hour, failure to pay earned commissions, and backcharging of returned products. (Id.)

Mr. Jahagirdar worked at Defendants' Wilmington, North Carolina location as a sales professional in July through August and September through November of 2019. In his deposition, Mr. Jahagirdar attests that he was required to arrive at 9:15 am but was not allowed to clock in until closer to the store's opening time at 9:45-10:00. (Doc. No. 135 at 3). Yet he spent this time performing work tasks such as checking orders, prepping and cleaning workstations, sweeping floors, and putting computers on display. (Id.). Mr. Jahagirdar also reports working on his day off by responding to texts and answering questions. (Id.). He reports issues with Defendants' timekeeping system. (Id.). He also reports that he did not receive commissions and overtime he had earned, nor did he timely receive his final paycheck. (Id.)

Ms. Norris worked at the Myrtle Beach, South Carolina location as a retail associated

from October 2018 to March 2020. (Id. at 4). In her deposition, she attests that she worked off-the-clock and, on more than two occasions, worked in excess of forty hours a week without receiving overtime pay. (Id.). She also attests that her compensation was automatically deducted for breaks she did not take, and that this practice continued even after she brought this to her manager's attention. (Id.).

Mr. Green also worked at the Myrtle Beach location. (Id.). Mr. Green worked as a quick-fix technician and a repair technician from December 2017 to December 2019. He too reports having to work off-the-clock prior to clocking in and issues with the functioning of Defendants' timekeeping system. (Id.). He reports that there was a period of time when Defendants would automatically deduct one hour from employees' wages for lunch, whether the employee took the lunch break or not. (Id. at 4–5). He reports that he worked a regular schedule but his paychecks would fluctuate, and that he was not given an explanation for these fluctuations. (Id. at 5). And he reports not being paid overtime and bonuses which he earned. (Id.).

Mr. Allen also worked at the Myrtle Beach location as a sales associate and assistant store manager, working for "a few months in 2017" and then from some time in 2019 through March 2020. (Id.). He reports that he has still not been paid for 76 hours of work, some of which constituted overtime. (Id.). While he was an assistant store manager, he did not have many responsibilities and was essentially a "glorified salesperson." He too reports technical issues with Defendants' timekeeping system, automatic deductions of one hour for lunch when he did not in fact take an hour for lunch, and not being paid commissions and bonuses he earned. (Id. at 6).

Mr. Blais worked at the Burlington, Washington location from June 2019 to March 2020 as a sales associate. (Id.). He too reports issues with and confusion regarding Defendants' timekeeping system. (Id. at 6–7). He too reports "numerous occasions" where he was not paid

9

overtime and believes that he did not receive earned commissions either. (Id. at 7). He reports widespread confusion and inaccuracy with Defendants' timekeeping that made it impossible to determine his pay. (Id.).

Mr. Johnson worked at the Colorado Springs, Colorado location from October 2017 to March 2019 in sales, teaching, and the IT/service department. (Id.). He was promised a wage of $14/hour but was only paid $13/hour. (Id.) He too reports that Defendants did not keep accurate time records and failed to pay him commissions earned. (Id. at 7–8). He reports that Defendants did not keep accurate records of his time and altered the time he clocked in and out after the fact. (Id. at 8). When he reported inaccurate paychecks to Defendants, he "was not given a specific answer" and "just got excuses." (Id.). He too reports working off-the-clock and not being paid overtime he earned, and four days of wages Defendants failed to pay him. (Id.). He reports that these issues were widespread at his location and became something that "he and other employees would rant about [] with each other." (Id.). He too reports that his workweek was "rounded down to 40 hours" even when he worked more time than that, and issues with commissions and receipt of his final paycheck. (Id.).

Seven of Defendants' former employees who worked across a variety of locations, roles, and seniority levels at different times in the past few years all report similar practices: failure to pay commissions earned, failure to pay overtime earned, work off-the-clock, deduction for breaks not taken, and widespread inaccuracies in timekeeping. Defendants have not proffered a compelling explanation of how such similar issues could arise in such diverse work contexts, or why the Court should view these similar problems as anything other than common issues of law and fact. Taken together, this evidence leads to the factual inference that there may have been common wage and hour policies and practices that violated state and federal law and that harmed

10

the proposed classes as a whole.

The Court does not find that there <u>were</u> such policies and practices, but finds that there are sufficient facts in the record to raise common questions—capable of generating common answers—about the existence of such policies and practices. Whether there in fact were such practices, whether they did in fact violate state and federal law, and whether the practices did in fact harm the proposed classes are questions for the merits stage of the litigation.

Defendants suggest that Plaintiffs are basing their claims on "vague" and "cursory" allegations submitted "on information and belief." (Doc. No. 146 at 18–20). Defendants also point to many aspects of the depositions Plaintiff relies upon in attempt to show that common questions do not in fact exist. (Doc. No. 146 at 16–29). For instance, Defendants quote class Plaintiff Jahagirdar's statement that he was always paid minimum wage as evidence that he did not actually experience wage and hour violations. Defendants accuse Plaintiffs of relying primarily on unsubstantiated allegations and remind the Court that "one plaintiff's experience (even if proven to be true) does not establish that the defendant had a common policy or practice that affected the other members of the proposed class." (Doc. No. 146 at 19; <u>citing</u> <u>General Tel. Co. of Southwest v. Falcon</u>, 457 U.S. 147, 148 (1982)). In addition, Defendants submit statements of other class members who attest they never experienced these violations, (<u>see</u> Doc. No. 146, Exhibits 5, 8, 9), and a policy in Defendants' handbook requiring employees to report all time worked, (Doc. No. 146 at 21; <u>see</u> Exhibit 6).

The Court agrees that Defendants' evidence tends to show that there were not policies and practices which violated the law and injured the putative class members. But now is not the time to weigh Plaintiffs' evidence against Defendants' evidence. Rather, Defendants must show that common questions, capable of common answers, do not in fact <u>exist</u>. Defendants have not

11

done so.

First, contrary to Defendants' insinuation, the testimony of Defendants' former employees is not "on information and belief," nor is it "vague" or "cursory." Rather, as Plaintiffs contend, sworn testimony is evidence (Doc. No. 149 at 11). Plaintiffs have submitted testimony of multiple sworn witnesses at different locations, times of employment, and even seniority levels attesting to issues such as off-the-clock work, deducting an hour of wages for lunch breaks taking less than an hour, failure to pay earned commissions, and backcharging of returned products. Plaintiffs' witnesses may "believe" they were not paid what they were owed, but this "belief" is grounded in facts from their testimony. Whether their beliefs are correct and whether their experience is generalizable to the classes as a whole are questions for the merits stage of this litigation. But the Court finds that, as a threshold matter, Plaintiffs have presented evidence that is more than "vague," "cursory," or offered solely "on information and belief."

Second, while Defendants successfully raise issues with the testimony of Plaintiffs' witnesses, these issues go to the persuasiveness of the testimony and not whether it raises questions at all. For instance, Defendants contend that Mr. Jahagirdar testified that they never actually failed to pay him minimum wage. (Doc. No. 146 at 17). But Plaintiffs counter that this was taken out of context and point to portions of Mr. Jahagirdar's testimony where he describes being required to work off-the-clock. (Doc. No. 149 at 10–11). Similar issues arise with Mr. Blaise's testimony. Defendants take Mr. Blaise to task for being unable to identify specific pay periods where he was paid less than minimum wage or was not paid for earned commissions. (Doc. No. 146 at 23). But Plaintiffs cite Mr. Blaise's testimony that he was not paid for overtime and point to inaccuracies in Defendants' records. (Doc. No. 135 at 7). Defendants submit declarations of class members who do not report experiencing the issues that Plaintiffs'

12

witnesses describe. (Doc. No. 146 at 20, 25, 27; Exhibits 5, 8, 9). But Plaintiffs counter that these declarants are currently employed by Defendants and assert that one of the declarants is Defendant Troy Curran's daughter and that Defendants failed to disclose this to the Court. (Doc. No. 149 at 14).

While the Court will engage in a limited factual inquiry to determine if class certification is proper, now is not the time for highly fact-intensive inquiries like assessing witness credibility, inspection of Defendants' records, or considering the motivations and weighing the persuasiveness of certain witnesses against others. The Court finds that the testimony of Plaintiffs' witnesses adequately <u>raises</u> common questions capable of common answers. The Court does not find what those answers will be.

Third, Defendants cite <u>Falcon</u> as authority for the proposition that "one plaintiff's experience (even if proven to be true) does not establish that the defendant had a common policy or practice that affected the other members of the proposed class." (Doc. No. 146 at 19). And it is true that Plaintiffs have provided only one proposed lead plaintiff and witness for each of the proposed classes except the proposed South Carolina class. But Defendants' argument ignores the fact that all seven witnesses are raising common factual questions about Defendants' wage and hour policies and practices. The proposed classes may be legally distinct because they are in different states and must therefore bring their state law claims under different state statutes. But, as explained in Section D, the testimony of seven witnesses across different locations, times of employment, and even levels of seniority all attesting to similar wage and hour violations leads to the inference that there may have been companywide policies and practices that violated the law and harmed the proposed classes as a whole.

Indeed, Defendants do not provide a persuasive explanation for why so many of their

13

former employees, across a wide variety of contexts, would have reported such similar wage and hour issues. Instead, they attempt to analogize this case to Dukes and argue that "commonality was not met even when the party seeking class certification supported their motion for class certification with 120 affidavits from potential class members, as 120 individuals represented only a small percentage of the putative class as a whole." (Doc. No. 146 at 19). But they ignore the fact that Dukes involved a class of 1.5 million. Dukes, 564 U.S. at 344. Here, Plaintiffs have submitted 7 depositions for five proposed classes totaling 299 members. Even as a percentage, Plaintiffs have greatly exceeded the showing in Dukes as a percentage of the putative class, with 2.3% of class members rather than .008% of class members.

Moreover, Dukes did not turn on the simple matter of percentages but rather on the critical issue of manager discretion, which, because it was not exercised by the managers in a common way, made it impossible for issues of law or fact to be common to all 1.5 million members of the proposed class in that case. Dukes, 131 S.Ct. at 2544. The Fourth Circuit has held that "Wal-Mart did not set out a per se rule against class certification where subjective decision-making or discretion is alleged" but instead "directs courts to examine whether 'all managers [ ] exercise discretion in a common way with [ ] some common direction.'" Scott v. Family Dollar Stores, Inc., 733 F.3d 105, 113 (4th Cir. 2013). Unlike the defendants in Dukes, Defendants in this case have not established that management practices differed so greatly across their stores that commonality would be impossible. Indeed, based on the testimony of Plaintiffs' witnesses, Defendants' wage and hour policies may have been quite similar across a wide variety of stores, time periods, and seniority levels.

For these reasons, the Court finds that Plaintiffs have satisfied Rule 23's commonality requirement.

14

### E. Plaintiffs Have Satisfied the Typicality Requirement

Rule 23(a) also requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." While there are, of course, variations in the particular experiences of Plaintiffs' witnesses, there are common themes with their experiences with Defendants' wage and hour policies. As the discussion of Plaintiffs' witnesses above with respect to commonality shows, there are genuine issues of fact and law as to whether widespread practices of not paying earned commissions, bonuses, overtime, off-the-clock work, inaccurate timekeeping, and other issues existed. Given the similarity between their experiences with Defendants' wage and hour policies, the Court is satisfied that the claims and defenses of the named plaintiffs would be typical of the class as a whole.

### F. The Proposed Parties Will Fairly and Adequately Represent the Proposed Classes

The fourth and final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interest of the class." The Court finds that Plaintiffs have satisfied this requirement. Plaintiffs' representatives all appear to have suffered the kinds of harm that are common to and typical of the proposed classes. Defendants argue that Mr. Jahagirdar does not have standing to represent the proposed North Carolina class because they have compensated him for "alleged unauthorized deductions and final pay," without admitting fault. (Doc. No. 146 at 18). However, Defendants do not specify how much they compensated Mr. Jahagirdar so it is impossible for the Court to gauge whether they could adequately compensate Mr. Jahagirdar for his alleged injuries in these two areas. (Id.; Doc. No. 146-1 at ¶ 16). Nor do Defendants offer any reason to think that the amount of compensation was as extensive as the harm Mr. Jahagirdar alleges in these two areas.

15

In any case, the proposed classes are asserting claims for relief for issues other than unauthorized deductions and final pay violations including off-the-clock work, overtime violations, and failure to pay earned commissions. Therefore, even if Defendants could show that Mr. Jahagirdar's claims were mooted in the two aforementioned areas (which they have not done), they have not successfully shown that his claims are mooted in these other areas. Therefore, he continues to have standing to litigate this case and represent this class. According to his testimony, his experiences with Defendants' wage and hour policies appear to be similar to those of the other witnesses. The fact that Mr. Jahagirdar may have received a small amount of compensation for his alleged injuries does not render him incompetent to represent the class because he is alleging harm over and above what Defendants have compensated him for.

### G. The Proposed Classes' Questions of Law and Fact Predominate Over Any Questions Affecting Only Individual Members

Under Rule 23, Plaintiffs must also show that they fit into one of Rule 23(b)'s three types of class actions. In this case, the Court finds that Plaintiffs satisfy the requirements for proceeding under the third type of class action under Rule 23(b), which requires the Court to "find that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Id. In making this determination, the court should consider: "a) the class members' interests in individually controlling the prosecution or defense of separate actions; b) the extent and nature of any litigation concerning the controversy already begun by or against class members; c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; d) the likely difficulties in managing a class action." Id.

16

The Court finds that class members have a minimal interest in controlling the prosecution or defense of separate actions. In practical terms, the Court appears to be choosing between allowing Plaintiffs to proceed as a class or not at all because the size of individual claims is small and the practical considerations of litigating the claims individually, whether joined to this action or as individual actions, would likely be insurmountable. Surely getting their day in court <u>at all</u> is more important to class members than individual variations in their particular cases, which would likely not even be brought before the Court due to these exigencies. Additionally, there do not appear to be significant factual variations within the proposed class members that might give rise to a desire for individual class members to control the litigation of their individual claims.

The Court also finds that this matter has been extensively litigated and, to the Court's knowledge, there are not any other pending actions bearing on this matter. Therefore, proceeding with the litigation of the proposed class's claims through this case will not interfere with other matters.

The Court finds that it is somewhat undesirable to concentrate litigation concerning class members on both coasts and the laws of five different states in one forum. However, this undesirability is outweighed by the commonality of the claims of the five proposed classes and the desirability of resolving these claims in one action.

Finally, the Court finds that the difficulties in managing this class action are not especially great and, in any case, are far less than the difficulties that would arise from requiring Plaintiffs to proceed individually.

Overall, the claims and defenses of class members relating to Defendants' wage and hour practices appear to predominate over individual issues. The Court is not aware of any significant differences in the claims to be pursued by class members. All class members appear to have a

17

common claim considering Defendants' wage and hour practices. Defendants' alleged systemic failure to accurately record time, pay commissions, bonuses, and overtime and to timely pay final paychecks as well as Defendants' alleged arbitrary deductions of breaks and requirement to do off-the-clock work point to the possibility that Defendants had wage and hour policies and practices that violated the law.

It is true that there are some differences among the particular issues reported by Plaintiff's seven witnesses. For instance, not all witnesses report the automatic deduction of an hour for lunch, and not all report timely paycheck issues. But the Court finds that these differences likely originated from the same alleged policies and practices, and the questions of whether such policies and practices in fact existed, were in fact unlawful, and did in fact harm Plaintiffs are vastly more important to the interests of the proposed classes than individual variations.

Therefore, the Court finds that common questions predominate in this case.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs have satisfied the requirements of Rule 23 and that their proposed classes will be certified.

**IT IS, THEREFORE, ORDERED** that:

(1) Plaintiffs' Motion for Class Certification (Doc. No. 134) is **GRANTED** and Defendants' Motion to Decertify Collective Action (Doc. No. 171) is **DENIED,** and the case shall proceed with respect to the claims of the Amended Complaint as a class action under Federal Rule of Civil Procedure 23(b)(3).

(2) the **CLASSES** for Plaintiffs' claims are defined as follows:

<u>The North Carolina Class:</u> *"All persons who worked for CityMac in*

18

> *the state of North Carolina at any time from three years prior to the filing of this Complaint to the entry of judgment in the case."*
>
> The South Carolina Class: *"All persons who worked for CityMac in the state of South Carolina at any time from three years prior to the filing of this Complaint to the entry of judgment in the case."*
>
> The Colorado Class: *"All persons who worked for CityMac in the state of Colorado at any time from two years prior to the filing of this Complaint to the entry of judgment in the case."*
>
> The Washington Class: *"All persons who worked for CityMac in the state of Washington at any time from three years prior to the filing of this Complaint to the entry of judgment in the case."*
>
> The Oregon Class: *"All persons who worked for CityMac in the state of Oregon at any time from three years prior to the filing of this Complaint to the entry of judgment in the case."*

(3) Plaintiff Shailesh Jahagirdar is designated as class representative for the North Carolina Class. Plaintiffs Allen Allen, Rakia Green, and Kamri Norris are designated as class representatives for the South Carolina Class. Plaintiff Connor Johnson is designated as class representative for the Colorado Class. Plaintiff Jordan Blais is designated as class representative for the Washington Class. Plaintiff Andrew Free is designated as class representative of the Oregon Class.

(4) L. Michelle Gessner and Nicole Katherine Haynes, who are the attorneys of record for the appointed class representatives, are authorized to serve as class counsel to represent the class; and

(5) the parties are **DIRECTED** to confer and jointly submit, within thirty (30) days of the date of this Order, proposed class notice documents in conformance with Rule 23(c)(2), which the court will consider before issuing notice to the class.

As this matter is the type of matter that can be resolved by skilled attorneys, the parties are

19

encouraged to engage in serious settlement discussions before submitting the class notice documents to the court for approval.

Signed: November 5, 2021

Max O. Cogburn Jr
United States District Judge