| | | |
|---|---|---|
| **SHAILESH JAHAGIRDAR, et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| **THE COMPUTER HAUS NC, INC.,** | ) | |
| d/b/a **CITYMAC, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the Court on Defendants Mark Curran and Curran Brothers, LLC's Motion to Dismiss, (Doc. No. 176), Defendants Amber and Brandy Curran's Motion to Dismiss, (Doc. No. 193), and a Motion for Summary Judgment by Defendants Curran Holdings, LLC, Curran Ranch, Green Vault, Inc., Northern Passage, Inc., Ocean Dance, Ocean Tech, Inc., Salish Sea, LLC, TS Leasing, LLC, and Zephyr Investments, Inc., (collectively "the Alter Ego Defendants") (Doc. No. 208). These Motions are filed on behalf of Defendants who, Plaintiffs allege, are partners and/or alter egos of Defendants Troy Curran and The Computer Haus NC, Inc. (hereinafter "Computer Haus").

The Court finds that Plaintiffs have plead adequate facts to establish the Court's jurisdiction over these Defendants on partnership and/or alter ego theories. The Court also finds that genuine issues of material fact exist as to whether the Alter Ego Defendants are, in fact, alter egos of Defendants Troy Curran and Computer Haus. Therefore, these Motions will be **DENIED**.

-1-

**I. Background**

This case is a class action concerning wage and hour claims raised by employees of CityMac alleging violations of the Fair Labor Standards Act and related state laws. Plaintiffs assert numerous violations, including failure to pay overtime and earned commissions, off-the-clock work, pay deductions for meal breaks not actually taken, and failure to timely pay final paychecks. Defendants broadly deny Plaintiffs' allegations.

Plaintiff Shailesh Jahagirdar began this action by filing a Complaint on February 5, 2020, seeking unpaid wages and statutory penalties under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. (Doc. No. 1). Defendants broadly denied Mr. Jahagirdar's allegations, with the exception of a small amount of unpaid wages for 5.5 hours of work, in their Answer filed on March 6, 2020. (Doc. No. 5). Plaintiff Jahagirdar later filed an amended complaint to initiate a putative class action, alleging FLSA violations on behalf of himself and other similarly situated employees across five states, and moved to conditionally certify a collective action, both filed on March 14, 2020. (Doc. Nos. 7, 9).

Plaintiffs added additional Defendants to subsequent amended complaints. Plaintiffs added Ocean Tech, Inc. ("Ocean Tech") to the Second Amended Complaint, alleging that Ocean Tech did business as City Mac and that Troy Curran transferred Computer Haus's Apple Contract to Ocean Tech (Doc. No. 94 at 12). Plaintiffs alleged that the Apple Contract was a "significant asset." (Id.). Plaintiffs added the following Defendants to the Third Amended Complaint, alleging that they were alter egos of Troy Curran: TS Leasing, LLC; Curran and Company; Green Vault, Inc.; Curran Ranch; Curran Family Properties, LLC; Northern Passage, Inc.; Salish Sea, LLC; and Curran Holdings, LLC. (Doc. No. 116 at 8–10). Defendants moved to

dismiss claims against TS Leasing, Curran and Company, and Curran Family Properties. (Doc. No. 128). The Court denied the motion as to TS Leasing and allowed the parties to proceed to jurisdictional discovery, but granted the motion to dismiss as to Curran and Company and Curran Family Properties. (Doc. No. 137). Plaintiffs added the following Defendants to the Fourth Amended Complaint as partners and alter egos of Defendant Troy Curran: Curran Brothers, LLC ("Curran Brothers"); Ocean Dance, a Cayman Islands foreign registered entity; and Brandy, Amber, and Mark Curran. (Doc. No. 166).

In their Complaint, Plaintiffs essentially allege a comprehensive scheme by Defendant Troy Curran shield his assets through transfers to relatives and through numerous companies throughout the United States and in the Cayman Islands. (Id. at 10–15). For instance, Plaintiffs allege that one of the companies holds title to Curran's personal vehicles while another holds title to his sailboat. (Id. at 10–11). Indeed, "all or substantially all" of Curran's expenses are run through various entities in "a complex layering of entities whose assets and expenses are intermingled." (Id. at 11). This has permitted Curran to show little to no personal income on his tax returns while enjoying a "lavish lifestyle." (Id.). Plaintiffs allege significant inconsistencies between Curran's statements, his tax documents, his bank statements, and documentary evidence. (Id.). Plaintiffs allege that Curran has not observed corporate formalities as to these Defendants, transferred their assets and then falsely testified under oath as to the status of the assets, and has engaged in obstructionist tactics to protect his assets from discovery. (Id. at 12). Plaintiffs allege that Curran admitted that he uses LLCs to avoid personal liability and moves assets abroad for the same reason. (Id. at 13). Plaintiffs allege that Curran denied having money to pay his employees even though he has received a PPP loan of more than half a million dollars,

-3-

which he then used in part to pay personal expenses. (Id.). Plaintiffs allege transfers of money and ownership of a yacht among Curran's various alter egos. (Id. at 14). Finally, Plaintiffs allege that Curran moved his assets among his relatives and various alter egos after this action was filed, admitted to numerous assets in a divorce settlement agreement which he did not disclose in this case, and despite claiming not to have money was seeking a romantic partner to travel the world with him on his yacht. (Id. at 15).

Defendants Mark Curran and Curran Brothers moved to dismiss claims against him, (Doc. No. 176), Defendants Amber and Brandy Currant moved to dismiss claims against them, (Doc. No. 193), and the Alter Ego Defendants have moved for summary judgment, (Doc. No. 208). These motions are now ripe for disposition.

## II. Standard of Review

### a. The Motions to Dismiss for Lack of Personal Jurisdiction

Rule 12(b)(2) provides for dismissal for "lack of personal jurisdiction." FED. R. CIV. P. 12(b)(2). When a district court considers a Rule 12(b)(2) motion based on the contents of the complaint and supporting affidavits without an evidentiary hearing, the party asserting jurisdiction bears the burden of establishing a prima facie case of jurisdiction. Hawkins v. i-TV Digitalis Tavkozlesi zrt., 935 F.3d 211, 226 (4th Cir. 2019); Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014). The standard of review is by a preponderance of the evidence. Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993).

The court may consider affidavits submitted by both parties, but it must resolve factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction. Universal Leather, 773 F.3d at 560; Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989) ("[T]he court

-4-

Case 1:20-cv-00033-MOC-WCM   Document 231   Filed 03/17/22   Page 4 of 16

must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction."). The court must then determine whether the facts proffered by the party asserting jurisdiction make out a case of personal jurisdiction over the party challenging jurisdiction. Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd., 911 F.3d 192, 196–97 (4th Cir. 2018).

### b. The Motion for Summary Judgment

Rule 56 provides for Motions for Summary Judgment. On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving [sic] party must come forward with "specific facts showing that there is a *genuine issue for trial*." Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (citations omitted; emphasis in the original) (quoting FED. R. CIV. P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

By reviewing substantive law, the court may determine what matters constitute material facts. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." Id. at 248. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id. The court must credit factual disputes in favor of the party resisting

-5-

summary judgment and draw inferences favorable to that party if the inferences are reasonable, however improbable they may seem. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980). Affidavits filed in support of a Motion for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. United States ex rel. Jones v. Rundle, 453 F.2d 147 (3d Cir. 1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979).

In determining whether a genuine issue of material fact exists, the admissible evidence of the non-moving party must be believed and all justifiable inferences must be drawn in his or her favor. Anderson, 477 U.S. at 255. In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." Id., at 252.

**III. Discussion**

Plaintiffs essentially allege a comprehensive scheme by Troy Curran to systematically hide almost all of his assets and income through myriad corporate transactions and transfers to his relatives. If true, this scheme would appear to be an attempt by Defendant Troy Curran to deny relief to Plaintiffs and avoid accountability for his alleged violations of wage and hour laws. Indeed, the conduct Plaintiffs allege amounts to, at best, bad faith participation in the judicial process and, at worst, outright perjury and fraud.

Therefore, if Plaintiffs' allegations prove true, the dismissal of claims against Troy Curran's relatives and the alleged alter ego Defendants would effectively bar Plaintiffs from recovering a remedy for their alleged injuries before they even had their day in Court and would

-6-

Case 1:20-cv-00033-MOC-WCM   Document 231   Filed 03/17/22   Page 6 of 16

serve to reward Defendant Troy Curran for his allegedly duplicitous tactics. This would be unacceptable, not least because ample judicial resources have already been exhausted sorting out the mangle of corporate entities and financial relationships with relatives allegedly involved in Defendant Troy Curran's business.

Of course, the Court cannot determine whether Plaintiffs' claims are true at this stage of the litigation. At present the Court merely finds that, <u>for the reasons discussed below</u>, Plaintiffs have cleared the <u>low</u> threshold necessary to establish jurisdiction over all named Defendants through partnership and alter ego theories, and to show that genuine issues of material fact exist against the Alter Ego Defendants. Defendants will have ample opportunity to disprove Plaintiffs claims, as well as their partnership and alter ego theories, at trial.

### a. Mark Curran and Curran Brothers

Defendants Mark Curran and Curran Brothers move to dismiss claims against them for lack of personal jurisdiction. (Doc. No. 176). Mark Curran is Troy Curran's brother. Plaintiffs allege and Defendants do not appear to contest that Curran Brothers is a joint partnership between Mark and Troy Curran. (Doc. No. 177 at 6).

Defendant Mark Curran argues that his contacts with North Carolina are insufficient to establish this Court's jurisdiction over him, (Doc. No. 177 at 4–5), and that he cannot be an "alter ego" of Troy Curran because he does not meet the legal requirements for an alter ego (such as "'complete domination' and dishonest conduct") and because the alter ego theory is inapplicable to private individuals. (<u>Id.</u> at 7) ("The alter ego theory is a doctrine of corporate law and there is no precedent to support a finding that an individual could be an alter ego of another individual."). The Court agrees. The Court does not appear to have jurisdiction over Mark

-7-

Curran through his contacts with North Carolina, nor does an alter ego theory appear to be applicable to him.

However, Plaintiffs allege that a partnership exists between Mark and Troy Curran and that the Court may assert jurisdiction over Mark on that basis. (Doc. No. 183 at 2–6, 11–13). Plaintiffs provide a declaration from William Molnar, a CityMac executive and employee of almost 20 years, who attests that Mark Curran is in partnership with CityMac and entitled to receive dividends from CityMac's profits. (Doc. No. 183-1). As Plaintiffs point out, in North Carolina a partnership is "a combination of two or more persons of their property, effects, labor, or skill in a common business or venture, under an agreement to share the profits or losses in equal or specified proportions, and constituting each member an agent of the others in matters appertaining to the partnership and within the scope of its business." Best Cartage, Inc. v. Stonewall Packaging, LLC, 727 S.E.2d 291, 299 (N.C. Ct. App. 2012); see also Rhue v. Rhue, LLC, 658 S.E.2d 52, 59 (N.C. Ct. App. 2008); N.C. GEN. STAT. § 59-36(a). An express agreement is not needed to form a partnership; rather, a partnership can be proved by the conduct of the parties. Potter v. Homestead Preservation Assn., 330 N.C. 569, 576 (1992); see also Eggleston v. Eggleston, 47 S.E.2d 243, 247 (N.C. 1948). Therefore, it is not necessary that Mark and Troy Curran intended to form a partnership; it suffices to form a partnership if they intended to combine their property and efforts in a venture with an agreement to share in the profits, as Plaintiffs plausibly allege was the case.

The Court must resolve factual disputes and draw reasonable inferences in favor of the party asserting jurisdiction—in this case, the Plaintiffs. Therefore, the Court takes the Molnar

declaration as true and finds that Plaintiffs have sufficiently established a partnership between Mark and Troy Curran for purposes of this analysis only.

Plaintiffs present significant authority suggesting that the Court can exercise personal jurisdiction over a defendant who is in partnership with another defendant over which the Court has jurisdiction. (Doc. No. 183 at 11). The Court agrees, and Defendants do not appear to contest this proposition in their response. Rather, Defendants argue that Plaintiffs' partnership argument is misplaced because CityMac is a registered limited liability corporation, not a partnership. (Doc. No. 185 at 6–7). Thus, Defendants reason, Mark Curran was not a partner and even if he was, he is shielded by the corporate form from any lawsuit. (Id. at 7). While the logic of this argument is sound, it mischaracterizes Plaintiffs' argument. Plaintiffs do not appear to allege that Mark Curran was formally part of CityMac's corporate structure but, rather, that an arrangement existed between him and Troy Curran that involved intermingling of their assets to shield Troy's assets from liability and which would have allowed Mark to share in CityMac's proceeds. (Doc. No. 183 at 11–13). This might explain why Mark Curran did not deny being a partner in his declaration but rather, according to Plaintiffs, "vaguely and cryptically denied having an ownership interest in any named Defendant." (Id. at 12). Of course, another viable explanation is that Mark and Troy Curran's assets were simply not intermingled at all, as Defendants argue. (Doc. No. 185 at 8–9). The Court cannot resolve this kind of disagreement at this stage of the litigation and must draw inferences in favor of the party asserting jurisdiction. Therefore, the Court will deny Mark Curran's motion to dismiss. At a minimum, Plaintiffs should be allowed to conduct jurisdictional discovery to determine whether Mark and Troy Curran are, in fact, partners.

-9-

Case 1:20-cv-00033-MOC-WCM   Document 231   Filed 03/17/22   Page 9 of 16

The Court will deny Curran Brothers' motion to dismiss for the same reason. As discussed, Curran Brothers is a joint partnership between Mark and Troy Curran. Defendants concede that Curran Brothers extended a loan to Troy Curran personally which he used to purchase CityMac, but argue that the Court should view Curran Brothers as merely a creditor over which the Court does not have jurisdiction. (Doc. No. 177 at 6–7). As Plaintiffs point out, this assertion is complicated by Troy Curran's failure to list Curran Brothers as a creditor in his petition for receivership, and the fact that Troy Curran claimed to be paying the loan back to Curran Brothers and not taking any income from Curran Brothers even though his 2018 and 2019 tax returns do, in fact, show income from Curran Brothers. (Doc. No. 183 at 12). The Court cannot discern at this stage of the litigation whether Curran Brothers was merely a creditor of Defendant Troy Curran or rather an alter ego. Given the alleged partnership between Mark and Troy Curran and the significant inconsistencies in Troy Curran's account of his dealings with Curran Brothers, and drawing factual inferences in Plaintiffs' favor, the Court finds that there is an adequate basis for jurisdiction over Curran Brothers as well.

### b.     **Amber and Brandy Curran**

Defendants Amber and Brandy Curran, daughters of Defendant Troy Curran, move to dismiss claims against them, arguing that that Plaintiffs have failed to allege sufficient facts to establish personal jurisdiction over them. (Doc. No. 193). These Defendants raise essentially the same argument as Defendant Mark Curran and the Court will reject these arguments for the same reasons. Defendants Amber and Brandy Curran argue that they did not have sufficient contacts with North Carolina for this Court to exercise general or specific jurisdiction. (Doc. No. 194 at 4–6). Apart from their status as alleged partners of Troy Curran, the Court agrees.

With respect to the argument that they are partners of Troy Curran, Amber and Brandy Curran argue that they are "shareholders or officers" of Defendant rather than "general partners" and are therefore shielded by the corporate form. (Id. at 6–7). However, Amber and Brandy Curran do not present any evidence that they own shares in CityMac's corporate structure, have been formally employed by CityMac as managers, have been appointed to CityMac's Board of Directors, or that other corporate formalities have been observed. As Plaintiffs correctly note, in North Carolina "[a] partnership is an association of two or more persons to carry on as co-owners of a business for profit." (Doc. No. 201 at 6) (citing N.C. GEN. STAT. § 59-36(a)). Again, it is not necessary that Amber and Brandy Curran intended to enter a partnership with Troy Curran; it is sufficient if they agreed to join their efforts in a common venture the proceeds of which would be shared.

Here, Plaintiffs present evidence and plausibly allege that Amber and Brandy Curran are running their father's businesses while their father sails around the world on a yacht. (Id. at 6–7). This kind of alleged informal relationship to run a business in exchange for proceeds from the business would, if proven to be true, amount to a partnership. Among other evidence, Plaintiffs again submit a signed declaration as evidence for this claim, which the Court will accept as true on this procedural posture since Plaintiffs are the party asserting jurisdiction. (Doc. No. 201-1). Because Plaintiffs have plausibly alleged that Defendants Amber and Brandy Curran are partners of Troy Curran, their motion to dismiss will be denied.

Defendants Amber and Brandy Curran raise an additional argument: that this Court lacks subject matter jurisdiction over Plaintiffs' fraudulent transfer claims. (Doc. No. 194 at 7–10). They argue that there is no "common nucleus of operative fact" connecting Plaintiffs' federal

-11-

Case 1:20-cv-00033-MOC-WCM   Document 231   Filed 03/17/22   Page 11 of 16

law claims with their fraudulent transfer claims against them. (Id.). However, Plaintiffs correctly note that such claims fall within the Court's broad ancillary jurisdiction to enforce its own judgments. (Doc. No. 201 at 10–11) (citing Dewey v. West Fairmont Gas Coal Co., 123 U.S. 329, 332–33 (1887); Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 379–80 (1994)). As Plaintiffs further note, the Federal Rules of Civil Procedure expressly contemplate the joinder of such claims to lawsuits in federal court. (Id. at 11) (citing FED. R. CIV. P. 18(b)). Therefore, the Court rejects this argument as well.

  **c. Ocean Tech**

Ocean Tech, along with the other Alter Ego Defendants, moves for summary judgment on all of the claims against it. (Doc. No. 208). Ocean Tech argues that it cannot be liable because it acquired assets from Defendant Troy Curran's original company, Computer Haus, in receivership and therefore takes those assets free of any liabilities, including any claim for relief by Plaintiffs. (Doc. No. 209 at 5–8). Ocean Tech appears to be a corporation owned and controlled by Troy Curran, just as Computer Haus was. Ocean Tech argues that the receivership extinguished any of Computer Haus's liabilities. (Id. at 5). Ocean Tech argues that "a Washington Court has entered an Order unequivocally declaring that Ocean Tech is not a 'successor' to Computer Haus or the prior CityMac operations." (Id. at 5); see also (Doc. No. 209-3). Ocean Tech argues that this Order is binding on this Court under the Full Faith and Credit Clause. (Doc. No. 209 at 7). In addition, Ocean Tech notes that lead Plaintiff Shailesh Jahagirdar "was *explicitly* listed as a creditor" in the receivership proceeding. (Id. at 8) (emphasis in original). Essentially, Troy Curran is arguing that he can now enjoy ownership of Computer Haus's assets through Ocean Tech without having to pay Computer Haus's liabilities to Plaintiffs

-12-

because Plaintiffs waived any right to recover by failing to effectuate their rights in the receivership proceeding. (Id.).

Plaintiffs disagree, contending that their federal claim of successor liability for federal FLSA violations is not extinguished by the state court receivership proceeding. (Doc. No. 216 at 8–11). Plaintiffs cite numerous federal cases affirming this principle, including another district court in the Fourth Circuit. (Id. at 9–10). Plaintiffs argue that Ocean Tech meets the requirements for federal successor liability because it is (1) a bona fide successor (2) with notice of Plaintiffs' claims and (3) Computer Haus is unable to provide adequate relief to Plaintiffs.

The Court agrees with Plaintiffs. As our sister court in the District of Maryland held: "While the Fourth Circuit has not opined on whether or not successor liability is available under the FLSA, 'the trend among the courts that have decided the question is to recognize successor liability in FLSA cases' including various district courts, along with the Ninth and Seventh Circuits." Carrillo v. Borges Constr., LLC, 2016 WL 5716186, at *5 (D. Md. Sept. 30, 2016) (citation omitted); see also Scott v. Shaheen Grp., LLC, Civil Case No. GLR-16-4136, 2 (D. Md. Jun. 8, 2018). The Court holds that successor liability is available under FLSA and finds that Plaintiffs have made the necessary factual showing to avail themselves of it. It is clear that Ocean Tech is a bona fide successor because, as Plaintiffs point out, it appears to be essentially identical to Computer Haus in every material respect except its name. (Doc. No. 216 at 10). Ocean Tech clearly had notice of Plaintiffs' claims because both are owned by Troy Curran, and Curran initiated the receivership proceedings. (Id.). The receivership proceeding left Computer Haus bereft of any assets, meaning that it would not be able to provide any relief whatsoever to Plaintiffs. (Id.).

### d.     The Alter Ego Defendants

The Alter Ego Defendants move to dismiss Plaintiffs' claims against them. (Doc. No. 208). They argue that the Court should analyze Plaintiffs' veil piercing claims based on the laws of the various states in which they are incorporated, and that such veil piercing is improper under the applicable state law. (Doc. No. 209 at 9–14). Plaintiffs argue that the Alter Ego Defendants misstate the law of <u>reverse</u> veil piercing which, unlike traditional piercing, involves piercing <u>an individual</u>'s holdings to find assets allegedly hidden by such individual using the corporate form. (Doc. No. 216 at 11). This differs from traditional piercing, which involves piercing the corporate form, not an individual's corporate holdings.

The Court agrees with Plaintiffs. Plaintiffs appear to be employing "outsider" reverse piercing, in which "an outside third party, frequently a creditor, urges a court to render a company liable in a judgment against its member." <u>Sky Cable, LLC v. DIRECTV, Inc.</u>, 886 F.3d 375, 386 (4th Cir. 2018). In <u>Sky Cable</u>, the Fourth Circuit affirmed a decision by a district court to apply reverse piercing to a defendant who had numerous corporate alter egos which "operate as a single economic entity in which money flows freely between them at [defendant's] whim." <u>Id.</u> at 390. The Fourth Circuit held that a showing of fraud or injustice was sufficient for the Court to find that the entities were alter egos, and that the entities need not have been created with an expressly fraudulent purpose for an alter ego theory to apply. <u>Id.</u>

The Court now turns to the factual arguments about whether reverse veil piercing is justified in this case. The Alter Ego Defendants argue that Plaintiffs failed to provide sufficient facts to justify reverse veil piercing. (Doc. No. 209 at 14–16). Plaintiffs counter that the evidence shows that the Alter Ego Defendants were used as instruments of fraud. (Doc. No. 216 at 12–14).

Upon review of the evidence submitted by Plaintiffs, the Court holds that Plaintiffs have made the necessary factual showing to indicate that the Alter Ego Defendants are potentially being used as instruments of fraud by Troy Curran to avoid paying any potential liabilities to payments. Plaintiffs cite a mountain of evidence suggesting that this is so. (Id. at 4–7). For instance, Curran testified in his divorce deposition that he moved his assets into a trust and incorporated several businesses out of fear that he was going to lose everything. (Id. at 4). Plaintiffs cite bank statements showing "a constant flow of large sums of money, in round numbers, being transferred between and among [Troy] Curran's various entities and his personal accounts and that Curran paid for personal expenses on his business accounts." (Id. at 4–5). Troy Curran testified under oath that shareholder meetings were held for Alter Ego Defendants Zephyr and Northern Passage and that minutes were taken. (Id. at 7). But in discovery responses, he admitted that no corporate formalities were actually observed for these entities. (Id.). Troy Curran also appears to have perjured himself in asserting that his daughters were part owners of Zephyr long before this action was filed. (Id.).

At this stage of the litigation, the Court does not necessarily find that Troy Curran used the Alter Ego Defendants to perpetrate fraud or injustice, as Plaintiffs contend. Defendants are free to contest this question at trial. But the Court does find that Plaintiffs have established a sufficient factual basis suggesting that Troy Curran is using the Alter Ego Defendants in an attempt to fraudulently conceal his assets from the Court. The Court finds that there are genuine issues of material fact concerning Troy Curran's management of the Alter Ego Defendants. The Court further finds granting summary judgment in favor of the Alter Ego Defendants could result in a gross injustice to Plaintiffs if they were to successfully prove at trial that they were denied

-15-

wages and other compensation but were barred from obtaining any relief from Curran because he has hidden his assets using the Alter Ego Defendants. Therefore, the Court finds that it would be improper to grant the Alter Ego Defendants' Motion for Summary Judgment.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendants Mark Curran and Curran Brothers, LCC's Motion to Dismiss, (Doc. No. 176), Defendants Amber and Brandy Curran's Motion to Dismiss, (Doc. No. 193), and Defendants Curran Holdings, LLC, Curran Ranch, Green Vault, Inc., Northern Passage, Inc., Ocean Dance, Ocean Tech, Inc., Salish Sea, LLC, TS Leasing, LLC, and Zephyr Investments, Inc.'s Motion for Summary Judgment, (Doc. No. 208) are **DENIED**.

Signed: March 17, 2022

Max O. Cogburn Jr.
United States District Judge