UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Civil Action No. 1:20-cv-0033-MOC

SHAILESH JAHAGIRDAR, et. al

    Plaintiffs,

v.

THE COMPUTER HAUS NC, INC. d/b/a CITYMAC, et. al.

    Defendants.

**PLAINTIFFS' SUPPLEMENTAL BRIEF ON RELEVANCE OF TRANSFERRING ASSETS**

I.    **INTRODUCTION**

Plaintiffs respond to the Court's request for supplemental briefing on the issue of whether admissions by Defendant Troy Curran aloud at his Bellingham office which were heard by his General Manager, Caleb McCoy, as well as statements made to McCoy directly during discovery are admissible on any issue in this trial. The statements at issue are that Curran repeatedly discussed the need to move his assets to protect them from this lawsuit. At this point, the question is no longer one of consciousness of guilt by a party who *impliedly* admitted liability through the mere timing of the asset transfers. On the contrary, we are now dealing with an actual, affirmative admission by a party explaining why he moved his assets. As such, it makes no difference whether there is Fourth Circuit case law on "consciousness of guilt" (there is none) because this ship has now sailed to an entirely different harbor.

To the extent the Court nonetheless wants Fourth Circuit support, in *United States v. Zayyad*, 741 F.3d 452, 463 (4th Cir. 2014) the Fourth Circuit held that transfers of assets during a prosecution constituted consciousness of guilt, much like flight does. [ "The jury had every right

to disregard 'direct' evidence supporting [defendants'] theory in favor of the Government's equally weighty circumstantial facts supporting [their] guilt."] *Zayyad*, 741 F.3d at 464. There is even more reason to allow the same inference in a *civil* case, where the defendant's freedom and constitutional due process rights are not at stake.

Additionally, just because there is a Phase Two of this case in which that same evidence (with or without the admission) will be relevant to the issue of whether the transfers themselves were fraudulent and/or whether the transfers are evidence that Plaintiffs can "reverse pierce" to reach those assets by going through Curran, the existence of a second phase can in no way "undo" the relevance of the evidence of a party admission in this case.

## II. DISCUSSION

As this case neared trial and Troy and Mark Curran realized they would have to deal with the issue of the assets they transferred during this litigation, they made a motion to bifurcate alter ego and partnership. This was the stepping stone to the real goal, which came later in their motion in limine – exclude all evidence that Mark Curran and Curran Brothers even exist and exclude all evidence of asset transfers while this case was being litigated. The argument was, due to the bifurcation, none of the evidence is relevant.

Plaintiffs opposed the motion, demonstrating that there is case law (albeit under North Carolina state law, not Fourth Circuit) supporting that conveyance of property during litigation may be evidence of the transferor's consciousness that he ought to lose. Plaintiffs also pointed out that Defendants failed to mention several key transfers, such as transferring the yacht to a new entity registered in the Cayman Islands. The Court asked for a supplemental brief seeking all the ECF cites mentioning transfers and any other evidence of transfers.

After Plaintiffs filed that supplemental brief, addressing the ECF filings and other evidence of transfers, even as recently as December of 2022, when Curran Brothers apparently changed its name with the Secretary of State, Curran submitted a declaration from his business attorney that the asset transfers were part of a preorganized estate planning. The attorney declaration, though, merely shows that there is evidence for the jury. Such a declaration cannot determine whether evidence should be excluded on the grounds of relevance or undue prejudice not outweighed by probative value. In fact, if Curran's explanation is as rock solid as they seem to think it is, then the attorney declaration supports that there is *little, if any, prejudice*.

But Curran wants to have his yacht and eat it too. Or, sail it, at least. He wants to transfer assets during this litigation, like his yacht, even register it overseas, admit to Caleb and in front of Caleb exactly why he is transferring those assets, even come into this Court with another attorney testifying under oath that it was all estate planning, and all the while putting a literal gag order on Caleb from saying his personal knowledge of what he heard straight out of Curran's mouth?

What would be prejudicial is if Curran is can bring an attorney to testify that all Curran's March 2020 flurry of asset maneuverings were "standard management of personal assets or business planning actions associated with implementing the reorganization that began in 2019" and yet deprive Plaintiffs of putting on not only evidence, but *party admissions*, as to exactly what Curran was telling other people in January, February, March, April and beyond. Curran's only "legal" argument (besides that a party admission is hearsay) is this: "who would go around telling other people about his personal affairs other than a nefarious James Bond character?" And Defendants are welcome to argue James Bond references to the jury in cross-examining Mr. McCoy. But Plaintiffs maintain that Troy Curran does and did go around talking (bragging?)

about such things. In fact, Mr. McCoy, who has known Troy for 4 years and Bill Molnar who has known him for 20, will also testify that this is exactly who Curran is. In fact years ago, Plaintiffs were tipped off about some of the asset transfers by a member of Curran's yacht club where Curran was heard boasting about taking off to Mexico in his yacht. Indeed, Plaintiffs filed one of these declarations in support of their opposition to Amber and Brandy Curran's motion to dismiss way back in October of 2021. [ECF No. 201-1] While it is true as a general proposition that most people would not publicly air their private dealings, that is not the case here.

Furthermore, although it did not come out during the truncated offer of proof by a very rattled witness, it was not just personal conversations where Curran told McCoy his plans, it was the talk around the upstairs offices with Amber and Troy Curran. He will testify that there was a direct connection made between the lawsuit and the movement of assets. Another topic McCoy did not get to address today is the yacht. Although he did not know that Curran put the yacht in a new business, what he does now is that Curran discussed with him and around him that he registered the yacht in the Cayman Islands. Not only that, Curran had to transfer enough cash to the Caymans to even be able to register the yacht there. McCoy is not making these facts up; he was involved in the conversations with Curran and overheard statements made by Curran, Amber and other family members about moving money and the yacht to the Caymans.

When Curran first raised this issue at the beginning of trial, the Court explained the difference between direct evidence and circumstantial evidence. At the time, the Court said the movement of assets, due to timing, was *circumstantial* evidence of consciousness of liability that a jury could draw an inference from. But with Curran's express admissions, McCoy's testimony is direct evidence. Indeed, Plaintiffs' query how it could be legally allowable that the *circumstantial* evidence through Curran is admissible as *circumstantial* evidence of

- 4 -

Case 1:20-cv-00033-MOC-WCM   Document 322   Filed 02/23/23   Page 4 of 5

consciousness of guilt, yet *direct* evidence of that consciousness spilling out of his mouth to Mr. McCoy, which needs no inference, is not admissible?

For the jury *not* to hear Caleb's testimony about what Curran said were the reasons for the transfers but to allow Curran's attorney to testify what Curran told him were the reasons for the transfers, would be glaringly prejudicial to the Plaintiffs. Moreover, by calling his attorney to testify about the asset transfers, *Curran just made the issue relevant to the evidence to be presented during trial.* Separate and apart from relevant to consciousness of guilt, the transfers obviously have relevance within the context of this trial, or we would not be hearing from Curran's attorney as one of only three witnesses for the defense.

### III. CONCLUSION

Plaintiffs respectfully request this Court allow their witnesses to testify as to direct admissions by Troy Curran as to how and why he transferred his assets during this litigation.

Respectfully submitted this 23rd day of February 2023.

*/s/ L. Michelle Gessner*
L. Michelle Gessner, NCSB#26590
GESSNERLAW, PLLC
602 East Morehead Street
Charlotte, North Carolina 28202
Tel: (704) 234-7442; Fax: (980) 206-0286
Email: michelle@mgessnerlaw.com

*Plaintiffs' Class Counsel*
