UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION No. 1:20-cv-0033-MOC

| | |
|---|---|
| SHAILESH JAHAGIRDAR, et. al, <br><br> Plaintiffs, <br><br> v. <br><br> THE COMPUTER HAUS, INC., et al., <br><br> Defendants. | PLAINTIFFS' POST TRIAL BRIEF ON CALCULATION OF DAMAGES |

Named Plaintiffs, Opt-In Plaintiffs and Class Members (collectively, "Plaintiffs") have modeled their trial plan in this case on *Monroe v. FTS USA, LLC,* 860 F.3d 389 (6th Cir. 2017), an FLSA case originating in the Western District of Tennessee that generated several Sixth Circuit opinions and several writs of certiorari to the United States Supreme Court. Throughout it all, the damage calculation methodology used by the district court was vetted and ultimately upheld. The same methodology can be used in this case.

In *Monroe*, much like this case, the unpaid wages stemmed from unrecorded hours. There, the plaintiffs were cable installation technicians who were told by their managers to only record a certain number of hours according to the employer's internal rules for paying its employers. The jury verdict form had the jury determine the unrecorded hours worked by each testifying plaintiff. Thereafter, the trial court took the hours on the verdict form and determined the estimated average of the hours among the testifying plaintiffs. It then performed the mathematical calculations post-trial using a calculator prepared and filed by the Plaintiffs post-trial that was based on the Defendants' pay records and timekeeping records that were

admitted into evidence during trial. *Id.* The Sixth Circuit affirmed this method of extrapolation to the non-testifying plaintiffs.

The Sixth Circuit explained:

> We addressed a version of the estimated-average approach in *Cole Enterprises, Inc.*, concluding that "[t]he information [pertaining to testifying witnesses] was also used to make estimates and calculations for similarly situated employees who did not testify. The testimony of fairly representative employees may be the basis for an award of back wages to nontestifying employees." 62 F.3d at 781 (emphasis added). Other circuits and district courts have explicitly approved of an estimated average. See *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 472-73, n.7 (11th Cir. 1982) (affirming district court's determination that "waitresses normally worked an eight and one-half hour day" based on "the testimony of the compliance officer and computations based on the payroll records"); *Donovan v. Hamm's Drive Inn*, 661 F.2d 316, 318 (5th Cir. 1981) (affirming as "accepted practice" and not "clearly erroneous" district court's finding that, "based on the testimony of employees, . . . certain groups of employees averaged certain numbers of hours per week" and award of "back pay based on those admittedly approximate calculations" because reversing would penalize the employees for the employer's failure to keep adequate records); *Baden-Winterwood v. Life Time Fitness Inc.*, 729 F. Supp. 2d 965, 997-1001 (S.D. Ohio 2010) (averaging hours per week worked by testifying plaintiffs and applying it to nontestifying plaintiffs).

*Monroe, supra* at 411-412. The appellate court recognized that "disapproving of an estimated-average approach simply due to lack of complete accuracy would ignore the central tenant of *Mt. Clemens* – an inaccuracy in damages should not bar recovery for violations of the FLSA or penalize employees for an employer's failure to keep adequate records. *Id.*

Furthermore, *Monroe* concluded that the district court's calculation of the damages applicable to non-testifying plaintiffs did not violate the Seventh Amendment right to a jury trial either. *Id.* at 413-414. It explained that the proof at trial was representative and the jury rendered its findings for the testifying and non-testifying

plaintiffs in accordance with the district court's jury instruction. The Sixth Circuit concluded that the jury determined that all plaintiffs had proven their claims because the jury found that "the evidence presented by the representative plaintiffs who testified establishe[d] that they worked unpaid overtime hours," and applied that finding in accordance with the instruction that "those plaintiffs that you did not hear from [would] also [be] deemed by inference to be entitled to overtime compensation." *Id*. As such, *Monroe* concluded that the jury had made the factual findings that were necessary for the court to complete the remaining arithmetic of the estimated-average approach.

The same method can, and should, be used in this case. Although Plaintiffs herein have state law claims as well, the overall methodology still works. The jury would simply make findings on both the FLSA and the state law claims and the Plaintiffs can elect their remedies before the judgment is entered. The FRE 1006 summary of Defendants' pay records and time keeping records are in evidence. The Court can use the jury's findings on the estimated hours for each testifying Plaintiff and then extrapolate damages to the non-testifying Plaintiffs.

Lastly, although *Monroe* is a Sixth Circuit case, there is no indication that the Fourth Circuit would not follow such a methodology if a similar case made its way to the panel. Recently, Mode v. S-L Distrib. Co., LLC, 2021 U.S. Dist. LEXIS 165511 (WDNC, Aug. 31, 2021), fn 17, the Honorable Kenneth D. Bell acknowledged *Monroe* in denying a decertification motion -

> In the event of a determination that the Opt-In Plaintiffs are employees (and in the absence of settlement between the Parties on damages), it will be necessary to develop a method of determining damages. Plaintiffs claim this can be done on a representative basis, which appears to be supported by some caselaw. See, e.g., *Monroe v. FTS USA, LLC*, 860 F.3d 389 (6th Cir. 2017). Regardless, the Court can, with the input of the Parties, devise an appropriate process to determine

damages at a later time. For purposes of S-L's motion to decertify the collective, individualized damages do not warrant decertification of the collective.

In this case, either the jury or the Court can do the math. For the jury to do it, the jury verdict form would have to be revised to add additional findings and additional instructions may need to be given. Since it is simply a mathematical calculation, Plaintiffs propose that the Court do the math and the jury make the factual findings on one of the variables used to do that math. That way, if there are any remaining issues with the 1006 calculator they can be resolved post trial, just as they were in *Monroe*.

Respectfully submitted this 24th day of February, 2023.

*/s/ L. Michelle Gessner*
L. Michelle Gessner, NCSB#26590
GESSNERLAW, PLLC
602 East Morehead Street
Charlotte, North Carolina 28202
Tel: (704) 234-7442; Fax: (980) 206-0286
Email: michelle@mgessnerlaw.com

*Plaintiffs' Class Counsel*