| | |
|---|---|
| SHAILESH JAHAGIRDAR, et. al.<br><br>                 Plaintiffs,<br>v.<br><br>THE COMPUTER HAUS NC, INC. et. al.<br>                 Defendants. | **PLAINTIFFS' PHASE TWO<br>TRIAL BRIEF** |

**I.    TRIAL ISSUES FOR PHASE TWO**

- Is Ocean Tech a successor of ComputerHaus?
- Is Zephyr Investments, Inc. the alter ego of Troy Curran?
- Is TS Leasing, L.L.C. the alter ego of Troy Curran?
- Is GreenVault, Inc. the alter ego of Troy Curran?
- Is Curran Ranch the alter ego of Troy Curran?
- Is Northern Passage, Inc. the alter ego of Troy Curran?
- Is Salish Sea, LLC the alter ego of Troy Curran?
- Is Curran Holdings, LLC the alter ego of Troy Curran?
- Is Ocean Dance the alter ego of Troy Curran?
- Is OceanTech the alter ego of Troy Curran?
- Is Curran Brothers the alter ego of Troy Curran?
- Is Mark Curran a partner of Troy Curran?
- Is Amber Curran a partner of Troy Curran?
- Is Brandy Curran a partner of Troy Curran?
- Are any or all of the above Defendants liable for compensatory damages for fraudulent

transfer under Count XXVII of the Fourth Amended Complaint?

- Are any or all of the above Defendants liable for punitive damages for fraudulent transfer under Count XXVII of the Fourth Amended Complaint?

- Are any or all of the above Defendants liable for attorney fees based on the judgment in Phase I of this case?

Set forth below is an analysis, as to each identified issue above, setting forth the law applicable to each issue, the evidence already before the court and/or jury, as well as the evidence not yet presented.

## II. OCEAN TECH AS SUCCESSOR TO COMPUTERHAUS NC dba CITYMAC

### A. The law applicable to determine if Ocean Tech is a successor in interest to ComputerHaus dba CityMac.

Federal courts apply a federal common law successorship doctrine to the FLSA that broadens the scope of state-law successor liability. See *Paschal v. Child Dev., Inc.*, No. 4:12-CV-0184 KGB, 2014 U.S. Dist. LEXIS 1924, 2014 WL 55179, at *5 (E.D. Ark. Jan. 7, 2014). "Federal courts that have addressed successor liability in FLSA cases . . . have forged a federal common law successorship doctrine based on principles developed in other employment contexts." *Guarcas v. Gourmet Heaven*, LLC, No. CV 15-056ML, 2016 U.S. Dist. LEXIS 180714, 2016 WL 7632844, at *5 (D.R.I. Nov. 30, 2016), report and recommendation adopted, No. 1:15-CV-00056-ML-PAS, 2017 U.S. Dist. LEXIS 475, 2017 WL 127868 (D.R.I. Jan. 3, 2017) (referring to *Steinbach v. Hubbard*, 51 F.3d 843, 845 (9th Cir. 1995).

Courts in the Fourth Circuit are in accord. In *Scott v. Shaheen Grp., LLC*, 2018 U.S. Dist. LEXIS 96492 (Dist, MD, Dec. 30, 2016, the district court recognized,

> "[w]hile the Fourth Circuit has not opined on whether or not successor liability is available under the FLSA, 'the trend among the courts that have decided the question is to recognize successor liability in FLSA cases' including various district courts, along with the Ninth and Seventh Circuits." *Carrillo v. Borges*

*Constr., LLC,* No. GJH-13-641, 2016 U.S. Dist. LEXIS 135556, 2016 WL 5716186, at *5 (D. Md. Sept. 30, 2016) (citation omitted). Importantly, this District has also expressly recognized the applicability of successor liability in FLSA cases. See *id*. ("[T]his Court finds that successor liability is appropriate under the FLSA.").

*Scott, supra,* at *5. The district court in *Scott* explained that the company that received the employer's assets "is a successor in interest and liable for the judgment that may be attached to the transferred assets if it: (1) is a bona fide successor; (2) had notice of the potential liability, and (3) the predecessor is unable to directly provide adequate relief. *Id*., citing *Herrera v. Singh*, 118 F. Supp. 2d 1120, 1123 (E.D. Wash. 2000) (citing *Steinbach v. Hubbard*, 51 F.3d 843, 845-46 (9th Cir.1995)). Each of these prongs weigh in favor of attaching successor liability to OceanTech for Plaintiff's FLSA claims.

"Whether an employer qualifies as a bona fide successor will hinge principally on the degree of business continuity between the successor and predecessor." *Steinbach*, 51 F.3d at 846 (9th Cir. 1995) (citation omitted). Furthermore, business continuity is established by weighing: (1) the similarity of business operations; (2) use of the same physical facilities; (3) use of the same workforce; (4) existence of the same jobs under the same working conditions; (5) presence of the same supervisors; (6) use of the same methods of production; and (7) production of similar products and/or services. *Id.,* citing *Herrera*, 118 F. Supp. 2d at 1123 (E.D. Wash. 2000) (citing *NLRB v. Jeffries Lithograph Co.*, 752 F.2d 459, 463-64 (9th Cir.1985)).

**B.     This Court's prior ruling on successor liability of Ocean Tech.**

In this Court's ruling denying Defendants' motion for summary judgment, it recognized:

> "While the Fourth Circuit has not opined on whether or not successor liability is available under the FLSA, 'the trend among the courts that have decided the

question is to recognize successor liability in FLSA cases' including various district courts, along with the Ninth and Seventh Circuits." *Carrillo v. Borges Constr., LLC*, 2016 WL 5716186, at *5 (D. Md. Sept. 30, 2016) (citation omitted); see also *Scott v. Shaheen Grp., LLC*, Civil Case No. GLR-16-4136, 2 ( D. Md.Jun. 8, 2018). The Court holds that successor liability is available under FLSA and finds that Plaintiffs have made the necessary factual showing to avail themselves of it. It is clear that Ocean Tech is a bona fide successor because, as Plaintiffs point out, it appears to be essentially identical to Computer Haus in every material respect except its name. (Doc. No. 216 at 10). Ocean Tech clearly had notice of Plaintiffs' claims because both are owned by Troy Curran, and Curran initiated the receivership proceedings. (*Id.*). The receivership proceeding left Computer Haus bereft of any assets, meaning that it would not be able to provide any relief whatsoever to Plaintiffs. *(Id)*.

[ECF No. 231 at p. 13]

**C. The evidence before the Court and/or jury proving Ocean Tech, dba CityMac is a successor of ComputerHaus NC, Inc. dba CityMac.**

**1. Ocean Tech is a bona fide successor.**

- Both entities use the same "dba" – CityMac

- The business operations are identical. [Trial testimony of Curran; Request for Judicial Notice of CityMac website]

- The same physical facility is used. [Trial testimony of Curran]

- The same workforce is used. [Trial testimony of Curran]

- The same jobs under the same conditions existed. [Trial testimony of Curran]

- The same supervisor, Troy Curran, is still present. [Trial testimony of Curran]

- OceanTech sells the same products and services. [Trial testimony of Curran]

**2. Ocean Tech, dba CityMac had notice of Plaintiffs claims.**

- Curran was/is the sole owner of both entities. [Trial testimony of Curran]

- Curran orchestrated the entire transfer of assets. [Trial testimony of Curran]

- Curran list Mr. Jahagirdar as a creditor, providing Plaintiffs' counsel's mailing information. [Receivership Petition - Plaintiffs' Trial Exhibit 11]

**3. Computer Haus, dba CityMac is unable to provide adequate relief.**

- ComputerHaus no longer exists; its assets were purchased by OceanTech. [Trial testimony of Curran]

- ComputerHaus has no assets. [Trial testimony of Curran]

**D. Additional available evidence to prove that Ocean Tech, dba CityMac is the successor of Computer Haus, dba CityMac.**

Plaintiffs can meet their burden on successor liability with the evidence from Phase Two and documentary evidence in the Court file.

There is also evidence that Curran engaged in the same *modis operandi* when he got rid of TD Curran and bought ComputerHaus. [ECF No. 105-1 at pp. 40-41; 105-6 and 105-7] Plaintiffs also have additional evidence as well as the inferences to be drawn therefrom, if needed.

If Curran intends to argue that the asset purchase somehow wiped out ComputerHaus' debt, including Plaintiffs' claims, then this is a legal argument Plaintiffs will brief as needed.

## III. ZEPHYR INVESTMENTS, INC, TS LEASING, L.L.C., GREEN VAULT, INC., CURRAN RANCH, NORTHERN PASSAGE, INC., SALISH SEA, LLC, CURRAN HOLDINGS, LLC, AND OCEAN DANCE AS ALTER EGOS OF TROY CURRAN

### A. The law applicable to determine if Curran's wholly-owned entities are his alter Egos.

Reverse piercing makes the corporate entity liable for the dominating shareholder's actions, as opposed to piercing the veil to make the dominating shareholder personally liable for the corporate entity's obligations. *Strategic Outsourcing, Inc. v. Stacks*, 176 N.C. App. 247, 254, 625 S.E.2d 800, 804 (2006). "[W]here one entity is the alter-ego, or mere instrumentality, of another entity, shareholder, or officer, the corporate veil may be pierced to treat the two entities as one and the same, so that one cannot hide behind the other to avoid liability." *Fischer Inv. Capital, Inc. v. Catawba Dev. Corp.*, 200 N.C. App. 644, 650, 689 S.E.2d 143, 147 (2009) (citation omitted). "Reverse pierce claims implicate different policies and require a different analytical framework from the more routine corporate creditor veil-piercing attempts," *Sky Cable, LLC v. Coley*, 2016 U.S. Dist. LEXIS 93537, at *38 (W.D. Va. Jul. 18, 2016), aff'd, 886 F.3d 375 (4th Cir. 2018). reverse pierce claims "implicate different policies and require a different analytical framework" from the more routine corporate creditor veil-piercing attempts, citing *In re Extended Stay, Inc*., 2020 Bankr. LEXIS 2128, *115-137 (Bankr. S.D.N.Y., Aug. 8, 2020); see also Sky Cable LLC v. Coley, No. 5:11cv00048, 2016 U.S. Dist. LEXIS 93537, 2016 WL 3926492, at *14 (W.D. Va. July 18, 2016), aff'd in part, appeal dismissed in part sub nom, *Sky Cable, LLC v. DIRECTV, Inc*., 886 F.3d 375, 391 (4th Cir. 2018).

Courts permit the piercing of the corporate veil "when applying the corporate fiction would accomplish some fraudulent purpose, operate as a constructive fraud, or defeat some strong equitable claim." *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 439, 666 S.E.2d 107, 112-13 (2008) (citations and internal quotation marks omitted); *Norhawk Investments, Inc. v. Subway Sandwich Shops, Inc.*, 61 Wash. App. 395, 811 P.2d 221 (1991) (under Washington law, disregard of the corporate entity requires two essential factors: "(1) the corporate form must be intentionally used to violate or evade a duty and (2) disregard must be necessary and required to prevent unjustified loss to the injured party.").

Since first filing leave to amend to add the alter egos, Plaintiffs have relied on *Sky Cable, LLC v. Coley*, 2016 U.S. Dist. LEXIS 93537, at *38 (W.D. Va. Jul. 18, 2016), aff'd, 886 F.3d 375 (4th Cir. 2018) as the model for reverse piercing. Indeed, Mr. Coley in *Sky Cable* ran his life through his corporate entities in precisely the same manner Curran does here. That evidence is before the Court. [ECF No. 105] Indeed, the similarities are uncanny and include:

> As the Fourth Circuit concluded in *Sky Cable*,
>
> This cumulative evidence strongly indicates that Mr. Coley and his LLCs were in fact a single economic entity [citation] utterly dominated and controlled by Mr. Coley [citation]. We also conclude that an "overall element of injustice or unfairness" is present in this case, because DIRECTV has not received any payment on its judgment against Mr. Coley although the district court found Mr. Coley liable over four years ago.

**B.      This Court's prior ruling on successor alter ego liability of Curran's entities.**

This Court recognized in its ruling denying Defendants' motion for summary judgment that:

> The Court agrees with Plaintiffs. Plaintiffs appear to be employing "outsider" reverse piercing, in which "an outside third party, frequently a creditor, urges a court to render a company liable in a judgment against its member." *Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375, 386 (4th Cir. 2018). In *Sky Cable*, the Fourth Circuit affirmed a decision by a district court to apply reverse piercing to a

defendant who had numerous corporate alter egos which "operate as a single economic entity in which money flows freely between them at [defendant's] whim." *Id*. at 390. The Fourth Circuit held that a showing of fraud or injustice was sufficient for the Court to find that the entities were alter egos, and that the entities need not have been created with an expressly fraudulent purpose for an alter ego theory to apply. *Id*.

[ECF No. 231 at p. 14]

C. **Evidence before the Court and/or jury proving Curran's wholly owned entities are his alter egos.**

- Documentary evidence showing transfers [Plaintiffs Trial Ex. 8 - Transfer to Daughters and 9 - Transfer of Yacht to Ocean Dance]

- Curran transferred assets among entities [Testimony of Curran and Brownlie; Request for Judicial Notcie]

- Curran paid corporate debt of one company with another [Testimony of Curran and Brownlie]

- Curran transferred assets to protect them from creditors [Trial Testimony of Curran and Brownlie]

- Curran commingled all his assets. [Curran Trial Testimony; Brownlie Trial testimony; Brownlie declaration. [ECF 299]

- Curran omitted certain entities in discovery responses. [ECF No. 105-1 at pp. 62-66; ECF No. 105-2; *Compare* ECF No. 105-3] (consciousness of liability inference)

- Curran omitting assets during deposition. [ECF No. 105-1 at pp. 62-66; ECF No. 105-2; *Compare* ECF No. 105-3] (consciousness of liability inference)

- Used holding companies to maintain title to his personal assets, including primary residences

- Curran ran all his expenses through ComputerHaus. [ECF No. 105-4; Plaintiffs' Trial Ex.

21 (bank records)]

- Curran constructed complex layering of entities. [Trial testimony of Curran and Brownlie; Request for Judicial Notice]

- Curran engaged in obstructionist tactics regarding his assets. [ECF No. 105-1 at pp. 62-66; ECF No. 105-2; *Compare* ECF No. 105-3]

- Curran provided inconsistent and contradictory testimony about his companies and assets. [ECF No. 105-1 at pp. 62-66; ECF No. 105-2; *Compare* ECF No. 105-3]

- Curran's bank statements show deposits and withdrawals between and among personal accounts and accounts of other entities. [ECF No. 105-4; Plaintiffs' Trial Ex 21]

- Curran tried to avoid judgments through manipulating ownership of his assets. [Trial testimony of Curran and Brownlie]

- Curran has a history of planning to move his wholly-owned subsidiaries offshore, which shows his level of control – i.e. the Belize Flow Chart [ECF No. 105-2]

- Curran failed to disclose during discovery the many transfers shown on the Chase accounts, even though he was specifically asked to identify all transfers [ECF 105, *Compare*, Exhibit D, Chase Bank Statements, with Exhibit C, Curran Response to Interrogatory No. 2]

- Curran caused Zephyr to sell his personal residence for $1,293,000 in September of 2022. [ECF 298 and Request for judicial notice]

**D.  Additional available evidence to prove Curran's wholly owned companies are his alter egos.**

Plaintiffs can meet their burden on alter ego liability with the evidence from Phase Two and documentary evidence in the Court file. However, they have additional evidence, such as:

- Plaintiffs expect Curran will not be able answer specific questions about how personal

and business expenses were paid despite being the controlling shareholder or member of each entity. [Expected Curran testimony based on deposition]

- Plaintiffs expect Curran will testify that he owns companies that collect rental income and pay expenses of other companies. [Expected Curran testimony based on deposition]

- Plaintiffs can show that Curran has filed IRS tax returns that do not accurately reflect his deposition testimony and other documentary evidence. [Tax returns; Expected Curran testimony based on deposition]

- Curran owns companies that did not really have an ongoing business purpose and/or are no longer in operation. [Expected Curran testimony based on deposition]

- Plaintiffs have evidence of a history of this conduct to avoid liability - TD Curran was sold to CityMac to avoid a huge garnishment. [ECF No. 105-7; Expected Curran testimony based on depositions; Request for Judicial Notice]

- Troy Curran transferred considerable amounts of cash to the Caymans. [Expected witness testimony based on investigation; Request for Judicial Notice]

- Curran maintained no assets in his own name, including his primary residences and cars. [expected testimony of Curran based on deposition testimony]

- Inferences to be drawn from the above evidence of consciousness of liability.

- Additional evidence not identified herein.

## IV. CURRAN BROTHERS IS THE ALTER EGO OF TROY CURRAN

**A.  The law applicable to determine if Curran Brothers is the alter ego of Troy Curran.**

The law is the same as above, but Plaintiffs must prove that Troy Curran controlled Curran Brothers, since it is the only alter ego that is not a wholly owned company. There is enough evidence to show that Troy Curran dominated and controlled Curran Brothers

sufficiently enough to make it one of his alter egos. The analysis is similar to the analysis in *Star Cable* as to the entities the defendant there jointly owned with his spouse.

**B.       The evidence before the Court and/or jury proving Curran Brothers is an alter ego of Troy Curran.**

- According to Troy Curran, he purchased ComputerHaus with a loan from either Mark Curran or Curran Brothers. There is conflicting testimony from Troy Curran.   [ECF No. 183-2 at pp. 237-238]

- Either way, according to Troy Curran, he caused Curran Brothers to make installment payments on the loan by not receiving a salary and/or dividends from Curran Brothers.  [ECF No. 183-2 at pp. 237:20-25]

- Troy Curran controlled Curran Brothers enough that he was able to not list that loan as an asset in his Receivership documents. [ECF 82-1]

- Troy Curran controlled Curran Brothers enough that both parties were represented by the same counsel for many months in this case - from June 23, 2021 to March 30, 2022. [ECF Nos. 163, 176-179; 185; Doc Entry on 01/31/2022 - Hearing re Motion to Dismiss represented by same counsel]

- Mark and Troy Curran changed the name of Curran Brothers in December of 2022. [ECF 322 and Request for Judicial Notice]

- Curran Brother's attorney participated in all aspects of pre-trial and trial in this case, making Troy Curran's arguments for him and ComputerHaus/Ocean Tech. If there was not some evidence of alter ego liability, Curran Brother's counsel would not have participated so fully and substantively at Phase One of this trial. [Request for Judicial Notice]

- Inferences to be drawn from the above evidence on consciousness of liability.

11
Case 1:20-cv-00033-MOC-WCM   Document 324   Filed 02/28/23   Page 11 of 17

**C.     Additional available evidence to show Curran Brothers is the alter ego of Troy Curran.**

- There was commingling of assets between Troy Curran, Mark Curran, ComputerHaus and Curran Brothers. [Expected witness testimony]

- Mark Curran helped Troy Curran move large amounts of money to the Cayman islands so he could establish Ocean Dance and register his yacht under that LLC to protect ComputerHaus in the event of a judgment in this case. [Expected witness testimony]

- Request for judicial notice as to the amount of money the Caymans Islands requires a person or entity to have in liquid assets in order to register an entity and/or a vessel there.

- Inferences to be drawn from the above evidence on consciousness of liability.

- Additional evidence not identified herein.

**VI.     MARK CURRAN AS A PARTNER OF TROY CURRAN**

**A.     The law applicable to determine if Mark Curran is a partner with Troy Curran in the operation of ComputerHaus NC, dba CityMac and/or Ocean Tech, dba CityMac.**

In North Carolina, "[a] partnership is an association of two or more persons to carry on as co-owners of a business for profit." N.C. Gen. Stat. § 59-36(a). North Carolina courts have defined a partnership as "a combination of two or more persons of their property, effects, labor, or skill in a common business or venture, under an agreement to share the profits or losses in equal or specified proportions, and constituting each member an agent of the others in matters appertaining to the partnership and within the scope of its business." *Best Cartage, Inc. v. Stonewall Packaging*, LLC, 219 N.C. App. 429, 437-38, 727 S.E.2d 291, 299 (2012); *see also Rhue v. Rhue*, 189 N.C. App. 299, 308, 658 S.E.2d 52, 59-60 (2008).

B.  **This Court's prior ruling on partnership liability of Mark Curran.**

In this Court's ruling on Mark's Motion to Dismiss, it stated:

As Plaintiffs point out, in North Carolina a partnership is "a combination of two or more persons of their property, effects, labor, or skill in a common business or venture, under an agreement to share the profits or losses in equal or specified proportions, and constituting each member an agent of the others in matters appertaining to the partnership and within the scope of its business." *Best Cartage, Inc. v. Stonewall Packaging, LLC*, 727 S.E.2d 291, 299 (N.C. Ct. App. 2012); see also Rhue v. Rhue, LLC, 658 S.E.2d 52, 59 (N.C. Ct. App. 2008); N.C. GEN. STAT. § 59-36(a). An express agreement is not needed to form a partnership; rather, a partnership can be proved by the conduct of the parties. *Potter v. Homestead Preservation Assn.*, 330 N.C. 569, 576 (1992); see also *Eggleston v. Eggleston*, 47 S.E.2d 243, 247 (N.C. 1948). Therefore, it is not necessary that Mark and Troy Curran intended to form a partnership; it suffices to form a partnership if they intended to combine their property and efforts in a venture with an agreement to share in the profits, as Plaintiffs plausibly allege was the case.

[ECF No. 231 at p. 8]

C.  **Evidence before the Court and/or jury proving Mark Curran is a partner of Troy Curran.**

- Affidavit of Bill Molnar stating that Mark Curran was in the CityMac office in the CityMac corporate headquarters and told Bill to "get back to work" so he could "get his dividends." [ECF No. 183-1]

- According to Troy Curran, he purchased ComputerHaus with a loan from either Mark Curran or Curran Brothers. There is conflicting testimony from Troy Curran. [ECF No. 183-2 at pp. 237-238]

- Either way, according to Troy Curran, he caused Curran Brothers to make installment payments on the loan by not receiving a salary and/or dividends from Curran Brothers. [ECF No. 183-2 at pp. 237:20-25]

- Troy Curran controlled Curran Brothers enough that he was able to not list that

13

loan as an asset in his Receivership documents. [ECF 82-1]

- Mark and Troy Curran changed the name of Curran Brothers in December of 2022. [ECF 322 and Request for Judicial Notice]
- Troy Curran and Mark Curran were represented by the same counsel for many months in this case.
- Mark Curran's attorney participated in all aspects of pre-trial and trial in this case, making Troy Curran's arguments for him and ComputerHaus/Ocean Tech. If there was not some evidence of a partnership between Troy Curran and Mark Curran, Curran Brother's counsel would not have participated so fully and substantively at Phase One of this trial.
- Inferences to be drawn from the above evidence on consciousness of liability.

D.  **Additional available evidence to prove that Mark Curran is a partner with Troy Curran.**

- ComputerHaus paid Amber and Brandy's personal bills and expenses. [Expected witness testimony]
- There was commingling of money between the two companies and Mark Curran. [Expected witness testimony]
- Mark Curran helped Troy Curran move large amounts of money to the Cayman islands, either to register the yacht there in an LLC or to conceal the money. [Expected witness testimony]
- Inferences to be drawn from above evidence on consciousness of liability.
- Additional evidence not identified herein.

### VII. AMBER AND BRANDY CURRAN AS PARTNERS OF TROY CURRAN

**A.    The law applicable to determine if Amber and Brandy Curran are partners with Troy Curran in the operation of ComputerHaus/Ocean Tech.**

In North Carolina, "[a] partnership is an association of two or more persons to carry on as co-owners of a business for profit." N.C. Gen. Stat. § 59-36(a). North Carolina courts have defined a partnership as "a combination of two or more persons of their property, effects, labor, or skill in a common business or venture, under an agreement to share the profits or losses in equal or specified proportions, and constituting each member an agent of the others in matters appertaining to the partnership and within the scope of its business." *Best Cartage, Inc. v. Stonewall Packaging*, LLC, 219 N.C. App. 429, 437-38, 727 S.E.2d 291, 299 (2012); *see also Rhue v. Rhue*, 189 N.C. App. 299, 308, 658 S.E.2d 52, 59-60 (2008).

Plaintiffs have some evidence to meet their burden of showing that Amber and Brandy are partners with Troy Curran. However, there is much more evidence that can be elicited from Troy and two or three other Plaintiffs' witnesses.

**B.    This Court's prior ruling on partnership liability of Amber and/or Brandy.**

**Brandy**

In this Court's ruling on Amber and Brandy's Motion to Dismiss, it stated:

> Here, Plaintiffs present evidence and plausibly allege that Amber and Brandy Curran are running their father's businesses while their father sails around the world on a yacht. (Id. at 6–7). This kind of alleged informal relationship to run a business in exchange for proceeds from the business would, if proven to be true, amount to a partnership. Among other evidence, Plaintiffs again submit a signed declaration as evidence for this claim, which the Court will accept as true on this procedural posture since Plaintiffs are the party asserting jurisdiction.

[ECF 231 at p. 11]

**C.    The evidence before the Court and jury proving Amber and/or Brandy Curran are partners with Troy Curran.**

- Troy Curran was setting Amber and Brandy up to run CityMac while he took a "sabbatical" and sailed the seas. [Testimony of Curran and Brownlie]

- Amber Curran has operated Ocean Tech while Troy Curran was out of the country sailing around Mexico. [Testimony of Curran and McCoy]

- Amber and Brandy now own Zephyr. [Testimony of Curran and Brownlie; Plaintiffs' Ex. No. 9]

- Amber Curran signed as a witness to Troy Curran's transfer of the Typhoon to Ocean Dance for $1.00. [Plaintiffs' Ex. 8]

- Inferences to be drawn from above evidence on consciousness of liability.

**D.** **Additional available evidence to show that Amber/Brandy are partners with Troy Curran.**

- Plaintiffs have evidence that ComputerHaus paid Amber and Brandy's personal bills and expenses. [Expected testimony of Plaintiffs' witnesses]

- Inferences to be drawn from above evidence on consciousness of liability.

- Additional evidence not identified herein.

**VIII. ALL DEFENDANTS ARE LIABLE FOR FRAUDULENT CONVEYANCE**

Federal law requires as elements of a fraudulent conveyance: (1) a transfer in interest; (2) by an insolvent or soon to be insolvent debtor; (3) for less than fair consideration or reasonably equivalent value." *Kingsville Dodge, LLC v. Almy,* No. CIV CCB-07-154, 2007 U.S. Dist. LEXIS 59131, 2007 WL 2332699, at *2 (D.Md. July 30, 2007). All of the above evidence and expected evidence demonstrates that there were multiple fraudulent conveyances among and between all Defendants while this litigation was pending.

Furthermore, North Carolina law permits the award of punitive damages "if the claimant proves that the defendant is liable for compensatory damages" and that an aggravating factor such as fraud, malice, or willful or wanton conduct "was present and was related to the injury for which compensatory damages were awarded." N.C. Gen. Stat. § 1D-15(a); see also *Strawbridge v. Sugar Mountain Resort, Inc.*, 320 F.Supp.2d 425, 435-36 (W.D.N.C. 2004). Fraud is proven, by definition, with a fraudulent conveyance. As such. Plaintiffs will be asking the jury to award punitive damages if they find liability for compensatory damages.

Respectfully submitted this the 28th day of February 2023.

*/s/ L. Michelle Gessner*
L. Michelle Gessner, NCSB#26590
GESSNERLAW, PLLC
602 East Morehead Street
Charlotte, North Carolina 28202
T: 704.234.7442;  F: 980.206.0286
Email: michelle@mgessnerlaw.com

*Plaintiffs' Class Counsel*