UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Civil Action No. 1:20-cv-0033-MOC

| | |
|---|---|
| SHAILESH JAHAGIRDAR, et. al.<br><br>Plaintiffs,<br>v.<br><br>THE COMPUTER HAUS NC, INC. et. al.<br>Defendants. | **EMERGENCY MOTION FOR PROTECTIVE ORDER AGAINST DEFENSE COUNSEL TO REFRAIN FROM FURTHER VERBAL AD HOMINEM ATTACKS AND PHYSICALLY THREATENING BEHAVIOR; MOTION FOR MONETARY AND/OR TERMINATING SANCTIONS AGAINST DEFENDANTS; REQUEST FOR ISSUANCE OF ORDER TO SHOW CAUSE RE: CONTEMPT** |

## I. INTRODUCTION AND BACKGROUND

On February 28, 2023, after the jury was dismissed and the Court recessed for the day, counsel for Plaintiffs, Michelle Gessner, remained in the courtroom packing up her belongings. Defendants Mark Curran and Troy Curran, remained in the courtroom while their attorneys, Nathan White, Evan Dancy and Benjamin Fryer, sat at counsel table, reading the Phase Two Trial Brief Plaintiffs had just filed at 5:26 p.m., providing the Court with the forecast of evidence Plaintiffs intended to submit in Phase Two, as well as a lookback of evidence Plaintiffs had already submitted or filed with the Court during the course of this litigation impacting Phase Two. Also present were the court clerk, Angela Smith, the court reporter Michelle McGirr and a U.S. Marshal.

Suddenly, and without warning or provocation, Mr. White questioned very loudly and in a condescending tone: "Michelle, you *are* aware that Evan was here representing Curran Brothers, aren't you? You know that, right?" Ms. Gessner responded that she is aware Mr.

Dancy was at trial on behalf of Curran Brothers and noted that he was also present on behalf of Mark Curran as noted in Plaintiffs' brief.

In response to Ms. Gessner, Mr. White exploded, yelling at Ms. Gessner, "You are a fucking piece of shit worthless human! You know that?! You are a worthless human!" Ms. Gessner said to Mr. White, "you do not get to speak to me like that. If you can't speak to me with respect please do not say anything at all." Mr. Dancy and Mr. Fryer, also officers of the Court, stood by and said nothing. Nor did they try to intervene to stop the verbal attack. Instead, they appeared to find it humorous. Mark Curran and Troy Curran also sat there and did nothing. Ms. Gessner then walked out of the Courtroom to gather the rest of her belongings from the Attorney Room.

After collecting her belongings from the Attorney Room, Ms. Gessner reentered the Courtroom and because of the egregious behavior of Mr. White, asked the clerk, Angela Smith, and court reporter, Michelle McGirr, as well as the Marshal, if there was an audio or video recording of what had just occurred. Ms. Gessner expressly said "as officers of the Court, this [Mr. White's behavior] was unacceptable." At this point Mr. White rushed up to Ms. Gessner and got within inches of her face, pointing his finger, close enough to strike her and screamed, "I don't care if it was recorded, you are a worthless fucking piece of shit! You called me a liar yesterday!" Then he again screamed at Ms. Gessner that she was a "worthless piece of shit!" When Mr. White was pointing in Ms. Gessner's face, she stood her ground and told him to get out of her face right now.

Although Mr. Dancy and Mr. Fryer had just witnessed a clear and egregious violation of the North Carolina Rules of Professional conduct, it does not appear they have made any effort to inform the Court of the unethical conduct they witnessed and most likely did not inform the Bar Association, although it is their ethical obligation duty to do so. Once again, Attorney Dancy

and Attorney Fryer, did not intervene and appeared to be laughing at or amused by the unprovoked attack. Instead of diffusing the situation or protecting Ms. Gessner's safety, Mr. Dancy and Mr. Fryer approached Mr. White and seemed to be consoling him.

Ms. Gessner then again asked if any of the attack was recorded anywhere. The clerk shook her head, "no" and Ms. Gessner stated that she is sorry that unfortunately they will have to be the witnesses to what transpired as it is completely unacceptable. Mr. White then proceeded to yell "I don't care! I'll take this up to whatever board!" At that point, the Marshal came over and stood between Ms. Gessner and Mr. White's entourage and instructed Ms. Gessner to wait until Defendants and their counsel were out of the Courtroom. Ms. Gessner had to sit down to recover as Mr. White, Mr. Dancy, Mr. Fryer, Mark Curran and Troy Curran began leaving the courtroom.

The Marshal instructed Ms. Gessner to wait until the defense group had left the building. After a few moments, the Marshal radioed the Marshals on the first floor to make sure the courthouse was clear, and then he escorted Ms. Gessner out of the courthouse. Ms. Gessner walked to her hotel alone with serious and very real concerns about her safety. She will have the same concerns for her safety throughout the remainder of the proceedings.

It goes without staying that Mr. White, Mr. Dancy and Mr. Fryer have placed Ms. Gessner in an untenable position of now having to advocate for her clients throughout an entire second phase of this trial - bifurcated at Defendants' request - whilst fearing for her physical safety and the safety of her team and witnesses. The physical and verbal aggression that Mr. used to attempt to intimidate Ms. Gessner, acquiesced by Mr. Dancy and Mr. Fryer and their clients, inside a much hallowed federal courtroom is unfathomable. Particularly where Ms. Gessner did nothing to provoke the attack, except *file a written brief* containing evidence and argument this Court expressly requested in order to assess the length of Phase Two and the

witnesses anticipated. As the Court can well see, Plaintiffs' brief was not inflammatory in any way, except perhaps in the minds of Defendants and their counsel.

Plaintiffs ask this Court to assess an appropriate sanction or sanctions against Mr. White, Mr. Dancy and Mr. Fryer, including but not limited to: monetary and non-monetary sanctions up to and including a judgment in Plaintiffs favor in Phase Two; issuing an order to show cause re: contempt so the scene may be entered in the record and duly punished; and/or issuing a protective order in favor of Ms. Gessner, enjoining any further conduct that violates the Rules of Professional Conduct, threatens her safety or interferes with her ability to represent her clients zealously.

## II. LEGAL DISCUSSION

### A. Mr. White, Mr. Fryer and Mr. Dancy have violated their ethical obligations.

North Carolina Rules of Professional Conduct, Rule 0.1(e) provides:

A lawyer's conduct should conform to the requirements of the law, both in professional service to clients and in the lawyer's business and personal affairs. A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others. A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers, and public officials. While it is a lawyer's duty, when necessary, to challenge the rectitude of official action, it is also a lawyer's duty to uphold the legal process.

27 NCAC 02 Rule 0.1(e)

In addition, Rule 0.1, subdivision (m) provides:

Although a matter is hotly contested by the parties, a lawyer should treat opposing counsel with courtesy and respect. The legal dispute of the client must never become the lawyer's personal dispute with opposing counsel. A lawyer, moreover, should provide zealous but honorable representation without resorting to unfair or offensive tactics. The legal system provides a civilized mechanism for resolving

disputes, but only if the lawyers themselves behave with dignity.

27 NCAC 02 Rule 0.1(m)

Furthermore, Rule 8.4 provides that,

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation that reflects adversely on the lawyer's fitness as a lawyer;

(d) engage in conduct that is prejudicial to the administration of justice;

(e) state or imply an ability to influence improperly a government agency or official;

(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law; or

(g) intentionally prejudice or damage his or her client during the course of the professional relationship, except as may be required by Rule 3.3

27 NCAC 02 RULE 8.4

Lastly, Rule 8.3 provides:

A lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, shall inform the North Carolina State Bar or the court having jurisdiction over the matter.

27 NCAC 02 RULE 8.4

There is no question that Mr. White engaged in multiple types of professional misconduct by verbally attacking and physically threatening opposing counsel in the courtroom and in the presence of court staff and the U.S. Marshal. The conduct was so alarmingly

egregious that the Marshal escorted Ms. Gessner out of the building at his own suggestion after ensuring the threatening parties had left the building.

For their part, Mr. Fryer and Mr. Dancy violated their own ethical obligations by knowingly assisting or inducing Mr. White to do so and/or doing so through him. Mr. White and Mr. Fryer stood by and watched another licensed attorney violate his ethical obligations, as well as engage in physically threatening and verbally abusive conduct. It appears that neither attorney reported this conduct to the Bar Association or the Court. Instead, they laughed at the attack and their first thought was to coddle and console Mr. White who had just behaved physically threatening and menacing to a female attorney inside the courtroom, who did nothing to provoke the vengeful onslaught other than file a brief that set forth the wealth of evidence available for Phase Two.

**B.     The Court has inherent power to issue sanctions against Defendants.**

Title 28 U.S.C. § 1927 provides that "any attorney … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C.A. § 1927 (1994). The legislative history of the statute indicates that one of the purposes of its enactment in 1813 was to "prevent multiplicity of suits or processes, where a single suit or process might suffice." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 759, 65 L. Ed. 2d 488, 100 S. Ct. 2455 (1980) (quoting 26 Annals of Cong. 29 (1813)). A finding of bad faith is a prerequisite to an award of attorneys' fees under § 1927. *Brubaker v. City of Richmond*, 943 F.2d 1363, 1382 n.25 (4th Cir. 1991). "Vexatious" conduct, by definition, involves either subjective or objective bad faith." *United States v. Camco Const. Co., Inc.*, 221 F. Supp. 2d 630, 634 (D. Md. 2002) (citations omitted).

6

Case 1:20-cv-00033-MOC-WCM    Document 325    Filed 03/01/23    Page 6 of 11

In addition to the court's discretion to award attorneys' fees under § 1927, the court has the inherent authority in appropriate cases to assess attorneys' fees and impose other sanctions against a litigant or a member of the bar who has "acted in bad faith, vexatiously, wantonly, and for oppressive reasons." *Chambers v. NASCO, Inc*., 501 U.S. 32, 45-46, 115 L. Ed. 2d 27, 111 S. Ct. 2123 (1991); see also Roadway Express, 447 U.S. at 766-67. "While this power 'ought to be exercised with great caution" it is …"incidental to all Courts.'" *Royal Ins. v. Lynnhaven Marine Boatel, Inc.,* 216 F. Supp. 2d 562, 567 (E.D. Va. 2002) (quoting *Link v. Wabash R. Co*., 370 U.S. 626, 630-31, 8 L. Ed. 2d 734, 82 S. Ct. 1386 (1962)).

Indeed, [t]he imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy." *Chambers*, 501 U.S. at 46 (internal quotations and citation omitted). An appropriate sanction is a matter of the court's discretion. *Blue v. U.S. Dep't of the Army,* 914 F.2d 525, 546 (4th Cir. 1990).

Accordingly, Plaintiffs seek monetary sanctions against all Defendants and their counsel for the attorney fees incurred in drafting this motion, which should have been completely unnecessary save for defense counsel's attempts to intimidate, threaten and control the administration of justice. In addition, Plaintiffs seek a terminating sanction on the alter ego, successor liability and partnership issues. Mr. White should not be permitted to verbally attack and physically threaten the safety of opposing counsel within the sanctity of the courtroom itself, while fellow officers of the court, Mark Curran's attorneys, sat by and laughed. Trying to humiliate and intimidate opposing counsel to win at all costs and by any means should not be condoned by this Court and a message needs to be sent to the lawyers and their clients that this is

not an acceptable means of trying to succeed at trial.

Frankly, Plaintiffs' counsel could seek a civil restraining order against Mr. White based on his physically threatening behavior. If successful, Mr. White could potentially not even represent his clients in Phase Two. There is sufficient evidence before the Court to end this charade either on the merits or as a sanction for choosing for their conduct.

C. **This Court should issue a protective order prohibiting further *ad hominem* attacks and physically threatening conduct from Mr. White**.

Courts have issued protective orders under far less egregious circumstances. *Heinrichs v. Marshall and Stevens Inc.*, 921 F.2d 418, 420 (2d Cir. 1990) (affirming sanctions award where attorney's behavior toward opposing counsel in depositions was "not merely discourteous, offensive and unprofessional, but in some instances, incomprehensibly vicious," and his questioning of witnesses "was often improperly argumentative and confrontational"); *Van Pilsum v. Iowa State Univ. of Science and Tech.*, 152 F.R.D. 179, 180 (S.D. Iowa 1993) (issuing protective order and awarding sanctions where counsel engaged in "Rambo" tactics, including engaging in "in ad hominem attacks on [opposing counsel's] ethics, litigation experience, and honesty"). It goes without saying that any licensed attorney who cannot otherwise control himself should be restrained from repeatedly yelling at opposing counsel, inside or outside the courtroom, that she is "a worthless piece of shit." It also goes without saying that any licensed attorney who cannot otherwise control himself should restrained from squaring up with opposing counsel, particularly a female, jabbing his finger within inches of her face.

If this case is to move forward through Phase Two, Ms. Gessner needs assurances that she will be able to advocate for Plaintiffs safely and without menacing interference by Mr. White, Mr. Dancy and Mr. Fryer. Apparently the Rules of Professional Conduct are not enough to keep counsel within the bounds of decency. Although perhaps unprecedented, Ms. Gessner requires a line to be drawn for the defense team to ensure they will have consequences if they

allow aggression, hostile temperament and/or desire for vengeance to prevail over their professional and personal judgment during the remainder of this case.

Plaintiffs' counsel thus asks this Court to issue a protective order, requiring Mr. White from using *ad hominem* attacks, other verbal insults, or any physically violent or threatening conduct against Ms. Gessner. It should go without saying that opposing counsel cannot attack his adversary for a legal/factual argument made in brief. But apparently Mr. White needs more than the restraint that should be afforded by the North Carolina Rules of Professional conduct. Ms. Gessner further asks this Court to issue a protective order against Mr. Dancy and Mr. Fryer to the extent they were behind the attack and or have any plans to engage in similar conduct during Phase Two.

**D.      This Court should issue an order to show cause re: contempt against Mr. White.**

Summary contempt power "rests on the need to maintain order and a deliberative atmosphere in the courtroom." *Bloom v. State of Ill.*, 391 U.S. 194, 210, 88 S. Ct. 1477, 20 L. Ed. 2d 522 (1968). This power should be exercised when "an open, serious threat to orderly procedure [requires] instant and summary punishment . . . to fill the need for immediate penal vindication of the dignity of the court." *United States v. Martin*, 251 F. App'x 979, 981 (6th Cir. 2007) (quoting *Harris v. United States*, 382 U.S. 162, 165, 86 S. Ct. 352, 15 L. Ed. 2d 240 (1965)). Unlike indirect contempt, which occurs outside the presence of the court and therefore is not a threat to the "court's immediate ability to conduct its proceedings," *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 832, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994), direct contempt occurs "in open court, in the presence of the judge, [and] disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent demoralization of the court's authority before the public," *In re Oliver*, 333 U.S. 257, 275, 68 S.

9

Case 1:20-cv-00033-MOC-WCM    Document 325    Filed 03/01/23    Page 9 of 11

Ct. 499, 92 L. Ed. 682 (1948) (internal quotation omitted). Because direct contempt threatens the institution of the court, it "may be punished summarily without notice and a hearing." *United States v. Sanchez Hernandez.* 600 F.3d 333, 338 (4th Cir. 2010); see also *In re Chaplain*, 621 F.2d 1272, 1275 (4th Cir. 1980) (A hearing is "not necessary when contumacious conduct occurs in the actual presence of a judge who observes it, and when immediate action is required to preserve order in the proceedings and appropriate respect for the tribunal.").

The purpose of contempt is to either "compel due decorum and respect in its presence" (i.e., direct contempt) or compel "due obedience to its judgments, orders, and process" (i.e., constructive contempt); *Ex parte Gonzalez*, 111 Tex. 399, 238 S.W. 635, 636 (Tex. 1922); see also *In re Bell*, 894 S.W.2d at 132 (Jones, J., concurring) (noting that "while direct contempt rests on a direct affront to the authority or dignity of a court, regardless of the existence of an order or decree of that court, in constructive contempt."] In *Andrus v. Hurricane City*, No. 2:04-CV-1001 DAK, 2008 U.S. Dist. LEXIS 11999 (D. Utah Feb. 15, 2008), the Court found that comments to the Clerk's Office were subject to a judge's contempt powers under state law and that they exposed the plaintiff to potential sanctions and criminal or direct contempt charges. The district court concluded, "[a]dditionally, they are disrespectful to court proceedings, and to the Courtroom Deputy and Legal Assistants who have to listen to this type of vulgarity." *Id*.

Here, the contempt was outside the presence of the judge, but still within the confines of the courtroom. In addition, Mr. White exposed Ms. Smith, Ms. McGirr and the Marshal to a profane, vulgar and violent display that was disrespectful to them personally and the court process in general. He was physically threatening and wildly disrespectful to a fellow attorney who was obviously a formidable opponent. Mr. White's behavior, witnessed by this Court's staff, prompting a protective escort by the Marshal, should not go unpunished.

Lastly, make no mistake, this is not the case of counsel not "getting along." Mr. White's

10
Case 1:20-cv-00033-MOC-WCM   Document 325   Filed 03/01/23   Page 10 of 11

unprovoked violence and attempted intimidation within the walls of the courtroom during jury deliberations is inexcusable and should be punished accordingly.

### III. CONCLUSION

Plaintiffs respectfully request this Court issue monetary and/or non-monetary sanctions, as well as a protective order against similar conduct and an order to show cause re: contempt.

Respectfully submitted this the 1st day of March 2023.

*/s/ L. Michelle Gessner*
L. Michelle Gessner, NCSB#26590
GESSNERLAW, PLLC
602 East Morehead Street
Charlotte, North Carolina 28202
T: 704.234.7442;  F: 980.206.0286
Email: michelle@mgessnerlaw.com

*Plaintiffs' Class Counsel*